Douglas F. Behm (Bar No. 014727)
**DOUGLAS F. BEHM, PLLC**
14362 N. Frank Lloyd Wright Blvd., Ste. 1000
Scottsdale, Arizona 85260
Telephone: 480-305-5633
Email: dbehm@behmlawfirm.com

Charles L. Babcock, admitted *pro hac vice*
Richard E. Griffin, admitted *pro hac vice*
Curt M. Langley, admitted *pro hac vice*
**JACKSON WALKER L.L.P.**
1401 McKinney, Suite 1900
Houston, Texas 77010
Telephone: 713-752-4200
Facsimile: 713-752-4221
Email: cbabcock@jw.com
       rgriffin@jw.com
       clangley@jw.com

and

Stephen R. Fogle, admitted *pro hac vice*
**JACKSON WALKER L.L.P.**
112 E. Pecan Street, Suite 2400
San Antonio, Texas 78205
Telephone: 210-978-7700
Facsimile: 210- 978-7790
Email: sfogle@jw.com

*Attorneys for Defendants and Counter-Plaintiffs*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Cellco Partnership d/b/a Verizon Wireless,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>Jason Hope, et al.,<br><br>　　　　Defendants. | No. CV11-432-PHX-DGC<br><br>**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO STRIKE PARAGRAPH 76 OF PLAINTIFF'S COMPLAINT FOR FRAUD** |

Defendants Jason Hope, Wayne P. DeStefano, Christa Stephens, Quinn McCullough, Steve Uhrman, and Janet O'Meara, and Defendants and Counter-Plaintiffs Cylon, LLC, Planet Web, LLC, BESTXTS.COM, LLC, Text Charge, LLC, Eye Level Holdings, LLC, New Economic Order, LLC, Saguaro Media, LLC, New EIN, LLC, Ink Sign Holdings, LLC, Yellow Ball Holdings, LLC, Message Plan, LLC, FYISMS.COM, LLC, MYTXTSMS.COM, LLC, Standard Plan, LLC, Standard Message, LLC, SMS City, LLC, City-O-Games.Com, LLC, Hot-Hot-News.Com, LLC, WorldTxts.Com, LLC, TopicText.Com, LLC, Text Charge, LLC, All-Game-Cheats.Org, LLC, News Alerts, LLC (collectively, "JAWA") file this reply in support of their Motion to Strike Paragraph 76 of the Complaint of Plaintiff Cellco Partnership d/b/a Verizon Wireless ("Verizon").

**Introduction**

Verizon now admits that the allegation contained in Paragraph 76 (h)(i) of its Complaint is inaccurate, but maintains it was merely a "clerical" error.  At the same time, Verizon puts forth no defense at all to misrepresentations in Paragraph 76 (h)(ii) of its Complaint, regarding the alleged absence of any price disclosure on JAWA's PIN page (where even Verizon's evidence showed the price); nor does Verizon offer any adequate explanation as to how or why inaccurate reproductions of the cited JAWA webpage were incorporated in Verizon's Complaint.  When Verizon alleged that the Defendants were engaged in a criminal enterprise by, among other things, not disclosing pricing information it now admits was disclosed, it said so with extreme confidence.  Likewise, Verizon's star witness, Richard LaPerch, said he was 100% certain JAWA was guilty of all of the criminal offenses with which it is accused.  Now, after JAWA has started peeling away the layers of Verizon's mendacity, Verizon says that it really meant to say that Defendants did not disclose "compliant" pricing in the MIN overlay (a point disputed), leaving unexplained and unexcused Verizon's inaccurate claim that the webpage included no price disclosure.

6096415v.2 137567/00002

Verizon, now that its Complaint has been challenged, agrees that "the image [of the screenshot] was necessarily reduced" but that was done by "Verizon Wireless' auditors" and that Verizon "actually *enlarged* the image ... when it was pasted into the Complaint." Resp. at 4. Unrebutted, however, is the testimony of Christa Johnson that the screenshot "pasted into the Complaint" by Verizon had been "stretched" to make it appear to be something that it was not. *See* C. Johnson testimony, April 14, 2011, at 273:13-25; Def. Exs. 612K, L. Nor does Verizon dispute the fact that the screenshot it produced is (notwithstanding Verizon's "enlargement" of its auditor's reduced image) smaller than it should be – if Verizon were interested in producing an accurate reproduction of the page in question.

