Paul K. Charlton (Bar No. 012449)
Lindsi M. Weber (Bar No. 025820)
GALLAGHER & KENNEDY, P.A.
2575 East Camelback Road
Phoenix, Arizona 85016-9225
Telephone:   (602) 530-8000
Facsimile:    (602) 530-8500
Email:          paul.charlton@gknet.com
                    lindsi.weber@gknet.com

Marcos Jiménez (admitted pro hac vice)
Scott Cosgrove (admitted pro hac vice)
Ann M. St. Peter-Griffith (admitted pro hac vice)
KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
1441 Brickell Avenue, Suite 1420
Miami, Florida 33131
Telephone:   (786) 587-1077
Facsimile:    (305) 675-7970
Email:          MJimenez@kasowitz.com
                    SCosgrove@kasowitz.com
                    AStpetergriffith@kasowitz.com

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| CELLCO PARTNERSHIP d/b/a VERIZON WIRELESS,<br><br>Plaintiff,<br><br>v.<br><br>JASON HOPE; et al.,<br><br>Defendants. | Case No. 2:11-cv-00432-DGC<br><br>**PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS** |

Plaintiff Cellco Partnership d/b/a Verizon Wireless ("Verizon Wireless") hereby responds to defendants' Motion to Dismiss Plaintiff's Complaint filed on April 1, 2011 [D.E. 77] (the "Motion").

**I. INTRODUCTION**

Defendant's Motion is premised on a fundamental misreading of the claims in Verizon Wireless' Complaint, as is evident from the first paragraph of the Motion: "Verizon does not allege that it has been deceived by JAWA's allegedly wrongful practices. Verizon does not allege that any of its customers ever saw any of the JAWA websites which it says violate the MMA Guidelines, nor does it provide authority

establishing that the MMA Guidelines are enforceable under any of its legal theories." All of those contentions are erroneous. Verizon Wireless alleges clearly that (i) defendants lied to it about the URL's and marketing materials they would use to sell their services to Verizon Wireless' customers, (ii) Verizon Wireless relied on those misrepresentations in allowing defendants to access its network, (iii) its customers were billed by Verizon Wireless based on defendants' unapproved advertising materials (even if Verizon Wireless cannot now identify every such customer), and (iv) as a result, it has suffered both irreparable reputational injury and *direct* monetary damages. Verizon Wireless does not – and does not need to – allege that the MMA Guidelines have the independent force of law; rather, it contends that when defendants promised to abide by those guidelines they never intended to – and did not – keep that promise, instead misleading and damaging Verizon Wireless and its customers. That is fraud.

Verizon Wireless' fraud allegations are detailed and concrete. It identifies the straw man entities and bogus addresses defendants used as part of their scheme to conceal their fraud from Verizon Wireless and provides several examples of fraudulent URLs defendants submitted to Verizon Wireless so that Verizon Wireless would activate their short codes. Verizon Wireless also explains defendants' "cloaking" software, which was intended to block Verizon Wireless' discovery of their fraud. Indeed, Verizon Wireless could not have pled these claims with *more* specificity.

Unable to refute Verizon Wireless' allegations, defendants instead largely ignore them. Their head-in-the-sand approach, however, does not make those allegations disappear. As shown below, those allegations are more than sufficient to support each of Verizon Wireless' claims and defendants' motion should be denied.

## II. MEMORANDUM OF LAW

### A. Defendants Do Not Show That The Complaint Fails To State Claims Upon Which Relief Can Be Granted.

It is well settled that, under Federal Rule of Civil Procedure 12(b)(6), a complaint only should be dismissed where "the moving party demonstrates that the plaintiff cannot

2

prove any claim entitling him or her to relief." *Oland v. Forever Living Products Int'l, Inc.*, No. CV 09-8039-PHX-MHM, 2009 WL 5128658, at *2 (D. Ariz. Dec. 17, 2009) (Murguia, J.). To avoid dismissal, "a complaint must contain 'only enough facts to state a claim for relief that is plausible on its face.'" *Winger v. Best Buy Co., Inc.*, No. CV 10-923-PHX-MHM, 2011 WL 995937, at *2 (D. Ariz. Mar. 21, 2011) (Murguia, J.) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint has "facial plausibility" when "'the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* This standard "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence to prove [the] claim." *Id.* (internal quotations and citations omitted). Moreover, in deciding a Rule 12(b)(6) motion, "all allegations of material fact are assumed to be true and construed in the light most favorable to the non-moving party." *Id.* Further, "all reasonable inferences [from those factual allegations] are to be drawn in favor of [plaintiff] as well." *Bobbitt v. Milberg, LLP*, No. CV-09-629-TUC-FRZ, 2010 WL 5345867, at *3 (D. Ariz. Nov. 4, 2010) (Guerin, J.). Applying these standards, defendants' motion fails.

