Douglas F. Behm – 014727
**DOUGLAS F. BEHM, PLLC**
14362 N. Frank Lloyd Wright Blvd.; Ste. 1000
Scottsdale, Arizona 85260
Telephone: 480-305-5633
Facsimile: 480-305-5634
E-mail: dbehm@behmlawfirm.com

Charles L. Babcock, admitted *pro hac vice*
Richard E. Griffin, admitted *pro hac vice*
Curt M. Langley, admitted *pro hac vice*
**JACKSON WALKER L.L.P.**
1401 McKinney, Suite 1900
Houston, Texas 77010
Telephone: 713-752-4200
Facsimile: 713-752-4221
Email: cbabcock@jw.com, rgriffin@jw.com, clangley@jw.com

*Attorneys for Defendants and Counter-Plaintiffs*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Cellco Partnership d/b/a Verizon Wireless,<br>    Plaintiff,<br>vs.<br><br>Jason R. Hope, et al.,<br>    Defendants. | No. CV11-432-PHX-DGC<br><br>**DEFENDANTS' REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT** |

Verizon's factual allegations do not satisfy the legal standards for stating a claim under any of the legal theories in its Complaint, including, specifically, the Federal Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(a), (c) and (d) ("RICO"); the Arizona Consumer Fraud Act, A.R.S. § 44-1522 ("ACFA"); Arizona common law of tortious interference with contract or unjust enrichment. Defendants noted all of these legal deficiencies in their Motion to Dismiss. Nothing in Verizon's Response to that Motion justifies a different conclusion.

**RICO**

In the Motion to Dismiss, Defendants pointed out that Verizon's inability to allege "proximate causation" doomed its RICO claims to such an extent that there was no need to offer Plaintiff an opportunity to amend, because the defect was inherent in the acknowledged facts and could not be cured by further elaboration. In *Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258 (1992), the United States Supreme Court held that, in order to maintain a cause of action under RICO, a plaintiff must allege facts which show "some direct relation between the injury asserted and the injurious conduct alleged." *Id.* at 268. *See also, Poulos v. Ceasars World, Inc.*, 379 F.3d 654, 664 (9th Cir. 2004). Defendants noted that such allegations of direct injury, and therefore proximate cause, were impossible here because Verizon was explicitly asserting only an indirect, derivative injury. Verizon claimed RICO injury as a result of the losses suffered by its customers when they subscribed to Defendants' text messaging services through supposedly non-MMA conforming websites. Verizon's claim under RICO depended on its customers having been the victims of wire fraud, causing them to purchase from Defendants, without their knowledge or consent, services to be delivered on their Verizon cell phones. Such a claim runs directly afoul of the Supreme Court's instruction that a plaintiff's RICO suit cannot be premised on damages resulting from someone else having been defrauded. *Holmes*, 503 U.S. at 270-74. Here, Verizon can have no RICO damages at all unless third parties, its customers, were themselves the victims of RICO violations.

Verizon's rejoinder is that its alleged direct injury is "damage to its reputation and good will," along with associated costs for customer reimbursement and legal fees, supposedly incurred in order to repair the injury to reputation. (Resp. p. 4). The difficulty with this argument, of course, is that it remains an assertion of *indirect* harm, entirely dependent for its validity on claimed RICO injury to Verizon customers.

In contrast, in order to state a valid claim under RICO, a plaintiff must show that the RICO violation caused a direct injury to his business or property. *Canyon County v.*

*Syngenta Seeds, Inc.*, 519 F.3d 969, 972 (9th Cir. 2008), *cert. denied*, 129 S.Ct. 458 (2008). Generally, whether damage to a specific alleged business or property interest is sufficient for recovery under RICO turns on whether that interest is cognizable under state law. *Diaz v. Gates*, 420 F.3d 897, 900 (9th Cir. 2005), *cert. denied*, 546 U.S. 1131 (2006) (per curiam, en banc). However, the injury must in any event be a "concrete financial loss, and not a mere injury to a valuable intangible property interest." *Oscar v. Univ. Students Co-Operative Ass'n*, 965 F.2d 783, 785 (9th Cir. 1992) (en banc) (internal quotation marks omitted). *See also*, *S.A. Thomas v. Baca*, 308 Fed. Appx. 87, 2009 WL 117983 (9th Cir. 2009);[1] *Canyon County v. Syngenta Seeds, Inc.*, 519 F.3d at 975. Further, the Ninth Circuit "has not recognized the incurment of legal fees as an injury cognizable under RICO. . . ." *S.A. Thomas*, 308 Fed. Appx. at 88.

