**WO**

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Cellco Partnership doing business as Verizon Wireless, | No. CV11-0432 PHX DGC |
| Plaintiff, | **ORDER** |
| vs. | |
| Jason Hope, et al., | |
| Defendants. | |

Defendants move to dismiss the complaint (Doc. 77), Plaintiff opposes (Doc. 117), and Defendants have filed a reply (Doc. 126). The parties do not request oral argument. For the reasons that follow, the Court will grant the motion in part and deny it in part.

### A.    Context and Legal Standards.

Plaintiff Verizon Wireless ("Verizon") operates a wireless telephone network. Defendants are engaged in the business of providing premium text message services ("PSMS") on wireless networks. Verizon alleges that Defendants used clandestine means to access the Verizon network, violated Verizon's best practices in soliciting business from Verizon customers, and deceived Verizon customers resulting in Verizon incurring costs to remedy customer complaints and stop Defendants' conduct.

Verizon's complaint asserts five causes of action: (1) violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(a) and (c);

(2) violation of RICO, 18 U.S.C. § 1962(d); (3) violation of the Arizona Consumer Fraud Act ("ACFA"), A.R.S. § 44-1522; (4) tortious interference; and (5) unjust enrichment.

When analyzing a complaint for failure to state a claim to relief under Rule 12(b)(6), the factual allegations "'are taken as true and construed in the light most favorable to the nonmoving party.'" *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009) (citation omitted).  To avoid a Rule 12(b)(6) dismissal, the complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  This plausibility standard requires sufficient factual allegations to allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Id.* at 1950 (citing Fed. R. Civ. P. 8(a)(2)).  A claim may be dismissed where the complaint lacks a cognizable legal theory, lacks sufficient facts alleged under a cognizable legal theory, or contains allegations disclosing some absolute defense or bar to recovery.  *See Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988); *Weisbuch v. County of L.A.*, 119 F.3d 778, 783, n.1 (9th Cir. 1997).

**B.      Claims 1 and 2 – RICO.**

Defendants argue the RICO claims should be dismissed because Verizon has failed to allege Defendants' conduct was the proximate cause of Verizon's harm.  The complaint pleads violations of 18 U.S.C. § 1962(a), (c), and (d).  Doc. 1 at 29-34.  The provision that establishes a private right of action for violations of § 1962 states in part that "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor . . . ."  18 U.S.C. § 1964(c).  In *Holmes v. Securities Investor Protection Corp.*, the Supreme Court rejected the notion that civil RICO liability arises every time a defendant violates § 1962 and the violation is the "but for" cause for a plaintiff's harm.  503 U.S. 258, 265-66 (1992).  Instead, the Court held, a civil claim also requires the alleged activity prohibited under RICO be the "proximate cause" for the

plaintiff's harm.  *Id.* at 268.  The Court suggested that the proximate cause requirement is met where there is "some direct relation between the injury asserted and the injurious conduct alleged."  *Id.*

The Court concludes that Verizon has sufficiently pled such a direct relation. Verizon alleges that Defendants violated RICO by committing to comply with MMA best practices in order to obtain access to Verizon's customers (Doc. 1 at ¶ 70); by obtaining access to the Verizon network through submitting false representations that they would use MMA-compliant web pages to solicit business from Verizon customers when in fact they intended to use non-compliant web pages to solicit such customers (*id*. at ¶¶ 70-71); by avoiding Verizon's detection of non-compliant web pages through the use of "cloaking" software (*id.* at ¶¶ 72-75); and by presenting misleading pages to customers and billing them for PSMS services without properly-obtained authorization (*id.* at ¶¶ 93, 109).  Verizon further alleges that this conduct caused Verizon injury in the form of damaged business reputation, damaged relationships with its customers, expenses in handling "thousands of customer complaints concerning defendants," and expenses reimbursing customers for Defendants' unauthorized charges.  *Id*. at ¶¶ 83-84, 110-111, 115-116.  The complaint thus alleges a direct connection between Defendants' allegedly fraudulent conduct and the injuries suffered by Verizon.  Whether this claim is wholly dependent on injury to Verizon's customers and not Verizon, as Defendants claim, and whether it has sufficient evidentiary support to warrant submission to a jury, will be decided after discovery.  Factual questions regarding proximate cause generally must be decided at the summary judgment stage or at trial, not on a motion to dismiss.  *Newcal Indus., Inc. v. Ikon Office Solutions*, 513 F.3d 1038, 1055 (9th Cir. 2008).

