1
2
3
4
5

Paul K. Charlton (Bar No. 012449)
Lindsi M. Weber (Bar No. 025820)
GALLAGHER & KENNEDY, P.A.
2575 East Camelback Road
Phoenix, Arizona 85016-9225
Telephone:   (602) 530-8000
Facsimile:    (602) 530-8500
Email:        paul.charlton@gknet.com
              lindsi.weber@gknet.com

6
7
8
9
10
11

Marcos Daniel Jiménez (admitted pro hac vice)
Scott Cosgrove (admitted pro hac vice)
Ann M. St. Peter-Griffith (admitted pro hac vice)
KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
1441 Brickell Avenue, Suite 1420
Miami, Florida 33131
Telephone:   (786) 587-1077
Facsimile:    (305) 675-7970
Email:        MJimenez@kasowitz.com
              SCosgrove@kasowitz.com
              AStpetergriffith@kasowitz.com

12

13

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

14
15
16
17
18
19

| | |
|---|---|
| **CELLCO PARTNERSHIP d/b/a VERIZON WIRELESS,** | Case No. 2:11-cv-00432-DGC |
| Plaintiff, | **VERIZON WIRELESS' RESPONSE TO DEFENDANTS' MOTION FOR RELIEF FROM ORDER GRANTING PRELIMINARY INJUNCTION** |
| v. | |
| **JASON HOPE; et al.,** | |
| Defendants. | (Assigned to the Hon. David G. Campbell) |

20

21

22

23

24

25

26

27

28

The Court should deny Defendants' motion for relief (Doc. 167) and reject their attempt to relitigate issues already decided by this Court.  First, Defendants' motion is duplicative of their Ninth Circuit appeal, and thus this Court lacks jurisdiction to entertain the motion while that appeal is pending.  Second, while styled as a motion for relief under Rule 60(b), Defendants' motion is in essence a motion for reconsideration of this Court's original order; however, such a motion is both untimely and insufficient under the Local Rules.  Third, even if the motion were proper under Rule 60(b), Defendants have failed to

present anything close to the "extraordinary circumstances" required to obtain relief under that rule.[1]

### A. DEFENDANTS' APPEAL DIVESTED THIS COURT OF JURISDICTION TO DISPOSE OF THEIR MOTION.

Because Defendants' appeal of the Court's Preliminary Injunction Order (the "Order," Doc. 133) is currently pending before the Ninth Circuit, this Court lacks jurisdiction to consider their present motion, absent a remand from the Ninth Circuit. *E.g.*, *Bruce v. United States,* 759 F.2d 755, 757 (9th Cir.1985); *Scott v. Younger,* 739 F. 2d 1464, 1466 (9th Cir. 1984). Defendants acknowledge this point, but nevertheless ask the Court to consider their motion so that, if they are successful here, they can petition the Ninth Circuit to remand the case. Yet, Defendants present no meaningful argument why this Court should entertain the motion – other than to suggest that the Court erred by "misapplying the law to the facts in this case." (Doc. 167 at 6). Having appealed this Court's order, and having thus engaged the parties' and the appellate court's time and resources, it was incumbent on Defendants to present more than a rehash of their appeal as justification for relief from the Court's Order.

### B. DEFENDANTS' MOTION IS AN UNTIMELY MOTION FOR RECONSIDERATION THAT FAILS ON THE MERITS.

Defendants' motion is simply an untimely motion for reconsideration. Their request for relief from the Order – though styled a "Motion for Relief" pursuant to Fed. R. Civ. P. 60(b)(6) – asks the Court to reconsider its analysis of case law and the application of that law to the facts of this case. Defendants contend that their requested relief is justified because the Court "misapplied § 766A to the facts of this case," specifically noting that what "escaped the Court's analysis" was the Court's "failure to

---

[1] Verizon Wireless does not agree with Defendants' summary of the facts of this case; however, because the parties have previously presented their factual positions to the Court in great detail, including during the hearing on the parties' requests for preliminary injunctive relief, Verizon Wireless will not recount those facts here and instead relies on the pleadings, briefs, and record before the Court.

fully explore the appropriate application of § 766A as distinct from § 766." (Doc. 167 at 6-7).

