WILENCHIK & BARTNESS
— A PROFESSIONAL CORPORATION —

ATTORNEYS AT LAW
The Wilenchik & Bartness Building
2810 North Third Street  Phoenix, Arizona  85004

Telephone:  602-606-2810        Facsimile:  602-606-2811

Dennis I. Wilenchik, #005350
admin@wb-law.com
*Attorneys for Defendants*
*Jason Hope and Wayne P. DeStefano, et al.*

J. Grant Woods, Esq. #006106
Grant Woods Law P.C.
Two Renaissance Square
40 N. Central Ave., Ste 2250
Phoenix, Arizona 85004
gw@grantwoodspc.net
*Co-Counsel for Defendants*

### UNITED STATES DISTRICT COURT

### DISTRICT OF ARIZONA

| | |
|---|---|
| **CELLCO PARTNERSHIP d/b/a/ VERIZONA WIRELESS,** | **Case No. CV 11-00432-DGC** |
| **Plaintiff,** | **MOTION TO MANDATE VERIZON'S CEO APPEAR AT SETTLEMENT CONFERENCE** |
| **v.** | |
| **JASON R. HOPE, et al.,** | |
| **Defendants.** | **Assigned to the Honorable David G. Campbell** |

Defendants Jason R. Hope, Wayne P. DeStefano and Eye Level Holdings, LLC (collectively "JAWA"), by and through undersigned counsel, hereby respectfully requests that the Court clarify its Settlement Conference Order, dated July 7, 2011, to ensure that Cellco Partnership d/b/a/ Verizon Wireless's ("Verizon") Chief Executive Officer ("CEO") is physically present at the settlement conference on October 4, 2011. The following memorandum of points and authorities supports this motion.

## MEMORANDUM OF POINTS AND AUTHORITIES

"The court has [the] authority to order the attendance of corporate officers or employees other than counsel at pretrial proceedings when appropriate in the circumstances." *In re Air Crash Disaster at Stapleton Int'l Airport, Denver, Colo., On Nov. 15, 1987*, 720 F. Supp. 1433, 1435-36 (D. Colo. 1988) (citing *Brockton Savings Bank v. Peat, Marwick, Mitchell & Co.*, 771 F.2d 5, 10-11 (1st Cir. 1985) (upholding district court's order of appearance by corporate officers in discovery dispute)).   The Settlement Conference Order mandates the physical appearance of the parties in part to "increase the efficiency and effectiveness of the Settlement Conference" and "to give the adverse parties the opportunity to hear the rationale and arguments regarding the likelihood of success of the claims/defenses."   Often in promoting these goals, courts have found that it is necessary to require the physical presence of a company's CEO in settlement negotiations.

Courts have held that at a settlement conference "is often the first time that parties, especially corporate representatives, hear about the difficulties they will face at trial." *See Nick v. Morgan's Foods, Inc.*, 99 F. Supp. 2d 1056, 1062-63 (E.D. Mo. 2000) aff'd, 270 F.3d 590 (8th Cir. 2001).   Meaningful negotiations can only take place if the person with the authority to change their mind and negotiate is present and given the full benefit of the opposing party's arguments and the mediator's input.   *Id.*   The CEO of a company "deserves an **unfiltered**

appraisal of what this litigation is likely to cost his company, and to be informed not only that this action can be settled for far less than the costs of litigation." _Kearson v. Schick-Wilkenson Sword_, 2007 WL 25499 (D. Conn. Jan. 3, 2007)[1] (emphasis added).  Here, Verizon's CEO is the party with the ability to adequately engage in settlement discussions, not only regarding the settlement of Verizon's claims, but the settlement of JAWA's counterclaims as well.   He should be given the full benefit of the rationale and arguments of both sides of the case because this case involves complex civil litigation and potential damages in the billions.  No other corporate representative will have the authority to settle both the claims and counterclaims in this case and "[i]mmediate decision making is critical to the process of exchange involved in true negotiation." _In re Air Crash_, 720 F. Supp. at 1438-39.

