**WILENCHIK & BARTNESS**
A PROFESSIONAL CORPORATION

ATTORNEYS AT LAW
The Wilenchik & Bartness Building
2810 North Third Street  Phoenix, Arizona  85004

Telephone: 602-606-2810    Facsimile: 602-606-2811

Dennis I. Wilenchik, #005350
admin@wb-law.com
*Attorneys for Defendants*

J. Grant Woods, Esq. #006106
Grant Woods Law P.C.
40 N. Central Ave., Ste 2250
Phoenix, Arizona 85004
gw@grantwoodspc.net
*Co-Counsel for Defendants*

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| CELLCO PARTNERSHIP d/b/a/ VERIZONA WIRELESS,<br><br>**Plaintiff,**<br><br>v.<br><br>JASON R. HOPE, et al.,<br><br>**Defendants.** | Case No. CV 11-00432-DGC<br><br>**RESPONSE TO PLAINTIFF'S MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT** |

Defendants, (collectively "JAWA"), hereby respond and object to Plaintiff's Motion For Leave to File First Amended Complaint (the "Motion") and ask the Court to deny the same on the grounds that all of the Counts in the Plaintiff's proposed First Amended Complaint ("FAC") fail as a matter of law because those claims: (i) have already been rejected by this Court and dismissed; (ii) fail to state viable causes of action; or (iii) are completely barred by the Final Order and Judgment entered by the Honorable Richard J. Billik on January 14, 2011, in case number 08-CH-40592 in The Circuit Court of Cook County, Illinois, County Department, Chancery Division (the "Final Order")(copy attached hereto as Exhibit 1) as well as the settlement in that case. The following Memorandum of Points and Authorities supports this Response.

# TABLE OF CONTENTS

**MEMORANDUM OF POINTS AND AUTHORITIES**............................................... 2

I. INTRODUCTION............................................................................................2

II. ARGUMENT...................................................................................................3

    A. VERIZON'S PROPOSED FAC INCLUDES THE SAME FATALLY FLAWED CONSUMER FRAUD CLAIM THAT WAS ALREADY REJECTED AND DISMISSED BY THIS COURT...................................................................................................... 3

    B. VERIZON'S "NEW" CAUSES OF ACTION ARE FUTILE............... 4

        1. Verizon Has No Cause of Action Under A.R.S.§ 13-2310(A)............ 5

        2. Count IV Of The FAC Fails To State A Viable Claim .................... 6

        3. Verizon Cannot Raise A Colorable Claim For Fraud .................... 12

    C. VERIZON'S OTHER CLAIMS ARE ALSO MERITLESS................ 15

    D. EVERY CLAIM IN THE FAC IS BARRED BY THE ILLINOIS SETTLEMENT AND FINAL ORDER ........................ 16

III. CONCLUSION .................................................................................. 17

i

## MEMORANDUM OF POINTS AND AUTHORITIES

I.  **INTRODUCTION**

The Motion must be denied because Plaintiff's proposed FAC constitutes a futile attempt to skirt the Final Order and raise claims that are simply not viable, including, incredibly enough, a claim that was previously dismissed by this Court.[1]  In its Order dated July 26, 2011, this Court dismissed Verizon's claim for unjust enrichment, as well as its claims brought under the ACFA and 18 U.S.C. § 1962(a).  Despite this, in its proposed FAC, Verizon now improperly seeks to: (i) re-assert the same AFCA claim that was dismissed; (ii) raise an additional federal RICO claim and two Arizona RICO claims; (iii) shore up its bogus claim of tortious interference; and (iv) add a specious claim for common law fraud—for a total of **seven** causes of action.  Thus, instead of dropping from five counts to two, Plaintiff seeks to raise four new causes of action and re-assert a claim that this Court already dismissed with prejudice.

Based on the foregoing, Verizon's Motion to Amend and FAC were clearly submitted in bad faith.  None of the new, "re-vamped" or re-asserted counts in the FAC states a claim upon which relief can be granted and all of Verizon's claims are absolutely barred by the Final Order in any event.  The FAC consists of nothing more than spurious or meaningless allegations that the Defendants:

- Committed minor violations of an MMA Mobile Code that is not the law, nor even compelling;
- Used "cloaking" software to limit unwanted intrusions into landing pages, which is not prohibited by any law, or the MMA Guidelines Verizon claims it relied on, or any contractual agreement of any kind between Verizon and any of the Defendants;
- Set up separate companies for Defendants' short codes, which did not violate any law or breach any contract or agreement with Verizon whatsoever; and
- Intentionally interfered with Verizon's relationships with its customers to induce those customers to breach their agreements with Verizon (even though

---

[1] In its original Complaint, Verizon asserted **five** causes of action against Defendants: two federal RICO claims; a claim under the Arizona Consumer Fraud Act ("ACFA"); a claim for tortious interference with contractual relations; and a claim for unjust enrichment.  Verizon also included a request/claim for injunctive relief in its Complaint.

such interference would result in the termination of those customers' subscriptions with JAWA as well).

