**WILENCHIK & BARTNESS**
— A PROFESSIONAL CORPORATION —

ATTORNEYS AT LAW
The Wilenchik & Bartness Building
2810 North Third Street  Phoenix, Arizona  85004

Telephone: 602-606-2810      Facsimile: 602-606-2811

Dennis I. Wilenchik, #005350
admin@wb-law.com
*Attorneys for Defendants*

J. Grant Woods, Esq. #006106
Grant Woods Law P.C.
40 N. Central Ave., Ste 2250
Phoenix, Arizona 85004
gw@grantwoodspc.net
*Co-Counsel for Defendants*

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| **Cellco Partnership d/b/a/ Verizon Wireless,** | **Case No. CV 11-00432-DGC** |
| **Plaintiff,** | **DEFENDANTS/COUNTER-CLAIMANTS' REPLY IN SUPPORT OF MOTION TO DISMISS UNDER THE DOCTRINE OF RES JUDICATA AND RULE 12(B)(1), FED.R.CIV.P.** |
| **v.** | |
| **Jason R. Hope, et al.,** | |
| **Defendants.** | **(Oral Argument Requested)** |
| **And Related Counterclaims** | |

Defendants/Counterclaimants, (collectively "JAWA"), hereby reply to Plaintiff's responses to JAWA's Motion to Dismiss (the "Motion") and respectfully ask this Honorable Court to grant said Motion on the grounds that Verizon's remaining claims are either: (i) barred

1  by the Settlement and Final Order[1] in the *Walker* action in Illinois; or (ii) subject to the

2  exclusive jurisdiction of the Cook County Circuit Court.  Thus, this Court lacks subject matter

3  jurisdiction and should grant JAWA's Motion, dismiss Verizon's claims, and abstain from

4  further involvement in matters that should be decided by the Illinois Court.  This Reply is

5  supported by the following Memorandum of Points and Authorities and incorporates by

6  reference JAWA's Response to Plaintiff's Motion for Leave to Amend.

7  ## MEMORANDUM OF POINTS AND AUTHORITIES

8  Contrary to Verizon's contentions, the issues and arguments raised in the Motion have

9  ***not*** been ruled on by this Court and must be decided in JAWA's favor.  Verizon, by its own

10  admissions, was clearly a contemplated "party" to the *Walker* Settlement and Final Order.

11  Therefore, Verizon's claims are all barred or, at a minimum, are subject to the exclusive

12  jurisdiction of the Circuit Court of Cook County, Illinois.  Indeed, the very question of whether

13  such claims may even be brought, can and should be properly decided by that court alone.[2]  That

14  is the appropriate procedure that was bargained for and agreed to before Verizon breached the

15  Final Order and pounced on JAWA by filing this Complaint while JAWA was in the process of

16  compliance.

17  **1.     The Arguments Raised in the Motion Have Not Been Decided.**

18  Verizon mistakenly asserts that off-hand comments made by the Court during discussions

19  with counsel at the preliminary injunction hearing constitute a final ruling on any and all issues

20

21  [1] Herein, the terms "*Walker* Settlement" and "Final Order" refer to the Stipulation of Class
Action Settlement dated July 22, 2010, (attached hereto as Exhibit A), and the Final Order and
22  Judgment dated January 14, 2011, (attached hereto as Exhibit B), in *Walker, et al. v.
OpenMarket, et al.*, Case No. 08 CH 40592, Circuit Court of Cook County, Illinois.
23  [2]   In the Final Order, it clearly states that the Cook County Circuit Court had and would
"continue to have, **exclusive jurisdiction over the subject matter of this action, and over the
24  Parties to the Agreement** ... to consummate, administer, supervise, **construe** and enforce the
Agreement."  [Exhibit B, ¶ 1 (emphasis added)].

25

1  raised in JAWA's Supplemental Brief.  The Court made no record that it was ruling definitively

2  from the bench on anything related to the Supplemental Brief.  On the contrary, the record

3  actually reflects that at the end of the hearing on April 14, 2011, the Court addressed the

4  pending motions and—without ever mentioning the Supplemental Brief—stated that it would

5  "try to get a decision out on ... plaintiff's preliminary injunction issue [in] the next few days."

