Paul K. Charlton (Bar No. 012449)
Lindsi M. Weber (Bar No. 025820)
GALLAGHER & KENNEDY, P.A.
2575 East Camelback Road
Phoenix, Arizona 85016-9225
Telephone:    (602) 530-8000
Facsimile:     (602) 530-8500
Email:          paul.charlton@gknet.com
                 lindsi.weber@gknet.com

Marcos Jiménez (admitted pro hac vice)
Scott Cosgrove (admitted pro hac vice)
Ann M. St. Peter-Griffith (admitted pro hac vice)
Audrey Pumariega (admitted pro hac vice)
KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
1441 Brickell Avenue, Suite 1420
Miami, Florida 33131
Telephone:    (786) 587-1077
Facsimile:     (305) 675-7970
Email:          MJimenez@kasowitz.com
                 SCosgrove@kasowitz.com
                 AStpetergriffith@kasowitz.com

*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Cellco Partnership d/b/a Verizon Wireless,<br><br>        Plaintiff,<br><br>v.<br><br>Jason Hope; et al.,<br><br>        Defendants. | Case No. 2:11-cv-00432-DGC<br><br>**PLAINTIFF'S MOTION TO DISMISS THIRD AMENDED COUNTERCLAIMS**<br><br>(Assigned to the Hon. David G. Campbell) |

Pursuant to Fed. R. Civ. P. 12(b)(6), Cellco Partnership d/b/a Verizon Wireless ("Verizon Wireless") hereby moves to dismiss the *Third Amended Counterclaims* (Doc. 220; the "TAC") filed by Counterclaimants ("JAWA") for failure to state a claim upon which relief can be granted.  This Motion is supported by the record and the following:

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.      INTRODUCTION.

JAWA asserts ten causes of action in the TAC: (i) tortious interference with contract and business expectancies; (ii) conspiracy to tortiously interfere; (iii) business

1

1  disparagement/injurious falsehood; (iv) conversion; (v) unjust enrichment; (vi) constructive

2  trust; (vii) violation of the Sherman Act; (viii) violation of the New Jersey Antitrust Act;

3  (ix) abuse of process; and (x) violation of the Racketeer Influenced and Corrupt

4  Organizations ("RICO") Act.  *See* TAC at ¶¶ 97-209.  JAWA fails to allege facts sufficient

5  to state a claim for any of these causes of action.

6      Based on the multiple prior amendments of the Counterclaims, dismissal of the TAC

7  with prejudice is appropriate.  JAWA has filed *five different counterclaims*, and none have

8  any possible chance of success.  At some point these multiple attempts must be put to rest;

9  thus, Verizon Wireless respectfully requests that the Court dismiss the TAC with prejudice.

10  **II.      STANDARD OF REVIEW FOR MOTION TO DISMISS.**

11      To survive dismissal for failure to state a claim, a pleading must contain more than

12  mere "labels and conclusions" or a "formulaic recitation of the elements of a cause of

13  action"; it must contain factual allegations sufficient to "raise a right of relief above the

14  speculative level."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L.

15  Ed. 2d 929 (2007).  While "a complaint need not contain detailed factual allegations . . . it

16  must plead 'enough facts to state a claim to relief that is plausible on its face.'"  *Clemens v.*

17  *DaimlerChrysler Corp.*, 534 F.3d 1017, 1022 (9th Cir. 2008) (quoting *Twombly*, 550 U.S.

18  at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that

19  allows the court to draw the reasonable inference that the defendant is liable for the

20  misconduct alleged."  *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009)

21  (citing *Twombly*, 550 U.S. at 556).

22      The plausibility standard "asks for more than a sheer possibility that a defendant has

23  acted unlawfully.  Where a complaint pleads facts that are 'merely consistent with' a

24  defendant's liability, it 'stops short of the line between possibility and plausibility of

25  entitlement to relief.'"  *Id.* (quoting *Twombly*, 550 U.S. at 555) (internal citations omitted).

26  Similarly, legal conclusions couched as factual allegations are not given a presumption of

27  truthfulness, and "conclusory allegations of law and unwarranted inferences are not

28  sufficient to defeat a motion to dismiss."  *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir.

1998).  The TAC formulaically recites the elements of the claims asserted and does not allege facts supporting facially plausible claims.  Accordingly, the TAC should be dismissed with prejudice.

## III.   LEGAL ANALYSIS.

### A.   The Tortious Interference Claims Fails as a Matter of Law (Count 1).

JAWA claims that Verizon Wireless intentionally interfered with JAWA's contracts with the Aggregators and JAWA's customers by notifying them of this lawsuit and terminating JAWA's ability to run programs on the Verizon Wireless network.  However, even accepting JAWA's allegations as true, they do not state a tortious interference claim.

Intentional interference with contractual relations requires: "(1) existence of a valid contractual relationship, (2) knowledge of the relationship on the part of the interferor, (3) intentional interference inducing or causing a breach [of the contract], (4) resultant damage to the party whose relationship has been disrupted, and (5) that the defendant acted improperly."  *Safeway Ins. Co. v. Guerrero*, 210 Ariz. 5, 10 (2005).  Tortious interference requires proof that a party engaged in "improper" conduct.  *See, e.g., Wagenseller v. Scottsdale Mem'l Hosp.*, 147 Ariz. 370, 387-88 (1985).  In other words, liability must be based on more than the act of interference -- the interference must be both intentional and improper.  *Neonatology Assocs., Ltd. v. Phoenix Perinatal Assocs. Inc.*, 216 Ariz. 185, 187 (App. 2007); *see also Wagenseller*, 147 Ariz. at 388 ("nothing inherently wrongful in 'interference' itself"); *Samaritan Health Sys. v. Super. Ct.*, 194 Ariz. 284, 294 (App. 1998) (mere fact of breach does not establish improper conduct).

