1  Paul K. Charlton (Bar No. 012449)
   Lindsi M. Weber (Bar No. 025820)
2  GALLAGHER & KENNEDY, P.A.
   2575 East Camelback Road
3  Phoenix, Arizona 85016-9225
   Telephone:   (602) 530-8000
4  Email:       paul.charlton@gknet.com
                lindsi.weber@gknet.com
5
6  Marcos D. Jiménez (admitted pro hac vice)
   Scott B. Cosgrove (admitted pro hac vice)
7  Audrey M. Pumariega (admitted pro hac vice)
   KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
8  1441 Brickell Avenue, Suite 1420
   Miami, Florida 33131
9  Telephone:   (786) 587-1077
   Email:       MJimenez@kasowitz.com
10              SCosgrove@kasowitz.com
                Apumariega@kasowitz.com

11 *Attorneys for Plaintiff*

12 **UNITED STATES DISTRICT COURT**

13 **DISTRICT OF ARIZONA**

Gallagher & Kennedy, P.A.
2575 East Camelback Road
Phoenix, Arizona 85016-9225
(602) 530-8000

| | |
|---|---|
| 14 Cellco Partnership d/b/a Verizon Wireless, | Case No. 2:11-cv-00432-DGC |
| 15                      Plaintiff, | **PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT** |
| 16 v. | |
| 17 Jason Hope; et al., | |
| 18                      Defendants. | (Assigned to the Hon. David G. Campbell) |
| 19 | |
| 20 | |

21  Plaintiff Cellco Partnership d/b/a Verizon Wireless ("Verizon Wireless") hereby

22  respectfully submits its Response ("Response") to Defendants' Motion to Dismiss

23  Plaintiff's First Amended Complaint (Doc. 232).  In support of its Response, Verizon

24  Wireless states as follows:

25                    **I.     INTRODUCTION**

26  In their Motion to Dismiss Plaintiff's First Amended Complaint ("Motion"),

27  Defendants yet again ask this Court to dismiss Verizon Wireless' First Amended

28  Complaint ("FAC") (Doc. 222) based not on the law, but on assertions of fact that are

either entirely outside of the four corners of the FAC, or at best in dispute.  Indeed,

1

1   Defendants' motion even goes so far as to inappropriately cite discovery responses,

2   testimony, and other portions of the record, and to attach an extraneous discovery

3   exhibit.[1]   Notably absent from Defendants' motion is any legal standard for a motion to

4   dismiss under Federal Rule of Civil Procedure 12(b)(6).   Much like their Response to

5   Plaintiff's Motion for Leave to File First Amended Complaint ("Response") (Doc. 191),

6   this latest motion to dismiss reads like one for summary judgment.   Indeed, the improper

7   nature of Defendants' motion is highlighted at Page 12, in which they state that Verizon

8   Wireless' allegations are "not sufficient to overcome a Motion for Summary Judgment."

9   (Doc. 232 at 12).

10          Suffice it to say that Verizon Wireless again disagrees with Defendants' rendition

11   of the "facts."   In any event, Defendants' fact-based arguments are inappropriate at the

12   motion to dismiss stage, and have already been rejected by this Court on multiple

13   occasions.   Most notably, Defendants' arguments are identical to the ones they raised in

14   their Response (Doc. 191).   This Court already rejected those arguments at the October

15   27, 2011 Status Conference and Motions Hearing, expressly acknowledging that they

16   were more appropriate for summary judgment or trial.   (Hrg. Tr., Doc. 225 at 9:24-

17   11:13).   In that the test for determining the legal sufficiency of a proposed amendment is

18   identical to the one used for Rule 12(b)(6) motions, *Miller v. Rykoff-Sexton, Inc.*, 845 F.

19   2d 209, 214 (9th Cir. 1988) (citing 3 J. Moore, Moore's Federal Practice ¶ 15.08[4] (2d

20   ed. 1974)), Verizon Wireless respectfully requests that this Court extend its prior ruling

21   and deny Defendants' Motion to Dismiss.

