# **Exhibit A**

Motion to Enforce and Memorandum in Support

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CHANCERY DIVISION

CYNTHIA WALKER, GERMAINE
COOPER, SILVERIO BAUTISTA, ROBERT
WALKER, JOHN GOULD, and CAROLINA
ZANNI individually and on behalf of a class of
similarly situated individuals,

        *Plaintiffs*

        v.

OPENMARKET, INC., a Michigan
corporation, EYE LEVEL HOLDINGS, LLC,
a Delaware limited liability company,
CELLFISH MEDIA, LLC, a Delaware limited
liability company, PREDICTO MOBILE LLC,
a Delaware limited liability company, TOO
LAZY, LLC, a California limited liability
company, and 3C INTERACTIVE, LLC, a
Delaware corporation,

        *Defendants.*

Case No. 08 CH 40592

Assigned to the Honorable Richard J. Billik

## DEFENDANT EYE LEVEL HOLDINGS, LLC'S MOTION TO ENFORCE SETTLEMENT AGREEMENT AND FINAL ORDER AND JUDGMENT

Eye Level Holdings, LLC respectfully requests that the Court enforce its January 14, 2011 Final Order and Judgment ("Judgment") approving the settlement of this class action by prohibiting Verizon from asserting any claim for contribution or indemnity against Eye Level Holdings that arises out of this action, "Related Actions," or "Released Conduct" as defined by this Court's Judgment and the Settlement Agreement.

Eye Level Holdings further requests that the Court exercise its exclusive jurisdiction over this action, the Settlement Agreement, and the Final Order and Judgment, and resolve any allegations that Eye Level Holdings failed to remain in substantial compliance with the generally

accepted consumer best practices guidelines for the Mobile Marketing Association ("MMA Guidelines") as required by this Court's Judgment.

In support of this Motion, Eye Level Holdings incorporates the arguments set forth in the accompanying Memorandum In Support of Its Motion to Enforce Settlement Agreement and states as follows:

1.    Plaintiffs and defendants entered into a Stipulation of Class Action Settlement dated July 22, 2010 ("Settlement Agreement"), which resolved all claims in this case and all the Related Actions as defined in the Settlement Agreement. [Settlement Agreement.]

2.    Attached hereto as Exhibit A is a true and correct copy of the Settlement Agreement.

3.    This Court approved this settlement and issued a Final Order and Judgment on January 14, 2011 incorporating these very terms. [Judgment, ¶ 15.]

4.    Attached hereto as Exhibit B is a true and correct copy of this Court's Final Order and Judgment.

5.    The Settlement Agreement resolved *all claims*—including claims asserted in the Related Actions against Cellco Partnership d/b/a Verizon Wireless ("Verizon")—by wireless subscribers relating to the advertising, marketing, sale, purchase, or billing of Mobile Content. [*See generally*, Settlement Agreement.]

## Verizon's Indemnity And Contribution Claims Are Barred By This Court's Judgment And The Settlement Agreement.

6.    In exchange for a monetary payment of $1.5 million by Eye Level Holdings, Verizon knowingly accepted that the Settlement Agreement bars and enjoins Verizon from seeking indemnity or contribution from Eye Level Holdings or its affiliates based upon any

2

conduct relating in any way to the advertising, marketing, sale, purchase, transmission, operation, or billing of Mobile Content. [Settlement Agreement, § XIII.A.5.]

7.      Attached hereto as Exhibit C is a true and correct copy of a Settlement Agreement and Mutual Release between OpenMarket Inc. and Eye Level Holdings, which establishes that Eye Level Holdings contributed $1.5 million to the global settlement.

8.      Verizon was able to use the Settlement Agreement to initially stay, and later dismiss with prejudice, Related Actions pending against it. Attached hereto as Exhibit D is a true and correct copy of a Joint Stipulation, Agreed Motion and Order to Stay Proceedings, which Verizon used to stay at least one Related Action pending against it. Attached hereto as Exhibit E is a true and correct copy of a Joint Stipulation for Voluntary Dismissal, signed by Verizon, which dismissed with prejudice a Related Action pending against Verizon in the Western District of Washington.

9.      In violation of this Court's Judgment, Verizon has filed a complaint against Eye Level Holdings and its affiliates in the United States District Court for the District of Arizona ("Arizona Action") seeking "compensation" for damages it allegedly incurred in voluntarily reimbursing wireless subscribers for charges arising from the marketing, advertising, billing, and transmission of premium Mobile Content.

10.     Attached hereto as Exhibit F is a true and correct copy of Verizon's First Amended Complaint ("FAC") in the Arizona Action.

