**WILENCHIK & BARTNESS**
A PROFESSIONAL CORPORATION

ATTORNEYS AT LAW
The Wilenchik & Bartness Building
2810 North Third Street  Phoenix, Arizona 85004

Telephone: 602-606-2810    Facsimile: 602-606-2811

Dennis I. Wilenchik, #005350
admin@wb-law.com
*Attorneys for Defendants*
*Jason Hope and Wayne P. DeStefano, et al.*

J. Grant Woods, Esq. #006106
Grant Woods Law P.C.
Two Renaissance Square
40 N. Central Ave., Ste 2250
Phoenix, Arizona 85004
gw@grantwoodspc.net
*Co-Counsel for Defendants*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| Cellco Partnership d/b/a/ Verizon Wireless,<br><br>　　　　　　　　Plaintiff,<br>v.<br><br>Jason R. Hope, et al.,<br><br>　　　　　　　　Defendants.<br><br>And Related Counterclaims. | Case No. CV 11-00432-DGC<br><br>**REPLY IN SUPPORT OF JAWA'S MOTION TO DISMISS**<br><br>Assigned to the Honorable<br>David G. Campbell<br><br>(Oral Argument Requested) |

　　　The Moving Defendants/Counterclaimants by and through undersigned counsel, hereby Reply in support of their Motion to Dismiss Plaintiff's First Amended Complaint ("FAC"), which fails to state claims upon which relief can be granted under Rule 12. The following Memorandum of Points and Authorities supports this Reply.

## MEMORANDUM OF POINTS AND AUTHORITIES

**I.　LEGAL STANDARD**

　　　JAWA trusts that the Court is familiar with the procedural standard for a motion to dismiss and only includes this section to correct Verizon's errors in explaining it. Verizon fails

to mention that on a motion to dismiss under Rule 12(b)(6), FED.R.CIV.P., dismissal can be based on "the lack of a cognizable legal theory" or "the absence of **sufficient facts alleged** under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir.1990). The principle that allegations in a complaint are accepted as true does not apply to legal conclusions or simply conclusory factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009). Verizon's Amended Complaint should be dismissed because "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1965 (2007)). Verizon simply has no claim or any damages to support a claim.

Also, there is no merit to Verizon's half-hearted argument that its FAC cannot be tested against Rule 12(b)(6) because the Court granted it leave to amend. It is true that courts freely grant a party leave to amend whenever "justice so requires," FED.R.CIV.P. 15(a)(2); and requests for leave are granted with "extreme liberality." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 972 (9th Cir. 2009) (citing *Owens v. Kaiser Found. Health Plan*, 244 F.3d 708, 712 (9th Cir.2001)). But that does not mean that Verizon's claims are immune to a motion to dismiss just because the Court granted Verizon leave to amend. The Moving Defendants/Counterclaimants' Motion tests the FAC, as amended. It is elementary that Verizon's amended claims now must pass muster under Rule 12(b)(6), FED.R.CIV.P.

## II. ARGUMENT

### A. Verizon does not properly state any racketeering claims—under either Federal or Arizona law (Counts I - IV).

#### a. <u>Verizon did not, and cannot, properly allege that the individual employees are included in the alleged "enterprise."</u>

Even under the most liberal standards, Verizon has failed to properly plead any act of racketeering that was directed to Verizon.[1] It is axiomatic that the acts complained of must be directed to the Plaintiff as the alleged victim. No such predicate acts have been alleged, as discussed further below; and Verizon's Response does not even address the federal conspiracy

---

[1] JAWA does not concede that Verizon has properly pled any RICO allegation against Jason Hope or Wayne DeStephano, as Verizon has failed to properly plead any RICO claim at all.

2

claim or the state law RICO claims. Verizon is also incorrect that the *Reves* test cannot be applied on a motion to dismiss.[2] *Walter*, *Allstate*, and *Pasamba* are all instances where the court dismissed plaintiffs' RICO claims on motions to dismiss where the plaintiffs failed to allege that the defendants had the ability to direct the enterprises' affairs, per *Reves*.

