# Exhibit A

Excerpt of Reporter's Transcript of Proceedings –
Hearing on Plaintiff's Motion for Preliminary Injunction
dated April 14, 2011

pp. 357-371

```
                    UNITED STATES DISTRICT COURT

                      FOR THE DISTRICT OF ARIZONA

                            _____


CELLCO PARTNERSHIP,               )
                                  )
                                  )
                  Plaintiff,      )
                                  )
       vs.                        )  NO. CV 11-432 PHX-DGC
                                  )
JASON HOPE, et al.,               )  Phoenix, Arizona
                                  )  April 14, 2011
                                  )  9:02 a.m.
                  Defendants.     )
_____)



            REPORTER'S TRANSCRIPT OF PROCEEDINGS

       (Hearing on Plaintiff's Motion for Preliminary Injunction)

            BEFORE THE HONORABLE DAVID G. CAMPBELL
```

Court Reporter:       Merilyn A. Sanchez, CRR
                      Sandra Day O'Connor U.S. Courthouse
                      401 W. Washington Street SPC-37
                      Phoenix, Arizona  85003-2118
                      (602) 322-7250

Proceedings taken by stenographic court reporter
Transcript prepared by computer-aided transcription

APPEARANCES

For the Plaintiff:	**Paul K. Charlton**, Esq.
	**Lindsi M. Weber**, Esq.
	Gallagher & Kennedy
	2575 E. Camelback Road, Suite 1100
	Phoenix, Arizona   85016

	**Marcos D. Jimenez**, Esq.
	**Scott B. Cosgrove**, Esq.
	Kasowitz, Benson, Torres & Friedman
	1441 Brickell Avenue, Suite 1420
	Miami, Florida   33131

For the Defendants:	**Douglas F. Behm**, Esq.
	14362 N. Frank Lloyd Wright Blvd.
	Suite 1000
	Scottsdale, Arizona   85260

	**Kathleen M. LaValle**, Esq.
	**Richard E. Griffin**, Esq.
	**Curt M. Langley**, Esq.
	**Kurt Schwartz**, Esq.
	Jackson Walker
	1401 McKinney, Suite 1900
	Houston, Texas   77010

```
 1            THE COURT:  That hardship, that hardship --
 2            MR. SCHWARTZ:  Right.
 3            THE COURT:  -- may support your request that I enter
 4   your injunction.
 5            MR. SCHWARTZ:  Yes.                                        11:44:35
 6            THE COURT:  But it's not related to their request that
 7   I enjoin you from doing deceptive things.
 8            MR. SCHWARTZ:  Except for the fact that we aren't.
 9            THE COURT:  Well, if you're not, and I tell you not
10   to, how does that impose a hardship on you?                         11:44:45
11            MR. SCHWARTZ:  You're right.  I mean, we follow the
12   rules.  If you tell us to follow the rules and we've been told
13   in other cases to follow the rules in the Illinois class action
14   case to follow the rules.  It's already done.  I mean, the
15   judge in Chicago has --                                             11:45:02
16            THE COURT:  Okay.  I'm sorry, I didn't mean to cut you
17   off.  I'm agreeing.  I understand what you're saying.
18            MR. SCHWARTZ:  Right.
19            THE COURT:  Did you -- I interrupted you before you
20   went on to a second point on hardship.  Did you want to make       11:45:13
21   that point?
22            MR. SCHWARTZ:  No, I would prefer to answer your
23   questions.
24            THE COURT:  Okay, let me ask you the -- in fact the
25   next question was going to be about the Illinois class action.    11:45:24
```

```
 1              MR. SCHWARTZ:  Sure.
 2              THE COURT:  Now, I saw your supplemental brief that
 3   was filed two days ago, I think.  I can't tell you that I have
 4   read the -- all of the attachments, but here's my
 5   understanding.  My understanding is that some or all of the        11:45:43
 6   defendants were -- defendants in this case were a defendant in
 7   Illinois.
 8              MR. SCHWARTZ:  Correct.
 9              THE COURT:  So JAWA was a defendant in Illinois.
10              MR. SCHWARTZ:  All of them.                             11:45:57
11              THE COURT:  Was Verizon a defendant in Illinois?
12              MR. SCHWARTZ:  Verizon was not a defendant.  Verizon
13   was a released party.
14              THE COURT:  Okay.  So Verizon is a released party
15   meaning that the plaintiffs in the class action in Illinois       11:46:06
16   have released any claims they have against Verizon.
17              MR. SCHWARTZ:  And against JAWA.  But, yes, Verizon as
18   well.
19              THE COURT:  Okay, so it's a release of those
20   plaintiffs' claims.                                               11:46:19
21              MR. SCHWARTZ:  Correct.
22              THE COURT:  How does that constitute a release of
23   Verizon's claims against you in this case?
24              MR. SCHWARTZ:  Because they are derivative of those
25   claims.                                                           11:46:30
```

```
 1            THE COURT:  Meaning what?
 2            MR. SCHWARTZ:  Meaning the injury that they are
 3   complaining about is the injury to their customers.  I mean,
 4   Verizon is not a consumer of our services.  Verizon sells us
 5   stuff.  Verizon -- you know, we pay them.  The evidence          11:46:42
 6   yesterday was that in the previous 12-month period, they got
 7   30 percent of $80 million that we billed through them.
 8            Verizon complained -- opposing counsel complained a
 9   few minutes ago about the fact that customers are billed for
10   JAWA's products on Verizon's bills.  That's at Verizon's        11:47:03
11   insistence.
12            You know, you know, the bottom line in this cases is
13   they are acting as an Attorney General.  Okay.  They are saying
14   that JAWA is doing bad things to consumers out there, and we
15   are going to stop them.  But they don't have standing to do it  11:47:23
16   under the AFCA.  They don't have standing to do it under any
17   other theory that they've alleged.  They haven't established
18   any sort of injury.  I mean, when people cancel their
19   subscriptions to Verizon, they get charged $350 bucks if it's
20   before the end of the contract period.                          11:47:41
21            So --
22            THE COURT:  Well --
23            MR. SCHWARTZ:  -- their entire case is premised on an
24   injury to people who -- whose claims have been released as --
25   against them and against us.                                    11:47:55
```

