Brian A. Cabianca (SBN 016410) brian.cabianca@squiresanders.com
Donald A. Wall (SBN 007522) donald.wall@squiresanders.com
Alison E. Klingel (SBN 028765) alison.klingel@squiresanders.com
Squire Sanders (US) LLP
1 East Washington Street, Suite 2700
Phoenix, Arizona 85004
Telephone: (602) 528-4000
Facsimile: (602) 253-8129
*Attorneys for Jason Hope and*
*the Entity Defendants/Counterclaimants*

Dennis I. Wilenchik (SBN 005350) admin@wb-law.com
Tyler Q. Swensen (SBN 015322)
2810 North Third Street
Phoenix, Arizona 85004
Telephone: (602) 606-2810
Fax: (602) 606-2811
*Attorneys for Defendants/Counterclaimants*

J. Grant Woods (SBN 006106) gw@grantwoodspc.net
Grant Woods Law P.C.
Two Renaissance Square
40 N. Central Ave., Ste 2250
Phoenix, Arizona 85004
*Attorneys for Defendants/Counterclaimants*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| Cellco Partnership d/b/a Verizon Wireless,<br><br>Plaintiff,<br><br>v.<br><br>Jason Hope; et al.,<br><br>Defendants. | Case No. 2:11-cv-00432-DGC<br><br>**MOTION FOR RECONSIDERATION OF A LIMITED PORTION OF THE COURT'S JANUARY 30, 2012 ORDER**<br><br>**(Oral Argument Requested)** |

Counterclaimants (collectively "JAWA") ask the Court to reconsider a limited portion of its January 30, 2012 order (the "Order") dismissing certain of JAWA's counterclaims. While the Order dismissed eight of JAWA's counterclaims, JAWA asks

1

for reconsideration on the dismissal of only two:  Counts 1 (tortious interference) and 7 (violation of the Sherman Act) of JAWA's Third Amended Counterclaims (the "TAC"). JAWA makes this request because the TAC satisfied the pleading standards of the Federal Rules of Civil Procedure and controlling case law.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009).

The Order (at 31) dismissed JAWA's claim for violation of the Sherman Act based on the conclusion that JAWA failed "to allege sufficient facts to show an agreement to boycott JAWA" and "the TAC only alleges demands Verizon made to each aggregator, individually, to protect Verizon's interests in ending JAWA's allegedly fraudulent sales practices on its own network."  As set forth in detail below, however, the TAC alleges that Verizon also communicated with the other Wireless Carriers and customers, acted beyond necessary to protect "its own network," and was motivated by a desire to eradicate JAWA as a competitor.  [TAC, ¶¶ 28, 29, 60-62, 64, 70, 76, 78, 79, 111-112, 137-138, 141, 156-159, 163, Exs. 1 & 2.]  The TAC also alleges plausible grounds on which to infer an agreement among the Wireless Carriers to boycott JAWA, including communication among competitors followed by parallel conduct, and several "plus factors" such as motive, actions contrary to the Wireless Carriers' interests, evidence that the Wireless Carriers adopted a common plan, and an industry structure that facilitates collusion.  [TAC, ¶¶ 28, 29, 40, 59, 61-62, 66, 67, 76-79, 92, 137, 138, 141, 156-159, 163.]  These allegations more than satisfy the pleading requirements.

The Order (at 24-25) also dismissed JAWA's wrongful interference claim on the grounds that JAWA's allegations of Verizon's tortious conduct were limited to the letters to the Aggregators, and "based *only* on its allegation that Verizon's direction to its aggregators 'was so broad and intimidating and so forceful that it effectively ensured that JAWA's services were cut off with respect to *all carriers' customers*.'" (emphasis supplied).  But, as set forth in detail below, the allegations of tortious conduct in the TAC extend far beyond Verizon's letters to the Aggregators.  [*See, e.g.*, TAC, ¶¶ 76, 78, 79, 159 & Ex. 2.]

2

The Order also stated (at 24-25) that the letters to the Aggregators are "protected under the *Noerr-Pennington* doctrine" and a state law privilege. But whether Verizon was exercising a privilege to protect its own legal interests is to be determined by the trier of fact. *See Snow v. Western Sav. & Loan Ass'n*, 152 Ariz. 27, 35 (1986) (the application of a privilege in the interference context is a question of fact for the jury). *See also Meridian Project Sys. v. Hardin Constr. Co.*, 404 F. Supp. 2d 1214, 1222 (E.D. Cal. 2005) (allegations that pre-litigation conduct was "made with the wrongful intent of disrupting [claimant's] relationship with prospective customers" were sufficient to withstand motion to dismiss).

