**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Cellco Partnership doing business as Verizon Wireless, | No. CV11-0432 PHX DGC |
| Plaintiff, | **ORDER** |
| vs. | |
| Jason Hope, et al., | |
| Defendants. | |

Having reached the end of six-week criminal trial, the Court has time to turn to the parties' discovery disputes as set forth in matrixes provided to the Court in January. The Court's decisions are set forth below.

**A.     Plaintiff's discovery issues.**

1.     Defendants' agreement to withdraw all AEO designations from the cloaking software-related documents has resolved this issue.

2.     The Court concludes that Defendants have largely complied with the language from the TRO quoted in this issue. To the extent Plaintiff needs additional information regarding the imaging process, it may conduct a Rule 30(b)(6) deposition.

3.     Defendants have stated they are willing to pay half the cost of repairing or restoring the hard drives at issue, providing the costs are reasonable. The parties indicate that this willingness effectively resolves issue 3.

4.     Defendants state that they are in the process of producing additional responsive documents. If those documents have not yet been produced, they shall be

produced to Plaintiff on or before **March 9, 2012**.  Defendants assert that chats were not saved unless a user copied a particular communication into or attached it to an email or other document.  To the extent Defendants assert that they do not have chats responsive to Plaintiff's document requests, this statement shall be clearly made, on or before **March 9, 2012**, in an appropriate response under Rule 34(b), signed pursuant to Rule 26(g).  With respect to customer data described in request 12, Defendants identify particular server locations where the information can be located.  Plaintiff asserts that extracting the data from these sources would be an enormous undertaking.  If the information sought by request 12 is not contained in a more accessible location, Defendants shall clearly state this fact, on or before **March 9, 2012**, in an appropriate Rule34(b)(2) response, signed pursuant to Rule 26(g).  Because Rule 34(b)(2)(E)(i) permits a party to produce information as it is kept in the usual course of business, the Court will not require Defendants to extract the customer data from the servicers if such data is not available in some other form or location.

5.     Defendants state that to the extent they can locate actual landing pages that were used, they have produced them or are in the process of producing them.  Defendants further state that to the extent they can locate images of landing pages that were created in the ordinary course of business, as testified to by Mr. Erkkila, Defendants have produced them or are in the process of producing them.  To the extent Defendants have not completed this production, they shall do so by March 2, 2012.  Both parties discussed the recreation of landing pages.  Both parties seem to agree that recreation of landing pages is a difficult and time-consuming process.  Plaintiff argues that Defendants are required to recreate the landing pages under the provision of Rule 34(a)(1)(A) which requires "translation by the responding party into a reasonably usable form."  The Court does not agree that translation of data into a usable form requires a responding party to recreate documents through an expensive and time-consuming process.  The Court therefore will not require Defendants to recreate landing pages. Defendants concede that a number of landing pages were recreated by Mr. Erkkila in preparation for the

preliminary injunction hearing.  Defendants assert that these pages constitute work product.  This assertion appears to be correct.  The Court concludes, however, that the landing pages actually used by Defendants are critical to this litigation.  The Court also concludes that Plaintiff cannot, without undue hardship, obtain their substantial equivalent by other means.  Not only do both parties agree that the recreation of landing pages is an expensive and time-consuming process, but Defendants also assert that any such recreation is almost certain to be an inaccurate representation of the landing pages actually used.  Because the Court concludes that Plaintiff has substantial need for the landing pages used by Defendants, and that Plaintiff cannot, without undue hardship, obtain their substantial equivalent by other means, the Court concludes that Defendants' work product protection in the landing pages created by Mr. Erkkila for the preliminary injunction hearing has been overcome pursuant to Rule 26(b)(3)(A)(ii).  Defendants shall produce the Erkkila-produced landing pages to Plaintiff on or before **March 9, 2012**.

**B.    Defendants' discovery disputes.**

**NUI No. 1:**   Defendants assert that the information sought in this interrogatory is relevant to their antitrust and tortuous interference claims.  Because these claims have been dismissed (Doc. 273), no further response will be required of Plaintiff.

**NUI No. 2:**   Defendants assert that the information sought in this interrogatory is relevant to their antitrust and tortuous interference claims.  Because these claims have been dismissed (Doc. 273), no further response will be required of Plaintiff.

