Paul K. Charlton (Bar No. 012449)
Lindsi M. Weber (Bar No. 025820)
GALLAGHER & KENNEDY, P.A.
2575 East Camelback Road
Phoenix, Arizona 85016-9225
Telephone:    (602) 530-8000
Facsimile:    (602) 530-8500
Email:        paul.charlton@gknet.com
              lindsi.weber@gknet.com

Marcos Jiménez (admitted pro hac vice)
Scott Cosgrove (admitted pro hac vice)
Audrey M. Pumariega (admitted pro hac vice)
KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
1441 Brickell Avenue, Suite 1420
Miami, Florida 33131
Telephone:    (786) 587-1077
Facsimile:    (305) 675-7970
Email:        MJimenez@kasowitz.com
              SCosgrove@kasowitz.com
              APumariega@kasowitz.com

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| Cellco Partnership d/b/a Verizon Wireless,<br><br>               Plaintiff,<br><br>v.<br><br>Jason Hope; et al.,<br><br>               Defendants.<br><br>AND RELATED COUNTERCLAIM. | Case No. 2:11-cv-00432-DGC<br><br>**PLAINTIFF'S OPPOSITION TO MOTION FOR RECONSIDERATION OF A LIMITED PORTION OF THE COURT'S JANUARY 30, 2012 ORDER**<br><br>(Assigned to the Hon. David G. Campbell) |

Pursuant to the Court's order dated February 16, 2012 (Doc. 286) Plaintiff Cellco Partnership d/b/a Verizon Wireless ("Verizon Wireless") hereby files its Opposition to Defendants/Counterclaimants' ("JAWA") *Motion for Reconsideration of a Limited Portion of the Court's January 30, 2012 Order* (Doc. 284, the "Motion"). The Motion fails to satisfy the substantial burden to merit reconsideration of the Court's January 30, 2012 order (Doc. 273, the "Order"). Accordingly, Verizon Wireless respectfully requests that the Court deny the Motion in its entirety.

## I. BACKGROUND.

The Court's Order was not the first time that it has considered, and rejected, numerous iterations of JAWA's counterclaims. *See* Doc. 133 (noting that at the time of the Preliminary Injunction proceedings in April 2011, "Defendants have filed four different versions of their counterclaim in this case: a counterclaim that accompanied their first request for a preliminary injunction (Doc. 31), a first amended counterclaim (Doc. 52), a second amended counterclaim (Doc. 78), and a restated second amended counterclaim (Doc. 89)."). For the reasons set forth below, JAWA has provided no basis or cause for this Court to reconsider its prior ruling dismissing Counts 1 and 7 of the Third Amended Counterclaim (Doc. 220, the "TAC").

## II. LEGAL ANALYSIS.

### a. Standard for Reconsideration.

As this Court has repeatedly noted, "[m]otions for reconsideration are disfavored and should be granted only in rare circumstances." *Hillis v. Heineman*, No. CV 09 73, 2009 U.S. Dist. LEXIS 77848, *2 (D. Ariz. Aug. 31, 2009) (Campbell, J.) (denying motion for reconsideration of order on motion to dismiss); *Grand Canyon Skywalk Dev., LLC v. Vaughn*, No. CV11-8048, 2011 U.S. Dist. LEXIS 80517, *2 (D. Ariz. July 22, 2011) (Campbell, J.) (denying motion for reconsideration of order on motion to dismiss). A motion for reconsideration should be denied "absent a showing of manifest error or a showing of new facts or legal authority that could not have been brought to [the Court's] attention earlier with reasonable diligence." *Hillis*, 2009 U.S. Dist. LEXIS 77848 at *2 (citing LR Civ. 7.2(g)(1)); *accord, Grand Canyon*, 2011 U.S. Dist. LEXIS 80517 at *2; *see also Carroll v. Nakatani,* 342 F.3d 934, 945 (9th Cir. 2003). "Mere disagreement with an order is an insufficient basis for reconsideration." *Hillis*, 2009 U.S. Dist. LEXIS 77848 at *2 (citing *Ross v. Arpaio*, No. CV 05-4177-PHX-MHM (ECV), 2008 WL 1776502, at *2 (D. Ariz. Apr.15, 2008)). "Nor should reconsideration be used to make new arguments or to ask the Court to rethink its analysis. *Id.* (citing *Nw. Acceptance Corp. v. Lynnwood Equip., Inc.,* 841 F.2d 918, 925-26 (9th Cir.1988)). "A motion for

