1   **WO**

2

3

4

5

6

7   **IN THE UNITED STATES DISTRICT COURT**

8   **FOR THE DISTRICT OF ARIZONA**

9

10  Cellco Partnership doing business as            No. CV11-0432 PHX DGC
    Verizon Wireless,

11                          Plaintiff,            **ORDER**

12  vs.

13  Jason Hope, et al.,

14                          Defendants.

15

16          Defendants (collectively "JAWA") filed a motion for reconsideration of a limited

17  portion of the Court's January 30, 2012 order in which the Court dismissed eight of

18  JAWA's counterclaims.   Doc. 284; *see* Doc. 273.   Pursuant to the Court's order

19  (Doc. 286), Plaintiff filed a response (Doc. 290).   JAWA asks the Court to reinstate its

20  Sherman Act claim, in which it alleges that Verizon organized and participated in a *per se*

21  illegal group boycott of JAWA by wireless carriers (Doc. 284 at 3-8; *see* Doc. 220,

22  ¶¶ 156-161), and its tortious interference claim, in which it alleges that Verizon

23  knowingly and intentionally and without legal justification or excuse interfered with its

24  business contracts and expectancies with customers and aggregators.  Doc. 284 at 8-14;

25  *see* Doc. 220, ¶¶ 97-102.  The Court will deny the motion with respect to the Sherman

26  Act claim and grant it with respect to the tortuous interference claim.[1]

27  ──────────────────────
           [1] JAWA's request for oral argument is denied because the parties have fully briefed the
28  issues and oral argument will not aid the Court's decision.  Fed. R, Civ. P. 78(b).

1    **I.    Legal Standard.**

2          Motions for reconsideration "are 'disfavored' and will be granted only upon a

3    showing of 'manifest error' or 'new facts or legal authority that could not have been

4    raised earlier with reasonable diligence.'"   *In re Rosson*, 545 F.3d 764, 769 (9th Cir.

5    2008) (citation and brackets omitted); *see S.E.C. v. Kuipers*, No. 09-36016, 2010 WL

6    3735788, at *3 (9th Cir. Sept. 21, 2010); LRCiv 7.2(g)(1).   Mere disagreement with an

7    order is an insufficient basis for reconsideration.   *See Ross v. Arpaio*, No. CV 05-4177-

8    PHX-MHM, 2008 WL 1776502, at *2 (D. Ariz. 2008).   Nor should reconsideration be

9    used to ask the Court to rethink its analysis.   *Id.*; *see N.W. Acceptance Corp. v. Lynnwood*

10   *Equip., Inc.*, 841 F.2d 918, 925-26 (9th Cir. 1988).

11   **II.   Sherman Act Claim.**

12         JAWA alleged in its third amended counterclaims ("TAC") that Verizon

13   "implemented an illegal horizontal boycott against JAWA among competing Wireless

14   Carriers."   Doc. 220, ¶ 156.   JAWA argues that the Court erred when it dismissed this

15   claim upon finding that "JAWA failed 'to allege sufficient facts to show an agreement to

16   boycott JAWA.'"   Doc. 284 at 3 (quoting Doc. 273 at 31).   JAWA argues that it alleged

17   "plausible grounds to infer an agreement" among wireless carriers and that this satisfies

18   the pleading requirements set forth in *Bell Atlantic Corporation v. Twombly*.   Doc. 284 at

19   4 (quoting *Twombly*, 550 U.S. 544, 556 (2007)).

20         *Twombly* held that allegations of parallel conduct by major telecommunications

21   providers that hurt competition were insufficient to state a claim under § 1 of the

22   Sherman Act "absent some factual context suggesting agreement, as distinct from

23   identical, independent action."   550 U.S. at 549.   The Court stated that "[e]ven conscious

24   parallelism, a common reaction of firms in a concentrated market that recognize their

25   shared economic interests . . . is not itself unlawful" without a showing of "contract,

26   combination, or conspiracy."   *Id.* at 553-54 (internal citations omitted).   The Court

27   recognized that some behavior suggestive of a conspiracy could be "just as much in line

28   with a wide swath of rational and competitive business strategy unilaterally prompted by

1    common perceptions of the market." *Id.* at 554.  Accordingly, the Court held that "a

2    conclusory allegation of agreement at some unidentified point does not supply facts to

3    show illegality . . . [the allegations] must be placed in a context that raises a suggestion of

4    a preceding agreement." *Id.* at 557.  The Supreme Court went on to explain that for an

5    allegation of conspiracy to cross the line from possibility to plausibility, the complaint

6    must do more than use the term "agreement" or "conspiracy"; it must include "further

7    factual enhancement" such as a written agreement or "even a basis for inferring a tacit

8    agreement." *Id.*

9         JAWA has alleged parallel actions of major wireless networks.  JAWA has further

10   alleged that these actions resulted in eliminating JAWA's ability to compete in the PSMS

11   industry.  This alone does not satisfy the pleading requirements for a Sherman Act claim.

12   The question, not previously addressed, is whether JAWA has provided "further factual

13   enhancement" from which to infer the existence of an agreement.  The Court finds that it

14   has not.