Contrary to Verizon's allegations, the screen shot did disclose JAWA's pricing and the rest of the page did not "obscure its contents" as alleged. The manipulation was intentional as Verizon admits because it pasted a previously reduced screen shot into the Complaint. This intentional conduct was deceptive and, as we discuss more fully below, this is sufficient bad faith to warrant striking the paragraph.

**Argument**

The gist of Verizon's response to JAWA's Motion to Strike is its assertions that: (a) JAWA's main complaint with Paragraph 76(h)(i) of Verizon's Complaint is the result of "a mere clerical drafting error;" (b) Verizon did not misrepresent the content of the subject screenshot; (c) the screenshot in the Complaint was not manipulated to make it more difficult to read; and (d) there is no evidence that Verizon acted in bad faith. Resp. at 4. JAWA submits that the evidence fully supports its contention that the image presented in Verizon's Complaint was intentionally manipulated and distorted, and that Verizon acted in bad faith in making the false allegations that are the subject of the Motion to Strike.

The portion of the Complaint at issue was based on the Declaration of Richard LaPerch (Doc. #8). Mr. LaPerch is the Chief Executive Officer of Aegis Mobile, LLC

("Aegis"). Aegis audits the products of content providers like JAWA. Aegis is essentially a captive company, given its heavy dependency on revenue from Verizon, and is compensated according to a formula which encourages heavy testing of content providers.[1] *See* LaPerch Deposition, p. 28, lines 13-18 [hereinafter page:line]; 50:11-18 (attached as Exhibit A (filed under seal)).

According to Mr. LaPerch, Aegis discovered that one of the Defendants, the entity formerly known as Cylon, LLC, was running what Mr. LaPerch calls "noncompliant PSMS campaigns" on 13 short codes. *See* LaPerch Dec. ¶ 25. The allegedly noncompliant campaigns were discovered on only 13 of scores of short codes used by JAWA. *See* LaPerch Deposition at 76:12-17 (attached as Exhibit A (filed under seal)). One of those supposedly noncompliant campaigns is identified in Mr. LaPerch's Declaration (¶¶ 61-72 (Doc. #8)) and, in virtually identical terms, in Verizon's Complaint (pp. 24-27). According to the Complaint, and following the allegations in Mr. LaPerch's Declaration, JAWA's website was defective in the following ways:

> The order path for this undisclosed URL is misleading, deceptive, and noncompliant for various reasons:
>
> i. The MIN overlay does not disclose pricing or the short code, and the rest of the page content is grayed out to obscure its contents.
>
> ii. The PIN entry webpage does not disclose subscription information, terms and conditions, pricing information, or carriers listed.

Complaint ¶ 76(h), at p. 26; *see* LaPerch Declaration ¶¶ 67-69.

As demonstrated to the Court, the allegation by Verizon and Mr. LaPerch that the "MIN overlay does not disclose pricing" is false, as is the representation that the PIN entry webpage does not disclose pricing information. C. Johnson testimony, April 13, 2011, at 272:21; *see also* Def. Ex. 612J. As noted in JAWA's Motion to Strike, the $9.99 monthly charge is displayed a total of seven times on the PIN entry webpage and appears

---

[1] JAWA cannot disclose the facts underlying these statements about Aegis in this Reply because Verizon has designated Mr. LaPerch's deposition "Confidential." The deposition therefore is filed under seal.

6096415v.2 137567/00002

immediately under the "GO" button, prominently displayed in the MIN overlay, and the price is displayed at the base of the MIN overlay, next to a box which must be checked in order to proceed, in a statement which reads: "I agree to the terms for monthly $9.99 subscription to access all the Jokes on the Jokes Site to be billed to my cell." *See also* Def. Ex. 612J.