**B. Verizon Wireless Adequately Has Pled Its RICO Claims.**

Defendants' primary argument in seeking to dismiss Verizon Wireless' RICO claims is that Verizon Wireless purportedly has not alleged any "direct injury" proximately caused by defendants' scheme. (Motion pp. 3, 6-8). Defendants are wrong. First, issues regarding proximate cause in RICO actions generally are inappropriate for resolution on a motion to dismiss. *See, e.g.*, *Newcal Industries, Inc. v. Ikon Office Solution*, 513 F.3d 1038, 1055 (9th Cir. 2008) (issues regarding whether RICO plaintiffs' injuries were proximately caused by defendants' conduct were "factual questions, which we cannot resolve on a Rule 12(b)(6) motion in this case"). In any event, however, defendants' argument simply ignores Verizon Wireless' extensive descriptions of defendants' numerous "predicate acts" in furtherance of their conspiracy and how defendants' misconduct has damaged Verizon Wireless itself (*i.e.*, not merely its customers). Thus, the

Complaint alleges that defendants: (i) committed to comply with the MMA Best Practices in exchange for access to Verizon Wireless' network of customers (Complaint ¶¶ 1-5, 42-43, 70); (ii) in violation of that representation, set up an elaborate scheme to bypass those guidelines and Verizon Wireless' compliance auditors – including the submission of numerous compliant URLs and "cloaking" software to hide their subsequently deployed, noncompliant, deceptive URLs (*id*. ¶¶ 5, 54, 57, 61-62, 65-69, 70-76); and (iii) through that scheme, duped Verizon Wireless into allowing defendants repeatedly to prey upon Verizon Wireless' customers (*id*. ¶¶ 54, 57, 61-62, 65-69, 70-76, 93, 109, 114). As a direct, proximate result, Verizon Wireless has suffered damages, including damage to its reputation and good will, the cost of reimbursing customers who have been victimized by defendants' scheme, costs incurred in investigating and uncovering defendants' misconduct, and legal fees in connection with trying to repair the damage defendants have inflicted on Verizon Wireless. (*id*. ¶¶ 78, 83-84, 93, 110-111, 115-116).

Those allegations are far beyond a "mere possibility of misconduct" (Motion p. 5) and are more than sufficient to support Verizon Wireless' RICO claims seeking redress for the injuries inflicted by defendants. For example, in *Hy Cite Corp. v. Badbusinessbureau*, 418 F. Supp.2d 1142, 1151 (D. Ariz. 2005) (Carroll, J.), plaintiff alleged that, in violation of RICO, defendants used their website to publish false information regarding plaintiffs' business practices and attempted to extort fees from plaintiff to remove that information from defendants' websites. *Id*. at 1149-50. The defendants there argued that plaintiffs did not allege sufficient facts constituting extortion or wire fraud. *Id*. at 1149. The Court rejected those arguments, holding that plaintiffs' description of the details of defendants' scheme and how they carried out that scheme through their websites adequately alleged facts supporting plaintiffs' RICO claims. *Id*. at 1150. Further, plaintiff's allegations that it had "lost customers, that customers have rescinded sales contracts, and that plaintiff's reputation has been injured" were sufficient to allege a compensable RICO injury to its "business or property." *Id*. at 1151. As in *Hy Cite Corp.*, Verizon Wireless has alleged extensive facts showing how defendants carried out their wire fraud through fraudulent

submissions of URLs defendants did not intend to use, their deceptive and noncompliant URLs actually used, the deployment of cloaking software to misdirect auditors away from those unapproved and deceptive URLs and the direct injuries to Verizon Wireless as a result.  As in *Hy Cite Corp.*, defendants' motion should be denied.  *See also Paradise Northwest, Inc. v. Randhawa*, No. 2:09-cv-02027-MCE-DAD, 2009 WL 5851459, at *4 (E.D. Cal. Dec. 9, 2009) (denying motion to dismiss RICO and fraud claims where plaintiffs alleged facts regarding the conduct alleged to be fraudulent, the identity of the enterprise and the type of activity that was alleged to constitute racketeering because RICO is given a "'liberal construction'") (citation omitted).

Defendants do not even address – let alone refute – Verizon Wireless' allegations. Rather, they apply blinders and argue that Verizon Wireless' damages are, at most, only "indirect."  (Motion pp. 7-8).  Again, they are wrong and their argument on this point is a red-herring.  Verizon Wireless is not suing defendants for damages inflicted on Verizon Wireless' *customers*, but rather for damages flowing *directly to Verizon Wireless* from defendants' fraud *directly upon Verizon Wireless*.  Thus, contrary to defendants' argument (Motion p. 8), Verizon Wireless' claims are not hinged on *indirect* injury at all, and the cases on which defendants rely for the proposition that such "indirect injury" is insufficient to confer RICO standing (Motion pp. 9-10) are inapposite.