Unlike legal fees, damage to reputation has been recognized in Arizona as an element of RICO injury. *See Hy Cite Corp. v. Badbusinessbureau.com, L.L.C.*, 418 F. Supp.2d 1142 (D. Ariz. 2005). However, this recognition has come in the context of allegations of direct disparagement of the plaintiff's own business by means of allegedly fraudulent wire communications, not the indirect reputational damage at issue here. *Id.* at 1151.

Plaintiff now asserts that the RICO violation is the process by which Defendants gained access to the Verizon wireless network. But the *damages* for that supposed RICO violation remain dependent, as they have always been, on the wire fraud allegedly committed against Verizon's customers and on the decisions and calculations made by those customers as a result. Consequently, any recovery by Verizon on its RICO claims will be dependent on precisely the kind of "intricate uncertain injuries" and "attempts to

---

[1] *In S.A. Thomas v. Baca*, 308 Fed. Appx. 87, 2009 WL 117583 (9th Cir. 2009), the Ninth Circuit observed that an earlier panel decision in *Newcal Indus., Inc. v. Ikon Office Solution*, 513 F.3d 1038 (9th Cir. 2008), *cert. denied*, 129 S.Ct. 2788 (2009), a case relied on by Verizon in its Response, "suggests that we overruled *Oscar* in *Diaz*." "However," the Court of Appeals went on to note, "our more recent holding in *Canyon County* explicitly states that 'concrete financial loss' is a necessary element of a RICO claim. . . . and *Diaz* itself employs the financial loss requirement, 420 F.3d at 898-900." *Id.* at 88, n.1.

3

ascertain the damages caused by some remote action" that the Supreme Court has rejected as the basis for RICO standing. *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 126 S.Ct. 1991, 1997-98 (2006). *See also Sybersound Records v. UAV Corp.*, 517 F.3d 1137, 1148-49 (9th Cir. 2008).

Verizon suffered no direct injury as a result of Defendants' access to its customers, regardless of the means by which it was accomplished. In fact, it enjoyed a significant windfall. As to the frauds allegedly committed on Verizon's customers, both those supposed actions and their direct consequences are too remote for proximate cause purposes in this case. Moreover, even if Defendants' behavior toward their customers were sufficient basis for Verizon's RICO claim, Verizon could still not proceed with this suit, because the "fraud" allegedly committed on Defendants' subscribers is not pleaded with the particularity required by Rule 9(b). Not only is "the time, place, and manner of each act of fraud, plus the role of each defendant is each scheme" not specified, *Lancaster Cmty. Hosp. v. Antelope Valley Hosp. Dist.*, 940 F.2d 397, 405 (9th Cir. 1991), there are no facts alleged that amount to claims of fraud on Verizon's customers at all. Plaintiff alleges that certain of Defendants' websites do not satisfy MMA Guidelines in every particular. But it does not make the next necessary step from actions that are not best practice to allegations of acts that can fairly be characterized as wire fraud.[2] Yet without such allegations, Plaintiff has not set out even an indirect and remote claim for RICO damages.

At its core the defects in Plaintiff's RICO claim are incurable. Verizon's losses, if they exist, come from the actions and reactions of third parties, its customers. There is no legally cognizable injury flowing *directly* from what Verizon alleges to be the RICO predicate acts against it. Accordingly, there is no basis for a RICO claim by this Plaintiff and Verizon's claim in that regard should be dismissed with prejudice.

---

[2] *See Nguyen v. Doak Homes, Inc.*, 140 Wash.App. 726, 734, 167 P.3d 1162 (Wash. Ct. App. 2007) (dismissing claim under the Washington consumer protection statute because "[t]he mere failure to comply with industry standards does not constitute a deceptive act or practice under the [consumer protection statute]").