Defendants also argue that the complaint fails to satisfy Rule 9(b).  That rule requires allegations of fraudulent representations to be pled with particularity.  *Schreiber Distrib. Co. v. ServWell Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986) ("We have interpreted Rule 9(b) to mean that the pleader must state the time, place, and specific content of the false representations as well as the identities of the parties to the

misrepresentation."). In *Neubronner v. Milken*, the Ninth Circuit recognized that "allegations of fraud based on information and belief . . . may be relaxed with respect to matters within the opposing party's knowledge," but this was limited to situations where "plaintiffs [cannot] be expected to have personal knowledge of the relevant facts." 6 F.3d 666, 672 (9th Cir. 1993).

The purpose of Rule 9(b) is to place a defendant on notice of the alleged fraud and to enable the defendant to prepare a defense. *Odom v. Microsoft Corp.*, 486 F.3d 541, 553 (9th Cir. 2007). The Court concludes that this purpose has been accomplished by the complaint. Verizon has alleged in detail the page content that constituted fraudulent misrepresentations, the names of the alleged conspirators, the roles of the co-conspirators, the timeframe during which the alleged conduct took place, the fact that Verizon handled "thousands of customer complaints concerning defendants," and the damages Verizon incurred as a result. Doc. 1 at 9-34. The complaint also pleads specific dates and content with respect to "cloaking" allegations as they relate to alleged violations of § 1962(c) and (d). *Id.* at 16-27. These allegations provide sufficient detail concerning the alleged fraud to enable Defendants to prepare a defense. Again, whether sufficient evidence supports the alleged fraud must be decided after discovery has been completed.

Defendants also argue that Verizon has failed to plead reliance adequately. The Court does not agree. The complaint alleges that Defendants used MMA-compliant web pages to obtain access to Verizon's customers, and then switched to non-compliant web pages when actually soliciting the customers. *Id.* at ¶ 5, 70-76. This allegation implicitly alleges that Verizon relied on the compliant pages when granting Defendants access to the Verizon customers.

Finally, Defendants argue that the § 1962(a) claim must be dismissed because Verizon has failed to allege that reinvestment of income was the proximate cause of Verizon's harm. Because the complaint does not make this allegation, the § 1962(a) claim will be dismissed.

## C.    Claim 3 – ACFA.

Defendants argue that this claim should be dismissed for four reasons: (1) Verizon has no claim under ACFA because it is not a consumer of the merchandise alleged in the claim (Doc. 77 at 13-14); (2) Defendants' conduct was not the proximate cause of the injury Verizon may have sustained (*id.* at 14); (3) Verizon has not alleged that the reimbursement to allegedly-harmed customers was made from Verizon's own funds (*id.* at 14:17-25); and (4) allegations of damaged reputation are conclusory rather than concrete and particularized, thereby depriving Verizon of standing (*id.* at 14-15).

Verizon responds that ACFA is a broad remedial statute aimed at eliminating unlawful practices in transactions, that recovery is not limited to "consumers," and that Verizon was one of the targets of Defendants' fraud and sustained direct injury thereby. Doc. 117 at 12-14.  Verizon also suggests that it fits the definition of a "consumer" because "[m]any of defendants' deceptive statements and acts made in the course of hawking [their] services were aimed directly at Verizon Wireless and have injured it." *Id.* at 14.  In the alternative, Verizon mentions in passing that it has standing to pursue the claims of the customers it reimbursed by standing in their shoes, and cites in a footnote to two non-Arizona cases: *Washington State Physicians Insurance Exchange & Ass'n v. Fisons Corp.*, 858 P.2d 1054, 1060 (Wash. 1993), and *Sullivan's Wholesale Drug Co. v. Faryl's Pharmacy, Inc.*, 573 N.E.2d 1370, 1376 (Ill. App. 1991).  Doc. 117 at 14 & n.10.[1]

"In analyzing state law in a diversity case, [federal courts] are bound by the decisions of the state's highest court."  *U.S. Fidelity & Guar. Co. v. Lee Invs. LLC,* 641 F.3d 1126, 1133-34 (9th Cir. 2011).  If a state's highest court has not ruled on an issue, a federal court is "required to ascertain from all the available data what the state law is and apply it."  *Id.* at 1134 (quoting *Soltani v. Western & Southern Life Ins. Co.*, 258 F.3d

---

[1] Both *Washington State Physicians* and *Sullivan's Wholesale Drug* involve non-Arizona statutes whose text is materially different from the ACFA.  Accordingly, these cases are not persuasive.  To the extent Verizon argues it is subrogated to its customers' claims, it cites no Arizona case for the proposition that ACFA claims are assignable.  The Court will therefore decline to address this issue, and focus squarely on Verizon's ACFA claim for its own injury.