Regardless of how Defendants' request is labeled, it is a motion for reconsideration. As such, Local Rule 7.2(g) required Defendants to file the motion within fourteen days of the Court's Order, or by May 25, 2011. Instead, Defendants' new counsel filed the motion for reconsideration nearly three months late, on August 23, 2011. The motion should be dismissed on this basis alone.

Defendants' motion also fails to meet the Local Rules' substantive requirements of motions for reconsideration. Namely:

> The Court will ordinarily **deny** a motion for reconsideration of an Order absent a showing of **manifest error** or a showing of **new facts or legal authority that could not have been brought to its attention earlier with reasonable diligence**. Any such motion shall point out with specificity the matters that the movant believes were overlooked or misapprehended by the Court, any new matters being brought to the Court's attention for the first time and the reasons they were not presented earlier, and any specific modifications being sought in the Court's Order. **No motion for reconsideration of an Order may repeat any oral or written argument made by the movant in support of or in opposition to the motion that resulted in the Order**.

L.R. Civ. 7.2(g)(1) (emphasis added). The Court held a full and fair hearing on Verizon Wireless's preliminary injunction motion, and the parties submitted extensive pre-hearing briefs on the substantive issues. Defendants' post-Order disagreement with the Court's application of established law to the facts of this case, or their belief that the Court failed to "fully explore" the appropriate Restatement section, does not demonstrate a "manifest error" overcoming the Court's general reluctance to grant reconsideration motions.[2] Moreover, Defendants make no meaningful claim that there are *new* facts or *new* law that justify the Court's reconsidering its months-old Order. Instead, and in contravention of

---

[2] *See also* discussion, *infra* Section C, supporting the propriety of the Court's analysis and demonstrating that Defendants' arguments lack merit.

3

1   the Local Rules, Defendants present arguments that were made (or that could have been

2   made) before the Court issued its Order.  Defendants' motion for reconsideration should

3   be denied for untimeliness, for failure to comply with the Local Rules, and for failure on

4   the merits.[3]

5   **C.   DEFENDANTS FAIL TO PRESENT "EXTRAORDINARY**

6   **CIRCUMSTANCES" JUSTIFYING RELIEF UNDER RULE 60(B)(6).**

7          Rule 60(b)(6) permits relief on a number of grounds, including for "any other

8   reason justifying relief from the operation of the judgment."  Courts have uniformly

9   determined that to justify relief from a judgment or order, the party seeking relief bears

10  the burden of establishing "extraordinary circumstances."  *Ackermann v. United States*,

11  340 U.S. 193, 199 (1950).

12         Relief pursuant to Rule 60(b)(6) "has been used ***sparingly*** as an equitable remedy

13  to prevent ***manifest injustice***."  *United States v. Alpine Land & Reservoir, Co.*, 984 F.2d

14  1047, 1049 (9th Cir.1993) (emphasis added).  Specifically, "[t]he rule is to be utilized

15  only where extraordinary circumstances prevented a party from taking timely action to

16  prevent or correct an erroneous judgment."  *Id.*  The Rule is not intended "to reward

17  litigants who 'seek[] a second bite at the apple' or who ask for reconsideration while

18  'ignor[ing] normal legal recourses' such as an appeal, but rather to avoid inequitable

19  results and accomplish justice."  *Rhoads v. Wash. Mut. Bank*,  2011 WL 3438869 (D.

20  Ariz. Aug. 5, 2011) (quoting *In re Pac. Far E. Lines, Inc.*, 889 F.2d 242, 250 (9th Cir.

21  1989)).  Further,

22         [t]he Ninth Circuit [has] emphasized that relief under Rule 60(b)(6)
           "normally will not be granted unless the moving party is able to show both
23         injury and that circumstances beyond its control prevented timely action to
           protect its interests."  As another Ninth Circuit judge explained, "Rule
24         60(b)(6) authorizes setting aside a judgment only for reasons that would

25

26  ───────────────
    [3] Furthermore, even if this Court were to consider Defendants' motion to be a Rule
    60(b)(6) motion, it still would be untimely.  Rule 60(c) requires that such motions be
27  filed "within a reasonable time" of the operative order.  Defendants present no
    justification for failing to file the motion months ago.
28

                                               4

1          have prevented entry of the judgment in the first place, had the reasons

2          been known at the time judgment was entered."