In _G. Heileman Brewing Co., Inc. v. Joseph Oat Corp._, 871 F.2d 648, 654-55 (7th Cir. 1989), the court found that in a $4 million claim, which turned upon the resolution of complex factual and legal issues that would involve a trial lasting from a month to three months and all parties standing to incur substantial fees and trial expenses, the burden of requiring a corporate representative's personal appearance was proportional to the benefits gained.  Similarly, this case involves complex anti-trust and RICO claims that will involve substantial factual discovery and legal analysis.  Moreover, with the number of claims being asserted on both sides, the amount of possible damages for all parties is significant.  Therefore, in order to ensure a successful and meaningful settlement negotiation Verizon's CEO needs to be physically present because "when a corporate representative with the authority to reconsider that party's settlement position is not present, the whole purpose of the mediation is lost, and the result is even greater

---

[1] Although _Kearson_ is unpublished it is a federal judicial opinion that was issued after January 1, 2007, and therefore, is citable pursuant to Federal Rule of Appellate Procedure 32.1.  Attached hereto is a copy of this opinion.

expenditure of the parties' resources, both time and money, for nothing." *Nick,* 99 F. Supp. 2d at 1062-63.

For the foregoing reasons, JAWA respectfully requests that this court mandate that Verizon's CEO must be present at the settlement conference on October 4, 2011 to guarantee that the parties have "full and complete authority" to settle this matter.

**RESPECTFULLY SUBMITTED** this 27th day of September, 2011

**WILENCHIK & BARTNESS, P.C.**                    **GRANT WOODS LAW P.C.**
/s/ Dennis I. Wilenchik, Esq                             /s/ Grant Woods, Esq.

Dennis I. Wilenchik, Esq.                                 Grant Woods, Esq.
The Wilenchik & Bartness Building                  Two Renaissance Square
2810 North Third Street                                    40 N. Central Ave, Suite 2250
Phoenix, Arizona 85004                                   Phoenix, Arizona 85004
admin@wb-law.com                                          gw@grantwoodspc.net
*Attorneys for Defendants Jason Hope*            *Co-counsel for Defendants Jason Hope*
*and Wayne P. Destefano, et al.*                        *and Wayne P. Destefano, et al.*

<u>**CERTIFICATE OF SERVICE**</u>

I certify that on this 27th day of September, 2011, I electronically transmitted the attached document to the Clerk's office of the United States District Court, District of Arizona, using a Clerk of Court hosted electronic filing system for filing and the transmittal of a Notice of Electronic Filing to all CM/ECF registrants.

/s/ H. Myers

2007 WL 25499
Only the Westlaw citation is currently available.
United States District Court,
D. Connecticut.

Willie KEARSON, Plaintiff
v.
SCHICK-WILKENSON SWORD, a division of
Energizer Batteries, Inc., Defendant.

No. 3:05 CV 1422 (DJS/TPS).Jan. 3, 2007.

**Attorneys and Law Firms**

Eugene N. Axelrod, Employment Law Group,
Woodbridge, CT, for Plaintiff.

Beverly W. Garofalo, Brenda M. Hamilton, Brown
Raysman Millstein Felder & Steiner, Hartford, CT, Julie
D. Blake, The Blake Law Firm, LLC, East Woodstock,
CT, for Defendant.

**Opinion**

### *RULING ON MOTION TO RECONSIDER*

THOMAS P. SMITH, United States Magistrate Judge.

**\*1** The plaintiff in this case, a man who rose from a
manual laborer on the loading docks to become the lone
African-American management level employee in
defendant's entire organization, was fired from his job
ostensibly for failing to report allegedly questionable
inventory handling practices of his former superior. He
has brought this Civil Rights action against Schick,
alleging that he is the victim of scape-goating, and that he
was treated differently and terminated because of his race.
*See* 42 U.S.C. § 2000e; also see Conn. Gen.Stat. §
46a-60(a)(1).

At the direction of Judge Squatrito, on October 17, 2006,
the undersigned scheduled a settlement conference in this
case for December 20, 2006. The order scheduling the
conference specifically directed counsel to "*See Nick v.
Morgan's Foods*, 99 F.Supp.2d 1056, 1062-63
(E.D.Mo.2000)." That case discusses, among other things:
(1) why a party must dispatch to the conference a
representative who truly possesses decision making
authority; (2) why the representative who attends the
conference must have the authority to change his or her
mind; and (3) why it is not sufficient to have such a

representative instead merely "available by telephone."