Such allegations fail to describe anything actionable and Verizon cannot be allowed to pursue the patently absurd claim that JAWA was intentionally seeking to deprive itself of its own customers by intentionally interfering with those customers' relationships with Verizon. Similarly, Verizon's fraud claim fails because there were no representations made to Verizon by any of the Defendants at all, let alone *material* representations that could be considered fraudulent or criminal in nature. Also, Verizon has presented no evidence to establish that any of the Defendants was associated with or acting in concert in any criminal enterprise—as that concept is defined in the law—nor can Verizon show that Defendants were participating in "racketeering" as to Verizon in any way. Moreover, Verizon has no evidence or facts to show that it has lost even **one** customer or suffered **any** damages as a result of Defendants' allegedly nefarious actions. Finally, every claim in the FAC is barred by the Final Order.

## II. ARGUMENT

### A. VERIZON'S PROPOSED FAC INCLUDES THE SAME FATALLY FLAWED CONSUMER FRAUD CLAIM THAT WAS THE COURT ALREADY REJECTED AND DISMISSED

In its Order dated July 26, 2011, the Court found that Verizon lacked standing to raise a claim under the AFCA and dismissed that count with prejudice. Verizon has not amended that claim at all, and therefore still does not have standing to raise it. *See Chaset v. Fleer/Skybox Int'l, LP*, 300 F.3d 1083, 1088 (9th Cir. 2002) (affirming denial of leave to amend where plaintiffs could not cure their lack of standing by amendment). Despite this, Verizon—in blatant disregard of the Court's ruling—has included a claim under the ACFA in its proposed FAC.[2] Verizon's decision to re-raise this dismissed ACFA claim has no purpose other than to unnecessarily expand the litigation and increase the costs thereof for no valid purpose.

---

[2] Verizon has disingenuously attempted to justify its unwarranted reassertion of this claim with the flawed argument that it is "only trying to preserve the issue for appeal." This is not a valid basis for any amendment at all, and Verizon cites no authority to support that specious contention.

3

It is also worth noting that any attempt by Verizon to cast itself as some kind of "white knight" for consumers is completely hypocritical. Verizon was not acting on behalf of anyone but itself when it cancelled JAWA's short codes without notice and then initiated this lawsuit. Indeed, prior to filing suit, it was Verizon's practice to vigorously defend its billings for PSMS services when customers complained and Verizon has not disclosed anything showing that it has ever paid back one penny of the many millions of dollars it received from what it now seeks to vilify as a "criminal enterprise" that supposedly defrauded consumers for years.[3] It is Verizon that is the bad actor here, not JAWA. Therefore, not only should the Motion be denied with respect to the AFCA claim, Verizon should be sanctioned for having the temerity to include it in the FAC.

### B. VERIZON'S "NEW" CAUSES OF ACTION ARE ALL FUTILE

Verizon's attempt to multiply the number of Counts in its FAC should be denied because the additional causes of action raised in the FAC are not viable as a matter of law, or even common sense, and allowing Verizon to add and prosecute such claims would be a futile effort. *Bonin v. Calderon,* 59 F.3d 815, 845 (9th Cir. 1995)(A court may deny leave to amend based on futility of the amendment.); *Gabrielson v. Montgomery Ward & Co.,* 785 F.2d 762, 766 (9th Cir.1986)(A motion for leave to amend may be denied if futile or legally insufficient).

Here, there are simply no facts even alleged (let alone capable of proof) that could support any of Verizon's futile, additional Counts. *Baker v. Pacific Far East Lines, Inc.,* 451 F.Supp. 84, 89 (N.D.Cal.1978)(A proposed amendment is futile when there are no facts that can be proven under the amendment to the pleadings that would establish a valid and sufficient claim); *see generally* 3 J. Moore, *Moore's Federal Practice* ¶ 15.08[4] (2d ed. 1974)(test for legal sufficiency of a proposed amendment is identical to test used under Rule 12(b)(6)). *Miller v. Rykoff-Sexton, Inc.,* 845 F.2d 209, 214 (9th Cir.

---

[3] The **only** money Verizon has used in its voluntary "refund" campaign belongs to JAWA alone; and to this day, Verizon continues to wrongfully withhold many millions of dollars belonging to JAWA without excuse and without any evidence showing any damages or that any Verizon customers cancelled their service because of JAWA.