6  [Transcript, April 14, 2011, 376:11-13].  In its subsequent Order granting Verizon a preliminary

7  injunction, (which is now on appeal), the Court did not even <u>reference</u> any of the issues raised in

8  the Supplemental Brief or the Motion, let alone rule on them; and that Order alone contains the

9  Court's actual rulings.  *See Ellison v. Shell Oil Co*., 882 F.2d 349, 352 (9th Cir. 1989) ("Oral

10  responses from the bench may fail to convey the judge's ultimate evaluation . . . . Thus, we will

11  review the written judgment.").

12  **2.     Verizon Was Indeed a Party to the Illinois Settlement.**

13  Verizon's claim that it was somehow not a party bound by the Illinois Settlement is

14  erroneous and, quite frankly, shocking on its face.[3] JAWA voluntarily entered the Illinois

15  litigation at the behest of Verizon's aggregator, OpenMarket, in order to resolve and settle the

16  issues therein as to Verizon and OpenMarket. The Settlement specifically defines Verizon as a

17  "Released Party" and it is also clear that Verizon <u>was</u> in fact a direct party to at least one or

18  more of the "Related Actions" listed in the settlement itself that were consolidated into the

19  national class action (e.g., the *Shaw* case in the District Court for the Western District of

20  Washington), as well as one of the previously settled cases that was included in the definition of

21  the Settlement Class (i.e., *Paluzzi v. Cellco Partnership d/b/a Verizon Wireless,* No. 07 CH

22

23  ---

[3]  The *Walker* Settlement is the only agreement to which JAWA and Verizon are both parties in which JAWA agreed to comply with otherwise completely voluntary MMA guidelines. It is significant that while Verizon is claiming it was never a party to that settlement, it is seeking to hold JAWA accountable for alleged violations of JAWA's promise therein to abide by the MMA Guidelines.  Verizon cannot have it both ways.

24

25

37213 in the Circuit Court of Cook County, Illinois).  In fact, Verizon actually stipulated that all claims against it in the *Shaw* case would be dismissed as a result of the *Walker* Settlement.[4] [*See* Fifth Joint Status Report Re: Settlement, attached hereto as Exhibit C].

Verizon concedes that it was a named "Released Party" in the *Walker* Settlement and that it is also enjoined from bringing claims for contribution and indemnity related to the Released Conduct defined therein.  Nevertheless, Verizon disingenuously contends it is not "bound" by the Final Order. [Response to Motion, p. 6]. Verizon is wrong. It **is**, in fact, fully bound by the *Walker* Settlement and Final Order.

Verizon's claim that it was only bound by the bar on contribution and indemnity claims is really an admission that it cannot sustain its current claims, since they are all, at their core, nothing more than an attempt to force JAWA to repay Verizon for damages it claims were incurred with respect to its customers because of things JAWA allegedly did.  That is the very definition of a claim for contribution or indemnity.[5]  Also, Verizon's interpretation of this ban as applying only to past claims is factually flawed because Verizon **never had any right** to contribution or indemnity with respect to the *Walker* Settlement at all, since it never paid anything to settle it! Therefore, there could be no contribution or indemnity as to that settlement.

The **only** logical interpretation of the injunctive provision in the Final Order is that it was intended to bar any claims Verizon might try to bring in the future—**after** the *Walker* Settlement—in connection with, or arising from, the very same operative facts, customers, and issues resolved therein.  Yet that is precisely what Verizon is attempting to do here!  Therefore

---

[4] This representation is either an admission that Verizon was bound by the *Walker* Settlement or a blatant lack of candor to the tribunal in *Shaw*.

[5] In point of fact, Verizon has no basis for an indemnity claim with respect to any monies it has expended before or since the Final Order, since all such expenditures have been made using JAWA's money. But, if Verizon had any such claims, it should have brought them in the Illinois Court.

Verizon's current claims are completely barred.  At a minimum, the question of whether those claims are barred by the Final Order is subject exclusively to the Illinois Court's jurisdiction.