As explained in Section III.C below with regard to JAWA's disparagement claim, Verizon Wireless' filing of this suit and notifying those with a close relationship to the case – including the Aggregators - are absolutely privileged acts and also are protected by the *Noerr-Pennington* doctrine.  This applies with equal force to JAWA's claims for tortious interference.  *Theme Promotions, Inc. v. News Am. Mktg. FSI*, 546 F.3d 991, 1007 (9th Cir. 2008) (holding that *Noerr-Pennington* doctrine applies to state law tortious interference claims).

Even if the letters to the Aggregators were not absolutely privileged, those letters – and Verizon Wireless' decision to terminate JAWA's ability to do business on the Verizon Wireless network – cannot be considered "improper" interference with JAWA's contracts as a matter of law.  Arizona law recognizes that a party to a contract has the right to protect its contractual interest by asserting that interest.  Such an assertion is not "improper" even if it causes a third party to breach or terminate an existing contract.  *See, e.g., Strojnik v. Gen. Ins. Co. of Am.*, 201 Ariz. 430, 433-34 (App. 2001); *Wyatt v. Ruck Const., Inc.*, 117 Ariz. 186, 190 (App. 1977).  In Arizona, a defendant protecting its own contractual interest "is privileged to prevent the performance of a contract of another which threatens it." *Wyatt,* 117 Ariz. at 190.  That is, one party to a contract is entitled to assert its contractual rights, even to the point of insisting that a third party terminate its relationship with the other party to that contract.  *Id.* at 190-91 (affirming summary judgment for defendant on tortious interference claim because defendant's demand that contractor remove plaintiff from job or face a breach of contract action was privileged).

As set forth in the letter attached as Exhibit 1 to the TAC, Verizon Wireless has extensive rights arising from its contracts with the Aggregators, including the right to terminate any program operating under those contracts at Verizon Wireless' sole discretion.  JAWA does not dispute that Verizon Wireless has this absolute right under its contracts with the Aggregators and that it was exercising those rights when it terminated JAWA's programs.  While JAWA makes vague allegations regarding Verizon Wireless' supposed motives for making this decision, in the absence of some allegation that the decision was not specifically authorized by Verizon Wireless' contracts with the Aggregators, it cannot form the basis for a tortious interference claim.

Finally, as this Court has recognized, vague allegations of improper intent are insufficient to support a claim for intentional interference with contractual relations:

> [Movants] contend that there are absolutely no facts in support of GRK's conclusory assertions that the Quarles Defendants acted with improper intent and filed suit to interfere with GRK's contract. The Court agrees.
> …
> But the mere allegation that interference was improper is a legal conclusion, not a statement of fact.  Legal conclusions couched as factual allegations are not given a

4

1
2

presumption of truthfulness. … GRK pleads no facts that allow the Court to draw the inference that the Quarles Defendants filed the Superior Court litigation with any improper intent. … As a result, the Court must dismiss the claim against the Quarles Defendants.

3   *GRK Holdings, LLC v. First Am. Title Ins. Co.*, 2010 WL 3940575, *9, 2010 U.S. Dist.

4   LEXIS 107065, *26-27 (D. Ariz. Oct. 6, 2010). JAWA has not pled specific facts that

5   plausibly support the bare assertions of improper intent. At best, JAWA generally claims

6   that Verizon Wireless had a competitive reason to put JAWA out of business. *See* TAC ¶¶

7   27-29. JAWA, however, does not and cannot refute the fact that Verizon Wireless had a

8   contractual right to terminate JAWA's programs, as discussed above. Thus, as in *GRK*

9   *Holdings*, JAWA's vague allegations of improper intent must be disregarded, and this

10  claim dismissed.

11  **B.   The Conspiracy to Tortiously Interfere Claim Fails as a Matter of Law**
12      **(Count 2).**

13      Because JAWA's underlying claim for tortious interference fails, the claim for

conspiracy to tortiously interfere also fails. *See Menefield v. Helsel*, 78 F.3d 594, 1996

14  WL 109404, at *6 (9th Cir. Mar. 12, 1996) (because "[t]here is no such thing as a

15  conspiracy to commit lawful conduct," conspiracy claims necessarily fail where the

16  underlying claims cannot survive). Even assuming that JAWA stated a claim for tortious

17  interference, the tortious interference conspiracy claim still cannot survive a motion to

18  dismiss. This claim is little more than a restatement of the underlying tortious interference

19  claim, without any allegations indicating what, when or how the supposed conspiracy was

20  carried out with "the Aggregators and internal employees as well as other Wireless

21  Carriers" as alleged in this count.[1] TAC ¶ 38. For the reasons set forth *infra*, Section G,

22  JAWA has not pled – and cannot plead – that there was any "agreement" between Verizon

23  Wireless and either the Aggregators or competing Wireless Carriers to interfere with the

24  JAWA's contracts. Therefore, the conspiracy to tortiously interfere claim fails.

25

26

27  _____

[1] To the extent that JAWA accuses Verizon Wireless of conspiring with the Aggregators to interfere with the Aggregators' *own* contracts with JAWA, that allegation is nonsensical. A party cannot conspire to interfere with its own contract. *See, e.g., Am. Family Mut. Ins. Co. v. Zavala*, 302 F. Supp. 2d 1108, 1121 (D. Ariz. 2003); *Farris v. County of Camden*, 61 F. Supp. 2d 307, 350 (D.N.J. 1999).

28

**C.   JAWA Has Failed to Allege Any Actionable Statements to Support the Claims for Business Disparagement and Injurious Falsehood (Count 3).**

JAWA points to the following specific statements as supporting its disparagement claims: (1) the allegedly false allegations in the complaint in this case; (2) Verizon Wireless' March 8, 2011 press release announcing the filing of the complaint, (3) the letters to the Aggregators, and (4) unspecified and similar statements made to Aggregators and Wireless Carriers.  TAC ¶ 112.  None of these allegations can support a claim for disparagement as a matter of law.