22                        **II.     MEMORANDUM OF LAW**

23          **a.  Motion to Dismiss Standard.**

24          A district court may not dismiss a complaint for failure to state a claim "unless it

25   appears beyond doubt that the plaintiff can prove no set of facts in support of his claims

26

27   [1] This Court should exclude such references from consideration.  *See Morrow v. Boston Mut. Life Ins. Co.*, No. CIV 06-2635-PHX-SMM, 2007 WL 3287585, at *6 n.5 (D. Ariz.

28   Nov. 5, 2007) (McNamee, J.) (excluding from consideration on a Rule 12(b)(6) motion to dismiss parties' citation to deposition testimony and joint case management report).

1  which would entitle him to relief." *Hunt v. Northland Trucking*, No. CV-07-481-PHX-
2  DGC, 2007 WL 1713290, at*1 (D. Ariz. June 12, 2007) (Campbell, J.) (citing *Barnett v.*
3  *Centoni*, 31 F.3d 813, 816 (9th Cir. 1994)). When analyzing a complaint for failure to
4  state a claim, "[a]ll allegations of material fact are *taken as true and construed in the light*
5  *most favorable to the non-moving party*." *Smith v. Jackson*, 84 F.3d 1213, 1217 (9th Cir.
6  1996) (emphasis added).  In addition, the court must assume that all general allegations
7  "embrace whatever specific facts might be necessary to support them."  *Peloza v.*
8  *Capistrano Unified Sch. Dist.*, 37 F.3d 517, 521 (9th Cir. 1994).  "[A]ll reasonable
9  inferences [from factual allegations] are to be drawn in favor of [plaintiff] as well."
10 *Bobbitt v. Milberg, LLP*, No. CV-09-629-TUC-FRZ, 2010 WL 5345867, at *3 (D. Ariz.
11 Nov. 4, 2010) (Guerin, J.).

12          **b.  Defendants' Arguments Have Already Been Rejected.**

13         Defendants already made, and this Court already rejected, nearly every argument
14 raised in the Motion to Dismiss.  In the interest of judicial economy, Verizon Wireless
15 reincorporates its arguments in its Response to Defendants' [Original] Motion to Dismiss
16 (Doc. 117) and the Court's order thereon (Doc. 164), as well as Verizon Wireless' oral
17 and written argument and the Court's verbal and written decision on Verizon Wireless'
18 Motion for Leave to File First Amended Complaint (Docs. 170, 219, 225).  Verizon
19 Wireless, therefore, only addresses the arguments that follow, which upon first blush may
20 appear "new" but, upon a more thorough review, mirror Defendants' previous arguments.

21          **c.  Verizon Wireless Adequately Pled its RICO Claims.**

22                **1.  Verizon Wireless Set Forth Sufficient RICO Allegations as to**
                     **Defendants Johnson, McCullough, Uhrman, and Perry.**
23
         Defendants argue that Verizon Wireless' RICO allegations are insufficient as to
24
    Defendants Johnson, McCullough, Uhrman and Perry.  This argument is not really
25
    "new"; it is a rephrased iteration of the argument raised both in the original Motion to
26
    Dismiss (Doc. 77 at 10-11) and in the Response (Doc. 191 at 6-7) – that Verizon Wireless
27
    has insufficiently pled the role of each Defendant for purposes of its RICO claims.  The
28

3

Court has twice rejected that argument, holding that Verizon Wireless sufficiently alleged "in detail . . . the roles of the alleged co-conspirators," and that whether sufficient evidence supports these allegations "must be decided *after discovery has been completed.*" (Doc. 164 at 4) (emphasis added); *see also* (Doc. 225, Status Conf. Tr. at 11:9-14) ("Factually that may be true after discovery, but I can't decide that today and it's not a basis for denying the motion.  I've already denied the motion to dismiss the RICO claims as well in Docket 164.").  The fact that Defendants apparently now concede that the allegations against Defendants Hope and DeStefano are sufficient to withstand a motion to dismiss, and now refer to the remaining Defendants individually by name (rather than collectively) does not change the fact that the Court has held that the allegations against the remaining Defendants are likewise sufficient.[2]   Defendants' argument regarding the sufficiency of the RICO allegations against the individual Defendants should be summarily rejected.