11.     Verizon's claims in the Arizona Action seek indemnity that is barred by this Court's Final Order and Judgment and the Settlement Agreement. [FAC at ¶¶ 121, 128, 139, 162, 173, 178, 188.]

12.     Verizon thus should be enjoined from seeking damages to compensate it for "(i) the harm it has sustained to its business reputation and relationship with its customers, (ii) the expenses it has incurred in handling the customer complaints concerning defendants, and (iii) the expenses it has incurred in reimbursing its customers" based upon or related to, directly or indirectly, in whole or in part:  (1) the advertising, marketing, sale, or purchase of the Mobile Content, (2) the transmission, operation, control, or receipt of the Mobile Content, (3) the billing for the Mobile Content, (4) the receipt of money for the Mobile Content or (5) recycled telephone numbers.  And because these claims are barred, Verizon should be ordered to release approximately $9 million belonging to Eye Level Holdings that Verizon has wrongfully withheld on the basis of a purported set-off for its contribution and indemnity claims.

## Verizon's Claims That Eye Level Holdings Failed To Abide By The MMA Guidelines Must Be Litigated Before This Court.

13.     Verizon also seeks in the Arizona Action a permanent injunction enjoining Eye Level Holdings and its affiliates from "using marketing practices that fail to comply with the MMA Best Practices." [*Id.* at ¶ 196.]

14.     This Court's Judgment requires Eye Level Holdings, "for a term of twenty four (24) months, to remain in substantial compliance with the generally accepted consumer best practices guidelines of the Mobile Marketing Association." [Judgment, ¶ 16.]

15.     This Court retained exclusive jurisdiction over the Settlement Agreement and Judgment.  [Judgment, ¶¶ 1, 22.]  Accordingly, Eye Level Holdings requests that the Court enforce its Judgment and enjoin Verizon from pursuing its claims that Eye Level Holdings has violated the MMA Guidelines in any court other than this Court.

16.     Attached hereto as Exhibit G is a true and correct copy of an excerpt of the testimony of David Burmester, given on April 14, 2011, in the Arizona Action.

4

17.     Attached hereto as Exhibit H is a true and correct copy of an Order issued on October 27, 2011 in the Arizona Action by the District Court of Arizona, denying Eye Level Holdings' motion to dismiss.

18.     Attached hereto as Exhibit I is a true and correct copy of the October 27, 2011 hearing transcript in the Arizona Action.

19.     Attached hereto as Exhibit J is a true and correct copy of the Second Amended Complaint in this matter.

## CONCLUSION

For the foregoing reasons and those presented in Eye Level Holdings' Memorandum in Support of Its Motion to Enforce Settlement Agreement, filed contemporaneously herewith, Eye Level Holdings requests that the Court order Verizon to dismiss its claims for contribution and indemnity in the Arizona Action and release approximately $9 million belonging to Eye Level Holdings that Verizon has wrongfully withheld on the basis of a purported set-off for its contribution and indemnity claims. Eye Level Holdings further requests that the Court order Verizon to litigate its claims that Eye Level Holdings violated the MMA Guidelines before this Court and dismiss that portion of its complaint now pending in the District Court of Arizona.

Dated: December 21, 2011                           SQUIRE, SANDERS & DEMPSEY (US) LLP

                                        By:     _Sharon Doherty Sirott_

                                                Sharon Doherty Sirott (IL 6236973)
                                                SQUIRE, SANDERS & DEMPSEY (US) LLP
                                                70 W. Madison Ave., Suite 2015
                                                Chicago, Illinois 60602
                                                Telephone: (312) 781-2760
                                                Facsimile: (614) 365-2499
                                                ssirott@ssd.com
                                                *Attorneys for Eye Level Holdings, LLC*

5

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

FILED 1

2012 DEC 22 AM 9: 32

CIRCUIT COURT OF COOK
COUNTY, ILLINOIS
CHANCERY DIV.