Simply stated, to be liable under 18 U.S.C. § 1962(c), one must have some part in directing the enterprise's affairs through participation in its operation or management. *Reves v. Ernst & Young,* 507 U.S. 170, 179, 183, 185 (1993); *see also Baumer v. Pachl*, 8 F.3d 1341, 1344 (9th Cir. 1993), *Webster v. Omnitrition Intern.*, 79 F.3d 776, 789 (9th Cir. 1996). The Ninth Circuit has adopted the *Reves* operation and management test and applied it in *Baumer* and *Webster*. *Id*. In both cases, the court focused on whether the defendants had the ability to direct and control **the company's** affairs. *Id*.  One can be "part" of an enterprise without having a role in its management and operation, but simply performing services for the "enterprise" does not rise to the level of direction, and thus liability, regardless of whether an individual is an employee of the alleged enterprise. *Walter*, 538 F.3d at 1249.[3]  Liability does not attach simply because an employee failed to stop the alleged illegal activity. *Id*. at 1248.

Here, Verizon has not even alleged that the individual defendants directed the alleged enterprise's affairs or that the acts were directed at Verizon. Verizon merely alleges:

- Individuals were "employed," "associated with," and "worked in concert" [FAC ¶¶ 9 – 13, 66, 103, 111 – 115];

---

[2] *See Walter v. Drayson*, 538 F.3d 1244, 1245-46 (9th Cir. 2008); *Allstate Ins. Co. v. Stone*, CV 07-1481-PHX-JAT, 2008 WL 802268 (D. Ariz. Mar. 24, 2008); *Pasamba v. HCCA Int'l*, CV-08-0247-PHX-NVW, 2008 WL 2562928 (D. Ariz. June 24, 2008).

[3] Verizon misstates the standard in *Reves* by alleging that an employee's "direct" involvement in alleged fraudulent conduct equates to that employee managing or "directing" the enterprise's affairs. Resp. at FN 2. Verizon confuses the verb "direct" with the adjective "direct." It is self-evident that an employee has a "close logical, causal, or consequential relationship" with the employee's own work; this truism does not lead to the conclusion that the employee carried out the "organizing … and supervising of" or "determine[d] the course of" that work. MERRIAM-WEBSTER DICTIONARY (2011). *Reves* requires that "'to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs,' § 1962(c), one must participate in the operation or management of the enterprise itself." *Reves*, 507 U.S. at 185, 1173. Verizon's reliance on *Marceau v. International Broth. Of Elec. Workers,* 618 F.Supp.2d 1127, 1170 (D. Ariz. 2009) is misplaced. As seen above, what Verizon concludes is "active[] involve[ment] in concocting and carrying out the fraudulent scheme" is insufficient to pass the operation and management test. Resp. at FN 2. None of these alleged actions constitute operation or management. *See Reves* at 179, 1170; *Walter*, 538 F.3d at 1245-46.

3

- Individuals "met and discussed" certain matters [FAC ¶¶ 68, 80, 113 – 115]; and
- Individuals "conducted or participated" in the alleged enterprise's affairs [FAC ¶ 103] and were "identified as … contact person[s]" [FAC ¶¶ 111 – 115, 73.]

Verizon has not alleged, let alone with specificity, any facts that would demonstrate that these individual defendants had the ability to direct and control JAWA's affairs. Verizon has done no more than simply allege in a conclusory form that these Defendants were performing services for the alleged enterprise. This is insufficient as a matter of law because the Ninth Circuit in *Walter* squarely held that such allegations do not rise to the level of "direction" required under *Reves*. Consequently, Verizon has not properly stated a RICO claim against the individual Defendants, and the Court should dismiss this count as to those individuals, at a minimum.

b. <u>Verizon did not properly allege mail and wire fraud as predicate acts.</u>

Verizon must allege that Defendants have committed at least two acts of racketeering activity directed at Verizon, 18 U.S.C.A. § 1961(5). The FAC utterly fails to even allege that Defendants intended to obtain money or property from Verizon. In fact, as the Court knows, Verizon has never remitted any money to JAWA, since JAWA has no relationship with Verizon. Verizon does not dispute the applicable rule for mail and wire fraud that "the intent must be to obtain money or property from the one who is deceived." *United States v. Lew*, 875 F.3d 219 (9th Cir. 1989); *United States v. Shipsey,* 363 F.3d 962, 971 n. 10 (9th Cir.2004) (citing *Carpenter v. United States,* 484 U.S. 19, 25 n. 6 (1987) (it is well settled that cases construing the mail fraud and wire fraud statutes are applicable to either). Verizon simply ignores the application of this basic rule to this case.