1    THE COURT: The -- the injunction they are seeking
2    would say you shouldn't activate short codes on a Verizon
3    network. You shouldn't use deceptive practices in trying to
4    get onto the Verizon network. You shouldn't cloak information
5    to -- that might be reviewed by Verizon auditors.       11:48:14
6    MR. SCHWARTZ: They haven't shown any injury from
7    that.
8    THE COURT: Well, let's not talk about injury. It
9    doesn't seem to me that any of that relief could have or was
10   sought by the customers who were plaintiffs in the Illinois    11:48:27
11   class action.
12   MR. SCHWARTZ: That's correct.
13   THE COURT: Then how are the claims derivative? They
14   are seeking separate relief here.
15   MR. SCHWARTZ: Because the injury underlying those    11:48:38
16   claims, there has to be injury for there to be standing, and
17   the injury is what's derivative.
18   THE COURT: Well, what about Verizon's claim that the
19   injury is also to Verizon, it's not just to their customers,
20   it's to them when they end up with disgruntled customers    11:48:50
21   because of the defendants' actions? That's a separate injury
22   to Verizon, isn't it?
23   MR. SCHWARTZ: I don't know that a disgruntled
24   customer is a -- you know, is the sort of injury that the
25   Supreme Court requires for standing in Lujan, for example.    11:49:10

```
 1          THE COURT:  Well, but if -- I mean, it seems to me
 2  Verizon very much depends upon the good will of its
 3  customers --
 4          MR. SCHWARTZ:  Yes.
 5          THE COURT:  -- to maintain its business.  If you are       11:49:22
 6  harming that good will, as they allege by the conduct of the
 7  defendants and dealing with those customers, that's a harm to
 8  Verizon, isn't it?
 9          MR. SCHWARTZ:  That is correct.
10          THE COURT:  And that harm was not being addressed in       11:49:33
11  the Illinois class action, right?
12          MR. SCHWARTZ:  No, the monetary loss was.
13          THE COURT:  Monetary losses to the customers.
14          MR. SCHWARTZ:  And -- to the customers and because the
15  Court en- -- part of the relief that was obtained was an           11:49:51
16  injunction directing the defendants to substantially comply
17  with the MMAs.  So that -- that --
18          THE COURT:  For the protection of the customers who
19  are the plaintiffs in Illinois.
20          MR. SCHWARTZ:  But that -- presumably that precludes       11:50:09
21  us from deceiving Verizon.
22          THE COURT:  Well, you might be right, that the relief
23  that those customer plaintiffs in Illinois received would
24  overlap with the relief obtained in this case.  But there's
25  nothing that says the two lawsuits can't produce overlapping       11:50:24
```