For all the reasons set forth more fully below, and pursuant to Fed. R. Civ. P. 59(e) and D. Ariz. L.R. Civ. P. 7.2(g)(1), JAWA asks that the Court reconsider its Order and deny Verizon's motion to dismiss as to Counts 1 and 7 of the TAC.

## **Argument**

"[I]t is appropriate" for a court to grant a motion for reconsideration if it "committed clear error or made an initial decision that was manifestly unjust," such as where the court has erroneously dismissed a claim or failed to permit a claim to be heard by the finder of fact. *See Teamsters Local 617 Pension & Welfare Funds v. Apollo Group, Inc.*, 690 F. Supp. 2d 959, 961-963 (D. Ariz. 2010) (granting motion for reconsideration of order dismissing plaintiff's claims).

**I.    THE COURT SHOULD REINSTATE JAWA'S CLAIMS THAT VERIZON ORCHESTRATED A *PER SE* ILLEGAL GROUP BOYCOTT AMONG THE WIRELESS CARRIERS.**

The Court dismissed JAWA's claim that Verizon organized and participated in a *per se* illegal group boycott by the Wireless Carriers on the ground that JAWA failed "to allege sufficient facts to show an agreement to boycott JAWA." [Order at 31.] The allegations in the TAC, however, satisfy the pleading standard established in *Bell Atl. Corp. v. Twombly*, 560 U.S. 544 (2007), which requires a complainant to make a plausible claim, not to demonstrate the probability of success on the merits. *See also Iqbal*, 129 S. Ct. at 1949. Accepting all of JAWA's factual allegations in the TAC as true, construing

3

the pleadings in the light most favorable to JAWA, and drawing all reasonable inferences in favor of JAWA (as this Court must), JAWA has stated a claim because it alleged "plausible grounds" on which "to infer an agreement" among the Wireless Carriers to boycott JAWA.[1]

### A. *Twombly* Requires Only That JAWA Allege Facts That Provide A "Plausible Grounds to Infer an Agreement" Among The Wireless Carriers.

In *Twombly*, the Supreme Court underscored that, while "an allegation of parallel conduct and a bare assertion of conspiracy will not suffice" to survive a 12(b)(6) motion, a party need not make "detailed factual allegations." *Twombly*, 550 U.S. at 555. The party need only plead "enough fact to raise a reasonable expectation that discovery will reveal evidence of an illegal agreement." *Id.* If the party alleges "plausible grounds to infer an agreement," the "complaint may proceed even if it appears to the court that 'a recovery is very remote and unlikely.'" *Id.* (citation omitted); *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049 (9th Cir. 2008) (A "district court ruling on a motion to dismiss is not sitting as a trier of fact. . . . [S]o long as the plaintiff alleges facts that support a theory that is not facially implausible, the court's skepticism is best reserved for later stages of the proceedings when the plaintiff's case can be rejected on evidentiary grounds.").

### B. JAWA Alleged Sufficient Facts To Provide "Plausible Grounds to Infer an Agreement" Among The Wireless Carriers To Boycott JAWA.

The TAC alleged that Verizon issued a press release on March 9, 2011, stating that it had taken action to cut off JAWA's access to its customers in response to allegations of fraud. The press release went on to quote Verizon's Vice President for Legal Affairs, Steve Zipperstein, who stated: "I urge our competitors to quickly follow" Verizon's example. [TAC, Ex. 2.] Verizon's express, public invitation to collude is unprecedented.[2]

---

[1] JAWA does not seek reconsideration of dismissal of its claims, in ¶¶ 139-154 and 165-180 of the TAC, that Verizon orchestrated an illegal boycott of JAWA by the Aggregators.