**NUI No. 3:**   The Court concludes that some of the information sought in this interrogatory is relevant to Defendants' defense – to show that there is always a certain percentage of customers who express dissatisfaction with and cancel mobile text services.  The Court will therefore require Plaintiff to provide the following information:  with respect to all Verizon subscriptions, alerts, downloadable applications, or messaging/mobile content services (collectively "Services"), Plaintiff shall provide, in the form of monthly totals from January 1, 2010 to the present, (1) the number of new customer sign-ups (for all Services in the aggregate), (2) the number of customer

cancellations for all Services, and the total active customer count for all Services.  To the extent available, Plaintiff shall provide the monthly total charge-backs/refunds for all Services for this same time period.  This information shall be provided on or before **March 2, 2012**.

**NUI No. 7:**   Plaintiff states that it will produce two additional spreadsheets by January 17, 2012, that it will serve supplemental responses containing dollar figures for Aegis Mobile's investigation of Defendants' practices, and Stroz Friedberg's forensic analysis, and further states that it will produce the underlying data for its expert analysis within 15 days of the matrix having been created.  If Plaintiff has not produced all of this information, it shall do so on or before **March 9, 2012**.  The Court will not otherwise require Plaintiff to produce an expert analysis of its damages until the expert disclosure date.

**NUI No. 11:**  This interrogatory seeks communications related to the *Walker* class action case in Illinois.  The Court has already concluded that the claims asserted in this case were not asserted in, or settled by, the *Walker* litigation, and that the *Walker* litigation has no res judicata effect on this case.  Doc. 251-2 at 40-44.  The Court accordingly concludes that the information sought in this interrogatory is not relevant and need not be produced by Plaintiff.

**NUI No. 17:**  This interrogatory seeks information regarding Plaintiff's efforts "to comply with the MMA Guidelines and the Verizon Playbook" when Plaintiff advertises Services.  Plaintiff's response asserts that MMA Guidelines do not apply to any text messaging services offered by Plaintiff.  Plaintiff's statement of its position in the matrix asserts that there is no "Verizon Playbook."  If Plaintiff has not stated these facts in a Rule 33(b) answer, signed under oath as required in Rule 33(b)(3), it shall do so on or before **March 2, 2012**.  Because Plaintiff asserts (or will assert) under oath that it is not subject to the MMA Guidelines and that there is no Verizon Playbook, there is no additional information Plaintiff must provide in response to this interrogatory, which focuses solely on these sources of guidance.

**NUI No. 19:** Plaintiff states that it will provide the answer to the second subpart of this interrogatory by January 16, 2012.  If it has not already done so, it shall provide this answer on or before **March 9, 2012**.  By **March 9, 2012**, Plaintiff shall provide a full and complete response to the first part of this interrogatory showing all amounts of money that Plaintiff has collected from its customers for Jawa services but that Plaintiff has withheld from Jawa and/or any aggregator, specifying the total amount collected, any money Plaintiff has deducted from funds that otherwise would have been paid to Jawa or an aggregator, and the specific reasons for such deductions.

**NUI No. 20:** To the extent this interrogatory seeks information regarding Plaintiff's damages, the Court incorporates its ruling with respect to NUI No. 7.  To the extent this interrogatory asks Plaintiff to describe the basis for its causation allegations with particularity, Plaintiff shall do so on or before **March 9, 2012**.

**NUI No. 21:** Plaintiff's reference to the deposition testimony of Mr. Salkoff is not sufficient.  Plaintiff shall respond completely to this interrogatory on or before **March 9, 2012.**

**NUI No. 22:** Plaintiff's reference to the deposition testimony of Mr. Salkoff is not sufficient.  Plaintiff shall respond completely to this interrogatory on or before **March 9, 2012.**

**NUI No. 23:** In connection with the information called for with NUI No. 3, Plaintiff shall, with respect to each month's total number of customer cancellations, identify how many cancellation charges were waived.  This information shall be produced on or before **March 9, 2012**.

**RFP No. 2:**  The Court concludes that the documents sought in this request are not sufficiently "relevant to any party's claim or defense" to warrant production.  Fed. R. Civ. P. 26(b)(1).