reconsideration should not be used to ask a court 'to rethink what the court had already thought through—rightly or wrongly.'" *Arizona ex rel. Goddard v. Frito-Lay, Inc.*, 273 F.R.D. 545, 559 (D. Ariz. 2011) (quoting *Defenders of Wildlife v. Browner*, 909 F. Supp. 1342, 1351 (D. Ariz. 1995)). "Arguments that a court was in error on the issues it considered should be directed to the court of appeals." *Id.*

As in *Frito-Lay,* JAWA raises no argument in its Motion "that it could not, and in fact did not essentially raise earlier." *Id.* Instead, JAWA asserts that the Court committed manifest error. In light of the Court's well reasoned and thorough rulings in this case addressing JAWA's counterclaims, no such manifest error exists.

### b. JAWA Offers No Basis for the Court To Reconsider Its Dismissal of JAWA's Sherman Act Claims.

Should the Court nevertheless wish to address the merits of the motion, the Court should not reconsider its Order because JAWA presents no new evidence or arguments in support of its Sherman Act claim that could justify the reconsideration. *See Hillis*, 2009 U.S. Dist. LEXIS 77848 at *2. This Court's conclusion that the TAC does not allege either direct or inferential facts sufficient to support the assertion that Verizon engaged in an unlawful conspiracy was correct. .

JAWA does not contest that its claim fails to allege direct facts – that is, "who did what, to whom (or with whom), where, and when," *Kendall v. Visa, U.S.A., Inc.*, 518 F.3d 1032, 1038 (9th Cir. 2008) – that would adequately support a claim of conspiracy under the standards articulated by the Supreme Court in *Twombly*. Instead, JAWA renews its argument that the conduct of the carriers supports an *inference* that they acted pursuant to agreement rather than unilaterally. In particular, JAWA argues (1) that the carriers had a common motive to conspire, since it was in their long-term interest to eliminate JAWA as a competitor; (2) that the carriers sacrificed their short-term economic interests in terminating JAWA's access to their networks; (3) that meetings among the wireless carriers are consistent with conspiratorial conduct; and (4) that the structure of the industry is conducive to conspiracy.

1 These arguments – all of which were raised in JAWA's earlier opposition (*see* Doc. 242 at 4-10) – ignore the basic allegations of the complaint, which describe actions by the carriers that were both out-in-the-open and consistent with what would be expected in a case of actions designed to address suspected fraud rather than further an anticompetitive conspiracy. JAWA alleges that Verizon publicly announced its decision to cease doing business with JAWA because JAWA was engaged in fraud; Verizon's press release allegedly also publicly urged other wireless carriers to cease doing business with JAWA. Docket No. 220, ¶ 76. Two days earlier, the Texas Attorney General, had filed an injunctive action against JAWA due to its fraudulent conduct – as had Verizon – and the press release made reference to those suits. *Id.*; *see also id.* ¶ 56. Given the publicity concerning JAWA's alleged misconduct, carriers' alleged decisions to stop providing JAWA access to their networks reflects perfectly rational *unilateral* conduct.[1] Each carrier had an obvious incentive to protect its reputation and consumer goodwill by refusing to deal with a company that had been sued by the Texas Attorney General and publicly accused of fraud – irrespective of what any other carrier might do.[2] Such alleged conduct has nothing in common with the secretive conspiracy that JAWA claims.