15        JAWA's factual allegations are that Verizon is a competitor with JAWA in the

16   premium short messaging service ("PSMS") market, so it had a motive to put JAWA out

17   of business (*Id.*, ¶¶ 28-29; 59;137-38; 157; 163-64); Verizon issued a press release after

18   filing this lawsuit in which it urged its competitors "to quickly follow and put a stop to

19   this fraud and ensure all mobile customers are protected" (*Id.*, ¶¶ 76; 112; 14; *see*

20   Doc. 169-1 at 1); other major wireless carriers ceased doing business with JAWA within

21   two days of the press release even though this went against their short-term interest in

22   collecting fees (Doc. 220, ¶¶ 40, 79, 159); and Verizon representatives met with

23   representatives of other carriers and induced or coerced them to agree to boycott JAWA

24   (Doc. 220, ¶¶ 78, 159).

25        JAWA's allegation that Verizon also participated in the PSMS market is

26   insufficient to support its argument that Verizon had a competitive reason to form a group

27   boycott against JAWA, particularly when Verizon had contracted with its aggregators for

28   JAWA's services up to the time it encountered the fraudulent sales practices alleged in its

complaint.  Additionally, as Verizon notes in its response to JAWA's motion, JAWA has alleged no facts showing the size and scope of the PSMS market or who the other competitors are from which to infer that a group boycott of JAWA, in particular, would lead to a competitive advantage for Verizon.  *See* Doc. 290 at 6.

Neither does the open-ended statement in Verizon's press release, publicly urging other wireless networks to cut off JAWA to protect wireless customers from fraud, support the existence of a "contract, combination, or conspiracy."  The fact that other networks cut off JAWA's services on their own networks within days of the press release is easily explained as a natural reaction to the notice, contained in that release, that both the Texas Attorney General and Verizon had filed suit against JAWA for a scheme to defraud wireless customers.  *See* Doc. 169-1 at 87.  As the Court stated in *Twombly*, "there is no reason to infer that the companies had agreed among themselves to do what was only natural anyway."  550 U.S. at 566.

JAWA's argument that this behavior was "anomalous" because it went against the networks' short-term interests (Doc. 284 at 6) is also unavailing.  The only allegation JAWA offers in support of this argument is that the networks received a fee for JAWA's services (Doc. 220, ¶ 40) and thus lost short-term revenues when they cut off business with JAWA (Doc. 284 at 6).  JAWA fails to account for the concurrent, arguably-overriding interest all carriers would have in avoiding potential fraud on their networks.  Cutting off business with JAWA at the risk of a short-term revenue loss in light of public allegations of an ongoing scheme by JAWA to defraud customers is a far cry from the "parallel behavior . . . anomalous in a competitive market" noted in *In re Text Messaging Antitrust Litigation*, 630 F.3d 622, 627-28 (7th Cir. 2010), an antitrust price-fixing case upon which JAWA relies.  In *In re Text Messaging*, the Seventh Circuit found that plaintiffs had made sufficient allegations to infer an agreement among competitors where text messaging providers had simultaneously raised prices in the face of steeply falling costs when the natural response would have been to lower prices to undercut competitors.  630 F.3d at 628.  JAWA provides no factual allegations to show that the networks'

parallel actions were "anything more than the natural, unilateral reaction of each [company]" intent on protecting its own customer base and business reputation from fraud.  *See Twombly*, 550 U.S. at 566.

JAWA's remaining allegation – that Verizon met with other wireless carriers and coerced them to boycott JAWA – is entirely conclusory and lacking in any detail about when and where these alleged meetings took place or what Verizon allegedly said or did to coerce parallel action against JAWA.  *See* Doc. 220, ¶¶ 78, 158.

JAWA argues that discovery has since revealed that Verizon, acting as part of a trade association, participated in telephone calls with other carriers in March of 2011 in which it discussed JAWA.  Doc. 284 at 7.  JAWA's attached deposition of Verizon representative Jonathan Lee Salkoff reveals that Verizon participated in a trade association call on March 9 in which it directed other carriers to its March 8 press release.  *See* Doc. 284-2.  It also reveals that on March 21, Verizon and the other carriers discussed placing controls in the industry to screen short codes at the front-end of the registry process, and that these discussions were possibly prompted by discussions of JAWA.  *See id.*  These added facts do not lead to the inference that Verizon and the other carriers acted pursuant to an agreement to put JAWA out of business.