Verizon now contends that paragraph (i) quoted above contained "a mere clerical drafting error" and should have read "[t]he MIN overlay does not disclose *compliant* pricing." Putting aside the point that a clerical error does not excuse the filing of distorted screen images or misrepresenting facts, the evidence does not bear out Verizon's contention of an innocent scrivener error, nor does it explain the inaccuracy of the statement in Complaint ¶ 76(h)(ii) that the PIN entry webpage fails to disclose pricing information. At the hearing, Verizon's counsel asked JAWA's Ms. Johnson about the seven price disclosures on the webpage in question. Her testimony was that the pricing disclosure at issue was compliant:

> Q. So that's also a violation of Verizon's rules, because there is no prominent disclosure of the price within the call to action, correct?
>
> A. That's not what the violation summary reflects. I was asked to do a comprehensive of the violation summary.
>
> Q. But I'm asking you a different question. There is no prominent disclosure of the price as required by Verizon's rules within the call to action, correct?
>
> A. There is a price within the call to action. I -- I think the word "prominent" is subjective.
>
> Q. Well, what do you think? Do you think that this is a prominent disclosure of the price within the call to action?
>
> A. I can see it from here, yes. It's prominent to me.
>
> Q. It's prominent to you?
>
> A. Yes.

6096415v.2 137567/00002

C. Johnson testimony, April 14, 2011, at 313:10-24.[2]

In addition to its wholly inadequate "clerical error" defense, Verizon states that "the pricing 'disclosures' about which defendants brag are noncompliant due to their size, color contrast or location. (*See generally* Exhibit B to Second LaPerch Dec.)." Resp. at 6. Verizon's "fall back" defense about the font size, contrast, and placement of JAWA's multiple price disclosures (challenges which JAWA refuted at the preliminary injunction hearing) are irrelevant to the disposition of JAWA's Motion and serve only to underscore the indisputable inaccuracy of the allegations contained in paragraph 76, including claims that the webpage contained **no** price disclosure.

Verizon's incomplete "clerical error" argument might carry more force if the omission of the word "compliant" were the only error in the Complaint. But it is not. Verizon argues that it did not misrepresent the content of JAWA's webpage in its Complaint. *See* Resp. at 4. As already noted, the Complaint was based on the Declaration of Mr. LaPerch. In his testimony before this Court on April 13, Mr. LaPerch testified repeatedly that the audit that he discusses in his Declaration, and on which this racketeering lawsuit is based, was perfect, and that "everything in the Complaint from your audit that was filed in this lawsuit, is a hundred percent accurate." R. LaPerch testimony, April 13, 2011, at 171:19-22; *Id.* at 175:6-24.

Notwithstanding Mr. LaPerch's certainty, Verizon's allegation that, aside from the MIN overlay, "the rest of the page content is grayed out to obscure its contents" also is incorrect – at least if one accepts the MMA Guidelines' standards for color contrast. Ms. Johnson established that the website made the basis of JAWA's Motion to Strike was not overly "grayed out," because the color contrast of the pricing in that area of the page is 129 (and the minimum required is 125). *See* C. Johnson testimony, April 13, 2011, at 242:4-15; *see* Def. Ex. 612E.

---

[2] Ms. Johnson went on to agree that the pricing disclosure next to the "check box" in the MIN overlay was not in 12-point font, but that was just one, and the smaller, of the price disclosures in the MIN overlay.

1  Verizon's allegation that the "noncompliant" webpage "does not disclose
2  subscription information, terms and conditions, pricing information, or carriers listed"
3  also was proven to be untrue at the hearing. In fact, *all* of that information is included on
4  the webpage at issue:

> This site is a subscription SMS Text Messaging Alerts Information Service that costs $9.99/month and is billed to your cell phone. The Service is compatible with AT&T, Verizon Wireless, T-Mobile, CellularOne, USCellular, MetroPCS, Alltel, Nextel, Boost and Cricket. Standard messaging rates and other charges also apply.
>
> By entering your Cell Phone Number as well as the unique PIN code sent to you via text message you agree to subscribe to this monthly service and receive continued monthly billing until you Cancel the service. By becoming a Subscriber to this site you are gaining access to valuable SMS Text Alerts regarding relevant and related information, as well as 100% unlimited access to all of the content contained within this site.
>
> You can stop this service at any time by inputting your Cell Phone Number and PIN code on the Cancel page. After cancelling through this method your subscription to this site will be cancelled immediately. By signing up, you must be a U.S. resident and own the mobile phone (or have consent from the owner) and must be at least 18 years of age. If you are not at least 18 years of age you must have full parental consent to access the Service.