For example, in *Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137 (9th Cir. 2008) (Motion pp. 3, 8), plaintiffs, who were karaoke record sellers in competition with defendants, alleged that defendants violated RICO by selling such records without proper copyright licenses.  *Id*. at 1141.  The Court rejected plaintiffs' RICO claims on proximate cause grounds because plaintiffs' injuries were too "attenuated" from defendants' conduct and linking them to that conduct would be too "speculative."  *Id*. at 1148.  Here, in contrast, defendants misrepresented facts and submitted URLs they did not intend to use in order to worm their way into – and take advantage of -- Verizon Wireless' customer network.  Further, defendants specifically deployed cloaking software to prevent Verizon Wireless' auditors from discovering that misconduct.  There is nothing "attenuated" about

5

Verizon Wireless' injuries from defendants' fraud; as shown, it was the direct target and victim of defendants' racketeering acts.  As such, *Sybersound* is inapplicable.[1]

Moreover, defendants misconstrue Verizon Wireless' allegations; to wit, that Verizon Wireless does not and cannot know which of its customers were tricked by defendants' scheme.  (Motion pp. 3, 5, 8-10, 13-16).  Verizon Wireless is *not* alleging that it does not know if *any* of its customers have been injured by defendants' conduct.  Indeed, such a reading is inconsistent with Verizon Wireless' other allegations, *i.e.*, that it has set up a refund system for its customers injured by defendants and *Verizon Wireless has reimbursed customers pursuant to that system*.  (*See* Complaint ¶¶ 83, 104, 111, 116, 122).  In fact, Verizon Wireless has been able to identify *many* of its customers who specifically were defrauded and injured by defendants' scheme.  Verizon Wireless' allegations in ¶83 of the Complaint merely reflect that, among its universe of customers (who have not yet taken advantage of Verizon Wireless' reimbursement program), it does not yet know which ones were injured by defendants' fraud.

Put simply, that defendants' egregious misconduct hurt many other people, including Verizon Wireless' customers, does not eliminate the direct causal chain between that misconduct and the specific damages to Verizon Wireless.  Accordingly, the supposed "insuperable obstacle" (Motion p. 7) to Verizon Wireless' RICO claims is wholly illusory.

### 1. Verizon Wireless has Pled its Claims with Sufficient Particularity.

In addition, contrary to defendants' arguments (Motion pp. 5-6, 10-11), Verizon Wireless has satisfied Federal Rule of Civil Procedure 9(b) by pleading its fraud allegations with "particularity."  The primary purpose of Rule 9(b) is to allow a defendant to "prepare an adequate answer from the allegations."  *Odom v. Microsoft Corp.*, 486 F.3d 541, 553 (9th Cir. 2007) (internal quotation and citation omitted).

---

[1] Similarly, in *Cafasso v. General Dynamics Systems, Inc.*, No. 09-16181, 2011 WL 1053366 (9th Cir. Mar. 24, 2011) (Motion p. 6), plaintiffs' complaint "specifie[d] no particular circumstances of any discrete fraudulent statements" and thus was "precisely what Rule 9(b) aims to preclude."  That is wholly unlike the Complaint here, which sets out many circumstances of defendants "discrete fraudulent statements."  *Vess v. Ciba-Geigy Corp.*, 317 F.3d 1097 (9th Cir. 2003) (Motion p. 6) did not even involve any RICO or Arizona state claims and, as such, it is inapposite.

Here, Verizon Wireless has alleged specifically, among other things: (i) the identities of the persons who controlled the entities defendants used to effectuate their fraud (Complaint ¶¶ 7-35, 76); (ii) the actions those individuals and entities undertook that were fraudulent (including submitting MMA compliant URLs but then deploying deceptive and noncompliant URLs masked by the use of cloaking software) (*id*. ¶¶ 5, 54, 57, 61-62, 65-69, 70-76); (iii) the time period in which that misleading conduct took place (*id*. ¶¶ 54-55, 57-58, 62, 76, 88, 108); and (iv) the damages suffered by Verizon Wireless as a result. (*See supra* p. 4). That is more than enough to allow defendants to prepare an answer to Verizon Wireless' allegations.

Thus, for example, in *Newcal Industries, Inc. v. Ikon Office Solution*, defendants argued that plaintiffs' RICO claims should be dismissed because they allegedly did not satisfy Rule 9(b). 513 F.3d at 1056. Rejecting that argument, the Ninth Circuit noted that the complaint alleged (i) "several forms of misrepresentation and deception" in which defendant participated, (ii) that another defendant "knew about the fraud and actively profited from the fraud," and (iii) therefore, specific intend to defraud could be inferred from the other allegations of the complaint. *Id.* at 1056. So too, here, the Complaint alleges defendants' knowledge of and participation in numerous specific, deceptive acts. As in *Newcal*, those allegations are "sufficient to satisfy Rule 9(b)." *Id.*

Similarly, in *Winger v. Best Buy Co., Inc*., plaintiffs alleged that the defendants engaged in racketeering activities by misrepresenting, through their websites, the qualities and characteristics of the speakers that plaintiffs purchased. 2011 WL 995937, at *2. Defendants moved to dismiss plaintiffs' RICO claims, contending that plaintiffs failed to plead those claims with the requisite particularity by "failing to identify [defendants'] particular uses of interstate mail and wires" in furtherance of their fraud. *Id*. at *4. Rejecting that argument, the Court noted that:

> For purposes of mail and wire fraud, the only aspects that 'require particularized allegations are the factual circumstances of the fraud itself.' … Here, Plaintiff's Amended Complaint identifies the alleged phony product and false advertising that appear on the product packaging, [one defendant's] website, and on the website of [another defendant's] outlet store. By identifying two retail web sites operated by [defendant] that