**THE ARIZONA CONSUMER FRAUD ACT**

Verizon's ACFA claim suffers from all of the defects of pleading with respect to fraud and damages that afflict the RICO claim, including the failure to plead that a departure from MMA "best practices" constitutes a deceptive act. In addition, the state consumer fraud claim has another standing hurdle that Verizon cannot clear, namely that Verizon is not, with respect to any of the transactions at issue in this lawsuit, a *consumer*. Accordingly, it has no private right of action under the Arizona Consumer Fraud Act ("ACFA"). Verizon's response is that "ACFA contains no language limiting recovery to 'consumers'"; and so anyone claiming injury "'in connection' with sales or advertisements" has standing to bring a private damages action under the Act. (Resp. p. 12). The problem with Plaintiff's argument about the absence of language in the ACFA "limiting recovery to 'consumers'" is that there is no express language in ACFA giving anyone a private right of action, not even consumers. Like the private right of action under Section 10(b) of the Securities Exchange Act of 1934 for fraud "in connection with" the purchase or sale of a security, the private right of action in Arizona for fraud "in connection with the sale or advertisement of any merchandise" is the result of judicial interpretation, not express legislative language. And, just as the federal courts have enforced a "purchaser/seller requirement" on the implied private right of action for securities fraud, so the Arizona courts have recognized a consumer fraud remedy only for "consumers."

A private right of action under the ACFA was first accepted by the Supreme Court of Arizona in *Sellinger v. Freeway Mobile Home Sales, Inc.*, 110 Ariz. 573, 521 P.2d 1119 (Ariz. 1974), a suit brought by the purchaser of a mobile home against the home's manufacturer and seller. Every subsequent decision by the Arizona state courts applying the ACFA and every federal decision under that Arizona law located by the parties has involved a plaintiff like Mr. Sellinger, that is, a consumer. Moreover, while the issue of non-consumer standing has not, so far as the parties here have determined, been expressly addressed in ACFA decisions, what the Arizona courts say about the

nature of the cause of action they have inferred from the statute makes it clear that a non-consumer has no standing to bring a private cause of action under the ACFA.

Ironically, there really is no better example of this treatment than *Flower World of America, Inc. v. Wenzel*, 122 Ariz. 319, 594 P.2d 1015 (Ariz. Ct. App. 1978), the case cited by Verizon in the Response for the proposition that the ACFA's statutory scheme is "virtually unrestricted." (Response, p. 13). *Flower World* was a case brought by a franchisee against his franchisor, alleging fraud in connection with the negotiation of the franchise agreement. *Id.* at 320. The few select words Verizon chose to quote from the opinion came in the context of the Court of Appeals' consideration of whether the acquisition of a franchise for the retail sale of flowers and related products could qualify for protection under the ACFA. In context, the court noted that:

> It would appear at first blush that this transaction, involving a commercial franchise agreement, would not fall within the scope of a statute aimed at consumer fraud in connection with the "sale or advertisement of any merchandise." One would not typically characterize the purchaser of a commercial franchise as a consumer. Our statute, however, provides no definition of "consumer" and broadly defines merchandise in s44-1521 as "any objects, wares, goods . . . or services." Under this virtually unrestricted statutory scheme the plaintiff has alleged a colorable claim that he has been victimized by a violation of the Consumer Fraud Act. A similar claim could be made in connection with a large variety of transactions.

*Id.* at 321-22.

In the full paragraph quoted above two things are clear. The kind of transaction covered by the ACFA is very broad, indeed "virtually unrestricted"; and the private right of action under the ACFA is meant for "consumers." They need not be consumers buying for their own use. They can be business consumers buying for resale. What they are buying can include a very wide array goods and services. But the fact that virtually any natural person or business entity can be a "consumer," and that any object or service can be "merchandise," does not give any comfort to a non-consumer, such as Verizon here. On the contrary, what *Flower World* holds is that the Arizona Consumer Fraud Act is "virtually unrestricted" because it characterizes even "the purchaser of a commercial franchise as a consumer," *id.* at 321; and not, as Verizon would have it,

because the statute does not have a consumer requirement for standing. Obviously, quite the opposite is true. The concern of the Court in *Flower World* was with whether Wenzel, who bought a franchise, was a consumer under the Act. That question would have been irrelevant under Verizon's theory that one need not be a consumer.