1038, 1045 (9th Cir. 2001)).  In determining how the state's highest court would rule, a federal court "look[s] to existing state law without predicting potential changes in that law." *Id.* (citation omitted).

The ACFA prohibits "[t]he act, use, or employment by any person of any deception, deceptive act or practice, fraud, false pretense, false promise, misrepresentation, or concealment, suppression or omission of any material fact with the intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise whether or not any person has in fact been misled, deceived, or damaged thereby[.]"  A.R.S. § 44-1522(A).  In *Sellinger v. Freeway Mobile Home Sales, Inc.*, 521 P.2d 1119, 1122 (Ariz. 1974), the Arizona Supreme Court held that ACFA implies a private right of action.

In construing the scope of the statute in private suits, *Enyart v. Transamerica Insurance Co.* noted that "[t]he purpose of the Arizona Consumer Fraud Act is to eliminate unlawful practices in merchant-consumer transactions."  985 P.2d 556, 563 (Ariz. App. 1998) (citing *Madsen v. W. Am. Mortg. Co.*, 694 P.2d 1228 (Ariz. App. 1985)).  "The elements of a private cause of action under the act are a false promise or misrepresentation made in connection with the sale or advertisement of merchandise and the hearer's consequent and proximate injury."  *Dunlap v. Jimmy GMC of Tucson, Inc.*, 666 P.2d 83, 87 (Ariz. App. 1983) (citing *Parks v. Macro-Dynamics*, 591 P.2d 1005 (Ariz. App. 1979)).  Although cases have held that "consumers" need not be natural persons, *e.g., Waste Mfg. & Leasing Corp. v. Hambicki*, 900 P.2d 1220, 1224-25 (Ariz. App. 1995), Arizona courts have also clearly suggested that the ACFA protects only those who are actually consumers in the transaction, *e.g., Waste Mfg.*, 900 P.2d at 1224 ("The purpose of the Act is to provide *injured consumers* with a remedy"); *Dunlap*, 666 P.2d at 87 ("The Consumer Fraud Act provides *an injured consumer* with an implied private right of action against a violator of the act."); *Correa v. Pecos Valley Dev. Corp.*, 617 P.2d 767, 771 (Ariz. App.  1980) ("Injury occurs when the *consumer* relies on the misrepresentation, even though reliance need not be reasonable." (citation omitted));

*Parks*, 591 P.2d at 1008 (elements of claim under the Act include "the *hearer's* consequent and proximate injury") (emphasis added in all quotes).

The Ninth Circuit has also specifically held that a plaintiff may not make a claim under the ACFA for fraudulent statements made in connection with the sale of merchandise to another person. *See Sutter Home Winery, Inc. v. Vintage Selections, Ltd.*, 971 F.2d 401 (9th Cir. 1992). As the Ninth Circuit explained:

> ACFA makes it illegal to commit fraud or deception "in connection with the sale or advertisement of any merchandise." . . . The clear intent of this provision is to protect unwary buyers from unscrupulous sellers. The basis for Vintage's claim, however, is that Sutter Home deceived it by secretly selling to another distributor the exclusive rights to distribute its wine. Under this scenario, Vintage is not a buyer, nor is it the target of deceptive advertising. Consequently, it cannot maintain an action under [ACFA].

*Id.* at 407.

To the extent Defendants allegedly misled Verizon in obtaining access to the Verizon network, the fraud did not occur "in connection with" Verizon's purchase of merchandise. One could argue that the fraud was committed for the purpose of selling merchandise (PSMS) to Verizon customers, and therefore was "in connection with" the sale of merchandise, but Arizona cases strongly suggest, and *Sutter* holds, that the plaintiff under the ACFA must be the buyer in the merchandise transaction. Because Verizon has not pled that it purchased merchandise from Defendants in connection with their alleged misrepresentations, Verizon has not pled an ACFA claim for which it is entitled to relief. The claim will therefore be dismissed.

**D.    Claim 4 – Tortious Interference.**

Defendants argue this claim should be dismissed because Verizon has not alleged Defendants induced the breach of a third party's contract with Verizon. Doc. 77 at 15-16. Verizon responds that it has alleged Defendants disrupted Verizon's relationships with its customers, that disruption equates to a breach under Arizona law, and, in the alternative, Defendants' actions burdening Verizon's performance of its own contracts is