3  *Hawaii County Green Party v. Clinton*, 124 F. Supp. 2d 1173 (D. Haw. 2000) (internal

4  citations omitted); *see also United States v. Wash.*, 98 F.3d 1159, 1164 (9th Cir. 1996).

5          Yet, Defendants' argument "justifying" extraordinary relief presents nothing new

6  or extraordinary.  Instead, Defendants simply contend that, in connection with a contested

7  and previously litigated issue, the Court "misapplied § 766A to the facts of this case."

8  (Doc. 167 at 6).  Specifically, Defendants fault the Court for its "failure to fully explore

9  the appropriate application of § 766A as distinct from § 766" and to determine the proper

10  party against whom Defendants' wrongful conduct must have been directed.  (Doc. 167

11  at 7).  Defendants contend that Verizon Wireless rather than its customers must have

12  been the target of their wrongful conduct, and that the Court's Order relied only on

13  conduct directed at customers.  The scope of these Restatement sections and their

14  application to this case were discussed at length in the briefing and oral argument in

15  connection with the preliminary injunction hearing, and Defendants do not present

16  anything in their motion that they did not or could not have presented at that hearing.  In

17  any event, the record shows that Defendants' conduct – and the harm for which Verizon

18  Wireless seeks relief – was directed at and harmed Verizon Wireless, separate and apart

19  from its customers.

20       **1.**    **The Court correctly determined that Verizon Wireless was entitled to a**

21            **<u>preliminary injunction based on Defendants' tortious interference</u>**.

22          To state a claim for tortious interference, a plaintiff must satisfy five elements:

23  (1) existence of a valid contractual relationship or business expectancy; (2) the

24  interferer's knowledge of that relationship; (3) intentional interference inducing or

25  causing a breach of contract or causing performance to become more expensive or

26  burdensome; (4) resultant damage; and (5) improper motives or means.  *Carey v.*

27  *Maricopa County*, 2009 WL 750220, at *7 (D. Ariz. Mar. 10, 2009) (citing *Neonatology*

28

1   *Assocs. v. Phoenix Perinatal Assocs.*, 164 P.3d 691, 693 (Ariz. Ct. App. 2007)); *see also*

2   Restatement (Second) of Torts § 766A (1979).  This Court correctly determined that

3   Verizon Wireless was likely to succeed in proving all of those elements in its Order, as

4   well as in its subsequent Order denying Defendants' motion to dismiss (Doc. 164), which

5   was premised on the same argument that Defendants assert for the third time here.

6        **a.    Defendants' conduct, directed at Verizon Wireless, supports**
7             **<u>Verizon's tortious interference claim</u>**.

8        Under Section 766 of the Restatement (Second) of Torts, a plaintiff must show

9   that the offending conduct caused a third party not to perform its contract with the

10  plaintiff.  Under Section 766A, however, a plaintiff need demonstrate only that the

11  offending conduct caused the plaintiff's own performance of its contract to become more

12  expensive or burdensome.  Defendants argue that, under Section 766A, Verizon Wireless

13  was required to demonstrate that the conduct complained of was "directed at" Verizon

14  Wireless (as opposed to the third-party customers), but that Verizon Wireless failed to

15  satisfy this burden.  They further argue that Verizon Wireless could proceed only under

16  Section 766A because Defendants did not actually cause third-party customers to cancel

17  their contracts with Verizon Wireless.  Both arguments are incorrect.

18       First, Defendants are wrong that interference always must be "directed at" the

19  plaintiff under Section 766A; that section merely requires a plaintiff to demonstrate that

20  the tortious interference caused the plaintiff to incur increased expenses and burden in the

21  performance of the contract.  The official comments to Section 766A specifically

22  contemplate a situation where the interference is not directed at the plaintiff, yet

23  nevertheless makes it more difficult for the plaintiff to perform:

24       One may be prevented from performing his contract in numerous ways.
         Thus he may be physically restrained or intimidated or be excluded from
25       the place where the contract must be performed or be deprived of the
         necessary equipment or labor.  Other means of interfering with a contract
26       ***by affecting the third party*** are treated in § 766, Comments *h, i, k, l* and *m*.
         ***They have application here***.  ***It is also sufficient that the performance of***

28

> ***the contract to which the plaintiff is obligated is made more expensive to him, so that he loses all or part of the profits that he would otherwise have obtained, or is subjected to a financial loss***.