Having ordered the respective parties' lawyers to read the
*Nick* decision, the court infers that they did so, and that
they understood the plain import of the following words
contained in District Judge Sipple's opinion:

> At the risk of restating the obvious, the Court will
> review why attendance of a corporate representative
> with settlement authority is so important.

> During the ADR conference, all parties have she
> opportunity to argue their respective positions. In the
> Court's experience, this is often the first time that
> parties, especially corporate representatives, hear about
> the difficulties they will face at trial. As a practical
> matter this may also be the first time that firmly held
> positions may be open to change. *For ADR to work,
> the corporate representative must have the authority
> and discretion to change her opinion in light of the
> statements and arguments made by the neutral and
> opposing party.*

> *Meaningful negotiations cannot occur if the only
> person with authority to actually change their mind
> and negotiate is not present. Availability by telephone
> is insufficient because the absent decision-maker does
> not have the full benefit of the ADR proceedings, the
> opposing party's arguments, and the neutral's input.
> The absent decision-maker needs to be present and
> hear first hand the good facts and the bad facts about
> their case. Instead, the absent decision-maker learns
> only what his or her attorney chooses to relate over
> the phone. This can be expected to be largely a
> recitation of what has been conveyed in previous
> discussions.* Even when the attorney attempts to
> summarize the strengths of the other side's position,
> there are problems. First, the attorney has a credibility
> problem: the absent decision-maker wants to know why
> the attorney's confident opinion expressed earlier has
> now eroded. Second, the new information most likely is
> too much to absorb and analyze in a matter of minutes.
> *Under this dynamic it becomes all too easy for the
> absent decision-maker to reject the attorney's new
> advice, reject the new information, and reject any
> effort to engage in meaningful negotiations. It is quite
> likely that the telephone call is viewed as a distraction
> from other business being conducted by the absent
> decision-maker. In that case the absent
> decision-maker will be preoccupied with some other
> matter demanding her attention at the time she is
> asked to evaluate new information in a telephone call.
> Confronted with distractions and inadequate time to
> evaluate the new information meaningfully, the
> absent decision-maker's easiest decision is to
> summarily reject any offer and get back to the*

*business on her desk. Even a conscientious decision-maker cannot absorb the full impact of the ADR conference when they are not present for the discussion. The absent decision-maker cannot participate in good faith in the ADR conference without being present for the conference.*

**\*2** Unfortunately, as discussed in *Dvorak v. Shibata,* 123 F.R.D. 608 (D.Neb.1988) **occasionally parties may use the absence of the decision-maker as a weapon. Such parties "feign a good faith settlement posture by those in attendance at the conference, relying on the absent decision-maker to refuse to agree," thereby taking advantage of their opponent.** *Id.,* at 610.

In such cases the offending party is able to "gain information about [its] opponent's case, strategy, and settlement posture without sharing any of its own information." *Raad,* 1998 WL 272879, at \*5 Instead of a negotiation session, the mediation becomes a stealth discovery session, to the unfair benefit of the party whose decision-maker is not in attendance. **When that happens, the Court's referral to mediation has been callously misused.** "Meanwhile, the opposing side has spent money and time preparing for a good-faith, candid discussion toward settlement. If the other party does not reciprocate, most if not all of that money and time has been wasted." *Id.*

In sum, **when a corporate representative with the authority to reconsider that party's settlement position is not present, the whole purpose of the mediation is lost, and the result is an even greater expenditure of the parties' resources, both time and money, for nothing.**

*Nick,* 99 F.Supp.2d at 1062-63. Despite having actual knowledge of the foregoing words, the defendant Schick sent to the settlement conference Ms. Tracy Labowsky with $10,000 authority and no ability to change her position. To obtain more than $10,000 settlement authority, the court was advised that Ms. Labowsky-and the undersigned-had to contact and convince Ms. Stephanie Zorn, Esquire, who was "available by phone" in St. Louis, Missouri.