1988). The Court should deny the Motion because there is no need to prolong this litigation by permitting further, futile amendment. *See Gardner v. Martino*, 563 F.3d 981, 990 (9th Cir. 2009). Here, the "new" causes of action asserted by Verizon in the FAC are all legally insufficient—as are the amended versions of the two remaining Counts not previously dismissed by the Court.

### 1. Verizon Has No Cause of Action Under A.R.S. § 13-2310(A)

Arizona law does not provide potential claimants with a private cause of action arising out of A.R.S. § 13-2310. Thus, Count III of the FAC, which is based upon § 13-2310(A), is facially meritless and should be summarily rejected and disallowed.

As a matter of basic statutory interpretation, it is obvious that no private cause of action exists under A.R.S. § 13-2310, which creates only a criminal penalty—a class 2 felony—for "[a]ny person who, pursuant to a scheme or artifice to defraud, knowingly obtains any benefit by means of false or fraudulent pretenses, representations, promises or material omissions." A.R.S. § 13-2310(A). The controlling statute that addresses a private cause of action for criminal conduct is A.R.S. § 13-2314.04, which is titled: "Racketeering; unlawful activity; <u>civil remedies by private cause of action</u>; definitions" (emphasis added). That statute specifically states that a private cause of action exists under A.R.S. § 13-2312, yet does not recognize or reference A.R.S. § 13-2310 at all. This clearly evinces a legislative intent not to create a private cause of action for violations of Section 13-2310. *See Mathews ex rel. Mathews v. Life Care Centers of Am., Inc.*, 217 Ariz. 606, 608, 177 P.3d 867, 869 (Ct. App. 2008)(The primary goal of statutory interpretation is to find and give effect to legislative intent; and the plain language of the statute is the best indicator of that intent). Thus, a private cause of action does not arise under A.R.S. § 13-2310 and Count III of the FAC should be disallowed.

### 2. Count IV Of The FAC Fails To State A Viable Claim

Verizon's attempt to allege a violation of A.R.S. § 13-2312(B) is equally futile because Verizon has not presented factual allegations sufficient to establish the requisite existence of a criminal "enterprise" or a prima facie case for a pattern of criminal

racketeering activity, let alone any compensable damages arising from such activity. To prove a violation of A.R.S. § 13-2312(B), Verizon must show that JAWA was associated with an enterprise and "conduct[ed] such enterprise's affairs through racketeering or participate[d] directly or indirectly in the conduct of any enterprise that [JAWA knew was] being conducted through racketeering." A.R.S. § 13-2312(B). The allegations in the FAC are patently insufficient to meet this standard and there are no facts available to cure that deficiency. Therefore, Count IV of the FAC should be rejected and disallowed.

### a. Verizon Cannot Establish a Criminal Enterprise

Verizon seeks to allege in conclusory fashion that "Defendants and their co-conspirators" constituted a group of persons associated together for the common purpose of carrying out certain alleged acts as part of the so-called "Cylon Enterprise." This begs the following questions: What enterprise? What acts? There are no facts alleged at all that could possibly establish the existence of any "enterprise," as required for a racketeering claim under A.R.S. § 13-2312, that was independent of, or separate from, JAWA simply conducting its business through its employees.

A claim alleging mail and wire fraud under A.R.S. § 13-2312(B) has to be pled with particularity. *See* A.R.S. § 13-2314.04(R); *see also, Vess v. Ciba-Geigy Corp. USA,* 317 F.3d 1097, 1106 (9th Cir.2003) (requiring a plaintiff to plead "the who, what, when, where, and how" of the alleged claim). Here, Verizon has completely failed to identify any valid "co-conspirators" who were supposedly involved with the Defendants, how those co-conspirators directed the affairs of the enterprise, or what allegedly criminal acts each member of the purported "enterprise" committed. Because Verizon has failed to adequately describe the "Cylon Enterprise" or the actions of its alleged members, Verizon has not established the necessary "who" with sufficient particularity.

Furthermore, even assuming that Verizon is basing its racketeering claims on allegations that JAWA employees are the co-conspirators in the so-called enterprise, Verizon has still failed to state a viable claim. In order to plead a RICO case, Verizon must establish "specific facts demonstrating a structured association" and that association

6

or enterprise must go beyond and be something more than just a company and its principal. *See Warfield v. Gardner*, 346 F. Supp. 2d 1033, 1052 (D. Ariz. 2004) (citing *Simon v. Value Behavioral Health, Inc.*, 208 F.3d 1073, 1083-84 (9th Cir. 2000). In *Warfield*, the plaintiff's allegations were deemed insufficient to plead an enterprise because the plaintiff failed to allege that the defendant did anything separately from his company generally. *Warfield*, 346 F. Supp. 2d at 1052.