Finally, even assuming *arguendo* that Verizon was somehow not an actual "party" to the *Walker* Settlement, it would *still* be bound by it and Final Order because:

> ... a judgment can bind persons not parties to the litigation in question and not subject in personam to the jurisdiction of the court if the persons are **in privity** with parties to the litigation. *United States v. Truckee-Carson Irrigation Dist.*, 649 F.2d 1286, 1303 (9th Cir.1981), modified on other grounds, 666 F.2d 351 (9th Cir.1982), aff'd in part & rev'd in part on other grounds sub nom. *Nevada v. United States*, 463 U.S. 110, 103 S.Ct. 2906, 77 L.Ed.2d 509 (1983); *Meza v. General Battery Corp.*, 908 F.2d 1262, 1266 (5th Cir.1990). Privity represents a legal conclusion that the relation "between the party and non-party is so close that the judgment may fairly bind the non-party." *Truckee-Carson Irrigation Dist.*, 649 F.2d at 1303; see also *Gill & Duffus Serv., Inc. v. A.M. Nural Islam*, 675 F.2d 404, 405 (D.C.Cir.1982) (per curiam) ("The term 'privity' signifies that the relationship between two or more persons is such that a judgment involving one of them may justly be conclusive upon the others, although those others were not party to the lawsuit.").

*Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1277-78 (9th Cir. 1992)(emphasis added)). Here, Verizon, at a minimum, was clearly in privity with OpenMarket by its own admission.[6] [See Response, footnote 2].  As a result, all of Verizon's claims must be dismissed pursuant to Rule 12(b)(1), FRCP.

**3.      Verizon Released All Claims As Part of the *Walker* Settlement.**

It is absurd for Verizon to now claim it did not intend to release any claims against JAWA in the *Walker* Settlement that could be brought in the future.  Indeed, nothing else could have been intended under these circumstances. Verizon's argument on this point rests on the

---

[6]  OpenMarket was the agent and representative of Verizon because both had the same potential liability for consumer claims raised in the various class actions consolidated in the *Walker* case. A release for OpenMarket created a release for Verizon.   Thus, because Verizon and OpenMarket interests were aligned, there was privity between the parties. *See Yorulmazoglu v. Lake Forest Hosp.*, 359 Ill. App. 3d 554, 559 (1st Dist. 2005).

unfounded assertion that Verizon and OpenMarket (with whom Verizon was in privity) were not

specifically defined as parties releasing claims. The express language of paragraphs 14 and 15 of

the Final Order completely refutes this contention:

> 14.   Each Released Party, by operation of this Judgment, is now and forever, absolutely, unconditionally, and permanently released and discharged from any and all past, present and **future** Claims or Causes of Action[7] that are based upon or related to, **directly or indirectly, in whole or in part,** (a) the allegations, facts, subjects, or issues set forth or raised in the Action or Related Actions, or (b) the Released Conduct.[8]
>
> 15.    Each of the **Wireless Carriers** and the Defendants is now and forever  barred  and  permanently  enjoined  from  commencing, prosecuting, or asserting any claim for contribution or indemnity (whether by contract or any other source against any Defendant that is based upon on [sic] or related to, directly or indirectly, in whole or in part, (a) the allegations, facts, subjects, or issues set forth or raised in the Action or Related Actions, or (b) the Released Conduct.

[Exhibit B, p.5 (emphasis added)].  The foregoing provisions, taken together and read in proper

context, leave no doubt that Verizon, as one of the Wireless Carriers, along with all of the

Defendants in the *Walker* case, were released from, and releasing, all claims they had or might

have against one another arising from or related to that action, (i.e., the "Related Actions" or

---

[7] "Claims or Causes of Action" was defined as broadly as possible and included:

> ... any and all claims or causes of action of every kind and description ... and any allegations of wrongdoing ... [that] could be asserted in the Action, in any of the Related Actions, or in any other action or proceeding before any court ... **regardless of whether they are known or unknown, foreseen or unforeseen, suspected or unsuspected,  or  fixed  or  contingent,  at  the  time  of  this settlement**.

[Exhibit A, pp.7-8 (emphasis added)].

[8] "'**Released Conduct**' means any and all direct or indirect acts, omissions, representations, conduct, legal duties, unjust enrichment, trade practices, or obligations that arise out of, or are are [sic] related or connected in any way with one or more of the following: (1) the advertising, marketing, sale, or purchase of the Mobile Content, (2) the transmission, operation, control, or receipt of the Mobile Content, (3) the billing for the Mobile Content, (4) the receipt of money for the Mobile Content or (5) recycled telephone numbers." [Exhibit A, p.14].