First, statements made by Verizon Wireless in its pleadings or other documents associated with this case cannot support any of JAWA's causes of action.  Statements made in connection with a judicial proceeding, even if defamatory, are absolutely privileged.[2]  These statements are also protected by the *Noerr-Pennington* doctrine.  *See, e.g., Theme Promotions, Inc. v. News Am. Marketing FSI*, 546 F.3d 991, 1006-07 (9th Cir. 2008); *Krasnyi Oktyabr, Inc. v. Trilini Imports*, 578 F. Supp. 2d 455, 475 (E.D.N.Y. 2008).

Verizon Wireless' communications with the Aggregators in its March 8th letters regarding the filing of this lawsuit are also privileged.  Arizona law provides that a party has a privilege to communicate with a third party regarding the filing of a lawsuit so long as that third party has a significant relationship with the suit.  *Hall v. Smith,* 214 Ariz. 309, 313 (App. 2007) (citing to the *Restatement (Second) Torts* § 587).  In *Hall*, the Court held that the privilege applied to a letter sent by a former employee to the CEO of the parent company against whom she had brought wrongful termination claims, since the parent company had a practical interest in the outcome of the litigation.  The letter outlined the allegations of her complaint, stated that her former employer's bad acts were clear from the activity in the case, and suggested that the former employer had socialized with the judge originally assigned to the case.  *Id.* at 311, 315 (citing *Romero v. Prince*, 513 P.2d

---

[2] *See Bailey v. Super. Ct.*, 130 Ariz. 366, 368 (App. 1981) (statements contained in complaint filed with Commission); *Drummond v. Stahl,* 127 Ariz. 122, 126 (App. 1980) (statements contained in motion filed to compel withdrawal of counsel and complaint filed with State Bar); *Sierra Madre Dev., Inc. v. Via Entrada Townhouses Assn.,* 20 Ariz.App. 550, 557 (App. 1973) (statement contained in complaint filed); *Todd v. Cox,* 20 Ariz. App. 347, 350 (App. 1973) (statements contained in affidavit attached to motion for new trial).

717, 720 (N.M. Ct. App. 1973)) (allegedly defamatory letter written to opposing counsel and also sent to the opposing party's lessee was privileged because, although not formally a party to the litigation, the lessee was "directly affected" by it).[3]  Like the non-party parent company in *Hall*, the Aggregators undoubtedly have a practical interest in and thus a "close relationship" to the outcome of this litigation; therefore, the letters informing the Aggregators of the lawsuit and the claims asserted therein are privileged.[4]

Moreover, Verizon Wireless' press release announcing this suit as well as the letters to the Aggregators cannot support a disparagement claim because JAWA has failed to articulate any specific statement in the press release or those letters that purportedly is false.  A "factual statement need only be substantially true in order to be protected from a suit for defamation."  *Unelko Corp. v. Rooney*, 912 F.2d 1049, 1057 (9th Cir. 1990).  Here, the press release simply summarized the allegations in and clearly referred to the complaint.  TAC, Ex. 2.  Similarly, the Aggregator letters, to the extent they comment on JAWA's conduct, do so by reference to what is pled in the complaint.  JAWA does not take issue with the accuracy of the summary of those allegations.  Instead, JAWA takes issue with the truth of the facts set out in the underlying complaint.  But those statements are privileged, and Verizon Wireless' accurate summary of those privileged statements in a press release or a letter to the Aggregators does not support a disparagement claim.  *Id.*

**D.    JAWA Fails to – and Cannot - Allege Sufficient Facts to Support a Conversion Claim (Count 4).**

Under Arizona law, "conversion is defined as 'an act of wrongful dominion or control over personal property in denial of or inconsistent with the rights of another.'"  *Case Corp.*

---

[3] *See also Green Acres Trust v. London,* 141 Ariz. 609, 614 (1984) (privilege to defame applies if recipient of defamatory statement has "some relationship" to the judicial proceeding); *Kitchen Hardware v. Kuehne & Nagel*, 205 Ga. App. 94, 97, 421 S.E.2d 550, 553 (Ga. App. 1992) (rejecting libel and tortious interference claims because communication from defendant to third party regarding plaintiffs' financial condition was "a privileged communication by which [defendant] sought to protect its own interests"); *Walker v. Majors*, 496 So.2d 726, 729 (Ala.1986) (letter from real estate agent to third party purchaser regarding subject matter of anticipated litigation held absolutely privileged, citing to the *Restatement (Second) of Torts* § 587).
[4] The letters to the Aggregators also are protected by the *Noerr-Pennington* doctrine, which protects "communications between private parties" when they are "sufficiently related to petitioning activity."  *Sosa v. DIRECTV, Inc.,* 437 F.3d 923, 935, n.8 (9th Cir. 2006).

7

*v. Gehrke*, 208 Ariz. 140, 143 (App. 2004).  To succeed on a claim for conversion, "plaintiff must have had the right to immediate possession of the personal property at the time of the alleged conversion."  *Id.*  Money is subject to a claim for conversion only where it "can be described, identified or segregated, and an obligation to treat it in a specific manner is established."  *Id.* (internal citations omitted).  However, "conversion does not lie to enforce the mere obligation to pay a debt which may be discharged by the payment of money generally."  *Autoville, Inc. v. Friedman*, 20 Ariz.App. 89, 92 (1973).