### 2. Verizon Wireless Sufficiently Pled Defendants' Predicate Acts.

Defendants also argue that Verizon Wireless insufficiently alleged that Defendants intended to deprive Verizon Wireless of money (an element of mail and wire fraud),[3] because Defendants only intended to take money from Verizon Wireless' customers, and not Verizon Wireless. (Doc. 232 at 11 & n.19).  This is not a new argument.  (*See* Doc.

---

[2] Defendants rely on *Reves v. Ernst & Young*, 507 U.S. 170 (2006), for the unremarkable proposition that for Section 1962(c) liability to attach to a particular defendant, he or she must have participated in the operation or management of the enterprise.  But that case is entirely distinguishable.  First, the "operation or management" issue in *Reves* arose in the context of a motion for summary judgment, not a motion to dismiss.  Second, "the defendant in Reves -- an outside accounting firm -- was merely an *instrument* of the corporation's fraudulent scheme.  Here, [defendant] . . . was directly involved in [the alleged fraudulent conduct] and thus clearly had some part in directing the enterprise's affairs." *Marceau v. IBEW, Local 1269*, 618 F. Supp. 2d 1127, 1170 (D. Ariz. 2009) (Murguia, J.).  The allegations in the FAC make clear that, like the defendant in *Marceau*, Defendants in this case were not mere instrumentalities.  On the contrary, they were actively involved in concocting and carrying out the fraudulent scheme.  *See, e.g.*, FAC ¶¶ 66, 68, 73, 75, 80, 111-115.  The precise extent of each individual's involvement is an issue of fact not properly decided at this juncture.  *See Marceau*, 618 F. Supp. 2d at 1170 (Defendants' participation in the conduct of the alleged association-in-fact was a genuine issue of material that even precluded summary judgment).
[3] *See Williams v. Dow Chemical Co.*, 255 F. Supp. 2d 219, 226 n.10 (S.D.N.Y. 2003).

191 at 8).   This time, however, Defendants cite case authority that merits a brief discussion.

Defendants cite *United States v. Lew*, 875 F. 2d 219 (9th Cir. 1989), and *Dow Chemical* for the proposition that intent can only be satisfied when defendants intended to obtain money from the persons deceived.  In *Lew*, an immigration attorney was convicted of mail fraud for making misrepresentations to the Department of Labor about his clients in order to get them permanent resident status.  The Ninth Circuit reversed, holding that the intent element for mail fraud had not been satisfied, since the attorney did not intend to get money from the government (the deceived party), but rather, he was paid by his clients.  In *Dow Chemical*, plaintiff consumers brought a class action against a chemical company who made misrepresentations about the safety of their product to the Environmental Protection Agency (EPA) in order to ensure that the product would continue to be sold.  *Dow Chemical*, 255 F. Supp. 2d at 220-21.  The district court granted in relevant part the chemical company's motion for judgment on the pleadings, since "the alleged scheme was designed to obtain EPA regulatory approval of [the product], not to deprive the EPA of money or property," and therefore plaintiffs could not establish mail and wire fraud.