DOROTHY BROWN —CLERK

| | |
|---|---|
| CYNTHIA WALKER, GERMAINE COOPER, SILVERIO BAUTISTA, ROBERT WALKER, JOHN GOULD, and CAROLINA ZANNI individually and on behalf of a class of similarly situated individuals,<br><br>           *Plaintiffs*<br><br>v.<br><br>OPENMARKET, INC., a Michigan corporation, EYE LEVEL HOLDINGS, LLC, a Delaware limited liability company, CELLFISH MEDIA, LLC, a Delaware limited liability company, PREDICTO MOBILE LLC, a Delaware limited liability company, TOO LAZY, LLC, a California limited liability company, and 3C INTERACTIVE, LLC, a Delaware corporation,<br><br>           *Defendants.* | Case No. 08 CH 40592<br><br>Assigned to the Honorable Richard J. Billik |

## DEFENDANT EYE LEVEL HOLDINGS, LLC'S MEMORANDUM IN SUPPORT OF ITS MOTION TO ENFORCE SETTLEMENT AGREEMENT AND FINAL ORDER AND JUDGMENT

### I.
### INTRODUCTION

This action originally arose out of defendants' (the "Walker Defendants") advertising, marketing, and transmitting to plaintiffs "Mobile Content" (such as premium text message applications, ringtones, games, etc.). This case and 26 "Related Actions" were filed throughout the country against the Walker Defendants and other industry actors, including wireless carriers such as Cellco Partnership d/b/a Verizon Wireless ("Verizon"). Plaintiffs and the Walker Defendants ultimately entered into a Stipulation of Class Action Settlement dated July 22, 2010 ("Settlement Agreement"), which resolved all claims in this case and all the Related Actions.

Pursuant to the Settlement Agreement, Eye Level Holdings and its affiliates paid $1.5 million to settle *all claims*—including claims asserted in the Related Actions against Verizon— by wireless subscribers relating to the advertising, marketing, sale, purchase, or billing of Mobile Content. Verizon contributed nothing to the monetary settlement of this case and the Related Actions. Instead, and in exchange for the monetary settlement, Verizon knowingly accepted that the Settlement Agreement bars and enjoins Verizon from seeking indemnity or contribution from Eye Level Holdings or its affiliates based upon any conduct relating in any way to the advertising, marketing, sale, purchase, transmission, operation, or billing of Mobile Content. [Settlement Agreement, § XIII.A.5, attached hereto as Exhibit A.] This Court approved this settlement and issued a Final Order and Judgment on January 14, 2011 ("Judgment") incorporating these very terms. [Judgment, ¶ 15, attached hereto as Exhibit B.]

In disregard of this Court's Judgment, Verizon has filed a complaint against Eye Level Holdings and its affiliates in the United States District Court for the District of Arizona ("Arizona Action"). In the Arizona Action, Verizon seeks "compensation" for damages it allegedly incurred in reimbursing wireless subscribers for charges arising from the marketing, advertising, billing, and transmission of premium Mobile Content. But Verizon's claims in the Arizona Action plainly seek indemnity that is barred by this Court's Final Order and Judgment and the Settlement Agreement.

This Court expressly reserved exclusive jurisdiction to administer, supervise, construe and enforce the Settlement Agreement and its Judgment. Eye Level Holdings thus requests that the Court enforce the Settlement Agreement and Judgment by enjoining Verizon from pursuing claims for contribution or indemnity against Eye Level Holdings and its affiliates relating to this action, the Related Actions, or the Released Conduct, as those terms are defined in the Court's Judgment. Verizon also should be ordered to dismiss its claims for indemnity in the Arizona

2

Action and release approximately $9 million belonging to Eye Level Holdings that Verizon has wrongfully withheld on the basis of a purported set-off for its contribution and indemnity claims.

Moreover, because this Court retained exclusive jurisdiction to construe and enforce the Settlement Agreement and the Final Order and Judgment, Verizon's claims asserting that Eye Level Holdings did not abide by the generally accepted consumer best practices guidelines for Mobile Marketing Association ("MMA Guidelines")—as required by this Court's Judgment— should be heard before this Court, and not in Verizon's Arizona Action. Accordingly, Eye Level Holdings respectfully requests that the Court order Verizon to litigate its claims against Eye Level Holdings before this Court and dismiss that portion of its complaint now pending in the District Court of Arizona.

## II.
## FACTUAL BACKGROUND

### A.    Walker Complaint

On October 28, 2008, plaintiffs filed this action against the Walker Defendants seeking "damages, as well as injunctive and declaratory relief arising out of the marketing, receipt, and billing of allegedly unauthorized Mobile Content, such as ringtones, news and information alerts, and other digital and electronic media to wireless telephone subscribers."    [Settlement Agreement, 2.]  Meanwhile, plaintiffs' class counsel filed additional putative class actions in numerous other jurisdictions against the Walker Defendants and other industry actors, alleging claims substantially similar to those alleged in this Action ("Related Actions"). [*Id.*] In total, 26 Related Actions were dismissed as part of the settlement that this Court approved and adopted. [Settlement Agreement, 12–14.]  Verizon was a defendant in a number of these Related Actions. [*Id.* at 13 (defining as Related Actions, *Shaw v. Cellco P'ship et al.*, No. 2:10-CV-184 (W.D. Wash.) and *Serabian v. Too Lazy, LLC, and Cellco P'ship*, No. 10-cv-01891 (C.D. Cal.)).]