Instead, Verizon erroneously asserts that JAWA indeed has obtained money or property from Verizon.[4] Resp. at 5:19-20 (stating that JAWA "received money collected and billed by

---

[4] Verizon improperly relies on *Dowie* for the premise that JAWA could be liable to Verizon under a RICO theory. Resp., at 6. In reality, *Dowie* is completely inapposite. In *Dowie*, bills directed at a government agency were paid by the City of Los Angeles, which resulted in an indirect budgetary harm to the agency. Here, JAWA's actions were directed solely at its customers who paid money themselves, not on behalf of Verizon, such that Verizon received some type of indirect monetary or budgetary harm. Accordingly, even if Verizon could prove some alleged illegal enterprise, which it cannot, the proper plaintiffs would be JAWA's customers, not Verizon. As laid out in Defendants' Motion to Dismiss, it is well established that derivative victims are not permitted to bring RICO claims. To find otherwise would undermine the long line of cases that forbid derivative RICO suits.

Verizon Wireless."). But this disingenuous and artful pleading does not provide what the rule requires. Verizon argues that it was "obliged to reimburse" its customers, like the bank in *United States v. Bonallo*, 858 F.2d 1427 (9th Cir. 1988). Resp. at 6:5-12. Verizon is wrong. It was never legally "required" to reimburse anyone and continues this deception to this day as if it were a fact. It is not a fact and Verizon alleges no facts to establish that legal conclusion. In *Bonallo*, the court stated in a footnote that the defendant harmed a bank when wrongfully it deprived the bank's customers of their funds. *Bonallo*, at 1433-34, fn. 9. The court reasoned that this deceit on the bank's customers effectively resulted in harm to the bank because the bank "was obliged to reimburse those customers." *Id.* This footnote has nothing to do with Verizon's claims at all because Verizon has never alleged, nor can it prove, that it was obligated under any agreement with its customers to reimburse them for JAWA services that the customer ordered. Verizon does not even allege in its Complaint that it was obligated to reimburse its customers. *See* FAC ¶¶ 93 – 95. Indeed, as a matter of common sense as well as law, the obligation by a bank to return stolen funds bears no relation to Verizon's unilateral decision to voluntarily offer refunds to thousands of people who never even complained. Verizon can show no damage.

*Bonallo* is also distinguishable because a bank's customer has a debtor-creditor relationship with the bank. *See In re Bakersfield Westar Ambulance, Inc.*, 123 F.3d 1243 (9th Cir. 1997). When a customer deposits money with a bank, the title to those funds passes to the bank and the "depositor receives a contract claim against the bank for an amount equal to the account balance." *Id.* Here, Verizon has no legal interest in its customer's funds other than to take its share and pay the aggregators the rest. Verizon has never alleged that it has a contractual or legal duty to reimburse or refund JAWA customers for its third-party carrier services. *See* FAC ¶¶ 60, 165-67. Accordingly, because Verizon has no standing to bring claims for its customers, and no cognizable damage even alleged, JAWA's intent to receive money or property from its own customers does not equate to an intent to obtain money or property or injury to such property as to Verizon. The footnote in *Bonallo* is unavailing.

Verizon also vainly attempts to distinguish *Lew* by alleging that JAWA received money that was billed and collected by Verizon. But, Verizon collects and bills that money for its

aggregators it does business with, not JAWA. Whether JAWA ultimately receives part of those funds is no more significant than whether the janitor who sweeps an aggregator's offices makes a living indirectly off of those funds either. Such semantic machinations are irrelevant. A RICO claim not only requires that the defendant had an intent shown to obtain money or property directly from the deceived party, but that the deceived party suffered a resultant injury to **its** money or property. *See Williams v. Dow Chem. Co.*, 255 F. Supp. 2d 219, 225 (S.D.N.Y. 2003) (holding that plaintiff must also allege he or she was "injured in his business or property by reason of a violation of section 1962" pursuant to 18 U.S.C. § 1964(c)). Therefore, Verizon's collection and delivery of its customers' money is irrelevant. The money received was not Verizon's money or property and is insufficient to meet the requirements of 18 U.S.C. § 1962(c) as a matter of law.

Moreover, JAWA's use of mail was not "sufficiently closely related" to the alleged fraudulent scheme. Indeed, it is unclear just what "fraudulent scheme" Verizon refers to. First, JAWA is not ignoring the allegation that it sent applications to CTIA. JAWA did not address this issue because Verizon never pled that JAWA mailed short code applications to CTIA. Verizon only alleges that the applications by defendants to the CTIA were somehow in violation of the mail fraud statutes, but fails to explain how or why it is so, or how it relates directly to Verizon. Verizon fails to allege this because it is aware that no applications were **ever** sent via U.S. mail to CTIA or Verizon. These baseless claims cannot survive.