1  relief.
2       The question is whether the claim in your argument,
3  whether the claim by Verizon here and the claim by the
4  customers there are the same claims. And it seems to me
5  Verizon has its own claim. That claim wasn't released in the    11:50:37
6  Illinois class action. So I can't rely on the Illinois class
7  action to say they've been released.
8       MR. SCHWARTZ: I think that's correct. But I think
9  the problem is whether they have established any of their
10 claims.                                                          11:50:56
11      THE COURT: Well, I agree that's a separate issue.
12 That doesn't -- I don't look to the Illinois class action to
13 decide that case.
14      MR. SCHWARTZ: Correct.
15      THE COURT: Okay. Let me come to the Arizona Consumer  11:51:03
16 Fraud Act. You made the argument in your briefs that only the
17 Arizona Attorney General can seek injunctive relief.
18      MR. SCHWARTZ: Yes, Your Honor.
19      THE COURT: And you made it on the basis of a
20 provision of the statute that authorizes the Arizona Attorney   11:51:24
21 General to seek injunctive relief.
22      MR. SCHWARTZ: Correct.
23      THE COURT: But that's not the provision of the
24 statute that the Arizona Supreme Court looked to in finding a
25 private right of action, correct?                               11:51:35

1   MR. SCHWARTZ: That is correct as well.
2   THE COURT: What they looked at was a different
3   provision in the statute that says this statute shall not be
4   construed as prohibiting any claim that might be brought.
5   MR. SCHWARTZ: Correct.                                          11:51:50
6   THE COURT: Doesn't that mean that any claim,
7   including injunctive relief, is still available for people
8   other than those specified in the statute?
9   MR. SCHWARTZ: I don't think so, Your Honor. The
10  Arizona act is structured remarkably similar to RICO in that    11:52:00
11  it's got a separate -- a separate section that deals with
12  injunctive relief. And in RICO, the case law is quite clear
13  that only the Attorney General can seek injunctive or other
14  equitable relief such as seizing property.
15  I've looked, you know, I did a Westlaw search, and I           11:52:26
16  couldn't find a single case in Arizona where a consumer had
17  been granted an injunction.
18  Now, I didn't find cases going the other way either.
19  But it seems to me that the structure -- that the structure of
20  the act indicates that it's only the Attorney General who      11:52:42
21  should be bringing this sort of action. The Attorney General's
22  a person who ought to be in here complaining about JAWA ripping
23  off customers. And the act requires a consumer as a plaintiff.
24  And --
25  THE COURT: Well, why do you say that, that it                  11:53:06

```
 1   requires a consumer as a plaintiff?
 2           MR. SCHWARTZ:  Because that's what the cases quite
 3   plainly say.
 4           THE COURT:  Well, the cases, I don't think there's any
 5   case that says only the consumer can sue.  I know that the              11:53:16
 6   cases say the act was designed to protect consumers.
 7           MR. SCHWARTZ:  Correct.  But every single case that
 8   opposing counsel has cited was brought by a consumer.  The --
 9   what their cases say, if anything, is that there doesn't have
10   to be a merchant as defined.  It doesn't say that there doesn't        11:53:35
11   have to be a consumer.
12           THE COURT:  But there aren't, as you pointed out a
13   minute ago on another point, there aren't cases going the other
14   way.  There aren't cases saying you have to be a consumer to
15   sue.                                                                    11:53:51
16           MR. SCHWARTZ:  No, all of the cases involve consumers.
17           THE COURT:  Right.
18           MR. SCHWARTZ:  I mean, you can't find anything where
19   there isn't a consumer engaged in the sale of merchandise as
20   merchandise is defined under the act.                                   11:54:03
21           THE COURT:  Okay.  Did you have anything that you
22   wanted to say on the tortious interference or unjust enrichment
23   discussion that I had with Mr. Jimenez?
24           MR. SCHWARTZ:  Yeah, a couple of things, Your Honor.
25   The first thing is, as far as the tortious interference claim          11:54:19
```

```
 1  is concerned, Mr. Jimenez stated that there they were seeking
 2  relief as to future business relationships.  That's not so.
 3  The Count 4 of their Complaint is plainly -- plainly refers to
 4  existing customers.  So there's -- so there has to be a breach
 5  of the existing customers' contracts.  And I think that's                11:54:46
 6  pretty significant.  The --
 7            THE COURT:  Well, how about your response to his point
 8  under this case that I haven't read, the Brands versus Lakeside
 9  Fire District case, that if you make one party to the
10  contract's performance more expensive or burdensome, you have a          11:55:05
11  claim for the tort.
12            MR. SCHWARTZ:  I don't -- I haven't seen any evidence
13  of more expensive or burdensome.  I mean, it's what has -- what
14  has JAWA done that makes their -- their job any more expensive
15  or burdensome?                                                           11:55:23
16            THE COURT:  Well, I understand that's a factual
17  argument.  My question is do you disagree with the legal
18  proposition that that kind of a harm can be redressed through a
19  tortious interference claim?
20            MR. SCHWARTZ:  My -- my reading of the case is that           11:55:38
21  the tortious interference -- my reading of the cases is that it
22  requires a breach, not simply the burden.  The -- the 2002
23  Arizona Supreme Court case Wells Fargo Bank versus Arizona
24  Laborers says, and --
25            THE COURT:  I'm very familiar with that case.  Isn't         11:56:12
```

```
 1   that -- that's Justice Jones' opinion, right?
 2           MR. SCHWARTZ:  It plainly says intentional
 3   interference inducing or causing a breach.
 4           THE COURT:  That's in the description of the elements
 5   of the tort, right?                                              11:56:23
 6           MR. SCHWARTZ:  Correct.
 7           THE COURT:  But it doesn't address the question of
 8   whether something more than that or something less than that
 9   could satisfy the tort.
10           MR. SCHWARTZ:  That's correct.  I would have to go      11:56:36
11   read that case, which I just haven't recently.
12           THE COURT:  Okay.  How about the unjust enrichment
13   point, did you want to say anything on that?
14           MR. SCHWARTZ:  That's almost -- I mean, Your Honor,
15   Verizon -- we -- assuming my client has been unjustly enriched, 11:56:54
16   it hasn't been at Verizon's expense.  That plainly isn't true.
17   I mean, it's the other way around.  I mean, like I said
18   earlier, in the past 25 months, they got 30 percent of
19   $80 million.
20           I think the unjust enrichment claim seems to me to be   11:57:16
21   almost as weak as the RICO claims.
22           THE COURT:  Okay.  All right.  You've actually got
23   five minutes left.  Are there other points you wanted to make?
24           MR. SCHWARTZ:  Just a few.  Your Honor, yesterday
25   Mr. -- Verizon put Mr. LaPerch on the stand to establish what   11:57:38
```