[2] JAWA reviewed numerous Verizon press releases, over many years, announcing actions taken against PSMS providers and other entities that Verizon believed had misused

4

The TAC also alleged that just two days after Verizon issued its press release, the Wireless Carriers, all competitors of Verizon, ceased delivering JAWA's content to their customers. In so doing, each of the Wireless Carriers gave up substantial short-term revenues. [TAC, ¶ 159.] Such "anomalous," "rapid," and "uniform" changes in established conduct by direct competitors provides a plausible basis on which to infer an agreement. *In re Text Messaging Antitrust Litig.,* 630 F.3d 622, 628 (7th Cir. 2010) (Posner, J.) (allegation that the four major Wireless Carriers took identical actions, within a short period of time, that were against their short-term economic interest sufficient to state an antitrust claim).

The TAC, however, did far more than merely allege communication among competitors, followed by parallel conduct. JAWA identified numerous "plus factors." As the Ninth Circuit has recognized, while a "section 1 violation cannot . . . be inferred from parallel pricing alone . . . if there are sufficient other 'plus' factors, an inference of conspiracy can be reasonable." *In re Citric Acid Litig.,* 191 F.3d 1090, 1102 (9th Cir. 1999). "Plus factors" include: evidence of "motive" to enter an anti-competitive conspiracy; evidence that a party acted "contrary to its interests"; and evidence of a "traditional conspiracy," which may include evidence that parties "adopted a common plan even though no meetings, conversations, or exchanged documents are shown." *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 321-22 (3d Cir. 2010). In addition, "an industry structure that facilitates collusion constitutes supporting evidence of collusion." *In re Text Messaging Antitrust Litig.,* 630 F.3d at 627-28. The TAC includes factual allegations that show the existence of each of these "plus factors."

First, the TAC alleged facts demonstrating that the Wireless Carriers had a motive to enter into a group boycott of JAWA. In particular, JAWA alleged that the billion dollar PSMS market is highly profitable, and growing (TAC ¶ 29); that JAWA is wholly dependent on the networks of the Wireless Carriers to distribute content to its subscribers (TAC, ¶¶ 37-39); that the Wireless Carriers directly compete against JAWA in the PSMS

---

its network. JAWA is unable to locate any other instance in which Verizon publicly invited – much less "urged" – its competitors to join in boycotting a third party.

5

market (TAC, ¶ 28); and that the Wireless Carriers' goal was to "take over . . . the lucrative Premium SMS business" (TAC, ¶ 59).  The TAC thus described a classic case in which telecommunications providers seek to use their control over "bottleneck" facilities to cause competitive injury to an upstream competitor – a recurring situation in the telecommunications industry during the last thirty years.  *See generally California v. FCC,* 4 F.3d 1505 (9th Cir. 1993) (describing FCC regulatory regime designed to prevent incumbent telephone companies from using their control over the network to impede competition in the market for electronic content services).

Second, the TAC alleged facts showing that the Wireless Carriers acted contrary to their short-term economic interests.  Before March 2001, JAWA was a leading PSMS provider, with daily revenues of $900,000.  [TAC, ¶ 92.]  The Wireless Carriers charge a fee – typically about 30 percent of the customer's monthly charge – for delivering this content to end users.  [*See* TAC, ¶ 40.]  By cutting off JAWA, the Wireless Carriers were foregoing a substantial amount of revenue.

A reasonable inference can be drawn that, by driving JAWA from the market, the Wireless Carriers collectively would reap long-term gains that would enable them to recoup their lost short-term revenues.  [TAC, ¶¶ 29, 59.]  For example, boycotting JAWA would enable the Wireless Carriers to "discipline" the remaining PSMS providers to obtain a larger fee for delivering content to end users.  Ridding the market of the largest PSMS producer also would allow the Wireless Carriers to increase revenues from directly selling PSMS to end users.  [*See* TAC, ¶¶ 29, 59, 164.]  The Wireless Carriers could achieve these long-term goals only by acting collectively.  Indeed, had Verizon unilaterally ceased doing business with JAWA (rather than shutting down JAWA altogether, as it did), Verizon would have risked losing customers to its competitors given that JAWA was one of the most successful of the PSMS providers (TAC  ¶¶ 91-92) .