**RFP No. 3:**  The Court concludes that its ruling on NUI No. 7 adequately covers this issue.

**RFP No. 4:**  Plaintiff states that it "will be producing responsive documents on a

rolling basis."  Plaintiff shall complete all production responsive to this request on or before **March 9, 2012**.  To the extent Plaintiff contends that documents may be withheld as privileged or work product, it shall identify those documents in a privilege log pursuant to Rule 26(b)(5).

**RFP No. 5:**  Plaintiff states that it "will be producing documents on a rolling basis."  Plaintiff shall complete its production of all documents responsive to this request on or before **March 9, 2012**.

**RFP No. 7:**  Plaintiff's objections are not well taken.  Plaintiff shall produce all documents responsive to this request on or before **March 9, 2012**.  If Plaintiff has previously produced such documents, it shall identify the documents, by Bates number, that are responsive to this request on or before **March 9, 2012**.

**RFP No. 8:**  Plaintiff states that it "will be producing any other non-privileged documents on a rolling basis."  Plaintiff shall produce all documents responsive to this request on or before **March 9, 2012**.  If it has previously produced such documents, it shall identify them by Bates number.  If Plaintiff withholds documents pursuant to the attorney-client privilege or the work product doctrine, it shall identify those documents in a privilege log pursuant to Rule 26(b)(5).

**RFP No. 9:**   Plaintiff again states that it "will be producing responsive documents on a rolling basis."  Plaintiff shall produce all documents responsive to this request on or before **March 9, 2012**.

**RFP No. 11:** Plaintiff again states that it "will be producing responsive documents on a rolling basis."  Plaintiff shall produce all documents responsive to this request on or before **March 9, 2012**.

**RFP No. 12:** Plaintiff again states that it "will be producing responsive documents on a rolling basis."  This response is not sufficient.  Plaintiff shall produce all documents responsive to this request on or before **March 9, 2012**.

**RFP No. 13:** The Court concludes that the documents sought in this request are not sufficiently "relevant to any party's claim or defense" to warrant production.  Fed. R.

1   Civ. P. 26(b)(1).

2       **RFP No. 14:** Plaintiff states it will produce responsive documents within 15 days

3   of the matrix having been prepared.  If Plaintiff has not done so, it shall produce such

4   documents on or before **March 9, 2012**.  If Plaintiff withholds documents pursuant to the

5   attorney-client privilege or work product doctrine, it shall identify those documents in a

6   privilege log pursuant to Rule 26(b)(5).

7       **RFP No. 15:** Plaintiff states that it shall produce a "handful of responsive

8   recordings within 15 days."  Plaintiff shall produce all responsive recordings on or before

9   **March 9, 2012**.

10       **RFP No. 16:** Plaintiff states that it "will be producing responsive documents on a

11   rolling basis."  Plaintiff shall produce all responsive documents on or before **March 9,**

12   **2012.**  If Plaintiff withholds documents pursuant to the attorney-client privilege or work

13   product doctrine, it shall identify those documents in a privilege log pursuant to Rule

14   26(b)(5).

15       **RFP No. 19:** Defendants assert that the information sought in this request is

16   relevant to their counterclaims.  The Court has dismissed all counterclaims other than

17   business disparagement and unjust enrichment.  Doc. 273.  The Court concludes that

18   these documents are not relevant to the remaining counterclaims.

19       **RFP No. 20:** Defendants assert that the information sought in this request is

20   relevant to their counterclaims.  The Court has dismissed all counterclaims other than

21   business disparagement and unjust enrichment.  Doc. 273.  The Court concludes that

22   these documents are not relevant to the remaining counterclaims.

23   C.    **Plaintiff's use of AEO designations.**

24       On or before **March 9, 2012**, Defendants shall identify for Plaintiff each category

25   of document that Defendants believe should be de-designated.  Plaintiff shall consider

26   these categories and provide a written response to Plaintiff on or before **March 16, 2012**.

27   If the parties cannot reach agreement on this issue, they shall place a conference call to

28   the Court.  The Court will then review selected AEO documents provided by Defendants.

The Court agrees with Judge Martone's view of the rare applicability of AEO designations. *See American Traffic Solutions, Inc. v. Redflex Traffic Systems*, 2010 WL481408 at *2 (D. Ariz. Feb. 8, 2010).

Dated this 22nd day of February, 2012.

_____
David G. Campbell
United States District Judge