---

[1] It does not matter whether the lawsuits filed by Verizon and by the Texas Attorney General were meritorious or not; the fact that public accusations of fraud were leveled against JAWA – as JAWA alleges – means that carriers had good reason to keep their distance. This Court, however, has already determined on repeated occasions that the claims asserted by Verizon Wireless in this lawsuit are meritorious and are not objectively baseless. *See* Order at 24; *see also* Preliminary Injunction Order (Doc. 133).

[2] JAWA's arguments also inconsistently suggest that Verizon did not need the other carriers to take *any* action to ensure that JAWA would be cut off from each of their networks. According to JAWA, Verizon was able to "disabl[e] JAWA's short codes" and thereby eliminate JAWA's access to all networks. Mtn. to Reconsider at 7 (citing TAC ¶¶ 60-63); *compare* Opp. to MTD at 6 (noting that Verizon "sent multiple letters to the Aggregators that controlled the PSMS market and demanded that the Aggregators . . . cut off service with JAWA completely"). JAWA also argues that "other Wireless Carriers did not object to Verizon's demand that the Aggregators cut off JAWA traffic," *id.* at 7, but the carriers would have no reason to object to Verizon's demand given the serious allegations of fraud raised both by Verizon and the Texas Attorney General.

Moreover, this Court has repeatedly rejected JAWA's unfounded characterizations of the contents of the letters sent to the Aggregators, finding that none of the alleged demands set forth in the letters were improper. *See, e.g.,* Reporter's Transcript of Proceedings before the Hon. David G. Campbell (Telephonic Hearing on Temporary Restraining Order) dated March 11, 2011 at 11:20-24:

JAWA thus gains no support from the Seventh Circuit's decision in *In re Text Messaging Antitrust Litigation*, 630 F.3d 622 (7th Cir. 2010). In that case, the court of appeals stated that a complaint was adequate in part because of what the court of appeals characterized as allegations of "anomalous behavior" by the defendants, that is, "simultaneously" raising prices "in the face of steeply falling costs." *Id.* at 628. No similar allegations are raised in JAWA's complaint, which does not allege parallel behavior that is "anomalous" or otherwise unexplained. To the contrary, the allegations of fraud leveled against JAWA provided a reasonable basis for all carriers unilaterally to cease doing business with JAWA.

Furthermore, JAWA's allegations affirmatively undermine its arguments that it has alleged "plus factors" supporting the inference that the carriers acted pursuant to prior agreement. *First*, the claim that carriers allegedly cut off JAWA's access within two days of the announcement of JAWA's alleged fraudulent conduct makes nonsense of the argument that carriers' conduct was motivated by a supposed desire to eliminate JAWA as a competitor, rather than by the public lawsuits and allegations of misconduct against JAWA.[3] The obvious inference from JAWA's allegations is that carriers' actions reflect the carriers' response to public statements revealing JAWA's alleged fraud. Carriers have an understandable desire to avoid doing business with an accused fraudster; there is no reason to infer that their reaction reflected any anticompetitive animus.

Moreover, the claim that carriers had an anticompetitive motive to force JAWA from the market makes no sense in the absence of allegations that such conduct would enhance the carriers' power in some market. JAWA does not (and cannot) allege any

---

THE COURT: Where in that letter does Verizon tell Motricity not to do business with you, even with regard to the other networks like Sprint or AT&T? Or where in the materials you've submitted do they say that? I just haven't noticed that when I reviewed things today.

*See also* Order at 24-25.

[3] JAWA's arguments on this point echo those asserted in response to Verizon's motion to dismiss. *Compare* Opp. to MTD at 4 (suggesting carriers had the "ability and incentive" to conspire), *with* Mtn. for Reconsideration at 5 (arguing that "the Wireless Carriers had a motive to enter into a group boycott of JAWA").

5

such thing – the only potentially relevant "market" is one for services including Premium SMS services, and JAWA alleges nothing about the size and scope of that market, who the participants (other than JAWA) are, or how the potential elimination of JAWA from that market would have any impact on competition.[4]  Particularly in the absence of any allegation that carriers improperly cut off any other provider of Premium SMS services, the claim that the elimination of a single provider is of any *competitive* significance makes no sense and does nothing to bolster the plausibility of JAWA's claims.