JAWA's citation to *In re Text Messaging* for the proposition that participation in a trade organization supports the plausibility of a Sherman Act claim is also unavailing.  In *In re Text Messaging*, the complaint alleged that participants in the trade organization exchanged sensitive pricing information in an alleged price-fixing scheme.  630 F.3d at 628.  JAWA has pointed only to Verizon's reference to information it had already publicly disclosed.  Additionally, *In re Text Messaging* did not find the exchange of pricing information in itself illegal; nor was the existence of the trade association's communications a large factor in its ultimate conclusion.  Rather, in upholding the plausibility of the complaint, the court cited to a footnote in *Twombly* recognizing that "'complex and historically unprecedented changes in pricing structure made at the very same time by multiple competitors, and made for no other discernible reason' would

support a plausible inference of conspiracy." *Id.* (citing *Twombly*, 550 U.S. at 557 n. 4) (internal citations omitted). *In re Text Messaging* concluded that "[t]hat is the kind of 'parallel plus' behavior alleged in this case." *Id.* JAWA, by contrast, has alleged no actions by Verizon that were made for "no other discernible reason" than to put JAWA out of business. The Court has recognized many times that Verizon's allegations of fraud against JAWA are reasonable. Neither has JAWA alleged complex and unprecedented or anomalous actions on the part of the other carriers. In short, JAWA has alleged no "parallel plus" factors to provide a plausible basis for inferring that by cutting off their business with JAWA the carriers acted pursuant to a preceding agreement as opposed to taking conscious parallel actions to protect their own interests. The Court will deny JAWA's motion for reconsideration on its Sherman Act claims.

**III.    Tortious Interference.**

The Court dismissed JAWA's tortious interference claim on the basis that Verizon's alleged demands to its aggregators did not show improper conduct and JAWA's allegations of economic pressure, restraint of trade, and antitrust were conclusory. Doc. 273 at 25. The Court found that Verizon's letters to its aggregators were protected under the *Noerr-Pennington* doctrine as pre-suit demand letters because the claims in those letters were not "objectively baseless," and that, alternatively, they were protected by state law privilege because all of the demands they made were related to protecting Verizon's own legally-protected interests. Doc. 273 at 24-25. JAWA claims that the Court erred because JAWA alleged improper conduct other than the demand letters, Verizon's demands went beyond the scope of protecting its own interests, and whether the *Noerr-Pennington* or state privilege doctrines apply is a factual issue that cannot be decided on a motion to dismiss. Doc. 284 at 8-14.

The Court has reviewed JAWA's allegations and finds that it erred by failing to address Verizon's press release in relation to the tortuous interference claim. *See* Doc. 220, ¶ 76. In ruling on JAWA's business disparagement claim, the Court found that whether Verizon's statements in the press release "were made with the legitimate purpose

of informing its customers of their right to refunds and not for an improper purpose are factual matters that do not defeat JAWA's claims at the pleading stage." Doc. 273 at 27. The Court should have given the press release the same treatment when ruling on the tortuous interference claim. Just as the Court cannot eliminate the press release as a basis for a business disparagement claim at this stage of the litigation, it cannot eliminate the press release as a basis for improper conduct under the tortuous interference claim at this stage. The Court accordingly will reinstate JAWA's tortious interference claim based on the press release.[2]

With respect to the demands Verizon made of its aggregators, the Court previously determined that JAWA "failed to allege any demands [in the letters] that were not . . . within the scope of protecting Verizon's own interests" and all of JAWA's other allegations of demands or coercion were conclusory. Doc. 25 at 35. The Court will revisit this analysis only with respect to JAWA's argument that Verizon's demand that its aggregators cut off all JAWA short codes went beyond protecting Verizon's interests because it meant, in effect, cutting JAWA's business with these aggregators with respect to all carriers, not just Verizon. Doc. 284 at 9. The context of the demand letters clearly concerns JAWA's dealings with Verizon customers. *See, e.g.,* Doc. 169-1 at 82-85. The Court is not persuaded that this demand, although forceful, was not well within the scope of protecting Verizon's own interests of ensuring that JAWA be fully foreclosed from access to its own network.

The Court also does not find clear error in applying the *Noerr-Pennington* and state privilege doctrines at the motion to dismiss stage. *See, e.g., Sosa v. DirectTV, Inc.*, 437 F.3d 923, 942 (affirming dismissal of RICO claims based on prelitigation demand

---

[2] Tortious interference requires a showing of (1) a valid contractual relationship or business expectancy, (2) knowledge of that relationship or expectancy by the interferer, (3) intentional interference inducing or causing a breach or termination of the contract or expectancy, and (4) resulting damage. *See Miler v. Hehlen*, 104 P.3d 193, 202 (Ariz. Ct. App. 2005).

letters protected by *Noerr-Pennington*); *Ulan v. Lucas*, 500 P.2d 914, 915 (Ariz. Ct. App. 1972) (holding that "[w]here, on the face of the complaint, it affirmatively appears that the defendant was privileged to interfere with contractual relations, dismissal is appropriate."). The Court will deny JAWA's motion for reconsideration on its tortious interference claim with respect to all allegations except for those related to the March 8, 2011 press release.

**IT IS ORDERED:**

1.     Defendant JAWA's motion for reconsideration of the Court's dismissal of its Sherman Act counterclaim (Doc. 284) is **denied**.

2.     Defendant JAWA's motion for reconsideration of the Court's dismissal of its tortious interference counterclaim (Doc. 284) is **granted** with respect to Verizon's March 8, 2011 press release and **denied** with respect to all other allegations of improper conduct.

Dated this 6th day of March, 2012.

_____
David G. Campbell
United States District Judge