Def. Ex. 612K. In sum, Verizon's allegations in the Complaint do, indeed, misrepresent the reality of JAWA's webpage.

Verizon also argues that it did not shrink the webpage in issue, and that "[t]here was no bad faith or attempt mislead anyone on Verizon Wireless' part." Resp. p. 4. Once again, the evidence indicates otherwise. Verizon's manipulation of images it showed the Court and the world in its RICO Complaint is readily apparent. The most obvious manipulations include the shrinking and stretching of the webpage on page 26 of the Complaint so that it is basically illegible, distorting JAWA's pricing and term disclosures beyond recognition. *See* C. Johnson testimony, April 14, 2011, at 273:13-25; Def. Exs. 612K, L.

Additional evidence that Verizon has acted in bad faith in including distorted images and false allegations regarding the actual images is contained in Aegis documents

7

showing that JAWA was not, as now alleged, an "egregious" violator of Verizon's guidelines. An Aegis Audit Report indicates that prior to the recent investigation "Cylon (and the 'family' of other companies/short codes provided by Mr. Alpert) has had a low instance of intercepts and a relatively low violation history." Def. Ex. 617. Following the investigation and testing that preceded the filing of the lawsuit, Aegis' Director of Operations pronounced that the JAWA programs "have simply NOT failed, in any area" and "[t]hese guys were clean!!" Def. Ex. 548 (e-mail dated Feb. 19, 2011; referenced attachment is Def. Ex. 568). The truth, however, did not deter Verizon from launching its brutal multi-front assault against JAWA, apparently choosing to rely on the rants of an individual who worked as a consultant for JAWA two years ago, who professes never to have been exposed to any marketing or operational strategies, describing his knowledge of JAWA's operation as "at best, superficial" (Def. Ex. 529), and who is himself ensnarled in litigation with one of JAWA's two owners. *See* Def. Ex. 518.

Verizon's argument that JAWA has not demonstrated that Verizon acted in bad faith is beset by other inconvenient facts in the record, not the least of which being the misrepresentations and omissions discussed above. Verizon does not say whether JAWA must prove subjective or objective bad faith; that the latter standard is satisfied seems obvious from the record. Moreover, Verizon's disregard for the accuracy of images reproduced in the Complaint (whether malicious or reckless[3]), combined with inaccurate

---

[3] In *Fink v. Gomez*, 39 F.Supp.2d 1225, 1226 (C.D. Cal. 1999), the court read the Ninth Circuit case law as precluding sanctions where conduct was reckless and not intentional, but made this observation:

> Whether misstatements by an officer of the court result from subjective bad faith, reckless disregard for the truth, or incompetence, the impact on the system is the same – the court is unable to rely on the truthfulness or accuracy of those statements and must, therefore, question and examine everything brought before it by that counsel. If misrepresenting facts to the court is unethical, then such misrepresentations should be sanctionable if done with reckless disregard for the truth.

On appeal, the Ninth Circuit made it clear that sanctions could be imposed for reckless misconduct so long as another aggravating factor, such as improper purpose, was present. 239 F.3d 989, 994 (9th Cir. 2001).

8

allegations relating to the content of the actual images, certainly suggest subjective bad faith. Other facts, including Verizon's blatant disregard for the notice and cure procedures in its own published audit policies and procedures again suggest that Verizon did not act innocently when it included inaccurate depictions of alleged violations in its very public Complaint, instead of submitting issues to aggregators through usual channels. *See* Def. Ex. 508 (at bates 2134) ("repeat offender" provisions); Def. Ex. 591; C. Johnson testimony, April 14, 2011, at 283:19-285:10.

Mr. LaPerch testified at the hearing on April 13, 2011, that the proper process for resolving issues concerning the font size and color contrast on JAWA's internet advertisements was not to share the audit results with JAWA and resolve the parties' disagreements over what were, at most, minor variations from the MMA Guidelines. Rather, Mr. LaPerch testified that JAWA should be first informed of its alleged infractions by the filing of a federal racketeering lawsuit:

> Q. My question was, after you completed your audit, did you discuss your audit with them and give them an opportunity to challenge any of your findings?
>
> A. I believe this is the forum for it, yes. Once we got all the data together, we gave it to our customer and this is the forum for doing so.