7

misrepresented the phony speaker sets, the Amended Complaint alleges specific instances of uses of interstate wire communication facilities. *Id*. (citation omitted). Plaintiffs further alleged that defendants communicated with each other via the mail and interstate wire facilities to further their scheme. *Id*. Accordingly, "the allegations in the Amended Complaint adequately identif[ied] the circumstances constituting fraud" and defendants had enough information to "prepare an adequate answer." *Id*. *5. So too, here, Verizon Wireless has alleged defendants' numerous, specific uses of interstate mail and wire facilities – including the internet -- to further their fraud. (*See*, *e.g*., Complaint ¶76). As in *Winger*, those allegations are sufficient for defendants to "prepare an adequate answer" and, therefore, defendants' motion should be denied. *See also Huntair, Inc. v. Gladstone*, No. C10-3450 TEH, 2011 WL 672660, at **9-11 (N.D. Cal. Feb. 16, 2011) (denying motion to dismiss §§1962(c) and (d) claims where plaintiffs alleged "multiple predicate acts" and "detailed allegations" of defendants' use of phones and e-mail to effectuate their racketeering scheme).[2] Further, those allegations provide "enough facts to raise a reasonable expectation that discovery will reveal [additional] evidence" of defendants' misconduct (which, in fact, it already has). *Winger v. Best Buy Co.*, 2011 WL 995937, at *2 (internal quotations and citations omitted).[3] Accordingly, defendants' contention (Motion p. 10) that Verizon Wireless purportedly has failed to plead sufficiently "the manner in which any [d]efendant committed mail or wire fraud" or the "role of each of the [d]efendants" in defendants'

---

[2] Indeed, defendants' contention that plaintiffs have failed to plead fraud with the requisite particularity for them to respond is belied by the fact that they *have responded* and specifically have denied each particular allegation of fraud in their answer and in their motion to strike a few sentences relating to one unapproved URL depicted in the complaint. *See, e.g., Kujat v. Harbor Freight Tools USA, Inc.*, No. 09-cv-14183, 2010 WL 3463928, *2 (E.D. Mich. Aug. 30, 2010) (rejecting Rule 9(b) challenge and noting that "[s]ince defendant has already answered the complaint, it apparently had enough information from the allegations to form an answer …").

[3] In addition, considering the extreme lengths to which defendants have gone to conceal their misconduct, the stringent pleading requirements of Rule 9(b) should be relaxed. *See, e.g., Ramirez v. STi Prepaid LLC*, 644 F. Supp.2d 496, 502 (D. N.J. 2009) (noting that "'courts should be 'sensitive' to situations in which 'sophisticated defrauders' may 'successfully conceal the details of their fraud'" and that, where critical factual information is within defendants' control, "'the rigid requirements of Rule 9(b) may be relaxed'") (citations omitted).

8

fraud is meritless.

Similarly misguided is defendants' argument (Motion p. 9) that Verizon Wireless has failed to plead reliance. Verizon Wireless *does* allege sufficiently that *it* relied directly on defendants' misrepresentations and concealment of information – including their misrepresentations that they would comply with the MMA guidelines, when they clearly had no intent to do so, as well as defendants' deceptive and noncompliant URLs – in, among other things, allowing defendants access to its network of customers and approving its short code applications. (*See, e.g.,* Complaint ¶¶ 3-5, 53, 61, 70-76, 93, 109-110). Again, defendants' ostrich-like approach to Verizon Wireless' allegations does not render them invisible.

Defendants rely (Motion p.11) on *Martinelli v. Petland, Inc*., No. CV-09-529-PHX-DGC, 2010 WL 376921 (D. Ariz. Jan. 26, 2010) (Campbell, J.), but that case in fact supports Verizon Wireless. In *Martinelli*, the defendants allegedly engaged in a racketeering scheme by misrepresenting that the dogs they sold were healthy and not bred in "puppy mills." *Id*. at *1. This Court denied defendants' motion to dismiss the RICO claims of two plaintiffs who alleged that they communicated with defendants specifically regarding the origin and health of their dogs. *Id*. at *11. Although they did not expressly plead reliance, this Court held that reliance could be inferred from their conduct. *Id*. at *6. Here, Verizon Wireless allegations are even stronger, inasmuch as, after it initially suspended defendants in 2009, Verizon Wireless specifically (i) required disclosure of defendants' affiliation with any future programs submitted to Verizon Wireless (which defendants skirted through dummy companies with fictitious addresses); (ii) was told and led to believe that defendants' URLs complied with MMA guidelines, and (iii) in reliance on those misrepresentations, granted defendants access to its customer network. At a minimum, then, as in *Martinelli*, "the factual allegations … reasonably suggest that [Verizon Wireless] relied on what they were told" by defendants. *Id.* at *5. Otherwise, Verizon Wireless never would have allowed defendants access to its customers and would

9

1 not have approved their URLs.[4]

2 Inasmuch as Verizon Wireless has pled sufficiently its own reliance on defendants' fraud, defendants' contention that Verizon Wireless would "have to allege facts showing reliance by its customers on identified fraudulent statements" by defendants (Motion p. 9) is baseless. In any event, even if Verizon Wireless ultimately is required to prove that others relied to their detriment on defendants' racketeering acts, it does not need not to *plead* such reliance:

> [I]t may well be that a RICO plaintiff alleging injury by reason of mail fraud must establish at least third-party reliance in order to prove causation. But the fact that proof of reliance is often used to *prove* an element of the plaintiff's cause of action, such as the element of causation, does not transform reliance itself into an *element* of the cause of action.