The interpretation of the ACFA applied by the Court of Appeals in *Flower World* in 1978 has been followed consistently by Arizona courts in the ensuing thirty plus years. The Arizona Court of Appeals summed the matter up succinctly in its 2004 decision in *Kuehn v. Stanley*, 208 Ariz. 124, 91 P.3d 346 (Ariz. Ct. Apps. 2004):

> To succeed on a claim of consumer fraud, a plaintiff must show a false promise or misrepresentation made in connection with the sale or advertisement of merchandise and consequent and proximate injury resulting from the promise. **An injury occurs when a consumer relies, even unreasonably, on false or misrepresented information.**

208 Ariz. at 129 (Emphasis added; citation and footnote omitted). *See also, Holeman v. Neils*, 803 F. Supp. 237, 242 (D. Ariz. 1992). Clearly, injury occurs under the ACFA when "a consumer" relies on the allegedly false information. Not only do the ACFA cases not support non-consumer standing, their reasoning and holdings forbid it.

**INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS**

Verizon does violence to every cause of action that it pleads, but its assault on the tort of intentional interference with contract is severe. It distorts the purpose and proper scope of that remedy to a considerable degree. What Verizon is claiming, in substance, is that it was associated with Defendants in supplying a particular service to their common customers; that some of those customers might not have cared for Defendants' performance and the services that they rendered; that those common customers might have transferred or overlapped their sense of grievance onto Verizon; and that this state of affairs constitutes Defendants' *intentional* interference with Verizon's contracts with those common customers. This description of events, in which a party's supposed bungling of its relations with its own customers is alleged to have had some effect on those customers' relations with others, does not satisfy the requirements of the tort of intentional interference with contractual relations.

The Arizona Supreme Court explained the elements of the common law claim for tortious interference in its decision in *Wells Fargo Bank v. Arizona Laborers, Teamsters and Cement Masons, Local No. 395 Pension Trust Fund*, 201 Ariz. 474, 493, 38 P.3d 12, 31 (Ariz. 2002):

> Intentional interference with contract is, as its name suggests, an intentional tort. . . .
> Arizona has long recognized the tort of intentional interference with contractual relations. . . . A prima facie case of intentional interference requires: (1) existence of a valid contractual relationship, (2) knowledge of the relationship on the part of the interferor, (3) intentional interference inducing or causing a breach, (4) resultant damage to the party whose relationship has been disrupted, and (5) that the defendant acted improperly.
>
> Intent to interfere is a crucial element of the cause of action. As the Supreme Court explained in *Wells Fargo*, citing the Restatement (Second) of Torts:
>
>> While the paradigm case of tortious interference with contract may be that of a tortfeasor who induces breach by enticing the contracting party not to perform or by preventing or disabling that party from being able to perform, the RESTATEMENT emphasizes that liability attaches to *any* intentional interference, whether by inducement *or otherwise. Id.* (emphasis added). **"The essential thing is the intent to cause the result."** *Id.*

*Id.* at 32. (bold added). The Arizona courts have also emphasized that "[i]n addition, the interference must be improper as to motive or means before liability will attach." *Neonatology Associates, Ltd. v. Phoenix Perinatal Associates Inc.*, 216 Ariz. 185, 187, 164 P.3d 691, 693 (Ariz. Ct. App. 2007).

Here Verizon has not made, and cannot make, the necessary factual allegations. Whether a party *intended* to interfere with the contractual relations of another is ordinarily a question of fact. *Id.* However, a plaintiff in federal court remains under an obligation in pleading a claim for tortious interference, as in pleading any claim, to set out sufficient facts "to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Here, given the relationship between Verizon and Defendants – in which they not only had common customers, but Defendants' sale of their services depended on those customers' continuing to use the

Verizon network, since that was the way Defendants' "product" was delivered – there can be no *plausible* argument that Defendants "intended" to interfere in any way with the relationship between Verizon and their common customers. It makes no economic sense, and hence has no plausibility as an allegation. Absent plausible allegations of intent to interfere, Plaintiff has not and cannot state a claim based on the tort of intentional interference with contractual relations.

**UNJUST ENRICHMENT**

In its pleading of unjust enrichment, Verizon attempts to cast itself in the role of a party whose equipment or facilities were used by another for some money making enterprise; and a claim for unjust enrichment can exist in such circumstances. For example, in *John A. Artukovich & Sons, Inc. v. Reliance Truck Co.*, 126 Ariz. 246, 614 P.2d 327 (Ariz. 1980), the Arizona Supreme Court allowed the owner of a crane to recover on an unjust enrichment theory against a trucking company that had used the owner's crane to earn money on a job without paying the owner anything for use of the crane. The court held that, even though the owner had leased the crane out to another and did not have the immediate right to its possession, "[t]o allow the defendant to use plaintiff's crane without compensating plaintiffs for its use would unjustly enrich the defendant and would be inequitable." *Id.* at 248.