1    countenanced by the tortious interference cause of action under Arizona law.  Doc. 117 at
2    14-15.
3          Tortious interference comprises several different theories of unlawful interference.
4    One of these theories involves inducing a third party to breach its contract.  *See Wells*
5    *Fargo Bank v. Arizona Laborers, Teamsters & Cement Masons Local No. 395 Pension*
6    *Trust*, 38 P.3d 12, 31 (Ariz. 2002).  Arizona also recognizes Restatement (Second) of
7    Torts ("Restatement") § 766A as representing an alternative theory.  *See, e.g.*, *Plattner v.*
8    *State Farm Mut. Auto. Ins. Co.*, 812 P.2d 1129, 1134 (Ariz. App. 1991) (citing cases).
9    Section 766A recognizes liability for a defendant's interference which makes a plaintiff's
10   performance of its own contract more burdensome or expensive.  Comment c explains
11   that when performance is made more expensive, the plaintiff's benefit from the contract
12   diminishes, thereby entitling the plaintiff to recover the loss from the interfering
13   defendant.  Verizon has alleged that Defendants' promotion of services to its customers
14   resulted in increased costs to Verizon:  harm to Verizon's business reputation, expenses
15   in addressing customer complaints, and expenses in refunding subscription fees to
16   customers.  Doc. 1 at 35-36.  Accordingly, the complaint adequately pleads an increase in
17   the burden of Verizon's performance of its contracts with customers as a result of
18   Defendants' alleged actions.
19         Defendants' additional argument appears to be that the acts are not alleged to have
20   been aimed at Verizon's customers but rather at Defendants' customers, and the fact the
21   customers in question were common to both parties is not relevant.  Defendants are
22   correct that for liability to attach under Restatement § 766A the interference must be
23   intentional.  Conduct is intentional, however, "if the actor desires to bring it about or if he
24   knows that the interference is certain or substantially certain to occur as a result of his
25   action."  § 766A cmt. e.  Verizon has pled sufficient facts to show plausibly that
26   Defendants knew the customers were common to both parties and that Verizon would be
27   injured by Defendants' actions.  To the extent Defendants attempt to argue that the
28   interference was intentional but not improper, improper conduct includes fraudulent

1    misrepresentations and violation of established business customs or practices,
2    Restatement § 767 cmt. c.  This is the type of conduct alleged here.  *E.g.*, Doc. 1 ¶ 120.

3           The claim will not be dismissed.

4           **E.     Claim 5 – Unjust Enrichment.**

5           Defendants argue that this claim should be dismissed because Verizon has not
6    shown Defendants enriched themselves at Verizon's expense.  Doc. 77 at 16-17.  Verizon
7    responds that it bestowed access to its customers upon Defendants – access that enriched
8    Defendants – and, as a result, that Verizon's reputation was damaged and Verizon
9    incurred expenses trying preserve and repair its reputation with customers.  Doc. 117 at
10   15-16.  Defendants reply that Verizon has not alleged it was not compensated for their
11   use of its network, and that any claims of alleged unjust enrichment from a third party
12   (i.e., from a customer) must be pursued by that party – in other words, "[t]he unjust
13   enrichment claim belongs to those who were cheated . . . [not] to those who [also] gain."
14   Doc. 126 at 9-10.  Defendants also appear to argue that Verizon has not alleged it was
15   impoverished as were the plaintiffs in a case cited by Verizon.  *Id.* at 10:13-14.

16          A claim of unjust enrichment under Arizona law has five elements: "(1) an
17   enrichment, (2) an impoverishment, (3) a connection between the enrichment and
18   impoverishment, (4) the absence of justification for the enrichment and impoverishment,
19   and (5) the absence of a remedy provided by law."  *Freeman v. Sorchych*, 245 P.3d 927,
20   936 (Ariz. App. 2011) (citing *City of Sierra Vista v. Cochise Enters., Inc.*, 697 P.2d 1125,
21   131-32 (Ariz. App. 1984)).

22          Verizon admits that it gained revenue to some extent from Defendants' alleged
23   actions.   Because Verizon has not alleged that the costs it incurred as a result of
24   Defendants' actions are greater than its revenue from those actions, the complaint fails to
25   plead adequately the impoverishment element of the unjust enrichment claim.  *See City of*
26   *Sierra Vista*, 697 P.2d at 1132 (finding no impoverishment where defendant's acts
27   enhanced the value of plaintiff's assets).  The claim will therefore be dismissed.

28

**F.      Motion to Seal.**

Defendants move to seal certain deposition excerpts (Doc. 115), and the motion is unopposed.  Good cause appearing, the Court will grant the motion.

**IT IS ORDERED:**

1.       Defendants' motion to dismiss (Doc. 77) is **granted in part and denied in part** as stated above.

2.       Defendants' motion to seal (Doc. 115) is **granted**.   Exhibit A to Defendants' reply in support of Defendants' motion to strike shall be filed by Defendants under seal.

Dated this 26th day of July, 2011.

David G. Campbell
United States District Judge

cc:  All counsel

- 10 -