Restatement (Second) Torts § 766A cmt. g (emphasis added).[4]  Therefore, even if Defendants' conduct were directed solely at Verizon Wireless's customers, it would suffice under Section 766A.

Here, though, the evidence established that Defendants directed their actions at Verizon Wireless, as demonstrated by the following facts expressly found by the Court in granting preliminary injunctive relief to Verizon Wireless:

- After Verizon Wireless suspended Defendant Cylon's access to the Verizon network due to its failure to follow Verizon and industry-mandated procedures for marketing premium text messaging services ("PSMS") to wireless customers, Defendant Hope falsely blamed a rogue employee for the conduct giving rise to the suspension, leading Verizon Wireless to reinstate Cylon.  (Order at 3).

- Verizon Wireless advised Cylon that it had to disclose all new PSMS programs submitted for approval on the Verizon Wireless network.  (Hrg. Ex. 54).

- Defendants subsequently created single-purpose companies ("LLCs") that applied for access to the Verizon Wireless network, listing other employees as contact persons and using other addresses around the country, so that the LLCs would not be associated with Cylon or its owners, Hope and DeStefano.  (Order at 4).

---

[4] The Reporter's Notes to Section 766A adopt the holding in *Pacific Typesetting Co. v. International Typographical Union*, 125 Wash. 273 (1923), in which the tortious interference was directed at third parties.  Restatement (Second) of Torts § 766A. Moreover, Defendants misconstrue the holding in *Plattner v. State Farm Mutual Automobile Insurance Co.*, 812 P.2d 1129, 1134 (Ariz. Ct. App. 1991).  *Plattner* did not hold – nor even suggest – that a claim under Section 766A requires that a defendant's interference be directed at the plaintiff.  Rather, *Plattner* merely held that tortious interference ***could*** exist in that scenario.  *See* 812 P.2d at 1134 ("Based on Restatement § 766A, and the ***broad definition accorded the tort of interference*** with business relations as defined by our supreme court, we hold that an attorney ***may*** have a cause of action for the tort ***even*** when the interference is directed at the attorney and not at the client.") (emphasis added).

1      •     Defendants submitted for Verizon Wireless's approval "carrier-facing"

2   landing pages they never intended to use, and subsequently used non-compliant landing

3   pages to lure customers.  (Order at 4-5).

4      •     Defendants then used cloaking software specifically designed to block

5   Verizon Wireless's auditors from detecting their non-compliant landing pages.  (Order at

6   5-6).

7          It is difficult to fathom conduct ***more*** directed toward Verizon Wireless.  Indeed, it

8   was precisely this conduct that permitted Defendants to burden Verizon Wireless's

9   relationship with its customers.  But for Defendants' sophisticated scheme, Verizon

10  Wireless would not have granted them access to its network.  But for Defendants'

11  cloaking software, Verizon Wireless's auditors would have been able to effectively

12  monitor Defendants' web pages to be sure they complied with the MMA.  The direct

13  result of this conduct was "harm to Verizon's business reputation, expenses in addressing

14  customer complaints, and expenses in refunding subscription fees to customers."  (Doc.

15  164 at 8).  This, the Court has already held, adequately demonstrates "an increase in the

16  burden of Verizon's performance of its contracts with customers as a result of

17  Defendants' alleged actions."  (Doc. 164 at 8).

18         Second, Defendants caused customers to cancel their contracts with Verizon

19  Wireless, thus satisfying Section 766 as well.[5]  Verizon Wireless executive David

20  Burmester testified that Verizon Wireless customers had cancelled their contracts as a

21  consequence of Defendants' actions:

22         Q:    Are you aware of customers who actually terminated their contracts
              with Verizon Wireless as a consequence of JAWA's services?
23
24         A:    In the examples [of customer complaints] I reviewed, I've seen a
              combination of both customers who were threatening to cancel as well as
25

26  _____

27  [5] The Court based its holding that Verizon Wireless was likely to succeed on the merits of
    its tortious interference claim on an analysis under Section 766A, not 766.  This
28  alternative argument is further support for the Court's Order.