In these circumstances, Ms. Labowsky was little more than a messenger. Schick's failure to send to the December 20th conference a representative with the authority to change her mind without consulting telephonically with Ms. Zorn was a clear violation of the court's order. This wasted the court's time as well as that of the plaintiff and his counsel. It also prejudiced the plaintiff because the true extent of Ms. Labowsky's empowerment was not revealed until after the undersigned had caused the plaintiff to reduce his settlement demand to $45,000. The undersigned would

not have exacted this downward departure from plaintiff's attorney had it been revealed that Labowsky lacked the authority to change her mind. Thus, Schick's failure to send an empowered decision maker to the conference had the operative effect of an unfair negotiating tactic in the nature of those expressly condemned in the *Nick* decision. Though Schick asserts that this was not its intent, the effect is the same.

Once it became apparent that Ms. Labowsky had to consult by phone with an absent decision-maker (Zorn), the undersigned rescheduled a settlement conference in this case for January 4, 2007 at 2:00 p.m., and caused a subpoena to be issued for Schick's CEO Joseph Lynch, who presumably possesses authority to settle this case. The court also awarded the plaintiff attorney's fees and costs as a result of Schick's actions.

**\*3** Defendant Schick has now moved for partial reconsideration of the undersigned's order. Schick asks that CEO Lynch be excused from attending the conference, and that the court permit Ms. Stephanie Zorn to attend in lieu of Mr. Lynch. Schick's memorandum in support of its motion asserts:

> Ms. Zorn is a senior attorney in Energizer's Legal Department in St. Louis, Missouri with full authority and complete discretion to settle this matter. She is extremely familiar with the facts and circumstances of this case. Indeed, she has been involved in the company's defense of this action since Mr. Kearson filed his original administrative complaint.... Mr. Lynch, on the other hand, does not generally get involved in the resolution of legal matters of this nature and has not been involved in the defense of this matter.

(Dkt. # 40 at 2). Schick's memorandum continues that:

> [i]n the alternative, although not as equipped to evaluate settlement in this matter due to her level of familiarity with the case *vis-a-vis* Ms. Zorn, if the Court prefers, it will arrange to have Gayle G. Stratmann, Vice President and General Counsel of Energizer, attend the Settlement Conference.

(Dkt. # 40 at 2 n. 1).

The court declines Schick's request. That Ms. Zorn would send Ms. Labowsky to the December 20, 2006 conference with instructions for Labowsky and implicitly the court as well-to *telephone* Zorn to obtain more than $10,000 settlement authority leaves the court with little confidence in either Zorn's perception of this case or her sense of discretion. Moreover, the undersigned declines to empower Zorn to again sabotage the January 4, 2007 conference by simply reiterating her previous position in which she is now invested. Nor is Gayle G. Stratmann an

adequate substitute for the same reasons, and those discussed below.

That Mr. Lynch is not a lawyer, and is a presumably responsible decision-maker possessed of common sense, and with no particular investment in the unfair and unsound negotiating position that was previously taken by Schick, uniquely qualifies him to attend the January 4, 2007 conference.

Most responsible corporations welcome settlement conferences as an opportunity for the court to assist them in avoiding the staggering costs of litigation, the disruption of corporate operations, and poisonous allegations that have the effect of unfairly besmirching reputations. Among other things, Mr. Lynch deserves an

*unfiltered* appraisal of what this litigation is likely to cost his company, and to be informed not only that this action can be settled for far less than the costs of litigation, but for less than Schick will pay its counsel to prepare the likely-to-be-unavailing motion for summary judgment that for some reason Schick seems bent on filing. Unfortunately, in the sorry circumstances of this case, the undersigned believes that Mr. Lynch must hear these things and others directly. It is regrettable that Mr. Lynch had other plans for January 4, and that his attending this conference is inconvenient for him. But the undersigned also had other plans and is equally inconvenienced by having to reschedule the conference to January 4, 2007. That, however, is Schick's fault.

**End of Document**

© 2011 Thomson Reuters. No claim to original U.S. Government Works.

 © 2011 Thomson Reuters. No claim to original U.S. Government Works.