Here, as in *Warfield*, Verizon is unable to allege that there was an organizational structure designed to maintain the purported enterprise for criminal purposes at all. Verizon's overblown and general allegations that several JAWA employees were the points of contact for several companies is ludicrous, and the claim that some of them were a part of a September 2009 employee meeting is totally insufficient to show JAWA had created an organizational structure for the purpose of committing a pattern of criminal racketeering activity. Attendance at an employee meeting does not establish that Defendants were doing anything different and apart from the companies' business, let alone anything approaching a criminal enterprise and certainly nothing is alleged as to any actions specifically directed at Verizon in this regard. Thus, Verizon has not and cannot establish any "enterprise" as that term is defined under A.R.S. 13-2312(B).

### b. Verizon Cannot Plead a Pattern of Unlawful Activity

Verizon's RICO claims are also futile because Verizon fails to allege facts establishing a culpable pattern of criminal activity done with the purpose of executing a fraudulent scheme aimed at obtaining something unlawfully from Verizon. Verizon simply attempts to allege that JAWA's purported pattern of racketeering consisted of misleading webpages, text messages, false statements in connection with JAWA's short codes, and the use of cloaking software. [Complaint, ¶ 159] While this may seem suspicious and nefarious at first glance, careful analysis reveals that Verizon's entire theory fails both as a matter of law and common sense.

For example, Verizon has alleged that the unlawful purpose and goal of the purported pattern of racketeering was to fraudulently obtain access to Verizon's network

7

and to cause Verizon to bill and collect money from its customers for Defendants' PSMS services. [Complaint, ¶ 148] This entire theory fails, however, because JAWA already had network access before these allegedly criminal acts occurred; and JAWA did nothing to cause Verizon to bill its customers. Also, the unlawful purpose and goal as alleged cannot have been proximately caused by JAWA's alleged pattern of racketeering activity, because the alleged acts were directed exclusively to JAWA's own customers.

Verizon alleges that JAWA committed wire fraud with respect to JAWA's <u>own</u> customers. Yet virtually none of those customers ever complained, and the relative handful who did received a complete refund without question from JAWA. But even assuming *arguendo* that JAWA's webpages and text messages were somehow misleading to its customers, they were not misleading to Verizon. Any deception alleged as to the content of the webpages or text messages would have been directed to JAWA's customers alone. Therefore, because this alleged conduct was not directed to Verizon at all, Verizon is unable to establish that this conduct was committed for any unlawful purpose connected to Verizon, and Verizon has no standing to make baseless RICO claims as if it were a governmental unit.

Likewise, Verizon cannot establish a pattern of racketeering activity with its allegations that JAWA made false statements to Verizon in connection with JAWA's short codes and URLs, since JAWA made no statements to Verizon **at all**. JAWA had no direct relationship with Verizon and any statements made to obtain short codes were directed to Aggregators or others who are not parties herein. JAWA did nothing illegal in making those statements, but even if Verizon could prove that JAWA made a false statement in connection with a short code application, it would be irrelevant since JAWA had no control over what information the Aggregators provided to Verizon regarding JAWA's business. Also, the Aggregators could not have possibly been misled by JAWA since the Aggregators aggregated all payments for all of the short codes Verizon is complaining about and paid those funds to JAWA. The Aggregators knew full well with whom they were dealing, even if Verizon now claims it did not know.

Thus, it is impossible for Verizon to establish that statements made by JAWA to third parties constitute a pattern of racketeering by JAWA aimed at Verizon for the purpose of unlawfully obtaining access to Verizon's network or causing it to bill its customers. Verizon is also unable to establish any pattern of racketeering through its allegations of "false statements" since no such statements were made to it by JAWA. Lastly, Verizon cannot show a pattern of racketeering activity based on its allegations of JAWA using cloaking software to evade audits.

Indeed, Verizon cannot plausibly allege that its auditors were unable to go onto JAWA's sites. Obviously they could, given the screen shots and other things already presented to the Court. But even if the auditors were blocked, nothing in the MMA Guidelines prohibits the use of cloaking, and Verizon conveniently fails to mention that JAWA has every right to control who lands on its pages and to divert non-customers or interlopers to other sites. Most importantly, however, Verizon cannot establish that JAWA cloaked its pages from Verizon's auditors based on any criminal intent or motive to fraudulently obtain access to Verizon's network, since JAWA already had lawful access to Verizon's network. JAWA fulfilled the necessary steps to obtain short codes and dealt with separate Aggregators so as to provide PSMS services to Verizon customers as well as customers of other carriers. Because JAWA gained access to Verizon's network prior to employing any cloaking software and had every right to block unwarranted actions or intrusions on its landing pages, Verizon cannot show that cloaking was used to further any unlawful goal or purpose in connection with Verizon. Therefore, Verizon has not alleged any valid pattern of racketeering and Verizon's claim under A.R.S. § 33-2312(A) is futile and should be rejected.