"Released Conduct").  The fact is, other than the expressly "Excluded Parties", all claims against the Released Parties were extinguished regardless of who among them might try to raise those claims.  As set forth below, because Verizon could have raised **all** of its current claims in the *Walker* case, they are barred.

**4.     Verizon Was Required to Bring Its Claims in Illinois.**

Verizon attempts to distinguish its claims by alleging JAWA's conduct was directed to Verizon alone. This is incorrect. In truth, all of Verizon's claims are undeniably related "directly or indirectly, in whole or in part . . . [to] the allegations, facts, subjects, or issues set forth or raised in [or resolved by] the [*Walker*] Action or Related Actions. . . ." [*Id*.].  Verizon admits Illinois law governs the determination of whether there is an identity of claims, and the Illinois Supreme Court has held that:

> . . . the assertion of different kinds or theories of relief still constitutes a single cause of action if a single group of operative fact give rise to the assertion of relief.
>
>    . . .
>
> While one group of facts may give rise to a number of different theories of recovery, there remains only a single cause of action.

*River Park, Inc. v. City of Highland Park*, 184 Ill. 2d 290, 307-08, 310, 703 N.E.2d 883, 891, 892 (1998).  The operative facts addressed and resolved by the *Walker* Settlement were explicitly, yet broadly defined as:

> ... any and all direct or indirect acts, omissions, representations, conduct, legal duties, unjust enrichment, trade practices, or obligations that arise out of, or are are [sic] **related or connected in any way** with one or more of the following: (1) the advertising, marketing, sale, or purchase of the Mobile Content, (2) the transmission, operation, control, or receipt of the Mobile Content, (3) the billing for the Mobile Content, (4) the receipt of money for the Mobile Content or (5) recycled telephone numbers.

1   [Exhibit A, p.14 (emphasis added)].   Both JAWA (and Verizon) were "absolutely,

2   unconditionally and permanently released from [any and all claims or causes of action] based

3   upon or related to, directly or indirectly, in whole or in part ... the Released Conduct" as defined

4   above. [Exhibit B, p.5].  Yet Verizon's claims in the instant case are all based "in whole or in

5   part" on allegations that JAWA made some deceptive representations (e.g., the March 2009 e-

6   mail to OpenMarket) and engaged in improper conduct (e.g., using firewall software and non-

7   MMA compliant landing pages), beginning in March 2009, to: (i) gain access to Verizon's

8   network for the sale, transmission and billing of Mobile Content; and (ii) to advertise, market,

9   sell and collect money from Mobile Content.  This is the very same conduct that was released!

10  Thus, regardless of how Verizon may choose to title its claims here, they all clearly arise from

11  the same "group of facts" (i.e., JAWA's alleged deception of its customers who had wireless

12  service with Verizon), and constitute *de facto* claims for contribution or indemnification.

13  Therefore, they are barred.

14       *Walker* involved claims by Verizon consumers and others who contended that the landing

15  pages for PSMS services were deceptive.  The *Walker* Settlement required JAWA to become

16  substantially compliant with the MMA guidelines and to agree to abide by them.  [Exhibit A,

17  p.21]. Any claims for alleged loss of "goodwill" to Verizon stemming from JAWA's actions

18  were thus required to be raised in *Walker*, since the settlement was intended on its face to

19  resolve all pending issues that were or could have been raised therein, not just between the

20  members of the class and the defendants therein, but also as to the wireless carriers such as

21  Verizon.  Indeed, the very definition of "claims" in the *Walker* Settlement was purposefully

22  defined broadly to include torts, unfair or deceptive practices, contract actions, unjust

23  enrichment, claims arising out of statute, and any demands for equitable relief and encompasses

24  all of Verizon's current claims.   [Exhibit A, pp. 7-8]. In fact, JAWA voluntarily agreed to

25

become a party in that action and to agree to abide by its terms and in addition, pay $1.6 million dollars to, inter alia, resolve any loss of "goodwill" to Verizon.

Additionally, the Final Order was entered on January 14, 2011, less than **two months** before this suit by Verizon was brought on March 7, 2011.  Verizon incredibly claims it **<u>first became aware</u>** of JAWA's allegedly fraudulent behavior only in mid-February 2011, which would have been one month **after** the Final Order was entered.[9]  And yet, it is patently obvious that this allegedly fraudulent behavior is the very same conduct which Verizon was, or should have been, fully aware of at the time of the *Walker* Settlement.  Any allegations that JAWA conducted fraudulent activity in violation of the *Walker* Settlement just a month after it became final is also conclusive proof that Verizon should have availed itself of the Illinois Court to complain of it.