JAWA has failed to plead sufficient facts to show any entitlement to immediate possession of the funds at issue.  The TAC bases the conversion claim on the allegation that Verizon Wireless holds approximately "$9 million that must be paid to the SMS Aggregators for payment to JAWA, per the contracts between Verizon and the SMS Aggregators and the contracts between JAWA and the SMS Aggregators."  TAC at ¶115.  The TAC allegations make clear that the conversion claim is premised on monies Verizon Wireless allegedly owes to the Aggregators, and <u>not</u> on monies owed by Verizon Wireless to JAWA.  Thus, to the extent that anyone had a claim to this money from Verizon Wireless it would be the Aggregators, and not JAWA.[5]

Furthermore, the TAC makes plain that any obligation from Verizon Wireless to the Aggregators, and from the Aggregators to JAWA, to pay the funds at issue are based on the contractual relationships between the parties.  However, "a mere contractual right of payment, without more, does not entitle the obligee to the immediate possession necessary to establish a cause of action for the tort of conversion."  *Del Bino v. Bailey (In re Bailey)*, 197 F.3d 997, 1000 (9th Cir. 1999).  *See also Autoville*, 20 Ariz.App. 89 (finding no ownership or possessory interest where the obligations of the parties were based on a mere financing contract).  Instead, Arizona courts generally have required a possessory interest in the nature of a lien on the property and proceeds.  *See, e.g., Universal Mktg.*, 203 Ariz. 266 (holding that a conversion claim failed where a bank forwarded funds to a general,

---

[5] JAWA presumably could assert a claim against the Aggregators for money owed pursuant to its contracts with the Aggregators, but has chosen not to bring any such claims.

unsegregated and undifferentiated account, because the bank did not retain an immediate right to possession of the funds); *Case Corp.*, 208 Ariz. at 143-44 (distinguishing between claims that are based on a security interest from those based on a mere contract); *see also Lockerby v. Sierra*, 535 F.3d 1038 (9th Cir. 2008). JAWA states in conclusory fashion that it has a "present possessory interest" in the funds, TAC ¶116, yet fails to allege any facts to support this assertion. JAWA has not even alleged that the contracts on which this claim is based grant a security interest, or any other type of lien, in the funds at issue. Therefore, JAWA has failed to allege a sufficient property interest subject to conversion.

JAWA also has failed to plead sufficient facts to establish that Verizon Wireless had an obligation to JAWA to treat the funds in a specific manner. As noted above, to sustain a claim for the conversion of money, the plaintiff must allege both that the money can be described, identified or segregated, <u>and</u> that the defendant had an obligation to treat the money in a specific manner. *See Case Corp.*, 208 Ariz. at 143-44. A mere contractual obligation to pay money due, even if it is contemplated that such money will be paid out of a particular fund, is not sufficient to meet this requirement. *See Autoville*, 20 Ariz.App. 89. Here, JAWA has failed to allege, even in a conclusory fashion, that Verizon Wireless was under an obligation to JAWA to treat the funds in a specific manner. For all of these reasons, JAWA has failed to state a claim for conversion under Arizona law.

### E.    JAWA's Unjust Enrichment Claim Has No Basis (Count 5).

"Unjust enrichment occurs when one party has and retains money or benefits that in justice and equity belong to another. To establish a claim for unjust enrichment, a party must show: (1) an enrichment; (2) an impoverishment; (3) a connection between the enrichment and the impoverishment; (4) the absence of justification for the enrichment and the impoverishment; and (5) the absence of a legal remedy." *Trustmark Ins. Co. v. Bank One, Arizona, NA*, 202 Ariz. 535, 541 (App. 2002) (citation omitted).

The TAC does not set forth a plausible claim for unjust enrichment. The unjust enrichment claim is based almost entirely on JAWA's conversion claim. It not only fails to plead the elements of unjust enrichment, it does not plead any specific facts that would

1  establish a plausible claim for relief under this theory.  TAC ¶¶ 124-130.  For example,

2  except for conclusory statements, the TAC does not describe how JAWA was

3  impoverished or why it lacks a legal remedy.  The TAC also does not plead any specific

4  facts identifying the alleged conduct undertaken or how Verizon Wireless was enriched by

5  that conduct.  It also fails to address causation, which requires "a connection between the

6  enrichment and the impoverishment" and "the absence of justification."  *Trustmark,* 202

7  Ariz. at 541.  Accordingly, the unjust enrichment claim should be summarily dismissed.

8       **F.    The TAC Fails to Allege Facts Sufficient to Support the Request for
9              Imposition of a Constructive Trust (Count 6).**

10      The constructive trust claim also fails under Arizona law.  First, to impose a

11 constructive trust, the claimant must identify "specific property" belonging to the claimant.

12 *Burch & Cracchiolo, P.A. v. Pugliani*, 144 Ariz. 281, 286 (1985).  "A general claim for

13 money damages will not give rise to a constructive trust." *Id*.  Moreover, "the element of

14 fraud, either actual or implied, must always be present" to sustain a constructive trust.

15 *Honk v. Karlsson*, 80 Ariz. 30, 34 (1956).

16      Here, JAWA's claim is one for general money damages, not specific property.  As the

17 United States Supreme Court and the Ninth Circuit have recognized, "[u]nlike real or

18 personal property, money is fungible."  *United States v. Sperry Corp.,* 493 U.S. 52, 62 n.9

19 (1989); *Nickel v. Bank of America Nat'l Trust and Savings Ass'n,* 290 F.3d 1134, 1138

20 (9th Cir. 2002).  There is no "specific," identifiable property over which the Court could

21 impose a constructive trust.  As such, there is no legal basis for this claim.

22      Further, although JAWA makes a bare allegations of "fraud, misrepresentation,

23 concealment, and/or other unconscionable means," TAC ¶ 133, it has not articulated any

24 general facts or circumstances – let alone pled facts with particularity – to support a claim

25 for actual or constructive fraud.  Indeed, the TAC fails to allege with specificity *any* of the

26 elements of common law fraud. Thus, the "element[s] of fraud, either actual or implied"

27 (*Honk, supra*) are wholly absent and this claim should be dismissed.

28

### G. The Antitrust Claims (Counts 7 and 8) Do Not Support a Viable Cause of Action for Violation of Any Antitrust Laws.