Both cases are distinguishable on their face.  The defendants in *Lew* and *Dow Chemical* did *not* receive money from the entity deceived; by contrast, Defendants here received money collected and billed by Verizon Wireless.[4]   This is analogous to the situation in *United States v. Bonallo*, 858 F.2d 1427 (9th Cir. 1988).  There, a defendant stole money from bank customers' ATM accounts and then manipulated the account records to make it appear as though the customers themselves removed the funds.  The defendant argued, as Defendants do here, that the intent element of bank fraud could not

---

[4] Defendants circumvent this fact by alleging that Verizon Wireless "withheld [money] from the Aggregators and ultimately JAWA." (Doc. 232 at 11 n.19).  This contention stems from facts outside of the four corners of the FAC and should not be considered at this juncture.  In any event, Defendants do not account for the fact that they regularly received money collected and billed by Verizon Wireless throughout their fraud scheme. (*See* FAC ¶¶ 41, 91).

be satisfied because his "intent" was to obtain money from the bank's customers who were charged, not the bank.[5]   The Ninth Circuit flatly rejected his argument: "It is common knowledge that banks reimburse the accounts of wrongfully charged customers. Thus, when [defendant] falsified the records so that the accounts of other customers would be charged for the withdrawals, he was effectively harming the Bank, *which was obliged to reimburse those customers*." *Bonallo*, 858 F. 2d at 1434 n.9 (emphasis added). Indeed, quoting the same language above, the court in *Lew* (the very case that Defendants cite in support of their arguments) specifically distinguished the *Bonallo* case. "*Bonallo* contained the element that was missing in . . . the case at bar: *an intent to obtain money or property from the victim of the deceit*." *Lew*, 875 F. 2d at 221-22 (emphasis added). *Bonallo* is analogous to the instant case, as Verizon Wireless reimbursed its wrongfully charged customers, and is dispositive of Defendants' argument.[6]

Defendants collaterally argue that Verizon Wireless has not sufficiently pled the predicate act of mail fraud because "Verizon's use of the mail to bill customers is not related to the purported fraudulent scheme and in fact takes place after the alleged fraud is completed," and therefore, the mailings are not "sufficiently closely related" to the fraud scheme to bring it into the scope of the mail fraud statute (Doc. 232 at 10 n.18). Defendants' argument fails.  In order to constitute mail fraud, a mailing must be "sufficiently closely related" to the scheme. *United States v. Hubbard*, 96 F.3d 1223, 1228 (9th Cir. 1996).  "Sufficiently closely related" simply means that mailing must be for the "purpose of executing the scheme," or "incident to an essential part of the scheme." *Id.*  "[T]he use of the mails need not be an essential element of the scheme. . . . It is sufficient for the mailing to be incident to an essential part of the scheme . . . or a

---

[5] The bank fraud statute has the same broad scope as and is modeled after the mail fraud statute, *Bonallo*, 848 F. 2d at 1432, and the *Bonallo* court's holding has been cited as authoritative in the mail and wire fraud context. *See, e.g.*, *Lew*, 875 F. 2d at 221; *United States v. Dowie*, 411 Fed. Appx. 21, 28 (9th Cir. 2010).
[6] *See also Dowie*, 411 Fed. Appx. at 28 (intent element of wire fraud satisfied notwithstanding the fact that defendants were paid by a separate entity from the deceived party; "[a] defendant may be guilty of fraud where the deceived party is indirectly deprived of money or property as a result of the fraud"); *United States v. Ali*, 620 F.3d 1062 (9th Cir. 2010).

6

1   step in the plot." *Schmuck v. United States*, 489 U.S. 705, 710-11 (1989) (internal

2   quotation marks omitted).  As demonstrated below, the FAC alleges that the mailings

3   were in fact "for the purpose of executing the scheme," and therefore, this Court need not

4   even consider the alternative question of whether they were "incident" to an essential part

5   of the scheme.

6          Specifically, the FAC alleges that Defendants committed mail fraud when they (1)

7   sent short code applications to the CTIA containing false and misleading information

8   (FAC ¶ 89), and (2) caused Verizon Wireless to send bills to its customers containing

9   charges for Defendants' PSMS (FAC ¶ 91).  Defendants ignore the first allegation

10  regarding short code applications, and instead focus their argument on the second.  In any

11  event, both types of mailings were for the purpose of, and essential to, the scheme's

12  success.  Defendants sent CTIA applications for the purpose of obtaining the various

13  short codes that they would use to market PSMS through unauthorized campaigns.  (*See*

14  FAC ¶ 42).  Without the short codes, Defendants could not market their PSMS.  *Id.*  As

15  an added layer of disguise, Defendants designated different individuals as the contact

16  persons for the different short codes, (FAC ¶ 71), and used false addresses that were in

17  fact UPS store locations when leasing the short codes (FAC ¶ 66(e)).  This was an

18  essential element of their scheme, in that it facilitated disguising the various entities'

19  association with Cylon, Hope, and DeStefano.