3

**B.     Walker Settlement Agreement**

This action and all Related Actions were resolved by the Settlement Agreement dated

July 22, 2010, which specifically absolved each "Released Party"—including Verizon—from

liability for any claim that is "based upon or related to, directly or indirectly, in whole or in part,

(a) the allegations, facts, subject, or issues set forth or raised in the Action or the *Related Actions*,

or (b) the *Released Conduct*." [Settlement Agreement, 14, 17–18; *id.* at § XIII.A.4 (emphases

added).]

The "Related Actions" are defined in the Settlement Agreement to include, among 26

specifically enumerated cases, *Shaw v. Cellco P'ship et al.*, No. 2:10-CV-184 (W.D. Wash.) and

*Serabian v. Too Lazy, LLC, and Cellco P'ship*, No. 10-cv-01891 (C.D. Cal.), both of which were

filed against Verizon directly.  [*Id.* at 12–13.]

"Released Conduct" is defined broadly in the Settlement Agreement to include just about

any conducted related to Mobile Content:

> *"Released Conduct"* means any and all direct or indirect acts, omissions,
> representations, conduct, legal duties, unjust enrichment, trade practices, or
> obligations that arise out of, or are … related or connected in any way with one or
> more of the following:  (1) the advertising, marketing, sale, or purchase of the
> Mobile Content, (2) the transmission, operation, control, or receipt of the Mobile
> Content, (3) the billing for the Mobile Content, (4) the receipt of money for the
> Mobile Content or (5) recycled telephone numbers.

[*Id.* at 14.]  In sum, Verizon was released from claims asserted in the Related Actions or

otherwise relating to the advertising, marketing, purchase, billing, or transmission of premium

Mobile Content.  Verizon thus was released from consumer claims relating to such matters and

had no obligation to pay separately any consumers in connection with such practices.  Rather, the

consumers were compensated through the mechanism set forth in the Settlement Agreement.

To reach this agreement, Eye Level Holdings contributed $1.5 million to the global

settlement.  [*See* Settlement Agreement and Mutual Release between OpenMarket Inc. and Eye

4

Level Holdings, attached hereto as Exhibit C.]  Verizon contributed no money whatsoever. Instead, as a part of the Settlement Agreement, this Court's Judgment barred and enjoined Verizon and the other "Wireless Carriers from commencing, prosecuting, or asserting any claim for contribution or indemnity (whether by contract or any other source) against any Defendant that is based upon or related to, directly or indirectly, in whole or in part, (a) the allegations, facts, subjects, or issues set forth or raised in the Action or the Related Actions, or (b) the Released Conduct."  [*Id.* at § XIII.A.5.]  Eye Level Holdings is a named defendant and a defined "Defendant" in the Settlement Agreement [*id.* at 8], and "Eye Level Holdings" is defined to include the named entity, its predecessor, and their parents, "successors, subsidiaries, divisions, departments, affiliates and other related entities."  [*Id.* at 9.]  Verizon thus is barred from asserting such contribution or indemnity claims against Eye Level Holdings or its affiliates.

Also as a part of the settlement, Verizon stayed the Related Actions pending against it. [*See* Joint Stipulation, Agreed Motion and Order to Stay Proceedings, attached hereto as Exhibit D ("Any settlement reached is likely to address claims against the wireless carriers, including Verizon Wireless, as well.").]  Ultimately, Verizon used this Court's Judgment and the Settlement Agreement to dismiss the Related Actions.  [*See* Joint Stipulation for Voluntary Dismissal, attached hereto as Exhibit E.]  Specifically, Verizon filed a Joint Stipulation for Voluntary Dismissal with the United States District Court for the Western District of Washington in one of the "Related Actions" naming Verizon as a defendant.  [*Id.*]  The Joint Stipulation—which Verizon signed—stated that the Walker settlement "applies to the purported class in the [Western District of Washington] action, and the claims against [Verizon] have been resolved."  [*Id.* at ¶ 3.]  Accordingly, as just one example, the Western District of Washington case against Verizon was dismissed with prejudice.  [*Id.*]