Second, Verizon alleges that "causing" bills to be sent by Verizon was essential to the success of JAWA's scheme. Again, this is entirely irrelevant and even unclear how JAWA can "cause" Verizon to have done anything. It has no relationship with it whatsoever. However, Verizon actually misstates what is actually alleged in its RICO claim. As explained above, in order for Verizon to be successful on a RICO claim it must demonstrate that JAWA intended to obtain money or property from Verizon, and that there was an injury caused to Verizon's money or property. Clearly, there was not, nor could there be as Verizon has held many more millions in dollars from the aggregators than was being billed in any given cycle. It would be ludicrous to assert that JAWA could have intended to deceive or damage Verizon. Verizon's argument

attempts to mischaracterize the purpose of JAWA's alleged scheme to relate to the Verizon collection of proceeds of the charges billed to its mutual customers, which amounts to an attempt to sue on behalf of its customers, and not on its own behalf. The only allegations that involve actions that could be construed to involve harming Verizon's money or property involve the alleged fraudulent methods to obtain access to Verizon's network. FAC ¶¶ 60 – 86. As described further below, these actions were not directed at Verizon at all – JAWA has no direct contact with Verizon. Therefore, the mailing of the bills to the customers could not be a part of the fraudulent activity involving Verizon's money or property because the alleged scheme came to fruition when JAWA obtained access to Verizon's network, which is necessarily prior to any interaction with customers or the mailing of any bills.

Verizon's cited case law not only does not address these points, but misconstrues the mail fraud standard as well. Verizon relies on *Pereira v. United States*, 347 U.S. 1 (1954) to support its allegation that the collection of the proceeds of a check is an essential part of a mail fraud scheme without informing the Court that JAWA has nothing to do with Verizon's collection or disbursement of any collections, contrary to any artful implication by Verizon to the contrary. In *Pereira*, it was undisputed that the plan was to defraud the defendant and therefore the collecting of the proceeds from the check was obviously an essential part of the scheme. Again, unlike in *Pereira*, here, Verizon is not alleging that JAWA was defrauding it as to its money. Rather, Verizon has alleged that JAWA was somehow defrauding it to obtain access to its network and customers, even though this does not factually hold up and Verizon knows it. Therefore, the mailing of Verizon's customer bills, which has always occurred regardless of JAWA, was not an essential part of any scheme to gain access to the network because the mailing to the customers took place after completion of the alleged fraud. *See United States v. Maze*, 414 U.S. 395 (1974) (holding that the mailings were not sufficiently related to the scheme because the scheme had reached fruition).

Furthermore, Verizon misconstrues the causation element expounded in *Pereira* to establish the essential element requirement. *Pereira* makes it clear that to determine if the defendant caused the mailing insofar as the alleged fraud, the court looks to whether "one does

7

an act with knowledge that the use of the mails will follow in the ordinary course of business, or where such use can reasonably be foreseen, even though not actually intended." *Pereira*, 347 U.S. at 8-9. While Verizon claims that JAWA would have foreseen the mailing of the bills, it totally fails to connect the mailings to the actual fraud that it claims – namely a fraudulent access to Verizon's network. Accordingly, the mailing is irrelevant to the alleged fraud, regardless of whether it could be foreseen, because the alleged fraud was completed as soon as JAWA accessed Verizon's network. Verizon has not properly alleged the predicate acts of mail and wire fraud, and therefore its RICO claim under § 1962(c) must be dismissed.

> c. <u>Verizon's Arizona racketeering claims fail for reasons stated above, and Verizon's conspiracy claim, 18 U.S.C.A § 1962(d) fails because Verizon cannot prove its 1962(c) claim</u>.