|   |   |   |
|---|---|---|
| 1 | they consider to be the deceptive practices that my clients are | |
| 2 | alleged to have engaged in.  And, of course, Mr. LaPerch | |
| 3 | testified that everything in his declarations was 100 percent | |
| 4 | accurate.  And we poked a few holes in that. | |
| 5 |      I think we -- we established that what Mr. LaPerch in | 11:58:02 |
| 6 | his declaration said was extensive fraud and his testimony said | |
| 7 | it was wide and deep, all of that was based on what I think has | |
| 8 | been plainly established as unreliable evidence, unreliable | |
| 9 | testimony. | |
| 10 |      We, I think, poked plenty of holes in what he said. | 11:58:23 |
| 11 | And under Daubert and its progeny, unreliable evidence is no | |
| 12 | evidence at all. | |
| 13 |      So I would start by simply saying that there really | |
| 14 | isn't any evidence of fraud or deceit or at least as based on | |
| 15 | Mr. LaPerch's testimony. | 11:58:46 |
| 16 |      Mr. LaPerch said something else that was important, | |
| 17 | because he -- he -- at least he was straightforward about this. | |
| 18 | He said this is the forum where Verizon is going to tear down | |
| 19 | JAWA.  That is virtually a direct quote from Mr. LaPerch.  And | |
| 20 | that is what they have done. | 11:59:06 |
| 21 |      They have tortuously interfered with our contracts | |
| 22 | with our customers, because they have done things that are | |
| 23 | simply inexcusable and certainly not allowed under any -- any | |
| 24 | of the contracts.  They don't have a right to tell aggregators | |
| 25 | to cut us off from AT&T and all other cell phone carriers. | 11:59:24 |

1        Mr. Babcock yesterday made reference to a case that we
2   called the McCreery case, I mean the Bold case because it has
3   to do with alleged fraud in the -- in raising angus cattle.
4   But in that case, which is 379 Fed. Supp. 1008, it's out of the
5   United States District Court in the Southern District of                11:59:55
6   Illinois and was affirmed by the Seventh Circuit.  In that
7   case, that case is remarkably similar to this one.  And in that
8   case, the judge enjoined the association that was acting
9   unjustly.  And the association was basically saying:  We can do
10  this because we've got these rules and we are applying these            12:00:20
11  rules, and so we can push this guy out and take him out of
12  business.
13       But what the judge in that case said was that with the
14  power and prestige which the association has developed in its
15  market power goes in equal responsibility to clearly define and         12:00:37
16  to use that power fairly and in accordance with at least
17  minimum requirements of due process.  All ad hoc informal and
18  pro forma committee procedures bordering on the arbitrary
19  without the opportunity for the challenged member to know
20  exactly what the full charge is and to test and to meet it, if          12:00:57
21  he can, in a full, fair and open hearing before the decision is
22  reached are outmoded and dangerous.  Those who conduct the
23  hearings and make the decisions must be unbiassed and maintain
24  open minds until they have heard the whole story in open
25  hearings with the challenged member who has been given adequate         12:01:18