Third, the TAC alleged additional evidence of a "traditional conspiracy." Specifically, JAWA alleged that the Wireless Carriers engaged in direct discussions regarding the conspiracy.  [S*ee* TAC, ¶ 78 (alleging meetings among Wireless Carriers).] Indeed, discovery has revealed that, under the auspices of a trade association, Verizon both

6

had a telephone conference with other Wireless Carriers about JAWA on March 9, 2011 and discussed JAWA with them in person in a meeting in Orlando, Florida on March 21, 2011. [*See, e.g.*, Verizon's November 7, 2011 Answers to Interrogatories 6, 21 & 22 and Answer to Request for Admission 4, relevant portions attached hereto as Exhibit A; Deposition of J. Salkoff, April 1, 2011 ("Salkoff Depo."), at 82:23-83:20, 84:22-85:3, 86:5-14, 88:15-89:3, and 90:18-91:5, relevant portions attached hereto as Exhibit B.] Such evidence is highly probative. *See In re Text Messaging Antitrust Litigation,* 630 F.3d at 628 (fact that defendants "belonged to a trade association" and exchanged competitively sensitive information "directly at association meetings" supports plausibility of a Section 1 claim because such conduct "facilitates" anti-competitive agreements).

Finally, the structure of the PSMS industry facilitates collusion. Four providers – Verizon, AT&T, Sprint, and T-Mobile collectively sell 90 percent of the U.S. text messaging services. [TAC, ¶ 77.] As Judge Posner observed – in a case concerning the plausibility of concerted action among the very same Wireless Carriers – "it would not be difficult for such a small group to agree" to act anti-competitively. *In re Text Messaging Antitrust Litigation,* 630 F.3d at 628.

The structure of the PSMS industry facilitated the group boycott against JAWA in an additional way. The four SMS Aggregators play a crucial role as intermediaries between PSMS providers, such as JAWA, and Wireless Carriers, such as Verizon. [*See* TAC, ¶¶ 40-43.] Because of this market structure, Verizon was able to use the Aggregators to shut down JAWA's business completely and thereby ensure that the other Wireless Carriers would participate in the group boycott. For example, on March 8, 2011, Verizon sent letters to each of the SMS Aggregators with whom JAWA does business and demanded that they not only cease providing JAWA with the ability to access Verizon's network, but that they cut off JAWA's ability to access the network of all other Wireless Carriers by disabling JAWA's short codes. [TAC, ¶¶ 60-62.] The other Wireless Carriers did not object to Verizon's demand that the Aggregators cut off JAWA traffic to them. Neither did they make an independent assessment of whether to continue to do business with JAWA. Rather, the other Wireless Carriers—direct competitors of Verizon—

acquiesced to Verizon's demands that they cease doing so. [*See* TAC, ¶¶ 68-69, 76-79.] As a result, within two days of being asked to do so by Verizon, the other Wireless Carriers joined the horizontal group boycott of JAWA. [TAC, ¶¶ 76, 79.] Taken together, JAWA's allegations provide a sufficient basis to show the plausibility of concerted action.

Additional factual allegations adequately plead the existence of "plus factors" from which to infer concerted, rather than independent, action. The Wireless Carriers had a motive to drive JAWA from the market. [TAC, ¶ 29, 59.] The Wireless Carriers acted against their short-term economic self-interest by forgoing millions of dollars in revenue from carrying the JAWA service. [TAC, ¶¶ 40, 92.] The Wireless Carriers engaged in contemporaneous communications regarding JAWA. The structure of the SMS industry facilitates collusive conduct. [TAC, ¶¶ 77, 78.] In short, JAWA alleged "plausible grounds to infer an agreement" among the Wireless Carriers to boycott JAWA. [*See* TAC, ¶¶ 28-29, 37-43, 59-62, 76-79, 91-92, 141, 159, 164.]

In light of the foregoing, JAWA respectfully requests that the Court reconsider its Order and reinstate JAWA's antitrust claims alleging that Verizon orchestrated *a per se* illegal group boycott of JAWA among the Wireless Carriers.

## II. THE TAC STATES A CLAIM FOR TORTIOUS INTERFERENCE WITH CONTRACTS AND BUSINESS EXPECTANCIES.

The Court relied on a "state law privilege" and the *Noerr-Pennington* doctrine to dismiss JAWA's interference claim. [*See* Order at 24-25.] But neither bars JAWA's claims here, particularly at the pleading stage.

### A. Application Of Any State Law Privilege Is Premature And Contrary To The Facts As Pled.

The Court found (at 24) that Verizon's "demands to its aggregators are also protected by state law privilege *to the extent they are asserted for the protection of its own legally protected interests*." (emphasis supplied). But the TAC alleged interference far beyond just the letters to the Aggregators. Moreover, whether a party is exercising a privilege to protect its own legal interests cannot be determined as a matter of law on the pleadings.