*Second*, the allegation that JAWA stood accused of fraud means that no carrier acted against its short-term economic self-interest by refusing to continue to business with JAWA.[5]  To be sure, JAWA alleges that carriers gave up revenues, but, had they not done so, they risked harm to their reputation, loss of customers, or worse.  The carriers' decisions to refrain from doing business with JAWA are not "anomalous."  Mtn. to Reconsider at 5.  Rather, in light of public allegations that JAWA engaged in fraud – in addition to the Texas Attorney General's similar announcement – their individual decisions to terminate business with JAWA reflected no sacrifice of profits, even in the short term.

*Third*, the allegation – which JAWA also raised before[6] – that the carriers discussed JAWA's conduct around the time that Verizon made its announcement does

---

[4] JAWA suggests that Verizon has power in some market for premium SMS services by virtue of its control over its wireless networks, TAC ¶ 147, but that supposed "power" is not affected by whether JAWA continues to participate as a provider of premium SMS services.

[5] Again, these arguments are not new.  *Compare* Opp. to MTD at 5 n.3 (arguing that carriers acted "in contravention of their short-term financial interest"), *with* Mtn. to Reconsider at 6 (arguing that "the Wireless Carriers acted contrary to their short-term economic interests").

[6] *See* Opp. to MTD at 5 n.3.  Verizon's interrogatory responses attached to JAWA's motion for reconsideration add nothing to what it claimed before.  All of Verizon's responses verify the deposition contents cited by JAWA in its opposition to Verizon's motion to dismiss.  *See* Mtn. to Reconsider Ex. A, at 5, 10-11, 21, 34.  Verizon's interrogatory responses do not supply any additional facts on which JAWA may rely, and none of Verizon's responses suggest that CTIA members conspired to boycott JAWA.

6

not support the claim that the carriers reached any agreement.[7]  *Cf. Burtch v. Milberg Factors, Inc.*, 2011 WL 5027511, at *14 (3d Cir. Oct. 24, 2011) (finding allegations of calls among alleged conspirators insufficient to establish "specific agreement to conspire").  To the contrary, the fact that Verizon allegedly called on carriers to stop doing business with JAWA in its public announcement suggests that there was no agreement – or such a public announcement would have been unnecessary.  Moreover, there is nothing suspicious in carriers communicating about a matter of common concern to the industry – alleged fraud by a provider of Premium SMS services.  *See id.*, at *17 (3d Cir. Oct. 24, 2011) (finding allegations that alleged co-conspirators exchanged information regarding plaintiff's creditworthiness insufficient to establish plausible agreement to fix credit terms).  The bare allegation that carriers discussed such a matter of common concern does not support any inference of agreement.

*Fourth*, because JAWA claims that the carriers' alleged decisions followed public revelations concerning JAWA's improper conduct, its argument (which it made before) that the structure of the wireless industry makes conspiracy more feasible has no force.  Because Verizon – and the Texas Attorney General – made their claims against JAWA public, each carrier had an obvious incentive to protect itself by ceasing to do business with JAWA.  That would be true whether the industry included four reputable carriers or forty.  Given JAWA's allegations, the claim that four carriers account for a large percentage of the market has no relevance, and does not make JAWA's accusation of conspiracy any more plausible.

### c. Dismissal of JAWA's Claim for Tortious Interference Was Proper and JAWA Has Provided No Grounds to Reconsider The Court's Prior Ruling.

JAWA's demand that the Court reconsider dismissal of JAWA's claim for tortious interference is the epitome of a request that this Court "rethink what it has already thought."  *Societe Civile Succession Richard Guino v. Beseder Inc.,* No. CV 03-1310-

---

[7] JAWA argues that the carriers discussed JAWA in a meeting on March 21, but it does not explain how such discussions could be relevant to a supposed conspiracy that was implemented *prior* to that meeting.