R. LaPerch testimony, April 13, 2011, at 170:25-171:5.

> Q. Were you aware that your audit findings could lead to a press release announcing to the public that JAWA was a criminal enterprise?
>
> A. At the time we started the investigation, we did not understand where it was going to lead. And I did not understand there would be a press release.
>
> Q. Did you understand there would be a lawsuit?
>
> A. I did not. We did not understand the scope and depth of this fraud and deception until well into the investigation.
>
> Q. But you did at the end of the investigation?
>
> A. Yes, sir.
>
> Q. And my question to you was: Don't you think someone is entitled to be faced with their accusers and have an opportunity to respond?

A.  Yes, sir. And I believe that's what happened through this forum.

*Id.* at 172:8-23.

Not being an attorney, Mr. LaPerch likely is unfamiliar with Rule 11 and the obligation of attorneys to have evidentiary support for factual allegations in a complaint. That duty notwithstanding, based on Mr. LaPerch's audit and investigation, Verizon caused the Aggregators to shut down *all* of JAWA's short codes, not only on Verizon's network, but on the networks of all of the wireless carriers, despite the fact that Mr. LaPerch found (what he considered to be) noncompliant campaigns running over only 13 short codes, and despite the fact that Verizon included just four of the "noncompliant" short code campaigns in its Complaint. The prejudice to JAWA was addressed in its Motion. Given Verizon's public repetition of allegations in its Complaint, prejudice to JAWA is a given.

Finally, in its Response, Verizon exhibits umbrage at what it characterizes as JAWA's "ad hominem" depiction of Verizon's evidence in paragraph 76 of its Complaint. Resp. at 2, n.1. Verizon's newfound sensitivity is selective and self-serving, insofar as Verizon has blithely broadcast accusations that the Defendants are racketeers who have violated the federal criminal statutes concerning mail fraud and wire fraud by "lur[ing] Verizon Wireless customers into signing up for defendants' PSMS with misleading and false information about pricing[.]" Complaint ¶ 109 (Count II, alleging violation of 18 U.S.C. § 1962(d)).

After one and one-half days of testimony, Verizon was unable to present an iota of evidence that any of JAWA's pricing disclosures were false or misleading. Indeed, had JAWA had the opportunity to subject to close analysis the screen shots depicted in Verizon's Complaint sooner, it would have moved to strike additional images beyond the screen shot at issue in JAWA's pending Motion.

Accordingly, for the reasons set forth above and in its Motion to Strike, JAWA respectfully requests that its Motion to Strike be granted.

**DATED** April 22, 2011.

Respectfully submitted,

DOUGLAS F. BEHM, PLLC

By: /s/ Douglas F. Behm
Douglas F. Behm
14362 N. Frank Lloyd Wright Blvd.
Suite 1000
Scottsdale, Arizona 85260

AND

JACKSON WALKER L.L.P.

By: /s/ Richard E. Griffin
Charles L. Babcock
Richard E. Griffin
Curt M. Langley
1401 McKinney, Suite 1900
Houston, Texas 77010

AND

Stephen R. Fogle
112 E. Pecan Street, Suite 2400
San Antonio, Texas 78205

ATTORNEYS FOR JAWA,
DEFENDANTS AND COUNTER-PLAINTIFFS

11

6096415v.2 137567/00002

## CERTIFICATE OF SERVICE

I hereby certify that on April 22, 2011, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

| | |
|---|---|
| Paul Kipp Charlton, Esq. | paul.charlton@gknet.com, gjk@gknet.com |
| Lindsi Michelle Weber, Esq. | lindsi.weber@gknet.com, jk@gknet.com |
| Marcos D. Jimenez, Esq. | mjimenez@kasowitz.com, ymorales@kasowitz.com |
| Scott B. Cosgrove, Esq. | scosgrove@kasowitz.com, anoonan@kasowitz.com |
| Ann M. St Peter-Griffith, Esq. | astpetergriffith@kasowitz.com |
| Sandra J. Millor, Esq. | smillor@kasowitz.com |

By:   /s/ Richard E. Griffin

6096415v.2 137567/00002