*Johnson v. KB Home*, 720 F. Supp.2d 1109, 1119 (D. Ariz. 2010) (citations omitted and emphasis added) (Martone, J.). *See also Winger v. Best Buy Co., Inc.*, 2011 WL 995937, at *3 (no requirement to plead reliance to sustain RICO claim).[5]

### 2. Verizon Wireless has Pled its §1962(d) Claims Sufficiently.

Defendants also contend (Motion p. 11) that Verizon Wireless' §1962(d) claims fail because, purportedly, "the Complaint deals with the whole issue of conspiracy through conclusory allegations" and lacks "particularity." That argument is itself

---

[4] Further, defendants' argument that their violation of the MMA standards was not fraudulent because those standards are mere "industry self-regulation guidelines" (Motion p. 11) misses the point. Defendants represented that they would comply with those guidelines as a precondition to gaining access to Verizon Wireless' customers, when the facts indicate that they never intended to – and did not – do so. As such, those misrepresentations support Verizon Wireless' fraud claims.

[5] *United Food & Comm'l Worker Cent. Pa. & Regional Health & Welfare Fund v. Amgen, Inc.*, 400 Fed. Appx. 255 (9th Cir. Oct. 21, 2010) does not, as defendants misrepresent, hold that a RICO claim "must be dismissed when it fails to allege an adequate theory of reliance on the allegedly fraudulent conduct." (Motion p. 9). Rather, it dismissed the RICO claims there because plaintiffs did not identify defendants' fraudulent misrepresentations and presented only an "attenuated causal chain" between defendants' conduct and their injuries. *Id*. at 257. Defendants also misleadingly omit the express limitation that the court in *Poulos v. Caesars World, Inc.*, 379 F.3d 654 (9th Cir. 2004) (Motion pp. 9-10, n.5) put on its holding: "Because it is neither necessary nor prudent to reach the issue of whether reliance is the *only way* plaintiffs can establish causation in a civil RICO claim predicated on mail fraud, *we decline to do so*. Rather, we note that *our holding is both narrow and case-specific*, and that we have been careful to frame the controlling issue in terms of causation, not reliance." *Id*. at 666 (emphasis supplied and added).

conclusory and erroneous. First, "[w]hile predicate acts of fraud must be alleged with particularity pursuant to [Rule 9(b)], conspiracy may be pleaded under a less stringent standard of particularity." *Toto v. McMahan, Brafman, Morgan & Co.*, No. 93 Civ. 5894(JFK), 1995 WL 46691, at *9 (S.D.N.Y. Feb. 7, 1995) (denying motion to dismiss §1962(d) claim). In fact, *Martinelli v. Petland, Inc*. confirms that Rule 8(a) (requiring only "plausibility"), *not* Rule 9(b), governs RICO conspiracy claims. 2010 WL 376921, at **7-8.

In any event, Verizon Wireless has alleged specific facts regarding the relation between the various entities defendants used to perpetuate their fraud,[6] how those entities worked together to do so, including the specific overt acts they undertook,[7] and how those actions damaged Verizon Wireless.[8] Further, Verizon Wireless alleges explicitly that the numerous, specific acts by defendants to further their fraud were undertaken by agreement among the conspirators. (*Id*. ¶ 108). Those allegations are more than sufficient to plead a §1962(d) claim. *See, e.g., United States v. Church*, 955 F.2d 688, 695 (11th Cir. 1992) ("The existence of the [RICO] conspiracy can be inferred from 'the conduct of the alleged participants or from circumstantial evidence of the scheme.'") (citations omitted); *Florida v. Tenet Healthcare Corp*., 420 F. Supp.2d 1288, 1308 (S.D. Fla. 2005) (allegations that defendants agreed to participate in inflated charging scheme and illegally inflated medical claims were sufficient to state §1962(d) claim because "RICO conspiracy … may be inferred from the parties' conduct").

### 3. Verizon Wireless has Pled its §1962(a) Claims Sufficiently.

Also erroneous is defendants' argument (Motion pp. 11-12) that Verizon Wireless' §1962(a) claim should be dismissed because Verizon Wireless supposedly has not alleged that "the investment of racketeering income was the proximate cause of its injury." In the Complaint, Verizon Wireless describes in detail how defendants profited from their

---

[6] Complaint ¶¶ 7-35, 53, 58-60, 65-69, 88, 94-99.
[7] *Id*. ¶¶ 5, 57-58, 61-76, 90-91, 101, 108-109.
[8] *Id*. ¶¶ 93, 110-111.