The problem with this theory of recovery for Plaintiff here is that the cause of action requires that the defendant have taken and used the plaintiff's property "without compensating plaintiff for its use." Verizon has made no such allegation of uncompensated use of its network and it can make no such allegation. A party has no claim for unjust enrichment from another who uses its property or facilities *with* compensation, even if he uses that property or those facilities in a scheme to obtain money unjustly from third parties. The unjust enrichment claim belongs to the people who paid the alleged wrongdoer *their* money. It does not belong to the entity that rented him equipment to use in the fraud. If a person rents a car from Hertz and drives in that car to cheat someone else out of money, Hertz does not have a claim for unjust

enrichment because it "bestowed substantial benefits" on the driver. It also got paid. The unjust enrichment claim belongs to those who were cheated. It does not belong to those who gain. They have no place in an unjust enrichment suit – at least not as plaintiffs.

Nor can Verizon find support for its claim, as it attempts to do in the Response, from cases like *Doe v. Ariz. Hosp. & Healthcare Ass'n*, (No. CV07-1292-PHX-SRB) 2009 W.L. 1423378 (D. Ariz. March 19, 2009). That case merely stands for the proposition that the party ultimately unjustly enriched need not be in direct contract or privity with the impoverished plaintiff. The two can stand at opposite ends of a chain of payments. In *Doe,* the defendant hospitals were alleged to have conspired unlawfully to depress the wages of temporary nursing staff. The hospitals were unjustly enriched because they kept money that would, absent the price fixing conspiracy, have gone for higher nurses' salaries. The nurses were impoverished to the extent that their wages were set at an illegally low rate. It did not matter for purposes of the cause of action that the nurses were actually employed by, and the hospitals actually paid, intermediary agencies. It was sufficient that the nurses and hospitals operated at opposite ends of the same chain and that the hospitals kept what should have gone to the nurses. *Id.* at *12-*13.

Here, Verizon has made, and can make, no analogous allegations. Defendants have not kept what should have gone to Verizon. In fact, Verizon kept a good deal of the payments made by the supposedly cheated customers. There are no honest allegations to be made here that can cast Verizon in the position of the crane owner in *Artukovich*, the nurses in *Doe*, or any other recognized unjust enrichment plaintiff.

**CONCLUSION**

For the reasons set out here, and in their Motion to Dismiss, Defendant respectfully request dismissal of Plaintiff's suit with prejudice. Repleading cannot alter the basic relationship of the parties or the law of standing. Verizon has no right to be a plaintiff here.

Respectfully submitted this 28th day of April, 2011.

                          **DOUGLAS F. BEHM, PLLC**

By: /s/ Douglas F. Behm
Douglas F. Behm
14362 N. Frank Lloyd Wright Blvd. Suite 1000
Scottsdale, Arizona 85260

**JACKSON WALKER L.L.P.**

By: /s/ Charles L. Babcock
Charles L. Babcock
Richard E. Griffin
Curt M. Langley
1401 McKinney, Suite 1900
Houston, Texas 77010

**ATTORNEYS FOR DEFENDANTS AND COUNTER-PLAINTIFFS**

## CERTIFICATE OF SERVICE

I hereby certify that on April 28, 2011, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

| | |
|---|---|
| Paul Kipp Charlton, Esq. | paul.charlton@gknet.com, gjk@gknet.com |
| Lindsi Michelle Weber, Esq. | lindsi.weber@gknet.com, jk@gknet.com |
| Marcos D. Jimenez, Esq. | mjimenez@kasowitz.com, ymorales@kasowitz.com |
| Scott B. Cosgrove, Esq. | scosgrove@kasowitz.com, anoonan@kasowitz.com |
| Ann M. St Peter-Griffith, Esq. | astpetergriffith@kasowitz.com |
| Sandra J. Millor, Esq. | smillor@kasowitz.com |

By: /s/ Richard E. Griffin

6100092v.5