8

1    have been given early termination fee waivers to be able to cancel their
2    service.

3    (Tr. at 328:2-8).  Furthermore, Verizon Wireless produced and attempted to offer into

4    evidence the complaints to which Mr. Burmester referred.  (Tr. at 326:1-327:3).[6]  The

5    Court properly and appropriately determined, under either Section 766 or 766A, that

6    Verizon Wireless was likely to succeed on the merits of its tortious interference claim.

7                    **b.      The record supports that Defendants had the requisite intent.**

8            Defendants also argue that they lacked the intent required to state a tortious

9    interference claim.  This Court properly found that Defendants had the requisite intent:

10           The Court finds that Verizon is likely to succeed in showing that
11           Defendants knew their actions would cause substantial difficulties between
             Verizon and its customers, burdening Verizon's contractual relationship
12           with those customers and increasing Verizon's expenses.  Specifically,
             Verizon is likely to show Defendants knew they would be blocked from the
13           Verizon network if they failed to comply with MMA Best Practices, as
14           demonstrated by their "firewall" designed to redirect auditors away from
             their non-compliant landing pages.  Moreover, Defendants knew that
15           Verizon would refund subscription fees after they were blocked in order to
16           retain its customers and avoid customer lawsuits.

17   (Order at 11).

18           To establish intent under either Section 766 or 766A, Defendants need not act for

19   the purpose of interfering with the contract or even desire such interference; it is enough

20   that they know that the consequences of their actions are certain or substantially certain to

21   occur.[7]  *Brands v. Lakeside Fire Dist.*, 2010 WL 2079712, at *4 (D. Ariz. May 24, 2010)

22   _____
     [6] When Verizon Wireless's counsel attempted to introduce the complaints (Hrg. Ex. 67) –
23   which had been formally produced to Defendants through discovery – the Court indicated
     that it would prefer to establish the facts contained therein through the testimony of Mr.
24   Burmester.  (Tr. at 327:3).

25   [7] Defendants halfheartedly argue a supposed recent trend requiring a heightened intent in
     Section 766A cases, citing an inapposite Texas state court case.  (Doc. 167 at 13).
26   Specifically, they argue that in a case of interference by making performance "more
     burdensome, difficult or impossible," the intent must be to effect a breach.  This trend
27   simply does not exist, is not the law in Arizona, and would contradict the clear language
     of the Restatement, which Arizona has adopted.  Section 766A comment e explains that

28

                                                  9

1   (citing Restatement (Second) of Torts § 766A cmt. e); Restatement (Second) of Torts

2   § 766 cmt. j.  As this Court pointed out, Defendants' cloaking software itself

3   demonstrates that they knew the consequences of their actions.  Defendants hid their

4   unauthorized landing pages from Verizon Wireless's auditors because they knew that

5   their non-compliant sign-up process would lead to customer complaints and refund

6   requests directed at Verizon Wireless.

7        Defendants' sole attack on the Court's intent finding stems from the misguided

8   notion that it would be illogical for Defendants to intend to burden Verizon Wireless's

9   contracts with its customers, given that Defendants' business was contingent on those

10  same customers.  (*See* Doc. 167 at 13-14.)  But Defendants' strategy was simple:

11  maximize the number of customer sign-ups and then refund later, but only if customers

12  complain.  By failing to disclose pricing up front, Defendants signed up more customers

13  and, as a result, earned higher profits.  That some of those customers ultimately would

14  catch on to the scheme and demand refunds was of little concern; Defendants' profits

15  were based on volume.

16       The evidence sufficiently demonstrated that Defendants knew their actions were

17  substantially certain to burden or cause the termination of Verizon Wireless's customer

18  contracts when customers complained and sought refunds.

19       **2.     The Court's Order is clear and internally consistent.**

20       The Order is neither inconsistent nor confusing; it is clear as to what conduct is

21  enjoined.  The Order enjoins the following:

22       (i)     failing to disclose the relationships of any entities or individuals to
23               Defendants Hope or Destefano or their companies, and providing
24               false addresses or other information as part of any effort to access

25

26  "intent" is governed by Section 8A.  Section 8A states that "intent" as used in the
    Restatement "denotes that the actor desires to cause ***consequences of his act***, or that he
27  believes that the ***consequences are substantially certain to result*** from it."  Restatement
    (Second) of Torts § 8A (emphasis added).