     **c. Verizon cannot show that JAWA directly caused it harm**

Verizon has failed to produce <u>any</u> evidence or even properly allege that Verizon actually incurred any kind of pecuniary loss or damage as a result of Defendants' purportedly improper conduct during the brief period between the time the Illinois Court

entered its judgment and Verizon pulled JAWA's short codes.[4] Verizon cannot show any other compensable damage, since the Illinois Settlement and Final Order fully resolved the national class action claims of consumers who might allege some injury and seek compensation from Verizon related to the Released Conduct defined in the Illinois Settlement. Also, since Verizon had just recently settled a huge claim by the FCC, it cannot seriously contend it lost any "goodwill" as a result of anything JAWA did. The truth is, Verizon not only willingly billed JAWA's customers, it forcefully defended charges for PSMS services and has provided no evidence that it has ever disgorged a single penny of the substantial profits it made off what it now portrays as a "criminal enterprise."

The inability to plausibly allege damage and causation are fatal to Verizon's entire case, but particularly Verizon's RICO claims. A plaintiff bringing a RICO action must prove that the defendants' racketeering violations were the proximate cause of the injury. *See Rosier v. First Fin. Capital Corp.*, 181 Ariz. 218, 222, 889 P.2d 11, 15 (App. 1994) (citing *Holmes v. Securities Investor Corp.*, 503 U.S. 258, 262-63 (1992)). The Supreme Court has explained that "[t]he requirement of a direct causal connection is especially warranted where the immediate victims of an alleged RICO violation can be expected to vindicate the laws by pursuing their own claims." *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 459-61 (2006). Here, the "immediate victims" (i.e., Verizon's customers) **did**, in fact, pursue their own claims and those claims were handled and fully and finally resolved in the class actions settled by the Final Order of the Illinois court.

Here, Verizon's alleged harm (if any) would be indirect and derivative at best, and courts—including this one—do not hesitate to dismiss RICO claims brought by plaintiffs

---

[4] Verizon's alleged damages arise solely from Verizon's own, unsolicited, unilateral and voluntary decision to offer "refunds" to its customers—exclusively using funds belonging to JAWA, and not any of the millions of dollars of profits garnered by Verizon from subscriptions its wireless customers had with Defendants over the years. As a result of the Illinois Settlement, which eliminated all consumer complaints against it, Verizon was under no legal obligation to offer **any** refunds to anyone. Thus, Verizon's so-called "damages" are completely manufactured, self-serving efforts to improve Verizon's public image at JAWA's expense and without JAWA's consent.

claiming a remote, economic injury from an alleged conspiracy. *See Pillsbury Madison & Sutro v. Lerner*, 31 F.3d 924, 929-30 (9th Cir. 1994)(dismissing RICO claims by sublessor against building owner because of the indirectness of the injury); *Laborers & Operating Eng'rs' Util. Agreement Health & Welfare Trust Fund v. Philip Morris, Inc.*, 42 F. Supp. 2d 943, 948 (D. Ariz. 1999)(citing *Se. Fla. Laborers Dist. Health & Welfare Trust Fund v. Philip Morris*, 1998 WL 186878, at *5 (S.D. Fla. April 13, 1998))(dismissing claims where plaintiff sought "to recover economic damages which it incurred by virtue of its contractual relationship with third parties who were allegedly harmed by the defendants"); *Canyon County v. Syngenta Seeds, Inc.*, 519 F.3d 969, 981 (9th Cir. 2008)(derivative victims generally may not bring RICO claims).

Therefore all of the RICO claims in the FAC should be rejected and disallowed as futile because Verizon cannot establish any direct injury from JAWA's alleged racketeering activity. Accordingly, the Court should deny Verizon's request to amend as to both the Arizona and federal RICO counts in the FAC.