Instead of doing that, or even bothering to ask whether JAWA was in the process of making the necessary changes to comply with the *Walker* Settlement, or placing JAWA on notice of any issue with its compliance and giving JAWA an opportunity to cure—as required under the MMA Guidelines—Verizon waited until the time for appealing the Final Order had passed, and then prepared and filed this lawsuit even though Verizon, by its own admission, was already aware of JAWA's allegedly fraudulent actions as early as March, 2009.[10]  As a result,

---

[9] February 13, 2011 is also conveniently the last day that JAWA could have elected to appeal from the Final Order.  If Verizon had brought this action prior to that date, JAWA would have cried foul and certainly would have sought to appeal, which could have led to termination of the *Walker* Settlement, leaving Verizon with potential liability to the *Walker* consumers nationwide while pursuing JAWA.

[10] Verizon knew that if JAWA appealed from the Final Order, it could ultimately result in termination of the entire *Walker* Settlement, which would negate Verizon's status as a Released Party.  [*See* Exhibit A, p.30 ("... Defendants, solely or jointly, shall have the right to terminate this Agreement by providing written notice of their or its election to do so ('Termination Notice') to all other Parties hereto within forty-five (45) days of: ... the date upon which the Judgment is modified or reversed in any material respect by the Illinois Appellate Court or the Illinois Supreme Court.")].  Therefore, after compelling OpenMarket (and thereby JAWA) to enter into the *Walker* Settlement and convincing JAWA to pay $1.6 million dollars—which

1    any claims arising from those alleged actions were available to be asserted by Verizon in the

2    *Walker* litigation and were released.  Thus, Verizon is now barred from bringing them outside of

3    Illinois and in disregard of that court's Final Order.

4             **5.        Verizon's Alleged Damages All Relate to the Released Conduct.**

5           Every Count in Verizon's Complaint and proposed Amended Complaint arises from, and

6    is directly related to, the same operative facts and issues that formed the nucleus of the class

7    action claims resolved by the *Walker* Settlement.  As such,

8             ... permitting litigation of [Verizon's] claims through the use of
         evidence of those sales practices and patterns that were the subject of

9             the class action would impair the finality of the class settlement to an
         unacceptable degree. In effect, this would permit the relitigation of

10            the released claims.

11   *In re Prudential Ins. Co. of Am. Sales Practice Litig.*, 261 F.3d 355, 362-63 (3d Cir. 2001).  Try

12   as it might, Verizon's attempts to repackage its claims as distinct from *Walker* are futile.  The

13   only damages that Verizon has ever articulated in this matter arise directly from the claims that

14   its customers, who were also JAWA's customers, were somehow defrauded and, as a result,

15   Verizon's goodwill was somehow collaterally damaged.  Aside from the obvious fact that this is

16   pure nonsense on its face, since no customer of Verizon and JAWA would discontinue their

17   services with the former to go with a competing carrier, because of the latter, where all other

18   carriers also carried the same JAWA services; Verizon cannot prove any harm to its goodwill

19   because all of the allegations of customer deception were explicitly resolved by *Walker* shortly

20   _____

21   enabled Verizon to be free of liability—Verizon surreptitiously waited until the Final Order
became non-appealable (i.e., February 13, 2011, 30 days after it was entered) before pursuing

22   the very same issues and claims before this Court instead of the Illinois court. If JAWA had
known what Verizon was planning, JAWA would never have agreed to the Settlement at all; and

23   had JAWA had any indication before February 13, 2011, that Verizon intended to raise these
same claims that JAWA rightfully viewed as fully released through the *Walker* Settlement,

24   JAWA, at a minimum, would have appealed the Final Order to protect its rights.

25

before this action was brought, and Verizon has used JAWA's money to pay for its alleged goodwill, and no customer could have logically terminated service with Verizon because of JAWA's services, and migrated to another carrier that did not carry JAWA's services.