JAWA fails to plead a claim under Section 1 of the Sherman Act, 15 U.S.C. § 1, because the TAC lacks factual allegations sufficient to plead the existence of any unlawful agreement.[6]   To establish a claim under Section 1, a plaintiff must demonstrate "a contract, combination, or conspiracy . . . [that] unreasonably restrained trade."  *Tan v. Univ. of S. Cal.*, 252 F.3d 1059, 1062 (9th Cir. 2001).  JAWA contends that Verizon Wireless entered into an illegal agreement with competing wireless carriers to cease doing business with JAWA; that it orchestrated an illegal boycott among Aggregators of PSMS content; and that it entered into unlawful agreements with Aggregators of PSMS content to cease doing business with JAWA.  But JAWA fails to allege facts sufficient to establish the existence of any horizontal agreement among competitors – either wireless carriers (*see infra* Part 1) or Aggregators (*see infra* Part 2).  And the assertion that Verizon Wireless agreed with individual Aggregators cannot support a claim because JAWA fails to allege that those arrangements had any impact on *competition* – as opposed to an individual competitor – in any properly defined market.  *See infra* Part 3.

### 1. JAWA Fails to Allege Sufficient Facts to Support Its Assertion That Verizon Wireless Reached Any Agreement With Competing Wireless Providers.

The claim that Verizon Wireless "implemented an illegal boycott" among wireless carriers is futile and subject to dismissal because JAWA has not pled and cannot show "either direct or inferential allegations" sufficient to sustain the accusation that the carriers acted pursuant to agreement rather than unilaterally.  *Twombly*, 550 U.S. at 562 (internal quotation marks omitted).  According to the TAC, each of the carriers ceased doing business with defendants after Verizon Wireless – and the Texas Attorney General – brought complaints against the defendants for fraud.[7]  TAC ¶¶ 159, 184.  Those allegations

---

[6] Defendants' claim under the New Jersey Antitrust Act, which tracks Section 1 of the Sherman Act, should be dismissed for the same reasons as their federal antitrust claims. *Cellco P'ship v. Hope*, 2011 WL 1792741, at *14 n.2, 2011 U.S. Dist. LEXIS 53713, *43 n.2 (D. Ariz. May 11, 2011).

[7] According to the press release attached to the TAC as Exhibit 2, the Texas Attorney General filed suit against defendants on the same day as Verizon.

raise no inference of prior agreement among the carriers.  To the contrary, it makes perfect sense for each carrier to protect its reputation and consumer goodwill and cease doing business with a company that stands publicly accused of fraud by a state attorney general.

At the outset, JAWA does not provide any direct allegations – that is, the "specific time, place, or person involved in the alleged conspirac[y]" – to support a claim under Section 1.  *Twombly*, 550 U.S. at 565 n.10.  JAWA asserts that "Verizon communicated with Wireless Carriers AT&T, T-Mobile, and Sprint . . . and coerced the carriers to agree to boycott JAWA," (TAC ¶¶ 158, 183), and that "upon information and belief, one or more Verizon representatives met with or contacted representatives of competitors (other Wireless Carriers) in order to direct or induce the competitors to adhere to Verizon's boycott of JAWA and to believe the March 9, 2011 press release and induce similar action against JAWA."  *Id.* ¶ 78.  But those assertions are merely conclusory – JAWA does not allege any time or place in which any meeting or communication occurred, nor the individuals who may have communicated or agreed.  Courts routinely refuse to accept allegations, like those here, lacking "concrete allegations about the content and circumstances of any actual agreement."  *In re Late Fee & Over-Limit Fee Litig.*, 528 F. Supp. 2d 953, 962 (N.D. Cal. 2007); *see also, e.g.*, *In re Travel Agent Comm'n Antitrust Litig.*, 583 F.3d 896 (6th Cir. 2009); *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1048 (9th Cir. 2008); *In re Elevator Antitrust Litig.*, 502 F.3d 47, 51 (2d Cir. 2007).

JAWA likewise offers nothing to support any inference that the carriers' actions reflected prior agreement as opposed to "lawful, unchoreographed free-market behavior." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009); *see In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 321-23 & n.22 (3d Cir. 2010).  JAWA alleges that each of the wireless carriers refused to conduct business with them in reaction to Verizon Wireless' press release stating that it had filed a complaint in the present suit.  (The Texas Attorney General's office issued its own press release announcing its suit targeting defendants' "high-tech fraud" only a day after Verizon Wireless' press release.[8])  And that "factual

---

[8] Press Release, Attorney General of Texas Greg Abbott, Texas Attorney General Seeks Halt to Fraudulent Text Messaging Scheme (Mar. 10, 2011),

context renders [defendants'] claim implausible"; it does not support an inference of conspiracy. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The carriers have a strong incentive not to do business with a company accused of fraud by both a national wireless service provider and a state prosecutor – irrespective of the action of other carriers, and the TAC contains no other allegations that could bridge the gap between an allegation of unilateral "parallel" behavior and conspiracy. *See Twombly*, 550 U.S. at 553-54.[9]

> **2.    JAWA Fails To Allege an Agreement Among Competing Aggregators.**

The TAC does not allege an agreement among competing Aggregators that would trigger Section 1 liability because, as in the case of the asserted agreement among wireless carriers, the TAC contains no factual allegations to support the claim that the Aggregators acted pursuant to an unlawful conspiracy. According to the TAC, Verizon Wireless sent letters to Aggregators "insist[ing]" that the Aggregators "refuse to deal" with defendants and each of the Aggregators followed that instruction and ceased doing business with defendants. TAC ¶¶ 141, 166. As Verizon Wireless explained in its motion to dismiss the prior version of the counterclaim, those allegations fail to establish the existence of any actionable agreement under Section 1. As alleged, Verizon Wireless' letter provides notice of its unilateral decision to terminate its business dealings with defendants and its demand that the Aggregators terminate defendants' access to the Verizon Wireless network. Because an aggregator simply acts as a middleman providing access to Verizon Wireless' network, an aggregator's implementation of Verizon Wireless' decision to refuse to deal with JAWA does not constitute a conspiracy for Section 1 purposes—it does