20         Causing bills to be sent by Verizon Wireless to its customers was also essential to

21  the success of the scheme.  Defendants concocted their entire scheme for the purpose of

22  collecting the proceeds of charges billed to customers directly through Verizon Wireless.

23  *See Pareira v. United States*, 347 U.S. 1 (1954) (affirming mail fraud conviction in

24  connection with the mailing of a check for $35,000, where "[c]ollecting the proceeds of

25  the check was an essential part of th[e] scheme"); *cf. United States v. Maze*, 414 U.S.

26  395, 402 (1974) (explaining that, unlike in *Maze*, "the mailings in *Pereira* played a

27  significant part in enabling the defendant in that case to acquire dominion over the

28  $35,000").  Defendants knew that charging customers through Verizon Wireless was the

1  only way they could succeed in their scheme. *See United States v. Chua*, 16 Fed. Appx.

2  737, 739 (9th Cir. 2001) ("The relationship between the mailing and the fraudulent

3  scheme is close enough if the defendant knows 'that the use of the mails will follow in

4  the ordinary course of business, or where such use can reasonably be foreseen, even

5  though not actually intended.'") (quoting *Pereira*, 347 U.S. at 9).[7]   Therefore, Verizon

6  Wireless has sufficiently alleged the predicate act of mail fraud.

7       Defendants do not even attempt to make this collateral argument with respect to

8  Verizon Wireless' wire fraud allegations.  Thus, even if the mail fraud claims were

9  insufficient (which is not the case), the FAC sufficiently pleads multiple predicate acts of

10  wire fraud so as to survive Defendants' Motion.

11       **d.  Verizon Wireless Sufficiently Alleged its Tortious Interference Claim.**

12       With respect to Verizon Wireless' tortious interference claim, Defendants re-raise

13  their stale arguments regarding a non-existent requirement under Restatement (Second)

14  of Torts § 766A (1979).  The only potentially new argument raised in the motion is that

15  Verizon Wireless cannot succeed on its theory under Section 766A because it has not

16  identified a *particular* contractual obligation it had to its customers that was burdened or

17  made more expensive by Defendants' interference.  This argument also fails.

18       Defendants do not cite a single authority for their novel theory with good reason –

19  it is wrong.  Under Section 766A, a plaintiff can state a claim for intentional interference

20  where the interferer's conduct does not cause the third party to breach, but rather, makes

21  the *plaintiff's* performance of its contract more burdensome or expensive.  (Doc. 164 at

22

23

24  [7] In that billing Verizon Wireless' customers was an essential element of the scheme, the fraud was not, as Defendants contend, "complete" at the time of the mailings.  (Doc. 232

25  at 10 n.18).  In any event, whether the scheme had reached "fruition" is a determination for a factfinder.  *See United States v. Sampson*, 371 U.S. 75, 81 (1962) (district court

26  erred in dismissing mail fraud counts were mailings could be "found by a jury under proper instructions to be 'for the purpose of executing' a scheme within the meaning of

27  the mail fraud statute); *Schmuck*, 489 U.S. at 712 ("a rational jury could have found that the title-registration mailings were part of the execution of the fraudulent scheme, a

28  scheme which did not reach fruition until the retail dealers resold the cars and effected transfers of title."); *Chua*, 16 Fed. Appx. at 740; *Hubbard*, 96 F.3d at 1228-1229.

8).  Section 766A is *not* limited to a situation in which the plaintiff is unable to perform a specific provision of its contract.