## C.     This Court's Final Order And Judgment

On January 14, 2011, this Court entered its Final Order and Judgment approving the Settlement Agreement. [*See* Judgment.] This Court's Judgment expressly releases each party in accordance with the Settlement Agreement and bars Verizon and the other Wireless Carriers from asserting any claim against Eye Level Holdings and others for contribution or indemnity arising out of this action, the Related Actions, or the Released Conduct. [*Id.* at ¶¶ 14–15 ("Each of the Wireless Carriers and Defendants is now and forever barred and permanently enjoined from commencing, prosecuting, or asserting any claim for contribution or indemnity (whether by contract or any other source) against any Defendant that is based upon or related to, directly or indirectly, in whole or in part, (a) the allegations, facts, subjects, or issues set forth or raised in the Action or the Related Actions, or (b) the Released Conduct.").]

This Court's Judgment also requires Eye Level Holdings and the other Walker Defendants "to remain in substantial compliance with the generally accepted consumer best practices guidelines of the Mobile Marketing Association" for a period of 24 months. [*Id.* at ¶ 16.]

Finally, this Court retained exclusive, "continuing jurisdiction over the Action for the purpose of construing, enforcing and administering the Agreement and its terms, and the terms of [the Court's] Judgment and Order." [*Id.* at ¶¶ 1, 22.]

## D.     Verizon's Arizona Action

Less than one month after the settlement in this case was finalized, and one day before filing the Joint Stipulation dismissing the *Shaw* class action, Verizon filed a complaint against Eye Level Holdings and its affiliates in the United States District Court for the District of Arizona. [*See* Verizon's First Amended Complaint ("FAC"), attached hereto as Exhibit F.] Verizon's First Amended Complaint alleges that Eye Level Holdings and its affiliates marketed

6

their premium Mobile Content in contravention of the MMA Guidelines [*id.* at ¶¶ 1–3], and that this allegedly deceptive marketing resulted in unauthorized charges to Verizon's wireless subscribers.     Verizon further contends that it has refunded customers for these alleged unauthorized charges. [*Id.* at ¶¶ 93–94.]

In the Arizona Action, Verizon seeks damages from Eye Level Holdings and its affiliates to "compensate" Verizon for (i) the harm it has sustained to its business reputation and relationship with its customers, (ii) the expenses it has incurred in handling the customer complaints concerning Eye Level Holdings and its affiliates, and (iii) the expenses it has incurred in reimbursing its customers on account of defendants' unauthorized charges." [*Id.* at ¶¶ 121, 128, 139, 162, 173, 178, 188.] In other words, Verizon seeks indemnification from Eye Level Holdings for payments it has voluntarily made to subscribers as a result of the marketing, receipt, and billing of allegedly unauthorized Mobile Content from "at least March 2009." [*Id.*] Verizon also seeks in the Arizona Action a permanent injunction enjoining Eye Level Holdings and its affiliates from "using marketing practices that fail to comply with the MMA Best Practices." [*Id.* at ¶ 196.]

Thus, a scant 24 days after this Court's Judgment barring Verizon from suing Eye Level Holdings to recover money paid to subscribers because of the alleged practices, Verizon did just that. Even worse, Verizon did not just sue—it also engaged in self-help outside the judicial process and confiscated millions of dollars owed to Eye Level Holdings and its affiliates. In addition, Verizon, apparently seeking to bolster its relationship with its subscribers, and again without judicial approval, voluntarily paid millions of dollars to subscribers whose claims against Verizon had been released. Specifically, Verizon voluntarily paid nearly $7 million in refunds to Eye Level Holdings' clients and intends to refund an additional $2 million. [*See* Testimony of David Burmester at 329, April 14, 2011, attached hereto as Exhibit G.] These

7

amounts were paid even to customers who learned about Verizon's Arizona Action on its website or customers to whom Verizon proactively reached out via e-mail and direct mail, and who had not requested refunds until Verizon offered to pay them. [*Id.* at 330.] But Verizon admittedly refunded customers who may well have been covered by the Settlement Agreement. [*Id.* at 332 ("The refunds that we looked at were . . . from the entire time that the [Eye Level Holdings] short codes were on our network, so not just recent.").]