Verizon's racketeering claim under Arizona law fails for the same reasons Verizon's Federal racketeering claim fails. Arizona District Court held that the meanings of "conducts" or "participates" within A.R.S. § 13-2312(B) are determined by the operation and management test stated in *Reves*. *Tonnemacher v. Sasak,* 859 F.Supp. 1273, 1278-79 (D.Ariz.1994); *see also Allstate Ins. Co. v. Stone*, CV 07-1481-PHX-JAT, 2008 WL 802268 (D. Ariz. Mar. 24, 2008) (holding that the analysis under the Arizona racketeering statute mirrors the analysis under the federal RICO statute). The court in *Tonnemacher,* similar to the Ninth Circuit in *Baumer* and *Webster,* focused on whether the plaintiff alleged facts that show the defendant was involved in the direction of the enterprise's affairs and concluded that the defendant accounting firm did not fulfill the *Reves* test. *Tonnemacher,* 859 F.Supp at 1277. As shown above, Verizon failed to allege that the individual defendants directed the affairs of the alleged enterprise, and therefore the FAC fails the *Reves* operation and management test. Thus, FAC similarly fails to state a claim under Counts 3 and 4 for violation of A.R.S §§ 13-2310(A), 13-2312(B).

Additionally, when a plaintiff fails to allege the requisite substantive elements of RICO, a conspiracy cause of action cannot stand. *Religious Tech. Ctr. v. Wollersheim,* 971 F.2d 364, 367 n. 8 (9th Cir. 1992). Here, Verizon failed to allege the substantive elements of its RICO case, and therefore its conspiracy claim pursuant to § 1962(d) also fails.

8

### B.     Verizon does not properly state a common law fraud claim (Count V).

Verizon fails to even address JAWA's arguments that Verizon does not meet the basic elements of a common law fraud, which is reason alone to dismiss the claim. The Court may consider the March 30, 2009 email as part of the FAC in deciding this motion to dismiss. Although the general rule is that when ruling on a motion to dismiss the court must disregard facts not alleged on the face of the complaint, the Ninth Circuit has extended the incorporation by reference doctrine to include documents not attached to the Complaint. *See Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005).[5] Verizon's FAC describes in detail, although inaccurately, this email and it is the basis for Verizon's common law fraud claim. *See* FAC ¶¶ 60, 165-167. Therefore, "[t]he court may treat such a document as 'part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6).'" *Marder,* 450 F.3d at 448 (quoting *U.S. v. Ritchie,* 342 F.3d 903, 908 (9th Cir.2003)).

Verizon is unable to show that JAWA made a false material representation made to Verizon. First, it is clear from the email that it was sent to an aggregator, OpenMarket, not Verizon, which even Verizon admits in its FAC, ¶ 76. No allegation is made nor can it be that JAWA intended this to be shared with Verizon or that it was even known that it was. It was OpenMarket, not JAWA, that chose to make a representation to Verizon by forwarding the email. Therefore, any statements made in Hope's email to OpenMarket, were not representations made to Verizon at all or intended for it to do anything. Verizon's attempt to skirt these simple facts by misleading and failing to attach the actual email to its complaint must fail.

Second, there was no misrepresentation of any material fact upon which it was intended or foreseen that Verizon would rely to do anything. The only statement of a material fact made in the email was Hope's statement to the aggregator that he "pledge[d] [his] firm commitment to continue to work with Verizon . . . to rapidly and immediately solve any and all issues that arise with any of our programs." This statement is not relating to a present fact but an assurance of

---

[5] The Court may consider a document not attached to the Complaint if: "(1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." *Marder v. Lopez,* 450 F.3d 445, 448 (9th Cir. 2006). Here, although Verizon incorrectly states that the attachment of this document was improper, Verizon does not dispute its authenticity.

9

some hope of future cooperative conduct that is not even a factual representation. "[A] representation that something will be done in the future or a promise to do it is . . . not a fraudulent representation such as will sustain an action of fraud." *Dawson v. Withycombe*, 216 Ariz. 84, 96, 163 P.3d 1034, 1046 (App. 2007) (citations omitted).

Lastly, Hope's pledge to continue to work with Verizon and rapidly solve all issues was not false. Verizon has not alleged that the alleged fraudulent conduct in this case involves a violation of the same MMA guidelines as the 2009 incident. Verizon has also not alleged that JAWA refused to work with it in remedying MMA violations on its short codes; in fact, Verizon did not give JAWA notice of the alleged MMA violations before bringing suit. Because Verizon was unable to establish that JAWA made a representation that was false and material to Verizon, Verizon has not meet three of the required elements of its fraud claim. As a result, Verizon's fraud claim must be dismissed as a matter of law.