1  notice and time to prepare.
2          Plainly that didn't happen here.  What happened here
3  was the MMA, which is a, let's call it, a shell corporation for
4  the cell carriers, creates its own standards and imposes them
5  on companies like JAWA.  It then uses its own -- it then                    12:01:37
6  polices those folks, even though the MMA standards are merely
7  guidelines, and it uses them -- it uses those standards to put
8  them out of business.
9          And in this case, what's happened is Verizon didn't
10 even follow its own guidelines.  There are -- there is a                    12:01:57
11 procedure that was testified to for dealing with, quote,
12 unquote, repeat offenders.  And it required a notice and it
13 required -- and it required an opportunity to cure and it
14 wasn't followed here at all.
15         What -- what Verizon did was it just decided to squash              12:02:17
16 JAWA, its direct competitor, or to use Mr. LaPerch's terms, to
17 tear them down.  And it simply ordered the aggregators, who
18 complied, to put our company completely out of business.
19         THE COURT:  And let me ask you this question:  What
20 exactly are you seeking in the form of your request for                     12:02:41
21 injunctive relief?
22         MR. SCHWARTZ:  We believe that as a common carrier,
23 Verizon doesn't have the ability to discriminate against us.
24 They can't pick and choose.  That is -- and so we want -- we
25 want access back to all of the carriers, all the aggregators.               12:02:57

```
 1    And --
 2            THE COURT:  Including Verizon?
 3            MR. SCHWARTZ:  Yeah.  And I can read off what we
 4    have -- what we've proposed, if you would like.
 5            THE COURT:  You don't need to read it.  I'm just              12:03:11
 6    asking you to describe it.
 7            MR. SCHWARTZ:  Right.  And we don't want them to be
 8    interfering with our relationships with our customers.  They
 9    are sending our customers text messages saying we are cutting
10    you off from JAWA, whether you want it or not.  And now, you          12:03:23
11    know, you can -- you can get a refund, you know, for us
12    having -- having cut you off.
13            And on top of that, they are seeking indemnity from --
14    from any -- they are -- let me back up.
15            In the Illinois -- you asked about the Illinois               12:03:48
16    lawsuit earlier.  The Illinois lawsuit bars any released party,
17    including Verizon, from seeking indemnity for any of the claims
18    that were asserted by the plaintiffs.  And that's exactly what
19    Verizon is doing.  Verizon's --
20            THE COURT:  I don't think that's right.  I mean, if          12:04:04
21    they're -- hold on.
22            MR. SCHWARTZ:  I'm sorry.
23            THE COURT:  You have a right for indemnity if you pay
24    something and then you seek to recover it from somebody else.
25    You have a right to contribution as well.  Saying that a             12:04:14
```

| | | |
|---|---|---|
| 1 | released party in that case is barred from asserting indemnity | |
| 2 | in contribution claims would only bar this action if what | |
| 3 | Verizon was trying to recover in this action was money they had | |
| 4 | paid to the plaintiffs in Illinois, right? | |
| 5 | MR. SCHWARTZ: What they are -- what they are doing as | 12:04:30 |
| 6 | part of what they are doing is telling the aggregators that | |
| 7 | they have -- they -- that the aggregators are responsible for | |
| 8 | indemnifying Verizon for any injury done to the customers. | |
| 9 | THE COURT: Well, but -- but only if Verizon paid | |
| 10 | money to the plaintiffs in Illinois would that claim be an | 12:04:51 |
| 11 | indemnification claim, right? | |
| 12 | MR. SCHWARTZ: Yeah, it's -- technically that's | |
| 13 | correct. But they are a released party. What the judgment | |
| 14 | says is a released party can't bring any claims covered by | |
| 15 | this -- covered by this settlement and judgment. | 12:05:11 |
| 16 | THE COURT: For indemnification or contribution, isn't | |
| 17 | that what it says? | |
| 18 | MR. SCHWARTZ: Actually kind of everything, because | |
| 19 | all of the underlying claims are released. | |
| 20 | THE COURT: Well, so you're saying that in addition to | 12:05:23 |
| 21 | indemnity and contribution, they couldn't bring a claim which | |
| 22 | reasserts the claims of the plaintiffs in the Illinois action? | |
| 23 | MR. SCHWARTZ: Right. | |
| 24 | One other point, Your Honor, is you asked me earlier | |
| 25 | about what would be the injury if you entered an injunction. | 12:05:42 |