8

### 1. The TAC alleges that Verizon's wrongful interference went far beyond merely protecting its own legal interests.

In dismissing JAWA's tortious interference claim, the Order (at 25) mentions only JAWA's allegations regarding Verizon's communications with the Aggregators, and states that "JAWA has failed to allege any demands that were not, themselves, within the scope of protecting Verizon's own existing interests." As set forth in the TAC, however, Verizon demanded that the Aggregators cease providing JAWA's services to *all* Wireless Carriers, not just Verizon. [*See, e.g.*, TAC, ¶¶ 60-62 & Ex. 1.] The TAC goes even further, and attaches a letter from Verizon to Aggregator Motricity, Inc., wherein Verizon "demand[ed]" that Motricity, among other things (a) terminate immediately "*all message campaigns* associated in any way with [JAWA]," and (b) "terminate *all of the short codes* on its platform to ensure that all messaging and premium charges are stopped . . . ." [Verizon Letter to Motricity, Inc., March 8, 2011, Doc. 261-1, at 1-2 ("Motricity Letter") (emphasis supplied).] Because short codes are not carrier specific, by this instruction, Verizon required the Aggregators to prevent JAWA from doing business with *any* Wireless Carrier, not just Verizon. [TAC, ¶ 60.] Were Verizon's action limited to "protecting [its] own interests," it would have demanded only that Motricity terminate the JAWA business on Verizon's network. Yet, Verizon demanded that the Aggregators terminate *all* short codes used by JAWA, which resulted in the termination of JAWA's business on all other Wireless Carriers as well. Moreover, Verizon demanded wholesale termination, rather than the standard procedure of addressing issues on a short code by short code basis. [TAC, ¶ 86.]

Likewise, the TAC expressly alleged that Verizon interfered with the relationships between JAWA and its customers by demanding that the Aggregators "shut off service to JAWA, not only on the Verizon network, but on the networks of all Wireless Carriers" (TAC, ¶ 60) and "ensured that JAWA's services were cut off with respect to *all carriers' customers* immediately" (TAC, ¶ 62). [*See, e.g.*, TAC, ¶¶ 62, 69, 70-75, 94-95, 98-102.] Similarly, whether statements in Verizon's press release that JAWA was engaged in an ongoing scheme to defraud customers (TAC, ¶ 76) were made for an improper purpose

9

"are factual matters that do not defeat JAWA's claims at the pleading stage." [Order at 27.] For the same reason this Court recognized that Verizon's statements to customers cannot support dismissal of the disparagement claim, they also cannot support dismissal of the tortious interference claim.

### 2. Whether a party is exercising a privilege to protect its own legal interests cannot be determined as a matter of law.

The application of a privilege in the interference context is a question of fact for the jury. *See, e.g.*, *Snow v. Western Sav. & Loan Ass'n.*, 152 Ariz. 27, 35 (1986) (court improperly granted summary judgment dismissing interference claim based on defendant's assertion that it had acted in good faith to protect its own legally protected interest); *Garcia v. Regis Corp.*, 2011 U.S. Dist. LEXIS 52313, at **9-10, 13 (D. Ariz. May 13, 2011) (granting reconsideration of summary judgment based on court's reexamination of previously-available facts where the court ruled on issues that were "the province of the jury.").

As the Arizona Supreme Court recognized in *Snow*, "[t]he judge determines the circumstances under which a privilege may exist, and the jury determines whether the actual circumstances do exist." *Snow*, 152 Ariz. at 36. In other words, if the trial court found from the evidence that defendant's belief that its actions were privileged was objectively reasonable, "whether [defendant] subjectively, in good faith, *actually* believed in this position [is] an issue of fact which the court should have submitted to the jury." *Id.*

Moreover, the privilege on which Verizon relies is not absolute but qualified, and applies only if the party asserting it acted in good faith. Restatement (Second) of Torts § 773. It also only extends to a party employing "appropriate means" to protect its interests and "is of narrow scope." *Id.* at cmt. a. *See also Carey v. Maricopa County*, 2009 WL 750225 (D. Ariz., March 10, 2009) ("[W]hether conduct is 'improper' . . . is generally an issue for the trier of fact.").