7

1  PHX-MHM, 2008 WL 2463770, at *2 (D. Ariz. June 17, 2008) (quoting *Nw. Acceptance*
2  *Corp. v. Lynnwood Equip., Inc.,* 841 F.2d at 925-26).  As set forth at length in the Order,
3  the Court fully considered the allegations contained in the TAC and JAWA's arguments
4  concerning Verizon Wireless' conduct and communications with the Aggregators,
5  determining that Verizon's communications were privileged, were asserted for the
6  purpose of protecting Verizon Wireless' own legally protected interests, and were not
7  improper.  The Court also addressed JAWA's other allegations of purported misconduct
8  and found them conclusory.  Despite JAWA's attempt to take yet another bite at the
9  proverbial apple, the Motion does nothing more than regurgitate conclusory statements
10 that this Court has considered and rejected.

11     JAWA's discussion of the Court's tortious interference ruling starts off by
12 misrepresenting this Court's Order: "In dismissing JAWA's tortious interference claim,
13 the Order (at 25) mentions *only* JAWA's allegations regarding Verizon's
14 communications with the Aggregators. . . ."  Mot. at 8 (emphasis added).  Elsewhere
15 JAWA suggests that the Court did not address anything else. Mot. at 2, 8 ("But the TAC
16 alleged interference far beyond just the letters to the Aggregators.").  However, at the
17 very page JAWA cites, this Court found that "JAWA's allegations that Verizon
18 employed economic pressure, defamation, restraint of trade, and antitrust are conclusory
19 statements based entirely on the same set of allegations.  The TAC also fails to allege any
20 improper communications from Verizon to its customers."  Order at 25.  The Court
21 properly dismissed the conclusory allegations that JAWA now touts as "factual" in its
22 Motion (at 11), such as Verizon Wireless' alleged "desire to control the PSMS market"
23 and its supposed intent "to drive JAWA out of business."  These mere conclusions do not
24 supply the required factual allegations of improper conduct which this Court found to be
25 absent from the TAC.  Order at 25.

26     JAWA also continues to misrepresent that Verizon Wireless "required the
27 Aggregators to prevent JAWA from doing business with **any** Wireless Carrier, not just
28 Verizon."  Mot. at 9.  The Court properly found, as it has before (*see* n. 2 *supra*), that the

8

1 demands allegedly made by Verizon Wireless dealt only with the Aggregators'
2 "provision of services, collection of payments, or offer of refunds to customers serviced
3 by JAWA through Verizon's own network." Order at 24.

4     JAWA fares no better in its discussion of the applicable law. For example,
5 JAWA's reliance on *Snow v. W. Sav. & Loan Ass'n,* 152 Ariz. 27 (1986), is misplaced.
6 In *Snow,* the court found the existence of a disputed issue of material fact regarding a
7 party's subjective good faith under a different privilege claim, based on evidence
8 presented during summary judgment proceedings. *Id.* at 37. The defendant alleged that
9 it had a good faith belief in the enforceability of an unenforceable contractual provision
10 upon which it relied to justify its interference.[8] Here, there is no dispute that Verizon had
11 valid contractual interests to protect.[9]

12     JAWA conveniently ignores the actual privilege applied by this Court. The "state
13 law privilege" asserted by Verizon Wireless and relied upon by the Court is discussed in
14 *Wyatt v. Ruck*:

> But not every interference is actionable. If a defendant has a present, existing interest to protect such as the ownership or condition of property, or a prior contract of his own, he is privileged to prevent the performance of a contract of another which threatens it. *Meason v. Ralston Purina Company*, 56 Ariz. 291, 107 P.2d 224 (1940); Prosser, Law of Torts, 4th Ed. p. 944-945.
>
> …
>
> In any event, where the defendant has a proper purpose in view, the addition of ill will towards the plaintiff will not defeat the privilege. *Ulan v. Lucas*, 18 Ariz. App. 129, 500 P.2d 914 (1972).