11

1  racketeering acts by gaining access to Verizon Wireless' network of customers and
2  defrauding those customers and Verizon Wireless.  (*See* Complaint ¶¶ 5, 53-55).   Further,
3  Verizon Wireless describes how, having been exposed and banned by Verizon Wireless,
4  defendants set up new, straw-man companies and an even more elaborate, fraudulent
5  scheme that victimized Verizon Wireless.  (*id*. ¶¶ 5, 57-62, 65-76).  Although, at this stage,
6  concrete evidence of *how* defendants used their racketeering profits to create or maintain
7  their subsequent fraud is solely in defendants' possession, it is only logical to conclude that
8  defendants channeled their ill-gotten profits from the initial racketeering acts alleged in the
9  Complaint into that even broader fraud and conspiracy.  Construing the allegations in the
10 Complaint as a whole and in Verizon Wireless' favor (*Bobbitt v. Milberg, LLP*, 2010 WL
11 5345867 at *3), those allegations are sufficient to state a §1962(a) claim.  *See, e.g., R.J.*
12 *Reynolds Tobacco Co. v. Everhart, Inc.*, No. 1:00CV00260, 2003 WL 21788858, *7
13 (M.D.N.C. July 31, 2003) (allegations that defendants used "fraudulently obtained income"
14 to "expand its operations, and to facilitate its continued scheme" stated §1962(a) claims);
15 *Epstein v. Haas Sec. Corp.*, 731 F. Supp. 1166, 1182 (S.D.N.Y. 1990) ("[r]eading
16 plaintiffs' complaint as a whole," allegations that defendants used racketeering profits to
17 "continue the operation" of their fraudulent enterprise stated claim under §1962(a)).

**C. There Is No Basis To Dismiss Verizon Wireless' Arizona Consumer Fraud Act Claims.**

Verizon Wireless' allegations also sufficiently set forth their claims under the Arizona Consumer Fraud Act ("ACFA").  True to form, largely ignoring those allegations, defendants contend that those claims fail because Verizon Wireless purportedly is not a "consumer" of their products, was not the "target" of defendants' misconduct and supposedly has not suffered any injury as a result of defendants' actions. (Motion pp. 13-14).  Each of those arguments is baseless.

First, unlike other states' consumer protection laws, ACFA contains no language limiting recovery to "consumers."  Rather, ACFA is a broadly worded, remedial legislation intended to eliminate unlawful practices in transactions.  *See* Ariz. Rev. Stat.

12

§ 44-1522 (making unlawful "any deception, deceptive act or practice, fraud … misrepresentation, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise whether or not any person has in fact been misled, deceived or damaged thereby…"); *Holeman v. Neils*, 803 F. Supp. 237, 242-43 (D. Ariz. 1992) (Muecke, J.). Thus, ACFA on its face is not limited to injured consumers, but extends to parties injured by fraudulent practices "in connection" with sales or advertisements, as was the case with Verizon Wireless here. *See, e.g., Flower World of America v. Wenzel*, 122 Ariz. 319, 321 (Ariz. Ct. App. 1978) (noting that ACFA does not define "consumer" and that its statutory scheme is "virtually unrestricted"). Indeed, "cases decided under the Act demonstrate that [Arizona] courts have not restricted the Act to consumer-merchant transactions…" *Waste Mfg. & Leasing Corp. v. Hambicki*, 183 Ariz. 84, 88-89, 900 P.2d 1220, 1224-25 (App. 1995). Thus, the Act applies to individual consumers and businesses affected by fraudulent practices.[9]

Defendants' argument (Motion p. 14) that Verizon Wireless was not the "target" of defendants' fraud also fails. As shown above (pp. 2-4), defendants targeted Verizon Wireless by, among other things, failing to disclose their affiliation with submitted programs, misrepresenting their intention to comply with the MMA guidelines in order to gull Verizon Wireless into allowing defendants access to its customers and using cloaking software to misdirect Verizon Wireless away from their fraud. Indeed, it would be difficult to envision a scheme that *more* directly targeted a plaintiff. Contrary to defendants' contentions (Motion p. 14), Verizon Wireless relied to its detriment on defendants' fraudulent acts by allowing them back into its network and enabling them to prey upon Verizon Wireless' customers, and Verizon Wireless has alleged *direct* injury as a result of that conduct. (*See supra* p. 4). It is therefore entitled to pursue its claims against

---

[9] *See, e.g., Cearley v. Wieser*, 151 Ariz. 293, 295-96, 727 P.2d 346, 348-49 (App. 1986) (applying the Act to misrepresentations related to agreement for assignment of rights to commercial liquor license); *Parks v. Macro-Dynamics, Inc.*, 121 Ariz. 517, 521, 591 P.2d 1005, 1009 (App. 1979) (applying Act to fraud arising out of agreement to provide venture capital).

1  defendants for those damages.  That defendants *also* targeted and victimized Verizon
2  Wireless' customers (Motion p. 14) does not preclude Verizon Wireless' ACFA claims.
3        In fact, even if relief were limited to injured "consumers," Verizon Wireless would
4  meet that definition.  Many of defendants' deceptive statements and acts made in the
5  course of hawking its services were aimed directly at Verizon Wireless and have injured
6  it.  Moreover, because Verizon Wireless has had to reimburse customers due to
7  defendants' fraud, it essentially stands in the shoes of those customers and has standing to
8  pursue its claims against defendants under ACFA.[10]

### D. Verizon Wireless Has Alleged Sufficiently That Defendants Interfered Tortiously With Verizon Wireless' Relationships With Its Customers.