28

the Verizon Wireless network for the purpose of delivering PSMS to customers;

(ii)     using marketing practices that fail to comply with MMA Best Practices (as defined in the complaint) when selling or attempting to sell PSMS through the Verizon Wireless network to customers;

(iii)    selling, or attempting to sell, PSMS to Verizon Wireless customers over the Verizon Wireless network; and

(iv)    blocking, or attempting to block, Verizon Wireless' efforts to monitor and access the internet web pages (URLs) used to market PSMS to Verizon Wireless customers.

(Order at 24-25).  Defendants argue that subclauses (i), (ii), and (iv) presume that they are permitted to access the Verizon Wireless network, which is inconsistent with the prohibition in subclause (iii).  This argument fails.

A preliminary injunction must "be specific in terms" and "describe in reasonable detail . . . the act or acts sought to be restrained."  Fed. R. Civ. P. 65(d). The Ninth Circuit will not set aside injunctions under this rule "unless they are so vague that they have no reasonably specific meaning." *A&M Records v. Napster, Inc.*, 284 F.3d 1091, 1097 (9th Cir. 2002) (internal quotation marks omitted).  In other words, an injunction order violates Rule 65(d) only if it is "too vague to be understood." *Portland Feminist Women's Health Ctr. v. Advocates for Life, Inc.*, 859 F.2d 681, 685 (9th Cir. 1988).

The Order is not "too vague to be understood."  Subclause (iii) is in perfect harmony with the remaining subclauses such that they are easily understood.  Read together, it is clear that Defendants are not permitted to access Verizon Wireless' network in the first instance; if they attempt to do so, they are not permitted to hide their identity, use cloaking technology, or use non-MMA complaint practices.  Compliance with any one of the provisions will not hinder Defendants' ability to comply with any other.   To the contrary, if  Defendants comply with subclause (iii) of the Order (prohibiting any efforts to sell on the Verizon Wireless network), they would almost automatically comply

11

1    with the other subclauses.   Given Defendants' history of intentionally circumventing

2    rules and lying to Verizon Wireless in order to access its network, it was appropriate for

3    this Court to enjoin Defendants from each of the forms of misconduct they had engaged

4    in previously.[8]

5                                    **CONCLUSION**

6           For the reasons set forth above, Verizon Wireless respectfully requests the Court

7    to refuse to entertain Defendants' motion, based on their pending appeal; alternatively,

8    Verizon Wireless requests the Court to deny the motion, based on either the motion's

9    untimeliness or its lack of merit.

10          RESPECTFULLY SUBMITTED this 23rd day of September, 2011,

11                                         GALLAGHER & KENNEDY, P.A.

12                                         Paul K. Charlton
                                           Lindsi M. Weber
13                                         2575 East Camelback Road
                                           Phoenix, Arizona 85016-9225
14
                                           By */s/ Marcos Daniel Jiménez*
15
                                           KASOWITZ, BENSON, TORRES &
16                                         FRIEDMAN LLP

17                                         Marcos Daniel Jiménez
                                           Scott Cosgrove
18                                         Ann M. St. Peter-Griffith
                                           1441 Brickell Avenue, Suite 1420
19                                         Miami, Florida 33131

20                                         *Attorneys for Plaintiff*

21

22

23

24

25

---

26   [8] In any event, if Defendants are "uncertain" about what activity is enjoined, the proper
     vehicle is a motion for clarification or modification, not a motion for wholesale relief
27   from the Order. *Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*, 321 F.3d 878,
     883 (9th Cir. 2003); *United States v. Schafer*, 600 F.2d 1251, 1253 (9th Cir. 1979).
28

1

## <u>**CERTIFICATE OF SERVICE**</u>

2

3

4

        I hereby certify that on this 23rd day of September, 2011, I electronically transmitted a PDF version of this document to the Clerk of the Court, using the CM/ECF System for filing and for transmittal of a Notice of Electronic Filing to all CM/ECF registrants and non-registered parties.

5

                                        */s/ Marcos Daniel Jiménez*

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28