### 3.   Verizon Cannot Raise A Colorable Claim For Fraud

It is impossible for Verizon to make a prima facie showing of <u>any</u> of required elements of fraud;[5] let alone prove them by clear and convincing evidence. Verizon cannot allege or establish that JAWA ever made any material representations to Verizon that were false when made, nor can Verizon claim that it reasonably relied on any such representations to its detriment. JAWA communicated exclusively with the Aggregators regarding its short codes and business, and did not have any direct contact with Verizon at all, and no knowledge as to what Verizon might be relying on. JAWA made no assurance to Verizon that it would follow the MMA guidelines without any variance. In

---

[5] The elements necessary to establish fraudulent misrepresentation are: "(1) A representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) his intent that it should be acted upon by the person and in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) his reliance on its truth; (8) his right to rely thereon; (9) his consequent and proximate injury." *Carrel v. Lux*, 101 Ariz. 430, 434, 420 P.2d 564, 568 (1966).

fact, it is inherent in those very guidelines that there may be variances, which are supposed to result in notice and an opportunity to cure if those variances are of the type alleged in the Complaint and FAC.

Because there is no evidence of any direct communications from JAWA, Verizon pins its case on a March 2009 email that was not even directed at Verizon, and which may have been drafted by a major instigator in this drama, Robert Alpert, who obviously had his own agenda. That email was sent to an Aggregator, Open Market, and states that a particular problem has been corrected and includes a sincere promise to work to resolve any and all similar issues that might arise in the future. (See Exhibit 2 hereto).[6] The statement in that email about the problem arising because of a fired employee was admittedly false, but it certainly was not made to Verizon and JAWA did not intend that it be given to Verizon by the Aggregator. JAWA did not know the email would be given to Verizon and, more importantly, the false information about the fired employee in that email is completely immaterial in any event and cannot qualify as a representation that was intended to be relied on, or which caused Verizon to do anything vis a vis JAWA.

The only material portions of that email (if any) are the honest acknowledgment of a problem, the truthful statement that the problem has been corrected, and the sincere assurance to endeavor to avoid or correct any similar problems in the future; none of which can support any fraud claim. Thus, Verizon has no valid allegations or evidence to show that JAWA made any assurances to Verizon that JAWA "would never engage in such conduct" and would "fully compl[y] with MMA guidelines." [See Complaint, ¶¶ 166-67]. At most, JAWA agreed to "remain in substantial compliance" with those guidelines as part of the Illinois Settlement and Final Order[7] and as to that, Verizon

---

[6] The Court may consider this email because the proper test for futility is the same as a motion to dismiss and allows a court to consider a document that is central to the Complaint without the motion being transformed into a motion for summary judgment. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir.1994)(A court may consider documents whose contents are alleged in a complaint but not physically attached to the pleading.).

[7] Verizon has taken the position that it was not a party to that settlement. Therefore it therefore cannot rely on or enforce it. But if Verizon wants to change its position and

waived any claim for damage and agreed that the Illinois court retained exclusive jurisdiction over violations of that settlement. Yet, when JAWA allegedly breached those purported assurances, Verizon did not bother to give JAWA notice or any opportunity to cure its alleged breaches and never filed anything with the Illinois court.

More importantly, even if JAWA could be deemed to have made assurances regarding compliance with MMA guidelines, Verizon still has not established and cannot establish that such a representation would support a claim for common law fraud. To establish fraud, the misrepresentation needs to be one of a present fact. Any assurances of future conduct such as are alleged here do not, and cannot, constitute actionable fraud. *Dawson v. Withycombe*, 216 Ariz. 84, 96, 163 P.3d 1034, 1046 (Ariz. Ct. App. 2007) (citing *Law v. Sidney*, 47 Ariz. 1, 4-5, 53 P.2d 64, 66 (1936)("[A] representation that something will be done in the future or a promise to do it **is ... not a fraudulent representation** such as will sustain an action of [fraud]." (emphasis added).

Thus, any alleged assurances that JAWA would not engage in any particular conduct in the future or would comply with MMA guidelines are, at most, unfulfilled promises or expressions of intention that are not actionable. *See Staheli v. Kauffman*, 122 Ariz. 380 (1979). "[A] promise to perform in the future is not a representation which can be shown to be true or false at the time it was made, and therefore, a person has no right to rely, in a legal sense, on a representation of a fact not in existence." *Id.* (quoting *Denbo v. Badger*, 18 Ariz. App. 426, 428, 503 P.2d 384, 386 (1972)). Accordingly, Verizon cannot establish a claim for common law fraud because there was no representation of fact (material or otherwise) ever made to Verizon by these Defendants on which Verizon had any legal right to rely.

Likewise, Verizon cannot show that Defendants ever made any representation directed at Verizon with the *intent* that Verizon rely on it. Finally, Verizon has failed to

---

claim that it has certain rights and remedies under the Illinois Settlement, then Verizon will need to pursue such claims in the Circuit Court of Cook County, since it has retained exclusive jurisdiction over enforcement of the Settlement.

produce any allegation or evidence whatsoever that it has suffered any loss or injury as a result of its purported "reliance" on anything Defendants might have possibly represented. On the contrary, Verizon has done nothing but **make** money off of the alleged "fraud" and has never disgorged a penny of it; and despite being asked multiple times to produce evidence, Verizon has been unable to point to a single customer who cancelled his/her service contract with Verizon as a result of anything the Defendants are accused of doing. Thus, the Court should deny Verizon's request to add a claim for fraud.