**6.    The Final Order is Specifically Enforceable Against Verizon and Was Designed to Prevent Exactly What Verizon is Attempting To Do in This Case**

Verizon's attempt to rely on an alleged "express disclaimer" in the *Walker* Settlement is either a purposeful or grossly negligent misquotation of that document.  The quoted language in Verizon's Response comes from Section 1542 of the California Civil Code.  However, contrary to Verizon's assertions, that language did not create any type of disclaimer for "unknown" claims in the *Walker* Settlement.  Indeed, it is included in the *Walker* Settlement for the exact **opposite** purpose; namely, to make it clear that:

> . . . any member of the Settlement Class, or any Releasing Party **shall be deemed to have, and shall have, expressly <u>waived and relinquished, to the fullest extent permitted by law, the provisions, rights and benefits of § 1542 of the California Civil Code, which provides as follows:</u>** "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE . . . ."

[Exhibit A, p.17 (emphasis and super-emphasis added)].  In other words, rather than being an "express disclaimer" as Verizon has alleged, the foregoing completely **eliminates** any disclaimers!  In fact, it goes so far as to state that the parties:

> . . . acknowledge that they may discover facts in addition to or different from those that they now know believe to be true with respect to the subject matter of the Release, but that **it is their intention to finally and forever settle and release the Released Claims, notwithstanding any Unknown Claims they may have ....**

[*Id.*].

Thus, the *Walker* Settlement was intended to (and does) apply to **future** (and even allegedly unknown) claims precisely such as those being alleged by Verizon here; that are based

"in whole or in part" or "directly or indirectly" on the Released Conduct.  At the time of the settlement, Verizon was clearly aware that consumers were alleging that JAWA had non MMA compliant landing pages.  Verizon has argued that the suspected fraudulent activity to obtain access to its network began as early as March 2009.  If Verizon believed that the landing pages at issue in *Walker* were not MMA complaint and it knew that access to the Verizon network required MMA complaint pages, then Verizon knew or should have known then it had potential claims involving JAWA[11]—indeed, the very same claims it makes here.

### 7.     The *Colorado River* Doctrine Applies and Requires Dismissal.

Verizon mistakenly asserts that there is no reason for the Court to abstain based on the Illinois action because it is allegedly over, and therefore this is not a situation where "contemporaneous actions" are pending. But this is simply not accurate. Verizon conveniently ignores the fact that the Illinois court has **specifically** retained exclusive jurisdiction over the *Walker* Settlement and all future claims arising out of it, including specifically the type of claims Verizon asserts here. [Exhibits A and B]. Therefore, that "action" is NOT over, and is still ongoing in that the Illinois court expressly retains jurisdiction until the statute of limitations runs on all claims defined in the *Walker* Settlement or related (directly or indirectly) to the Released Conduct. Verizon simply cannot ignore the preclusive and binding effects of the *Walker* Settlement and Final Order, nor should this Court be misled into doing so.

### CONCLUSION

For all the reasons set forth above, Defendants respectfully request that the Court abstain from hearing Verizon's claims and dismiss all remaining Counts of the Complaint for lack of subject matter jurisdiction.

---

[11] More accurately, Verizon should have known it had potential claims against the Aggregators that submitted the landing page, since JAWA had no privity with Verizon

1    **RESPECTFULLY SUBMITTED** this 11th day of October, 2011.

2    **WILENCHIK & BARTNESS, P.C.**          **GRANT WOODS LAW P.C.**

3    /s/ Dennis I. Wilenchik                /s/ Grant Woods

4    Dennis I. Wilenchik, Esq.              Grant Woods, Esq.
     The Wilenchik & Bartness Building      Two Renaissance Square

5    2810 North Third Street                40 N. Central Ave, Suite 2250
     Phoenix, Arizona 85004                 Phoenix, Arizona 85004

6    admin@wb-law.com                       gw@grantwoodspc.net
     *Attorneys for Defendants Jason Hope and*   *Co-counsel for Defendants Jason Hope*

7    *Wayne P. Destefano, et al.*           *and Wayne P. Destefano, et al.*

8

9                    **<u>CERTIFICATE OF SERVICE</u>**

10          I certify that on this 11th day of October, 2011, I electronically transmitted the attached

11   document to the Clerk's office of the United States District Court, District of Arizona, using a
     Clerk of Court hosted electronic filing system for filing and the transmittal of a Notice of

12   Electronic Filing to all CM/ECF registrants.

13

14   /s/ Jill Hayhurst

15

16

17

18

19

20

21

22

23

24

25

                                    14