---

https://www.oag.state.tx.us/oagNews/release.php?id=3663.
[9] The Seventh Circuit's decision in *In re Text Messaging Antitrust Litig.*, 630 F.3d 622 (7th Cir. 2010), does not support JAWA. In *Text Messaging*, the court emphasized the "anomalous behavior" of defendants raising prices "in the face of steeply falling costs"— anomalous because falling costs allow a competitor to "reduce his price slightly in order to take business from his competitors, and certainly not to increase his price." *Id.* at 628. Even without a "smoking gun," the court concluded that factual allegations showing actions against one's self-interest, in addition to circumstantial allegations of parallel behavior, established a Section 1 claim that could withstand a motion to dismiss. *Id.* at 628-29. No similar allegations are made in the TAC.

not involve "two or more entities that previously pursued their own interests separately . . . combining to act as one." *Copperweld Corp. v. Indep. Tube Corp.*, 467 U.S. 752, 769 (1984).

Even assuming for the sake of argument that the counterclaim alleges an agreement between Verizon Wireless and each of the individual Aggregators that is subject to scrutiny under Section 1, such an agreement would not involve a "horizontal agreement[]" among direct competitors" that might be subject to "per se" condemnation – that is, condemnation without proof of actual anticompetitive effects  *NYNEX Corp. v. Discon, Inc.*, 525 U.S. 128, 135 (1998); *Nova Designs, Inc. v. Scuba Retailers Ass'n*, 202 F.3d 1088, 1092 (9th Cir. 2000) (same).  Any agreements between Verizon Wireless and Aggregators would be vertical agreements, which cannot be treated as a single horizontal agreement for purposes of evaluating their effects under the Sherman Act.  *See, e.g.*, *Dickson v. Microsoft Corp.*, 309 F.3d 193, 203-04 (4th Cir. 2002); *Brunson Commc'ns, Inc. v. Arbitron, Inc.*, 239 F. Supp. 2d 550, 562 (E.D. Pa. 2002) ("Courts have refused to find a horizontal conspiracy, where a single entity or person engages in separate vertical conspiracies with multiple parties, who do not conspire amongst themselves horizontally."); 6 Areeda et al, *Antitrust Law* ¶ 1402, at 18; *see also* TAC ¶¶ 142 (characterizing agreements as "vertical").[10]

Presumably for that reason, JAWA seeks to add what was missing from the prior version of the counterclaims – that is, an allegation that the Aggregators agreed, not just with Verizon Wireless, but with each other.  But JAWA's allegation that the Aggregators "directly communicated their intention to comply with Verizon's demand *to one another* and to Verizon," [TAC ¶ 142] (emphasis added), fails because the assertion is a mere conclusion, unsupported by any allegations concerning how, where, or when the Aggregators communicated and reached an agreement.  *See Twombly*, 550 U.S. at 557; *In re Travel Agent Comm'n Antitrust Litig.*, 583 F.3d at 904-05; *Kendall*, 518 F.3d at 1048.

---

[10] To the extent JAWA challenges the agreements between Verizon and the Aggregators under the antitrust rule of reason – based on anticompetitive harm from the agreements that outweighs any precompetitive benefit – the claim fails for reasons discussed *infra*, Part 3.

These allegations – raised for the first time in *this* amended counterclaim – amount to "a few stray statements [that] speak directly of agreement," which "on fair reading are merely legal conclusions resting on the prior allegations." *Twombly*, 550 U.S. at 564.

Moreover, there is no basis for an inference that the Aggregators acted pursuant to a horizontal agreement, rather than (as the TAC alleges) because Verizon Wireless directed them to stop dealing with defendants.  Because Aggregators make money only if wireless carriers deliver revenue billed to their customers, *see* TAC ¶ 41, an aggregator cannot continue to do business with a company when the carrier will no longer bill for its services.  This is not a case where a business would, by complying with the wishes of a supplier or distributor, forfeit an advantage to a competitor.  *Cf.  Toys "R" Us, Inc. v. FTC*, 221 F.3d 928 (7th Cir. 2000).[11]  To the contrary, any aggregator who continued to do business with the defendants in the circumstances alleged in the complaint would risk its far more important relationship – with Verizon Wireless – without reaping any identifiable competitive advantage.

   **3.   JAWA's Rule of Reason Claim Fails Because JAWA Does Not Allege a Relevant Market or an Anticompetitive Impact in that Market.**

JAWA's rule of reason claim should be dismissed because it does not allege facts sufficient to identify a relevant product market or competitive harm in such a market.  An alleged agreement may be illegal under the "rule of reason" if the harm to competition stemming from the agreement outweighs any procompetitive effects.  *See Tan*, 252 F.3d at 1062-63.  To establish a rule of reason claim, JAWA carries the initial burden of alleging "the relevant geographic and product markets" in which the parties compete, as well as facts demonstrating that the conduct in question had "an anticompetitive effect on those

---

[11] In *Toys "R" Us*, there was evidence that each toy manufacturer preferred to diversify away from Toys "R" Us, and would not have agreed to cut off warehouse stores without a prior agreement with their competitors, who would otherwise have an advantage in "that popular new market niche."  *Id.* at 936 ("That is a horizontal agreement.").  And in *Heartland Surgical Specialty Hospital v. Midwest Division, Inc.*, 527 F. Supp. 2d 1257 (D. Kan. 2007), the plaintiff offered direct and circumstantial evidence of a horizontal agreement among competing managed-care organizations not to extend managed-care contracts to specialty hospitals.

markets." *Big Bear Lodging Ass'n v. Snow Summit, Inc.*, 182 F.3d 1096, 1104-05 (9th Cir. 1999).  Although it is not clear precisely which agreement or agreements JAWA intends to challenge in the "rule of reason" claim, the failure properly to allege a relevant market or harm to competition in that market is fatal regardless.