> If the plaintiff's performance has intentionally been made more burdensome or more expensive by the actor, the cost that [the plaintiff] incurs in order to *obtain the performance by the third party* has increased, and the net benefit from the third person's performance has been correspondingly diminished. *This Section covers that loss, too.*

Restatement (Second) of Torts § 766A cmt. c (emphasis added).  Here, Verizon Wireless alleged that Defendants' interference caused it "to expend funds and resources in maintaining its relationship and contracts with customers."  (FAC ¶ 184).  In other words, Verizon Wireless incurred increased expenses and burden to ensure that its disgruntled customers would continue to perform *their* contractual obligation – payment.  Verizon Wireless is entitled to take the steps that it determines are necessary to ensure customers' continued performance – from providing customer service to issuing refunds.  (*See* Doc. 164 at 8) (holding that Complaint adequately pled increased burden in the form of "expenses in addressing customer complaints" and "refunding subscription fees to customers.").  Therefore, Verizon Wireless adequately pled tortious interference under Section 766A.[8]

Verizon Wireless has also stated a claim for tortious interference under Section 766, which does in fact require a breach.  Defendants argue that Verizon Wireless has not identified any customers who breached their contracts with Verizon Wireless.  (Doc. at 7 & n.9), but this argument inappropriately attacks the veracity rather than sufficiency of Verizon Wireless' allegations.  Verizon Wireless specifically pled that Defendants' misconduct caused Verizon Wireless' customers to cancel their contracts (FAC ¶ 183); at

---

[8] The notion that refunding service fees was somehow "gratuitous" is itself dubious. Regardless, this Court has not hesitated to apply Section 766A to cases in which plaintiffs' performance or nonperformance of its contract was allegedly voluntary. *See, e.g.*, *Carey v. Maricopa County*, 92 Empl. Prac. Dec. (CCH) P43,501 (D. Ariz. 2009) (Silver, J.) (genuine issue of material fact existed whether defendant's actions constituted intentional interference under Section 766A where plaintiff entered into voluntarily severance with third party employer).  Defendants do not cite, and Verizon Wireless' research has not revealed, a case enumerating the requirement that the incurred expense or burden be *required* by a specific contractual provision.

1   this juncture, the allegation must be construed as true.[9]  *Smith*, 84 F.3d at 1217.  Verizon

2   Wireless adequately pled tortious interference under Section 766.

3                              **III.    CONCLUSION**

4          For the foregoing reasons, Verizon Wireless respectfully requests that this Court

5   deny Defendants' Motion to Dismiss Plaintiff's First Amended Complaint, and grant

6   such other and further relief as the Court deems just and equitable.

7

8          RESPECTFULLY SUBMITTED this 12th day of December, 2011.

9                                          GALLAGHER & KENNEDY, P.A.

10                                             Paul K. Charlton
                                               Lindsi M. Weber
11                                             2575 East Camelback Road
                                               Phoenix, Arizona 85016-9225
12
                                           KASOWITZ, BENSON, TORRES &
13                                         FRIEDMAN LLP

14                                         By */s/ Marcos D. Jiménez*
                                               Marcos Daniel Jiménez
15                                             Scott B. Cosgrove
                                               Audrey M. Pumariega
16                                             1441 Brickell Avenue, Suite 1420
                                               Miami, Florida 33131
17                                             *Attorneys for Plaintiff*

18

19

20

21

22

23

24

25

26

27
    ――――――――――
    [9] Needless to say, Verizon Wireless disagrees with Defendants' mischaracterization of its
28   discovery responses at Footnote 9 of the Motion to Dismiss, but declines to entertain this
    factual dispute now in view of the Rule 12(b)(6) legal standard.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

   I hereby certify that on this 12th day of December, 2011, I electronically transmitted a PDF version of this document to the Clerk of the Court, using the CM/ECF System for filing and for transmittal of a Notice of Electronic Filing to all CM/ECF registrants and non-registered parties.

*/s/Audrey M. Pumariega*