Eye Level Holdings and its affiliates moved to dismiss Verizon's FAC on the grounds that the court there lacked subject-matter jurisdiction, both based on the doctrine of res judicata and in light of this Court's exclusive jurisdiction over the Settlement Agreement and Judgment. The Arizona District Court denied the motion. [*See* Judgment, October 27, 2011, attached hereto as Exhibit H.] During the hearing on Eye Level Holdings' motion, the district court judge misinterpreted the Settlement Agreement and Judgment as barring only claims for amounts Verizon paid to settle this case (i.e., zero)—as opposed to barring claims for all amounts Verizon paid to Releasing Parties, including payments after the Settlement Agreement. [*See* Hearing Tr., Oct. 27, 2011, at 31 ("My understanding of contribution and indemnity claims . . . [is] that a contribution or indemnity claim would be a claim that Verizon asserts against another person to recover a portion of what Verizon was required to pay in the *Walker* case. . . . I don't see how the claims asserted [in the Arizona Action] are seeking to have the defendants reimburse Verizon for a portion of what they paid in the *Walker* case, they didn't pay anything in the *Walker* case."), attached hereto as Exhibit I.] It is apparent that the judge in the Arizona Action relied on his view of the purpose of indemnity provisions in other cases, and not on the broad language of the bar order in *this* case. Notably, the ruling was on a motion to dismiss and not on a motion for summary judgment.

8

## III.
## ARGUMENT

**A.    This Court Should Enforce The Settlement Agreement And Its Final Order And Judgment.**

"It is an elementary principle of law that a court is vested with the inherent power to enforce its orders." *In re Baker*, 71 Ill.2d 480, 484 (1978). And where a settlement "agreement is a valid contract, the parties may not repudiate it and the trial court may enforce it summarily." *Lampe v. O'Toole*, 292 Ill. App.3d 144, 148 (1997). Indeed, "it is the *duty* of the court to construe [a settlement agreement] and enforce the contract as made." *Green v. Safeco Life Ins. Co.*, 312 Ill. App. 3d 577, 581 (2000) (emphasis added). Because this Court expressly retained exclusive jurisdiction over the Settlement Agreement and Judgment [Judgment, ¶¶ 1, 22], and Illinois law makes plain "that such a retention is within the power of the trial court, [this Court has] jurisdiction to enforce the settlement agreement in the present case." *Dir. of Ins. v. A & A Midwest Rebuilders, Inc.*, 383 Ill. App. 3d 721, 725 (2008).

Here, both this Court's Judgment and the Settlement Agreement forbid Verizon from asserting against Eye Level Holdings or its affiliates any claim for contribution or indemnity related to this action, the Related Actions, or the Released Conduct. [Settlement Agreement, § XIII.A.5.] "Indemnity" is simply "*[r]eimbursement or compensation for loss, damage, or liability in tort*; esp., the right of a party who is secondarily liable to recover from the party who is primarily liable for reimbursement of expenditures paid to a third party for injuries resulting from a violation of a common-law duty." Black's Law Dictionary, 8th ed. (2004) (emphasis added); *Va. Sur. Co. v. N. Ins. Co.*, 224 Ill. 2d 550, 565–66 (Ill. 2007) (same). Thus, this Court's Judgment and the Settlement Agreement forbid Verizon from seeking compensation from Eye Level Holdings and its affiliates for any losses, damages, or liability Verizon has incurred as a result of any conduct "that is based upon or related to, directly or *indirectly*, in whole or *in part*,

9

(a) the allegations, facts, subjects, or issues set forth or raised in the Action or the Related Actions, or (b) the Released Conduct." [Judgment, ¶ 15 (emphasis added).]

The primary allegations underlying this action and the Related Actions are that Eye Level Holdings and the other defendants utilized deceptive marketing techniques to collect unauthorized charges for premium Mobile Content: "Plaintiffs . . . bring this second amended class action complaint against Defendants . . . seeking to stop Defendants' unlawful practice of charging cellular telephone customers for mobile content products and services the customers have not authorized," "through websites using misleading, oblique, or inadequately explained 'consent' procedures." [Walker Second Amended Compl., ("Walker SAC"), ¶¶ 1, 8, 22, attached hereto as Exhibit J.] Thus, plaintiffs in this underlying lawsuit sought reimbursement for the alleged unauthorized charges. [*Id.* at ¶ 47.]

Those very same allegations underlie Verizon's claims against Eye Level Holdings in the Arizona Action, in that Verizon seeks "compensation" for losses and damages it has sustained as a result of allegedly deceptive marketing, billing, and transmission of Mobile Content: "Verizon Wireless demands damages to compensate it for . . . the harm it has sustained . . . [and] the expenses it has incurred in handling customer complaints concerning defendants [and in] reimbursing its customers on account of defendants' unauthorized charges," allegedly accrued because of Eye Level Holdings' "misleading, deceptive, and noncompliant" web pages. [FAC, ¶¶ 86(b), 121.]