### C. Verizon does not properly state a tortious interference claim (Count VII).

Verizon does not sufficiently allege conduct directed at Verizon that is necessary. As previously explained, and as urged again, Verizon cannot dispute that it had no relationship with JAWA at all and no direct contact with JAWA. As previously explained, Verizon cannot dispute that the March 2009 email from Jason Hope was sent to OpenMarket rather than to Verizon, that JAWA disclosed new PSMS programs and its subsidiary LLCs to the Aggregators, or that the cloaking software was used to block any non-customer and as such was not directed to Verizon. There was no "wrongful" act directed at Verizon, nor any intent to interfere with any contract or business relationship with JAWA's own customers, which were mutually shared

Further, Verizon has not even sufficiently alleged the actual customer contracts underlying its tortious interference claim. In order for the plaintiff to prove a prima facie case, it is fundamental that it must establish the existence of a valid contractual relationship or business expectancy. *Pre-Fit Door, Inc. v. Dor-Ways, Inc.*, 13 Ariz. App. 438, 441, 477 P.2d 557, 560 (1970). Verizon has done no more than make conclusory and "generic allegations that there was an interference with an unnamed third party," which is insufficient as a matter of law. *Bradley v. Google, Inc.*, C 06-05289 WHA, 2006 WL 3798134 (N.D. Cal. Dec. 22, 2006); *Accuimage*

*Diagnostics Corp. v. Terarecon, Inc.*, 260 F.Supp.2d 941, 957 (N.D.Cal.2003) (dismissing plaintiff's tortious interference claim which was no more than "conclusory allegations that valid 'contracts' exist between itself and an unspecified third party" that did not "provide notice to the defendants of some facts surrounding the type or nature of the 'contracts' their conduct allegedly interfered with"). Verizon has not even alleged the identities of the third parties to its contracts or alleged any of the essential terms or conditions that those third parties failed to perform. *See Biltmore Bank of Arizona v. First Nat. Mortg. Sources, L.L.C.*, CV-07-936-PHX-LOA, 2008 WL 564833 (D. Ariz. Feb. 26, 2008) (stating what facts are required to prove a material breach of contract). Verizon claims that it need not allege a particular contractual obligation that was burdened or made more expensive, but it is wrong, and even its own language demonstrates the fallacy of this statement – as it alleges Defendant's conduct "makes the plaintiff's performance *of its contract* more burdensome or expensive." Resp. at 8 (emphasis added). In so stating, Verizon implicitly recognizes that the added burden or expense must result from performance of **the contract**, and not some gratuitous extra-contractual dealings or voluntary refund. Any other rule would allow a business to concoct all manner of deals and give-aways for their customers at someone else's expense. Here, Verizon has done just that by issuing unilateral and gratuitous refunds to its customers in order to promote its own goodwill while claiming that JAWA must foot the bill and the Court must surely see this. This is at its heart entirely unfair and the law does not allow Verizon to require JAWA to foot the bill to increase Verizon's goodwill from its customers. This is not a legally cognizable claim supported by legitimate damages and the Court must dismiss this count. Again, no damage has ever been alleged in anything but a conclusory fashion without any basis or support alleged.

### III.   CONCLUSION

Neither the assumptions forced by Verizon, nor its attempt to play a game of semantics in order to overcome a Motion to Dismiss can remedy the fact that Verizon has failed to state any facts sufficient to state a legally cognizable claim. For all of the reasons stated in JAWA's Motion to Dismiss and herein, Verizon has failed to state any claim against JAWA in its amended complaint, and the complaint should be dismissed in its entirety.

**RESPECTFULLY SUBMITTED** this 5th day of January, 2012

| **WILENCHIK & BARTNESS, P.C.** | **GRANT WOODS LAW P.C.** |
|---|---|
| /s/ Dennis I. Wilenchik, Esq. | /s/ Grant Woods, Esq. |
| Dennis I. Wilenchik, Esq. | Grant Woods, Esq. |
| The Wilenchik & Bartness Building | Two Renaissance Square |
| 2810 North Third Street | 40 N. Central Ave, Suite 2250 |
| Phoenix, Arizona 85004 | Phoenix, Arizona 85004 |
| admin@wb-law.com | gw@grantwoodspc.net |
| *Attorneys for Defendants Jason Hope and Wayne P. Destefano, et al.* | *Co-counsel for Defendants Jason Hope and Wayne P. Destefano, et al.* |

## CERTIFICATE OF SERVICE

I certify that on this 5th day of December, 2012, I electronically transmitted the attached document to the Clerk's office of the United States District Court, District of Arizona, using a Clerk of Court hosted electronic filing system for filing and the transmittal of a Notice of Electronic Filing to all CM/ECF registrants.

/s/ H. Myers