Thus, here, the issue at the pleading stage is not whether Verizon had a legally recognized interest that it *could* have been acting to protect, but rather whether JAWA has alleged sufficient facts which, if believed, could lead a jury to find that Verizon was not

acting in good faith or by appropriate means to protect that interest. The TAC alleges that Verizon was motivated by a desire to control the PSMS market (¶¶ 29 & 59), went beyond protecting its own interest by demanding that the Aggregators shut down JAWA's access to all Wireless Carriers (¶ 60), acted "for purposes of shutting down these PSMS providers for its own pecuniary purposes and benefit" (¶ 54), "intended to drive JAWA out of business" because "JAWA directly competes with Verizon" (¶ 141), and acted "with evil and malicious intent" (¶ 61). These allegations are not legal conclusions but are *factual questions* – which must be submitted to a jury. *Snow*, 152 Ariz. at 35; *see also GRK Holdings, LLC v. First American Title Ins. Co.*, No. CV10 0050 PHX DGC, 2010 WL 3940575, *7 (D. Ariz. Oct. 6, 2010) (denying motion to dismiss because the purportedly privileged act was "not *per se* privileged," and questions remained whether the act was proper); *Carey*, 2009 WL 750225; *Karsten Mfg. Corp. v. Oshman's Sporting Goods, Inc. Servs.*, 869 F. Supp. 778, 781-8 (D. Ariz. 1994) (denying motion to dismiss on privilege grounds because plaintiff had "sufficiently alleged facts to establish a prima facie showing of intentional interference.").

JAWA is entitled to all reasonable inferences, and JAWA has alleged facts which, if believed, could lead a reasonable juror to conclude that Verizon did not employ appropriate means to protect its own interest when it told the Aggregators to shut down all of JAWA's business by shutting down the short codes, urged competitors to boycott JAWA, failed to follow the MMA guidelines and its own guidelines, and failed to conduct a proper investigation into the alleged non-compliant webpages prior to demanding termination. [TAC, ¶¶ 31, 51, 52, 58, 83, 84, 86, 87.] As such, its claims should not be dismissed at this stage. *See, e.g.*, *Coronel v. Paul*, 316 F. Supp. 2d 868, 882 (D. Ariz. 2004) ("Where questions regarding a litigant's state of mind, motive, sincerity or conscience are implicated, it is unusual that disposition may be made by summary judgment.").

      **B.**    **The *Noerr-Pennington* Doctrine Does Not Shield Verizon From Liability.**

11

The Order found (at 27) that "Verizon's communications … are privileged under the *Noerr-Pennington* doctrine . . .." But the TAC alleges that Verizon acted in bad faith in pre-litigation communications with third-parties, and such allegations are sufficient to withstand a motion to dismiss brought on *Noerr-Pennington* grounds. *See, e.g.*, *Luxpro Corp. v. Apple, Inc.*, 2011 U.S. Dist. LEXIS 35008, at **17-19 (N.D. Cal., March 24, 2011) (refusing to dismiss intentional interference claim where defendant threatened to cease doing business with plaintiff's distributors if the distributors continued to do business with plaintiff); *Meridian Project Sys. V. Hardin Constr. Co.*, 404 F. Supp. 2d 1214, 1222 (E.D. Cal. 2005) (allegations that letters to plaintiff's customers "were made with the wrongful intent of disrupting [claimant's] relationship with prospective customers" were sufficient to withstand motion to dismiss); *eBay, Inc. v. Bidder's Edge, Inc.*, 2000 U.S. Dist. LEXIS 13326, at *5 (N.D. Cal., July 21, 2000) (denying motion to dismiss because "at least some of [the accused's] allegedly anti-competitive conduct, such as [its] alleged interference with [an] advertising contract, is unrelated to any protected activity").

The *Noerr-Pennington* doctrine simply does not protect communications to third parties that "were made with the wrongful intent of disrupting [claimant's] relationship with prospective customers" because "[s]uch communications are not good faith acts attendant to effective litigation." *Meridian*, 404 F. Supp. 2d at 1223; *Christianson v. Colt Industries Operating Corp.*, 766 F. Supp. 670, 684 (C.D. Ill. 1991) (refusing to grant summary judgment because pre-litigation demand letters were not "acts reasonably and normally attendant upon effective litigation."). JAWA has made such allegations here, including but not limited to allegations that Verizon competes with JAWA, and its motive was to put JAWA out of business and to take over JAWA's market share. [*See, e.g.*, TAC, ¶¶ 28-29, 60-62, 78, 137-138, 141, 157.]