---

[8] Arizona courts have also dismissed claims for tortious interference on the basis that the alleged conduct was not "improper", determining issues relating to the same privilege as that asserted in *Snow* as a matter of law. *See, e.g., Strojnik v. General Ins. Co. of America,* 201 Ariz. 430 (2001) ("For the foregoing reasons, we hold that GICA did not, as a matter of law, improperly interfere with the prospective Morris agreement by entering an agreement with the Poli Firm, which resolved a coverage dispute. Accordingly, we affirm.") Accordingly, JAWA's blanket statement that "the application of a privilege in the interference context is a question of fact for the jury" (Mot. at 10) is inaccurate.

[9] Moreover, *Snow* was a state court case not subject to the *Twombly* standard, under which conclusory allegations as to the elements of a cause of action (here, the "improper" element) are insufficient. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1965 (2007).

9

571 P.2d 683, 687 (Ariz. Ct. App. 2001). Under the privilege set forth in *Wyatt*, Verizon Wireless had a privilege to protect its existing interests, even if it had "ill will towards the plaintiff." Thus, JAWA's conclusory statements regarding Verizon Wireless' "good faith" and "evil and malicious intent" (Mot. at 11) are legally insufficient.

Likewise, JAWA's assertion that claims of privilege under the *Noerr-Pennington* doctrine are improper for determination on a motion to dismiss ignores controlling Ninth Circuit authority. (Mot. at 3, 8). The Ninth Circuit has specifically upheld Rule 12(b)(6) dismissals based on the *Noerr-Pennington* doctrine. *See Sosa v. DirecTV, Inc.,* 437 F.3d 923, 927, 942 (9th Cir. 2006) ("The district court granted the motion, basing its ruling solely on the *Noerr-Pennington* doctrine…. Because we affirm the district court's ruling on the basis of the *Noerr-Pennington* doctrine, we need not address the other bases for dismissal asserted by appellees below and on appeal…. Accordingly, we affirm the judgment of the district court holding DIRECTV immune from liability and dismissing Sosa's complaint.").

Finally, JAWA's argument that the Court erred in applying the *Noerr-Pennington* doctrine again disregards the Court's actual ruling. As set forth in the Order, JAWA failed to allege any improper conduct on the part of Verizon Wireless, and none of the purported "factual" allegations that JAWA continues to repeat to this Court as the basis of its tortious interference claims were improper. *See* Order at 24-25 ("The TAC goes on to cite six demands Verizon made, all of which the Court finds pertain to the aggregators' provision of services, collection of payments, or offers of refunds to customers serviced by JAWA through Verizon's own network….Absent factual allegations of improper conduct, the Court agrees that JAWA's claim that Verizon's actions were 'wrongful, improper and without justification or excuse' is conclusory.") (internal citations omitted). Accordingly, because there was no manifest error in the Court's prior decision that JAWA failed to adequately allege a claim for tortious interference, and because the Motion provides no "new facts or legal authority" that would merit reconsideration, the Motion should be denied.

### III. CONCLUSION.

JAWA has offered no basis, and none exists, for this Court to reconsider its Order dismissing Counts 1 and 7 of the TAC. Accordingly, Verizon Wireless respectfully requests that the Court deny the Motion in its entirety.

RESPECTFULLY SUBMITTED this 27th day of February, 2012.

> KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
>
> By: */s/Marcos D. Jiménez*
> Marcos Daniel Jiménez
> Scott Cosgrove
> Audrey M. Pumariega
> 1441 Brickell Avenue, Suite 1420
> Miami, Florida 33131
>
> GALLAGHER & KENNEDY, P.A.
> Paul K. Charlton
> Lindsi M. Weber
> 2575 East Camelback Road
> Phoenix, Arizona 85016-9225
>
> *Attorneys for Plaintiff*

### CERTIFICATE OF SERVICE

I hereby certify that on this 27th day of February, 2011, I electronically transmitted a PDF version of this document to the Clerk of the Court, using the CM/ECF System for filing and for transmittal of a Notice of Electronic Filing to all CM/ECF registrants and non-registered parties.

*/s/Audrey M. Pumariega*