11        As Verizon Wireless alleged in the Complaint, defendants' misconduct attacked
12  the very bedrock of its business; its relationship with its customers.  Indeed, defendants'
13  elaborate fraud was designed precisely to (i) avoid identification with defendants, who
14  previously had been suspended and instructed to disclose any future programs; (ii) submit
15  compliant URLs they did not intend to use; (iii) then use undisclosed and deceptive URLs
16  to enlist customers; and (iv) end-run Verizon Wireless' auditors, all in order to dupe
17  Verizon Wireless customers into signing up and paying for services without being clearly
18  advised what it would cost them.  (*See* Complaint ¶¶ 76).  As a direct result, Verizon
19  Wireless has had to reimburse customers victimized by defendants' scheme and, in fact,
20  has lost customers.  (*See supra* pp. 4-6).
21        Notwithstanding those facts, defendants contend (Motion pp. 15-16) that Verizon
22  Wireless' tortious interference claims fail because, purportedly, it has not alleged that any
23  of its customers have cancelled their service as a result of defendants' misconduct.  That
24  argument is misguided.  First, Verizon Wireless has alleged clearly that defendants'

---

[10] *See, e.g.*, *Wash. State Physicians Ins. Exch. & Ass'n v. Fisons Corp.*, 858 P.2d 1054, 1060 (Wash. 1993) (physician whose reputation was injured by adverse drug reaction suffered by patient had standing under state consumer protection act to sue drug company that engaged in unfair or deceptive trade practice); *Sullivan's Wholesale Drug Co. v. Faryl's Pharmacy, Inc.*, 573 N.E.2d 1370, 1376 (Ill. App. Ct. 5th Dist. 1991) (plaintiff pharmacy had standing to bring action against nursing home even though nursing home residents were the "consumers" in alleged kickback scheme).

interference has harmed "its contracts and relationships with its customers" and has, in fact, "disrupted" – *i.e.*, severed – Verizon Wireless' customer relations.[11]  That Verizon Wireless does not identify in the Complaint the specific customers who have canceled or declined to renew their Verizon Wireless service is not salient.  Verizon Wireless has pled adequately the exact fact that defendants contend is missing.[12]  As such, defendants' argument simply fails.

Moreover, defendants' recitation of the elements for tortious interference is too narrow.  As the Court noted in *Brands v. Lakeside Fire District*, No. CV 08-8143-PHX-NVW, 2010 WL 2079712  (D. Ariz. May 24, 2010) (Wake, J.):

> "The tort of interference with existing … contractual relations includes interference with an existing contract either by causing a third party not to perform his contract with the plaintiff … or by preventing the plaintiff from performing his own contract *or making that performance more expensive or burdensome*."

*Id.* at *4 (emphasis added) (citing *Restatement (Second) of Torts* §767 cmt. a).  *See also Carey v. Maricopa County*, No. cv-05-2500-PHX-ROS, 2009 WL 750220, at *8 (D. Ariz. Mar. 10, 2009) (Silver, J.) (*Restatement* sections governing tortious interference do "not require that the alleged interfering act actually have the effect of terminating the contract in and of itself").  Here, as Verizon Wireless has alleged (*supra* pp. 4-6), defendants' interference has made its performance of its contracts with its customers much more "expensive and burdensome" than it would otherwise have been.  As such, it has stated a plausible claim for tortious interference.

**E. Verizon Wireless Sufficiently Has Alleged Its Unjust Enrichment Claims.**

As Verizon Wireless alleged, it has bestowed substantial benefits on defendants – particularly, access to its customer base – relying on defendants' misrepresentation that it would court those customers honestly.  (Complaint ¶¶ 53-55, 76, 124-125).  As a result,

---

[11] *Wells Fargo Bank v. Arizona Laborers, Teamsters & Cement Masons Local No. 395 Pension Trust*, 38 P.3d 12 (Ariz. 2002) (Motion p. 15) itself equates "disruption" with "breach."  *Id.* at 31 (noting the requirements of "breach" and "resultant damage to the party whose [contractual] relationship has been *disrupted*") (emphasis added).

[12] Moreover, because Verizon Wireless has suffered both in the form of cancellations and non-renewals, it has stated claims for both tortious interference with contract and tortious interference with prospective business relations which, as defendants concede (Motion p. 15 n.11) are "almost identical" torts.

15

while defendants have profited handsomely through their fraud, Verizon Wireless' reputation has been injured and it has had to spend significant sums to uncover defendants' fraud and reimburse its defrauded customers in order to preserve and repair its reputation. (*Id*. ¶¶ 125-127). In other words, defendants have been enriched unjustly through their fraud *at Verizon Wireless' expense*. That Verizon Wireless may not have "paid [anything] to any [d]efendant" directly (Motion p. 5) is, therefore, of no moment. *See Doe v. Ariz. Hosp. & Healthcare Ass'n*, No. CV07-1292-PHX-SRB, 2009 WL 1423378, at *13 (D. Ariz. Mar. 19, 2009) (Bolton, J.) ("Arizona law does not require either a direct causal connection between the enrichment and the impoverishment, or the transference of a direct enrichment from the plaintiff to the defendant."). Accepting Verizon Wireless' allegations as true, as the Court must, those allegations are sufficient to sustain Verizon Wireless' unjust enrichment claim.