### C. VERIZON'S OTHER CLAIMS ARE EQUALLY MERITLESS

For all of the reasons set forth in Section B(2) above, Verizon's federal RICO claims in the FAC are completely specious and any attempt to amend and maintain those counts should be rejected. Similarly, Verizon's claim for intentional interference with contractual relations fails as a matter of law, logic and common sense.

Verizon cannot maintain a tortious interference claim under Restatement § 766(A) because JAWA's allegedly improper conduct was directed solely toward Verizon customers and Verizon has suffered no actual—let alone compensable—increased burden or expense associated with performing on its contracts with those customers.[8] Verizon also has no tortious interference claim under Restatement § 766, since it cannot show that <u>any</u> third parties were induced to breach their contracts with Verizon, and any allegation that it was JAWA's intent to induce such breaches is patently absurd.[9]

---

[8] As noted above, Verizon had no legal obligation to offer <u>anything</u> to customers whose complaints were fully covered and resolved by the Illinois Settlement. Moreover, any refunds provided by Verizon were made with JAWA's money in any event.

[9] No reasonable juror could ever find that it was JAWA's intent to destroy its own contracts and revenue streams by interfering with Verizon's relationships with customers common to both. As a matter of law, a defendant cannot commit the tort of intentional interference with respect to a contract to which it is a party. *See Wells Fargo Bank v. Arizona Laborers, Teamsters & Cement Masons Local No. 395 Pension Trust Fund*, 201 Ariz. 474, 493, 38 P.3d 12, 31 (2002). Yet that is exactly what Verizon is trying to allege! Any claim that JAWA intended to interfere with Verizon's customers is, by necessary implication, a completely nonsensical and non-actionable assertion that JAWA intended to interfere with its <u>own</u> contracts with those customers. That logical and legal fallacy alone warrants rejection of Verizon's intentional interference claim in the FAC.

To overcome this dilemma, Verizon is making the bizarre claim that JAWA promoted its services to Verizon's customers in an allegedly improper fashion, which purportedly "burdened" Verizon's performance toward those customers. The latter, however, cannot be linked with the former. Verizon cannot simply "cherry-pick" elements of Sections 766A and 766 and slap them together to create its own jerry-rigged version of intentional interference. It must choose one or the other. There is a "core distinction between the torts described in section 766 and section 766A [a]s to whom the defendant's conduct is targeted." *Wilspec Technologies, Inc. v. DunAn Holdings Group, Co., Ltd.*, 204 P.3d 69, 72-73, ¶ 10 (OK 2009); *see also RTL Disrib., Inc. v. Double S. Batteries, Inc.*, 545 N.W.2d 587, 590 (Iowa Ct. App. 1996); *Pettit v. Paxton*, 583 N.W.2d 604, 610 (Neb. 1998).[10] Here, Section 766 is the only possibility for Verizon, since the alleged interference was targeted at its customers alone. Section 766A simply does not apply[11] and since Verizon has not demonstrated that any third parties were induced to breach their contracts with Verizon—as required under Section 766—Verizon cannot prove a tortious interference claim on the alleged facts, as a matter of law.

### D. EVERY CLAIM IN THE FAC IS BARRED BY THE FINAL ORDER

As set forth in JAWA's Motion to Dismiss filed on August 28, 2011—which is incorporated herein by this reference—the Court lacks subject matter jurisdiction over any of the claims raised by Verizon in this suit, including all of the claims Verizon is now seeking to raise in the FAC. The Final Order and Judgment out of Illinois clearly states:

---

[10] As Arizona's courts have not explored the relationship between §§ 766 and 766A of the Restatement, Defendants cite other, persuasive jurisdictions as instructive.

[11] Restatement § 766(A) addresses "intentionally and improperly interfer[ing] with the performance of a contract ... between another and a third person, by preventing **the other** from performing the contract or causing **his performance** to be more expensive or burdensome." (Emphasis added). As comment A explains, Section 766A is "concerned only with the actor's intentional interference with the **plaintiff's performance of his own contract**" as opposed to claim under Section 766, "which states the rule for the actor's intentional interference with **a third person's performance of his existing contract with the plaintiff**." Restatement § 766A, comment A (emphasis added); *see also* § 766A, comment b ("[T]he conduct preventing the performance operates on the injured party himself, rather than the third person.").