The TAC lacks market defining allegations that provide a basis for evaluating possible anticompetitive effects.  To state a Section 1 rule of reason claim, JAWA must properly allege both the relevant geographic market and product markets in which it operates, and the failure to allege either "is a proper ground for dismissing a Sherman Act claim."  *Tan*, 252 F.3d at 1063; *Jacobs*, 626 F.3d at 1336 ("[B]oth the geographic and product market allegations are necessary for a plaintiff suing under § 1 of the Sherman Act to succeed.").

JAWA fails to define the relevant market in which to evaluate anticompetitive effects. JAWA only refers to "the market for premium text message services through wireless telecommunications networks," TAC ¶¶ 147, 172, but fails to allege the boundaries of this market, its participants, and whether there are any barriers to entry for new competitors. JAWA does not specify the "area of effective competition" for PSMS content, or whether there are any "alternative sources of supply . . . where buyers can turn" for similar services.  *Oltz v. St. Peter's Cmty. Hosp.*, 861 F.2d 1440, 1446 (9th Cir. 1988).  The failure to make such allegations makes it impossible to evaluate whether the removal of a single competitor could have any market-wide impact.  *See Queen City Pizza v. Domino's Pizza*, 124 F.3d 430, 436 (3d Cir. 1997) ("Where the [claimant] fails to define its proposed relevant market with reference to the rule of reasonable interchangeability and cross-elasticity of demand, or alleges a proposed relevant market that clearly does not encompass all interchangeable substitute products even when all factual inferences are granted in [claimant's] favor, the relevant market is legally insufficient, and a motion to dismiss may be granted.").

Just as important, JAWA likewise fails to allege facts supporting the claim that Verizon Wireless' alleged actions produced "anticompetitive effects in the market that outweigh any procompetitive justification."  TAC ¶¶ 146, 171.  The claimant "has the burden of

demonstrating damage to competition with specific factual allegations," *Jacobs*, 626 F.3d at 1339 (international quotation marks omitted).  In particular, JAWA must either allege facts demonstrating that Verizon Wireless had sufficient "market power" to foreclose competition, or that output decreased or prices increased as a result of Verizon Wireless' actions. *Id.* at 1339-40.

Although JAWA pays lip-service to that standard, *see* TAC ¶¶ 147, 150, 172, 175, mere "recitation of the elements of a cause of action will not do." *Twombly*, *supra*. JAWA offers no facts to support the conclusory assertion that Verizon has the power to foreclose competition in any adjacent market, when it alleges nothing about Verizon Wireless' overall share of wireless service customers or the capabilities of its competitors. And with regard to any possible market in which JAWA may compete, there are no concrete factual allegations to support any assertion that competition as a whole will suffer as a result of the conduct challenged in the complaint.  In particular, merely alleging the "exclusion of one competitor from a market," without further factual support, cannot "satisf[y] the [claimant's] burden to show harm to a relevant market." *Tan*, 252 F.3d at 1065.  JAWA makes no allegation about how the alleged exclusion will affect overall market output.  In the absence of such allegations, JAWA's rule-of-reason claim should be dismissed.

It also does not matter that JAWA alleges that Verizon Wireless itself provides premium text messaging.  *See* TAC ¶ 28.  If JAWA is just one among dozens or hundreds of content providers seeking to provide premium text messaging services (and other substitutes in the same relevant market), the elimination of a single competitor cannot affect Verizon Wireless' market power and therefore raises no concern under the antitrust laws.  *See* , *e.g.*, *Austin v. McNamara*, 979 F.2d 728, 739 (9th Cir. 1992) (noting that "the elimination of a single competitor, standing alone, does not prove anticompetitive effect"). The allegation that Verizon Wireless is among the remaining competitors in the market does nothing to support any assertion that its conduct could have had market-wide impact.

**H.      The TAC Fails to Allege a Valid Claim for Abuse of Process (Claim 9).**

JAWA misunderstands the nature and purpose of an abuse of process claim.  Such a claim is unjustifiable and completely unsupported in this case.  To assert a claim for abuse of process in Arizona, a party must allege "(1) a willful act in the use of judicial process; (2) for an ulterior purpose not proper in the regular conduct of the proceedings."  *Crackel v. Allstate Ins. Co.*, 208 Ariz. 252, 257 (App. 2004) (quoting *Nienstedt*, 133 Ariz. at 353).

It is well-established under Arizona law that a complaint cannot serve as the basis for an abuse of process claim.  Specifically, abuse of process refers to conduct occurring "after proceedings have been initiated," and "requires some act *beyond the initiation of a lawsuit*."  *GRK Holdings,* 2010 WL 3940575, at *4, 2010 U.S. Dist. LEXIS 107065, *11 (emphasis added); *see also Crackel*, 208 Ariz. at 888 (holding that "a generalized allegation that a defendant has misused the litigation process as a whole [cannot] support a claim of abuse of process"); *Joseph v. Markovitz*, 27 Ariz.App. 122, 126 (1976); *Stetter v. Blackpool, LLC,* 2010 WL 4117256, *2, 2010 U.S. Dist. LEXIS 111869, *3 (D. Ariz. Oct. 19, 2010).

JAWA's abuse of process claim must be dismissed because the TAC alleges no specific acts of improper use of process, as required under Arizona law.  *Joseph*, 27 Ariz. App. at 126.  Rather, JAWA merely states what it believes to be Verizon Wireless' "ulterior motives" for filing its complaint, and concludes that Verizon Wireless' "Complaint is an abuse of process."  TAC ¶ 59.  Even accepting for purposes of this motion that such "ulterior motives" existed, "bad intentions" alone could not sustain a claim for abuse of process.  *Crackel*, 208 Ariz. at 888 (holding that "evidence of the defendant's mere persistence in litigation, even if based on an improper motive, does not sustain the tort" of abuse of process); *Nienstedt*, 133 Ariz. at 353 (holding that "there is no liability when the defendant has done nothing more than legitimately utilize the process for its authorized purposes, even though with bad intentions"); *see generally* William L. Prosser, *Law of Torts* 856-57 (4th ed. 1971)).  JAWA fails to allege any factual support for the abuse of process claim, and as such it cannot be maintained.