As a result of this alleged conduct, Verizon asserts that it has instituted a process whereby it has voluntarily refunded to its customers—including customers already addressed by the Settlement Agreement in this case—the costs for premium Mobile Content from Eye Level Holdings or its affiliates. [*See* FAC, ¶ 93 ("Because Verizon Wireless does not and cannot definitively know which of its customers may have been charged for [Eye Level Holding's

premium Mobile Content], and which customers were not aware of the charges associated with that content, Verizon Wireless instituted a process whereby its customers could claim refunds for any charges associated with [Eye Level Holdings' premium Mobile] content.").] Verizon apparently paid such refunds without even attempting to determine whether the customers were entitled to the money. [Exhibit G at 332.] Verizon further apparently paid such amounts without even inquiring whether the customers received or would receive their compensation under the Settlement Agreement.

Verizon's Arizona Action now seeks to require Eye Level Holdings to indemnify it against or contribute to these reimbursements Verizon voluntarily paid and other undefined expenses allegedly sustained by Verizon as a result of the marketing, sale, and billing of Mobile Content. [*See, e.g.,* FAC, ¶ 121 (seeking damages to compensate it for, among other things, "the expenses it has incurred in reimbursing its customers on account of defendants' [alleged] unauthorized charges").]

But this is precisely the type of claim barred by this Court's Judgment and the Settlement Agreement. Eye Level Holdings and its affiliates voluntarily agreed to become a party to this action, participated in the Settlement Agreement, and contributed $1.5 million to a global settlement to resolve all claims relating to the marketing, sale, receipt, and billing of allegedly unauthorized Mobile Content. [Settlement Agreement, § XIII.A.4.] Specifically, the Settlement Agreement released *Verizon* and others from liability for:

> [A]ny and all direct or indirect acts, omissions, representations, conduct, legal duties, unjust enrichment, trade practices, or obligations that arise out of, or are … related or connected in any way with one or more of the following: (1) the advertising, marketing, sale, or purchase of the Mobile Content, (2) the transmission, operation, control, or receipt of the Mobile Content, (3) the billing for the Mobile Content, (4) the receipt of money for the Mobile Content or (5) recycled telephone numbers.

11

[*Id*. at 14.]  In other words, Eye Level Holdings and its affiliates paid $1.5 million to settle *all claims*—including claims asserted against Verizon [*see, e.g.*, Settlement Agreement at 13]—by wireless subscribers relating to the advertising, marketing, sale, purchase, or billing of the Mobile Content.  [*Id*. at § XIII.A.4.]  In exchange, Verizon was barred and enjoined from seeking indemnity or contribution for any expenses it incurred relating in any way to the advertising, marketing, sale, purchase, transmission, operation, or billing of Mobile Content.  [*Id*. at § XIII.A.5.]

Verizon thus cannot now sue Eye Level Holdings and its affiliates for losses, damages, or liability—including reimbursements Verizon paid to its wireless subscribers—relating to the advertising, marketing, sale, purchase, or billing of Mobile Content.

Specifically, Verizon is prohibited from seeking damages, as it is expressly doing in the Arizona Action, to purportedly compensate it for "(i) the harm it has sustained to its business reputation and relationship with its customers, (ii) the expenses it has incurred in handling the customer complaints concerning defendants, and (iii) the expenses it has incurred in reimbursing its customers" because all such damages are related to "the advertising, marketing, sale, . . . purchase, . . . transmission, operation, control, . . . or billing [of] Mobile Content" as defined in this Court's Judgment and the Settlement Agreement.  [*See, e.g.*, Settlement Agreement, 14.]  All of these alleged damages fall within the bar on indemnity and contribution claims against Eye Level Holdings and its affiliates.  *Va. Sur. Co. v. N. Ins. Co.*, 224 Ill. 2d at 565–66 (defining indemnity and contribution broadly to include any losses, damages, or liabilities).  Verizon cannot circumvent this Court's Judgment and the Settlement Agreement by the manner in which it chooses to characterize its claims for these same alleged damages.  That is, Verizon's artful drafting of the labels given to its indemnity claims cannot void the Settlement Agreement or nullify this Court's Final Judgment.  Yet that is what Verizon is doing.

Moreover, Verizon cannot accept the benefits of the Settlement Agreement by using that Agreement to be dismissed from the Related Actions filed against it [*see, e.g.,* Ex. D], and yet violate the terms of the very same Agreement, and this Court's Judgment, barring it from seeking indemnification from Eye Level Holdings for the same activities.