Moreover, the *Noerr-Pennington* doctrine does not protect communications to third parties that "appear to be an assertion of [defendant's] economic power." *Christianson*, 766 F. Supp. At 684 (denying motion for summary judgment on tortious interference claim based on a letter threatening to discontinue business with the recipient if the

12

recipient did not end its relationship with plaintiff because "[t]his threat is not necessarily required for effective litigation."). *See also Gearhead v. De Puy Orthopaedics, Inc.*, 2000 U.S. Dist. LEXIS 6473, at *7-8 (E.D. La., March 16, 2000) ("attempts to defer potential customers from doing business with plaintiffs … are not protected by the *Noerr-Pennington* doctrine."). This is plainly what JAWA has alleged here. [*See, e.g.*, TAC, ¶¶ 60-62, 64, 66, 67, 70.]

JAWA's interference allegations extend far beyond just the letters to the Aggregators. The TAC alleges multiple acts by Verizon which individually and collectively constitute tortious interference and improper conduct, including the March 8, 2011 letters to the Aggregators, Verizon's demands to shut off service to all JAWA customers (and not just the ones on the Verizon network), the March 9, 2011 press release, the meeting with other Wireless Carriers, other communications with Aggregators and Wireless Carriers, Verizon's refund program and its communications regarding that program, and Verizon's withholding of money owed for JAWA services. [TAC, ¶¶ 60, 61, 64, 70-76, 78, 120, 121, 125, 126, 133, 193, 196, 197, 206, Exs. 1 & 2.] Even the letters to the Aggregators showed Verizon had other communications: they ended with "We will be setting up a meeting in the near future to discuss this situation with you." [TAC, Ex. 1 at 3.]

The Court relied on *Theme Promotions, Inc. v. News America Marketing, FSI*, 546 F.3d 991 (9th Cir. 2008), wherein the communications to third parties that were protected under *Noerr-Pennington* consisted "solely" of letters threatening litigation against the third parties. *Id.* At 1008. Unlike the allegations here, in *Theme Promotions* there was no evidence of interference other than the pre-suit letters. Also, here, by contrast, the language of the letters does not threaten suit against the Aggregators; no testimony from the author of the letters was submitted; Verizon has not brought any action against the Aggregators; the letters allege that they are pursuant to agreements between Verizon and the Aggregators, but such agreements are not before the Court (and indeed have not even all been produced by Verizon in discovery) and whether such contracts support the demands in the letters is a factual matter not before the Court. Thus, whether *Noerr-*

13

*Pennington* bars JAWA's tortious interference claim is not ripe for decision at the pleading stage.

## Conclusion

For the foregoing reasons, JAWA respectfully requests that the Court grant JAWA's motion for reconsideration and, upon reconsideration, deny plaintiff's motion to dismiss Counts 1 and 7 of JAWA's Counterclaims.

Respectfully submitted this 13th day of February, 2012.

*/s/ Brian A. Cabianca*
Brian A. Cabianca
Donald A. Wall
Alison E. Klingel
Squire Sanders (US) LLP
1 East Washington Street, Suite 2700
Phoenix, Arizona 85004
Telephone:  (602) 528-4000
Facsimile:  (602) 253-8129
*Attorneys for Jason Hope and*
*the Entity Defendants/Counterclaimants*

Dennis I. Wilenchik (SBN 005350)
Tyler Q. Swensen (SBN 015322)
WILENCHIK & BARTNESS, P.C.
2810 North Third Street
Phoenix, Arizona 85004
Telephone: (602) 606-2810
Fax: (602) 606-2811
*Attorneys for Defendants/Counterclaimants*

Grant Woods, Esq.
GRANT WOODS, P.C.
Two Renaissance Square
40 North Central Avenue, Suite 2250
Phoenix, Arizona  85003
E-Mail: gw@grantwoodspc.net
*Attorneys for Defendant/Counterclaimants*

## CERTIFICATE OF SERVICE

I certify that on this 13th day of February, 2012, I electronically transmitted this document to the Office of the Clerk of the Court, using the CM/ECF System, for filing and transmittal of a Notice of Electronic Filing to the assigned judge and all CM/ECF registrants listed for this matter.

*/s/ Tanya Skeet*