Nor does it matter that Verizon Wireless' other claims would, if successful, provide an adequate remedy a law. (Motion pp. 16-17). Verizon Wireless' unjust enrichment claim is pled *in the alternative*. While Verizon Wireless may not be able ultimately to *recover* under both unjust enrichment and its other claims, that does not preclude it from *pleading* alternative claims. *See, e.g., Stratton v. Amer. Med. Sec., Inc.,* No. CV-07-1491-PHX-SMM, 2008 WL 2039313, at *6 (D. Ariz. May 12, 2008) (McNamee, J.) (denying motion to dismiss unjust enrichment claim because a plaintiff "is entitled to allege as many claims, even if inconsistent, as she deems necessary to successfully facilitate a remedy."); *Isofoton, S.A. v. Giramberk*, No. CV-04-0798-PHX-ROS, 2006 WL 1516026, at *3 (D. Ariz. May 30, 2006) (Silver, J.) (denying motion to dismiss unjust enrichment claim pled alternatively to breach of contract claim because "Fed. R. Civ. P. 8(e) permits a plaintiff to alternatively plead, and there is no requirement that the plaintiff include the magic words 'in the alternative' in making alternative claims.").

**F. At A Minimum, Verizon Wireless Should Be Granted Leave To Replead.**

Even assuming *arguendo* – and contrary to the facts and law – that Verizon Wireless had not pled any of its claims adequately, the proper course would be to allow

Verizon Wireless to amend its Complaint to correct any deficiencies, not, as defendants request (Motion pp. 12-13), to dismiss Verizon Wireless' claims with prejudice. Federal Rule of Civil Procedure 15(a)(2) directs courts to "freely give leave [to amend] when justice so requires." As the Ninth Circuit held in *Moss v. U.S. Secret Service*, 572 F.3d 962 (9th Cir. 2009), upon dismissal under Rule 12(b)(6), "requests for leave [to amend] should be granted with 'extreme liberality.'" *Id.* at 972 (citation omitted). Indeed, "[d]ismissal without leave to amend is improper unless it is clear … that the complaint could not be saved by any amendment." *Id.* (internal citations and quotations omitted).

Here, the primary basis for defendants' argument that the Complaint should be dismissed with prejudice is that Verizon Wireless purportedly has not pled and cannot plead that it has been injured directly by defendants' misconduct, because it supposedly cannot identify customers damaged by defendants' fraud. (Motion pp. 12-13). As shown above, that simply is wrong. Verizon Wireless *has* pled adequately that it has been injured directly by defendants' conduct but, even if it had not, any purported deficiencies in the Complaint could be corrected on amendment and, at a minimum, Verizon Wireless should be granted leave to amend. Indeed, justice requires allowing Verizon Wireless to replead (if necessary) if defendants' fraud is to have any consequence.[13]

### III. CONCLUSION

Verizon Wireless has pled all of its claims adequately. Under the foregoing law and facts, defendants' motion to dismiss should be denied in its entirety.

---

[13] *See, e.g., Peterson v. Breg, Inc.*, No. 2:09-cv-2044 JWS, 2010 WL 2044248, at *3 (D. Ariz. Apr. 29, 2010) (Sedwick, J.) (granting leave to amend following dismissal under Rule 12(b)(6) even where the Court was "not persuaded that additional time would assist plaintiffs" in repleading adequately because "leave to amend should be granted freely"); *Armored Group, LLC v. Supreme Corp.*, No. CV 09-414-PHX-NVW, 2009 WL 2513816, at *6 (D. Ariz. Aug. 17, 2009) (Wake, J.) (granting leave to replead tortious interference claim where plaintiff "demonstrated at oral argument that it can allege additional facts to remedy the deficiencies" in that claim).

17

RESPECTFULLY SUBMITTED this 22nd day of April, 2011.

         GALLAGHER & KENNEDY, P.A.

         By */s/ Lindsi M. Weber*
          Paul K. Charlton
          Lindsi M. Weber
          2575 East Camelback Road
          Phoenix, Arizona 85016-9225

         KASOWITZ, BENSON, TORRES & FRIEDMAN LLP

         By */s/ Marcos Jiménez*
          Marcos Jiménez
          Scott Cosgrove
          Ann M. St. Peter-Griffith
          1441 Brickell Avenue, Suite 1420
          Miami, Florida 33131

         *Attorneys for Plaintiff*

## **CERTIFICATE OF SERVICE**

 I hereby certify that on this 22nd day of April, 2011, I electronically transmitted a PDF version of this document to the Clerk of the Court, using the CM/ECF System for filing and for transmittal of a Notice of Electronic Filing to all CM/ECF registrants and non-registered parties.

         /s/  Maricella Nunez