> [Verizon] is now and forever barred and permanently enjoined from commencing, prosecuting, or asserting any claim for contribution or indemnity (whether by contract **or any other source**) against any Defendant that is based upon or related to,
>
> **directly or indirectly, in whole or in part**, (a) the allegations, facts, subjects, or issues set forth or raised in the Action or the Related Actions, or (b) the Released Conduct.

(Exhibit 1, ¶ 15 (emphasis added)). The foregoing language makes it indisputable that the Illinois court determined its Final Order to be just that; <u>final</u>. It was designed to fully resolve <u>all</u> of the claims, counterclaims and cross-claims that were (or might later be) raised by and between the various parties "based upon or related to ... the Action or the Related Actions, or ... the Released Conduct"; and it specifically included the above-quoted injunction to ensure that the Wireless Carriers (including Verizon) would not pursue actions against JAWA or the other Defendants after-the-fact for any alleged damages, costs, expenses or losses those Wireless Carriers might incur in the future in dealing with the fallout (if any) from the Released Conduct.

The fact is, <u>all</u> of Verizon's "claims" are completely derivative of and wholly dependent on the underlying claims of its customers—all of which were clearly released in the Illinois Settlement; both as to these Defendants <u>and</u> Verizon. Also, the permanent injunction in the Final Order against assertion of claims for indemnification or contribution can only be viewed as forward-looking and as a bar to <u>future</u> allegations of loss, injury or damage, not any then-extant harm. Verizon paid <u>nothing</u> toward the resolution and settlement of the Action and the Related Actions. Therefore, it could not possibly have ever sought indemnification or contribution from JAWA to offset such settlement amounts. Thus, the only possible interpretation of the Final Order is that it is an injunction and prohibition against the Wireless Carriers coming back against the Released Defendants and trying to sue them later based on trumped up allegations that the Wireless Carriers suffered damages arising out of the Released Conduct **after** the settlement had been finalized (e.g., loss of good will, loss of customers, etc.).

Yet that is **precisely** what Verizon is trying to do in this case! Regardless of whatever "spin" Verizon may try to put on its so-called claims in this lawsuit, at the end

of the day they all amount to nothing more than an improper and prohibited attempt by Verizon to obtain contribution or indemnification (i.e., repayment) from the Defendants based on "contract or any other source." Verizon wants Defendants to foot the bill (twice) for refunds that Verizon unilaterally, voluntarily and unconditionally offered its customers (using JAWA's money), ostensibly because Verizon was concerned about loss of good will related <u>exclusively</u> to the Released Conduct and the "allegations, facts, subjects, or issues set forth or raised in the Action or the Related Actions ....." Thus, no matter what legal theory or "source" Verizon tries to employ to accomplish that goal, it is a *de facto* claim for contribution or indemnification that Verizon is barred from "commencing, prosecuting or asserting...." Any claims Verizon might have had, and which it is now unlawfully attempting to adjudicate related to claims of customers represented by the class of plaintiffs in the Action and Related Actions are completely barred because those customers' claims were fully satisfied and released and Verizon cannot seek any form of "contribution" or "indemnification" from these Defendants related in any way (directly or indirectly) to those claims or the Released Conduct.

## III. CONCLUSION

The Court should not be in any way diverted by Verizon's legal sophistry and transparent attempts to camouflage claims that Verizon is clearly barred from asserting, or to raise claims which have no colorable basis in law or fact. For all the reasons set forth hereinabove, the Motion to Amend should be denied.

**RESPECTFULLY SUBMITTED** this 30th day of September, 2011

| **WILENCHIK & BARTNESS, P.C.** | **GRANT WOODS LAW P.C.** |
|---|---|
| /s/ Dennis I. Wilenchik | /s/ Grant Woods |
| Dennis I. Wilenchik, Esq. | Grant Woods, Esq. |
| The Wilenchik & Bartness Building | Two Renaissance Square |
| 2810 North Third Street | 40 N. Central Ave, Suite 2250 |
| Phoenix, Arizona 85004 | Phoenix, Arizona 85004 |
| admin@wb-law.com | gw@grantwoodspc.net |
| *Attorneys for Defendants Jason Hope and Wayne P. Destefano, et al.* | *Co-counsel for Defendants Jason Hope and Wayne P. Destefano, et al.* |

## CERTIFICATE OF SERVICE

I certify that on this 30th day of September, 2011, I electronically transmitted the attached document to the Clerk's office of the United States District Court, District of Arizona, using a Clerk of Court hosted electronic filing system for filing and the transmittal of a Notice of Electronic Filing to all CM/ECF registrants.

/s/ K. Hicks