## I.   The RICO Claim (Count 10) and Supporting Allegations are Insufficient to Support a Cause of Action.

JAWA's RICO claim fails to plead key elements necessary to make out a RICO violation.  To plead a RICO violation, JAWA must allege: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.  *See Sedima, S.P.R.L. v. Imrex Co., Inc.,* 473 U.S. 479 (1985).  A "pattern of racketeering activity" means a defendant enterprise has engaged in at least two predicate acts of racketeering.  *See* 18 U.S.C. § 1961(5).

JAWA here fails to plead what precisely the "enterprise" is and its relevant "conduct. The count asserts that "Verizon is a Delaware general partnership which, together with other persons and entities – including, but not limited to the SMS Aggregators, constitutes an enterprise...."  TAC ¶ 190.  References to unidentified "other persons and entities" cannot make out the claim for a RICO enterprise.[12]  And with regard to the only other person or entity identified – the Aggregators – the complaint does not allege any relationship they have with Verizon Wireless beyond their contractual premium text messaging services relationship, or any conduct that these Aggregators engaged in with Verizon Wireless, that would form a RICO enterprise.  *See supra* n. 12.

JAWA also fails to adequately plead any predicate act of racketeering activity.  JAWA alleges predicate acts of federal mail fraud, 18 U.S.C. § 1341, and federal wire fraud, 18 U.S.C. § 1343.  The mail and wire fraud statutes prohibit the use of interstate mail or wires for purposes of carrying out any "scheme or artifice to defraud" with "the specific intent to deceive or defraud."  *Cal. Pharm. Mgmt., LLC v. Redwood and Casualty Ins. Co., et al.,* 2009 U.S. Dist. LEXIS 126982, *25 (C.D. Cal. July 29, 2009).  Critically, a scheme or artifice to defraud "must involve some sort of fraudulent misrepresentation or omission reasonably calculated to deceive persons of ordinary prudence and comprehension."  *E.g.,* *Brokerage Concepts, Inc. v. U.S. Healthcare, Inc.,* 140 F.3d 494, 528 (3d Cir.1998).  Where, as here, JAWA relies on fraud as a basis for a RICO violation, the allegations must

---

[12] *See United States v. Fernandez,* 388 F.3d 1199, 1223 (9th Cir. 2004) ("establishing the existence of an associated-in-fact enterprise requires proof (1) of an ongoing organization, formal or informal, (2) which exhibits a hierarchical or consensual decision-making structure beyond that inherent in the alleged racketeering activity, and (3) in which the various associates function as a continuing unit.").

comply with Fed. R. Civ. P. 9(b): "In alleging fraud . . . a party must state with particularity the circumstances constituting fraud." *Odom v. Microsoft, Corp.,* 486 F.3d 541, 554 (9th Cir. 2007).  Thus, "[t]o avoid dismissal for inadequacy under Rule 9(b), [the] complaint would need to state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation." *Edwards v. Marin Park, Inc.,* 356 F.3d 1058, 1066 (9th Cir. 2004).

Here, one searches JAWA's RICO count in vain for any reference to an alleged fraudulent representation by Verizon Wireless, let alone one that is pled with particularity as required by Rule 9(b).  Instead, the RICO count references two alleged "schemes," namely, an alleged scheme to withhold revenue from the Aggregators to which JAWA claims entitlement, and an alleged scheme to offer Verizon Wireless customers 'sham refunds" in connection with JAWA's services and to stop them from receiving future services from JAWA.  Even assuming that there was anything improper about either of these things, there is no allegation of any fraudulent representation made by Verizon Wireless to anyone in connection with these alleged schemes, let alone allegations as to how any such alleged fraudulent statement would have harmed JAWA.  *See Cal. Pharm.,* 2009 Lexis 126982, at \*31-33 (rejecting RICO claims where "plaintiffs have essentially pled a scheme to *harm* rather than a scheme to *defraud*" and explaining that, even where the plaintiff clearly raised that defendants had "set out to destroy" defendant, "wrongful conduct," is distinct from the sort of "deceptive" conduct required under RICO).

Because the general allegations of "a scheme or artifice to defraud" based on an alleged "sham refund" scheme do not even come close to complying with Rule 9(b)'s particularity mandate, and the allegations that are made do not amount to fraud, even on a generous reading JAWA has failed to plead a RICO claim predicated on mail and wire fraud.

## IV.  CONCLUSION.

For all the reasons stated above, Verizon Wireless respectfully requests that the Court dismiss the TAC with prejudice, and grant Verizon Wireless any further relief the Court deems just and proper under the circumstances.

RESPECTFULLY SUBMITTED this 17th day of November, 2011.

GALLAGHER & KENNEDY, P.A.

Paul K. Charlton
Lindsi M. Weber
2575 East Camelback Road
Phoenix, Arizona 85016-9225

KASOWITZ, BENSON, TORRES &
FRIEDMAN LLP

By /s/Marcos D. Jiménez
Marcos Jiménez
Scott Cosgrove
Ann M. St. Peter-Griffith
Audrey Pumariega
1441 Brickell Avenue, Suite 1420
Miami, Florida 33131

*Attorneys for Plaintiff*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 17th day of November, 2011, I electronically transmitted a PDF version of this document to the Clerk of the Court, using the CM/ECF System for filing and for transmittal of a Notice of Electronic Filing to all CM/ECF registrants and non-registered parties.

/s/*Audrey M. Pumariega*