This Court thus should enforce both its Judgment and the Settlement Agreement and enjoin Verizon from pursuing claims against Eye Level Holdings and its affiliates for indemnity or contribution.  More specifically, Verizon should be enjoined from seeking damages for "(i) the harm it has sustained to its business reputation and relationship with its customers, (ii) the expenses it has incurred in handling the customer complaints concerning defendants, and (iii) the expenses it has incurred in reimbursing its customers" based upon or related to, directly or indirectly, in whole or in part:  (1) the advertising, marketing, sale, or purchase of the Mobile Content, (2) the transmission, operation, control, or receipt of the Mobile Content, (3) the billing for the Mobile Content, (4) the receipt of money for the Mobile Content or (5) recycled telephone numbers.  And because Verizon is precluded from asserting these indemnification or contribution claims, it also should be ordered to release the approximately $9 million[1] it is withholding from Eye Level Holdings as a purported set-off for these barred claims.

**B.     Verizon's Claims That Eye Level Holdings Failed To Abide By The MMA Guidelines Must Be Litigated Before This Court.**

Not only is Verizon prohibited from seeking indemnity and contribution from Eye Level Holdings, but Verizon also is prohibited from asserting such claims outside the jurisdiction of this Court.  In its Final Judgment, this Court retained exclusive continuing jurisdiction "over the

---

[1] Verizon has not disclosed the amount it is withholding from JAWA, despite the fact that, on November 7, 2011, Verizon responded to a discovery request directed at precisely this information by promising to produce a chart containing "responsive information."

13

Action for the purpose of construing, enforcing and administering the Agreement and its terms, *and the terms of [the Court's] Judgment and Order*." [Judgment, ¶¶ 1, 22 (emphasis added).]

This Court issued a Final Order and Judgment requiring Eye Level Holdings, "for a term of twenty four (24) months, to remain in substantial compliance with the generally accepted consumer best practices guidelines of the Mobile Marketing Association." [*Id.* at ¶ 16.] Verizon's FAC in Arizona is based entirely on the assertion that Eye Level Holdings and its affiliates deceptively marketed their premium Mobile Content in contravention of those same guidelines. [FAC, ¶¶ 1–5; *id.* at ¶ 77 ("To attract customers, defendants actually used URLs that did not comply with the MMA Best Practices, were deceptive and were never submitted to Verizon Wireless for prior approval."); *id.* at ¶ 86 (setting forth purported examples of how Eye Level Holdings violated the MMA Guidelines).] Indeed, Verizon now seeks an injunction in the Arizona Action enjoining Eye Level Holdings and its affiliates from "using marketing practices that fail to comply with the MMA Best Practices." [FAC, ¶ 196.]

But this Court's Judgment requires Eye Level Holdings to remain in substantial compliance with the MMA Guidelines. [Judgment, ¶ 16.] And this Court has exclusive jurisdiction to determine whether Eye Level Holdings has violated that Judgment. [*Id.* at ¶¶ 1, 22.] Accordingly, Eye Level Holdings requests that this Court enforce its Judgment and enjoin Verizon from pursuing its claims that Eye Level Holdings has violated the MMA Guidelines in any court other than this Court.

## IV.
## CONCLUSION

In exchange for being released from liability to subscribers for any claims relating to the marketing, advertising, billing, and transmission of Mobile Content, Verizon cannot seek indemnity or contribution based upon those same activities. Verizon's claims in the Arizona

14

Action against Eye Level Holdings seeking "compensation" for losses or damages incurred as a result of the marketing, advertising, billing, sale, or transmission of Mobile Content are thus barred.  Eye Level Holdings respectfully requests that the Court enforce the Settlement Agreement and its Judgment, enjoin Verizon from pursuing these barred claims, and order it to dismiss these claims currently pending before the District of Arizona.  Eye Level Holdings further requests that the Court order Verizon to release Eye Level Holdings' $9 million currently held as a purported set-off for Verizon's barred indemnification or contribution claims.

Additionally, Eye Level Holdings respectfully requests that the Court enforce its Judgment and order Verizon to litigate its claims that Eye Level Holdings violated the MMA Guidelines before this Court and dismiss that portion of its complaint now pending in the District Court of Arizona.

Dated: December 21, 2011

SQUIRE, SANDERS & DEMPSEY (US) LLP

By: _____

Sharon Doherty Sirott (IL 6236973)
SQUIRE, SANDERS & DEMPSEY (US) LLP
70 W. Madison Ave., Suite 2015
Chicago, Illinois 60602
Telephone: (312) 781-2760
Facsimile: (614) 365-2499
ssirott@ssd.com
Attorneys for Eye Level Holdings, LLC

15